NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
KATHERINE A. RYKKEN (Cal. Bar No. 267196)
Assistant United States Attorney
Major Frauds Section
VERONICA DRAGALIN (Cal. Bar No. 281370)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0647
    Facsimile: (213) 894-0141
    E-mail:   katherine.rykken@usdoj.gov
             veronica.dragalin@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-121(A)-SJO |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION IN LIMINE TO ADMIT DEFENDANT STATEMENTS; EXHIBITS |
| v. | |
| CARLOS MIGUEL FERNANDEZ, et al., | Hearing Date: November 4, 2019 |
| Defendants. | Location:    Courtroom of the Hon. S. James Otero |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys KATHERINE A. RYKKEN and VERONICA DRAGALIN, hereby files its motion in limine to admit defendant statements.

//

//

//

//

This Motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 22, 2019          Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

KATHERINE A. RYKKEN
VERONICA DRAGALIN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

# TABLE OF CONTENTS

<u>DESCRIPTION</u>                                                                    <u>PAGE</u>

I.    INTRODUCTION.................................................................1

II.   FACTUAL BACKGROUND...........................................................1

III.  ARGUMENT.....................................................................4

      A.   Legal Standards.........................................................4

      B.   Fernandez's Statements in Instagram Records.............5

           1.   The statements are not admitted for the truth of
                the matter asserted.................................................6

           2.   The statements are admissible against Fernandez
                as statements by a party-opponent..................................7

           3.   The statements are admissible against Arao as co-
                conspirator statements.............................................8

           4.   The statements are not unduly prejudicial..........10

      C.   Arao's Statements in Instagram Records...................10

      D.   Fernandez's Statements in E-mail Records.................11

      E.   Fernandez's Statements in Text Messages.................12

      F.   Defendants' Recorded Statements to Agents...............12

           1.   The statements are admissible against each
                defendant as statements by a party-opponent........13

           2.   The statements do not present a *Bruton* issue.......13

IV.   CONCLUSION..................................................................15

i

## TABLE OF AUTHORITIES

DESCRIPTION                                                                    PAGE(S)

**Cases**

Bourjaily v. United States,
     483 U.S. 171 (1987)...........................................5, 8

Bruton v. United States,
     391 U.S. 123 (1968)..............................................5

Crawford v. Washington,
     541 U.S. 36 (2004)...............................................4

Garlington v. O'Leary
     879 F.2d 277 (7th Cir. 1989).....................................9

Nelson v. O'Neil,
     402 U.S. 622 (1971).........................................6, 15

Old Chief v. United States,
     519 U.S. 172 (1997)............................................10

Richardson v. Marsh,
     481 U.S. 200 (1987).........................................13, 14

Sendejas v. United States,
     428 F.2d 1040 (9th Cir. 1970)....................................8

United States v. Allen,
     425 F.3d 1231 (9th Cir. 2005)....................................9

United States v. Bailleaux,
     685 F.2d 1105 (9th Cir. 1982)...................................10

United States v. Bowman,
     215 F.3d 951 (9th Cir. 2000).....................................8

United States v. DeCinces,
     808 F.3d 785 (9th Cir. 2015)....................................10

United States v. Echeverry,
     759 F.2d 1451 (9th Cir. 1985)....................................6

United States v. Hernandez-Orellana,
     539 F.3d 994 (9th Cir. 2008)....................................14

United States v. Kirk,
     844 F.2d 660 (9th Cir. 1988)..................................6, 7

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                <u>PAGE</u>

<u>United States v. Lloyd</u>,
    807 F.3d 1128 (9th Cir. 2015)...................................8

<u>United States v. McCown</u>,
    711 F.2d 1441 (9th Cir. 1983)...................................9

<u>United States v. Meyers</u>,
    847 F.2d 1408 (9th Cir. 1988)...................................5

<u>United States v. Mitchell</u>,
    502 F.3d 931 (9th Cir. 2007)....................................5

<u>United States v. O'Connor</u>,
    737 F.2d 814 (9th Cir. 1984)...................................14

<u>United States v. Olano</u>,
    62 F.3d 1180 (9th Cir. 1995)...................................14

<u>United States v. Powell</u>,
    469 U.S. 57 (1987).............................................14

<u>United States v. Sauza-Martinez</u>,
    217 F.3d 754 (9th Cir. 2000)...................................13

<u>United States v. Schmit</u>,
    881 F.2d 608 (9th Cir. 1989)....................................9

<u>United States v. Valerio</u>,
    441 F.3d 837 (9th Cir. 2006)....................................7

<u>United States v. Wright</u>,
    742 F.2d 1215 (9th Cir. 1984)..................................14

<u>United States v. Zavala-Serra</u>,
    853 F.2d 1512 (9th Cir. 1988)................................8, 9

**Statutes**

18 U.S.C. § 371................................................1

18 U.S.C. § 922(a)(1)(A).......................................1

18 U.S.C. § 922(d)(1)..........................................2

18 U.S.C. § 924(a)(1)(A).......................................2

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

**Rules**

Fed. R. Evid. 801(c)...............................................4, 7

Fed. R. Evid. 801(d)(2)(A)........................................4

Fed. R. Evid. 801(d)(2)(E)........................................4, 9

Fed. R. Evid. 1006................................................5

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2
**I.   INTRODUCTION**

3
Defendants Carlos Miguel Fernandez ("Fernandez") and Edward Arao

4
("Arao"), police officers charged with illegally dealing in firearms,

5
are proceeding to trial on November 12, 2019.  Using their law

6
enforcement status, Fernandez and Arao were able to purchase a high

7
volume of "off-Roster" firearms that were unavailable to the general

8
public in California.  They then repeatedly resold those firearms,

9
often coordinating with each other.  Neither Fernandez nor Arao had a

10
license to deal in firearms.

11
At trial, the government intends to introduce five types of

12
statements by defendants Fernandez and Arao: (1) Fernandez statements

13
in Instagram records; (2) Arao's statements in Instagram records; (3)

14
Fernandez's statements in his own email records; (4) Fernandez's

15
statements in text messages; and (5) Fernandez and Arao's recorded

16
statements to agents in voluntary interviews.  For the reasons set

17
forth below, these statements are admissible at trial.

18
**II.   FACTUAL BACKGROUND**

19
Fernandez and Arao are charged in the first superseding

20
indictment with conspiracy to deal in firearms in violation of 18

21
U.S.C. § 371, and separate substantive counts of dealing in firearms

22
without a license, in violation of 18 U.S.C. § 922(a)(1)(A).

23
Fernandez is also charged in a second conspiracy,[1] disposing of

24
firearms to a person he had reasonable cause to believe was

25

26
_____

27
[1] Count Four charges this second conspiracy.  Fernandez is
charged along with three other co-defendants, all of whom have signed
plea agreements and will not proceed to trial: Oscar Morales Camacho,

28
Sr. ("Camacho Sr."), Oscar Maravilla Camacho Jr. ("Camacho Jr."), and
Rafael Ruben Camacho Maravilla ("Camacho Maravilla").

prohibited from purchasing firearms, and separate substantive violations of 18 U.S.C. § 922(d)(1).  Lastly, because Fernandez also aided and abetted other co-defendants in making false statements in connection with their firearms purchases, he is charged with substantive violations of 18 U.S.C. § 924(a)(1)(A).

At trial, the government will prove that Fernandez and Arao worked together to illegally deal in firearms without a license. Often in concert with one another, Fernandez and Arao used their respective Instagram accounts, @the38superman and @ronintacticalgroup, to market, advertise, and repeatedly sell firearms.  The government seeks to admit Instagram records showing the posts made by Fernandez on his Instagram account @the38superman.[2] Fernandez also used Instagram's "direct messaging" feature to negotiate prices and arrange firearms transactions with prospective buyers.  The government seeks to introduce certain direct message conversations, namely, the conversations quoted in the indictment, as well as additional similar conversations produced in discovery.[3] Attached hereto as Exhibit A is a sample of Instagram direct message conversations quoted in the indictment that the government seeks to admit at trial.  The government reserves the right to introduce

---

[2] These records were produced at USAO_0013729 to USAO_0013861 (screenshots of 133 Instagram posts between September 26, 2015 and June 28, 2017), USAO_0006462 to USAO_0006728 (Instagram business records produced for posts between September 16, 2015 and August 18, 2018); USAO_020173 to USAO_020488 (translation of Instagram business records).

[3] These records were produced at USAO_0006728 to USAO_0008210 (Instagram business records produced for direct message conversations between February 8, 2016 and August 18, 2017); USAO_020489 to USAO_024856 (translation of Instagram business records).

additional similar direct message conversations produced in discovery.

The government also seeks to admit Instagram records showing posts made by Arao on his Instagram account @ronintacticalgroup.[4] The posts from both Instagram accounts include photographs, dates of the post, the accountholder's comments on posts, and comments made by third parties.

Fernandez also used an e-mail account that was linked to his @the38superman Instagram account, La_Fusca_1911@hotmail.com, to similarly market, advertise, purchase, and sell firearms without a license. The government seeks to introduce e-mails produced in discovery,[5] which demonstrate how Fernandez marketed, advertised, purchased, and sold firearms during the course of the conspiracy and while dealing firearms without a license.

In addition, Fernandez used his phone to engage in text message conversations with a prospective buyer, co-defendant Camacho Jr., who Fernandez had reasonable cause to believe was prohibited from purchasing firearms. The government obtained a copy of these text messages through a federal search warrant for Camacho Jr.'s cell phones. The government seeks to introduce text message conversations between Fernandez and Camacho Jr., which are relevant to the conspiracy charged in Count Four and the substantive counts charged

---

[4] These records were produced at USAO_0013925 to USAO_0013951 (screenshots of 25 posts made by @ronintacticalgroup from September 28, 2015 to May 27, 2015).

[5] These records were produced at USAO_019349 to USAO_020160.

1   in Counts Five through Ten.[6]  Attached hereto as Exhibit B is a

2   sample text message conversation quoted in the indictment that the

3   government seeks to admit at trial.

4        Lastly, both Fernandez and Arao were voluntarily interviewed by

5   the ATF case agents in this case.  The interviews were audio recorded

6   and produced in discovery, along with transcripts.[7]  Attached hereto

7   as Exhibit C are the excerpts the government intends to introduce

8   from Fernandez's interview.  Attached hereto as Exhibit D are the

9   excerpts the government intends to introduce from Arao's interview.

10  **III. ARGUMENT**

11      **A.   Legal Framework Governing Out of Court Statements**

12       Hearsay is an out of court statement that a party offers in

13  evidence to prove the truth of the matter asserted in that statement.

14  Fed. R. Evid. 801(c).

15       Statements by a party opponent when offered against that party

16  are excluded from the hearsay definition.  Fed. R. Evid.

17  801(d)(2)(A).  Similarly, declarations by one co-conspirator during

18  the course of, and in furtherance of, a conspiracy may be used

19  against another conspirator because such declarations are not

20  hearsay.  Fed. R. Evid. 801(d)(2)(E).  Statements made in furtherance

21  of a conspiracy are not "testimonial" and, consequently, do not

22  _____

23      [6] The text message conversations to be introduced were
    summarized and produced in Report of Investigation 37, produced at

24  USAO_025203 to USAO_025235.

25      [7] The recordings and transcripts of the recordings have been
    produced in discovery at USAO_025040 to USAO_025113 (Arao statement)

26  and USAO_032742 to USAO_032798 (Fernandez statement).  The government
    recognizes that the audio recordings of these clips, as they are in

27  English, will be the actual exhibit introduced at trial.  The
    transcripts attached here accurately reflect the audio recordings of
    the statements and are included for the Court's convenience.  The

28  government also intends for the transcripts to be used during trial
    as a demonstrative aid when listening to the recordings.

violate the Confrontation Clause.  <u>Crawford v. Washington</u>, 541 U.S. 36, 56 (2004).  Accordingly, the admission of co-conspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E) requires only a foundation that: (1) the declaration was made during the life of the conspiracy; (2) it was made in furtherance of the conspiracy; and (3) there is, including the co-conspirator's declaration itself, sufficient proof of the existence of the conspiracy and of the defendant's connection to it.  <u>See</u> <u>Bourjaily v. United States</u>, 483 U.S. 171, 173, 181 (1987).

Under <u>Bruton v. United States</u>, 391 U.S. 123 (1968) and its progeny, the admission of a testimonial statement made by "a non-testifying codefendant violates the Confrontation Clause when that statement facially, expressly, clearly, or powerfully implicates the defendant."  <u>United States v. Mitchell</u>, 502 F.3d 931, 965 (9th Cir. 2007) (citation omitted).

**B.   Fernandez's Own Statements in Instagram Account @the38superman**

    1.   <u>The Instagram Records are Admissible as Business Records</u>

The government intends to introduce Instagram records for the account "@the38superman," which the government will establish was created and used by defendant Fernandez.  The Instagram records include posts made by Fernandez on his @the38superman Instagram account and show the photograph posted, the date of the post, the accompanying comment by @the38superman, and any comments by third parties.  The Instagram records also include private direct message

conversations between @the38superman (i.e., Fernandez) and various third parties.[8]

These Instagram records are admissible as business records under Federal Rule of Evidence 803(6) and 902(11), pursuant to the declaration of the custodian of records produced in discovery (USAO_031845). The statements contained within the Instagram records, including both comments on posts and private direct messages between Fernandez and third parties, are also admissible for the reasons set forth below.

        2.   <u>The Instagram Record Statements Are Not Hearsay Because They Are Not Admitted for the Truth of the Matter Asserted</u>

Out of court statements do not qualify as hearsay when they "are not offered for the truth of the matter asserted, but were admitted to establish that the statement was made or to demonstrate the effect the statement had on the hearer." <u>United States v. Kirk</u>, 844 F.2d 660, 663 (9th Cir.), cert. denied, 488 U.S. 890 (1988). Likewise, out of court statements are not hearsay if they "were not offered for the truth of the matter asserted but as necessary background information." <u>United States v. Echeverry</u>, 759 F.2d 1451, 1457 (9th Cir. 1985).

---

[8] The direct message conversations will be offered at trial as summary charts because the underlying Instagram records are voluminous, admissible, and have already been produced. See Fed. R. Evid. 1006; <u>United States v. Meyers</u>, 847 F.2d 1408, 1411-12 (9th Cir. 1988). These records were produced at USAO_0006728 to USAO_0008210 (Instagram business records produced for direct message conversations between February 8, 2016 and August 18, 2017); USAO_020489 to USAO_024856 (translation of Instagram business records). The government will also concurrently file a separate Motion in Limine to Admit Firearms Records that discusses summary charts at length. On the basis set forth in that Motion at Section III.C, the government will also move to admit the summary charts of the direct messages discussed here

For example, in <u>Kirk</u>, "statements of salespersons misrepresenting the program were admissible to prove that the misrepresentations were made, not to prove the truth of what the salespersons stated."  844 F.2d 660, 663.  Here too, the government will offer statements made by Fernandez to prove that Fernandez made certain representations to potential firearms purchasers, not to prove the truth of what Fernandez stated.  For example, Overt Act No. 10 in Count One quotes an Instagram conversation in which an individual asked: "How do crooks get a firearm?"  Fernandez responded: "You get a parent, girlfriend, or anyone that can go." The government does not seek to establish that this method of acquiring a firearm is accurate or truthful but only that Fernandez made the statement.  These, the other statements quoted in Count One, and other Instagram posts and conversations are not hearsay because they are not offered to prove the truth of the matter asserted, but simply to prove that the statements were made.

3.   <u>The Instagram Record Statements Are Admissible Against Fernandez as Statements by a Party-Opponent</u>

Fernandez's statements in Instagram posts and messages are not hearsay for the additional reason that they are statements by a party-opponent, admissible against Fernandez under Rule 801(d)(2)(A). <u>See</u> <u>United States v. Valerio</u>, 441 F.3d 837, 844 (9th Cir. 2006).  The government can admit statements that provide context to defendant's statements, including the responses to Fernandez's Instagram messages, as such statements are not being admitted for the truth of the matter asserted but rather to provide context for the defendant's statements.  Fed. R. Evid. 801(c); <u>see also</u> <u>United States v. Valerio</u>,

441 F.3d 837, 844 (9th Cir. 2006) (informant's statements on a recording are admissible to give context to defendant's statements).

        4.   <u>The Instagram Record Statements Are Admissible as Co-Conspirator Statements</u>

If this Court were to find that the Instagram posts and direct messages from Fernandez's @the38superman account constitute hearsay and were not admissible against Arao on that basis, such statements are otherwise admissible against Arao as co-conspirator statements. "Under Rule 801(d)(2)(E), the statement of a co-conspirator is admissible against the defendant if the government shows by a preponderance of the evidence that a conspiracy existed at the time the statement was made; the defendant had knowledge of, and participated in, the conspiracy; and the statement was made in furtherance of the conspiracy." <u>United States v. Bowman</u>, 215 F.3d 951, 960-61 (9th Cir. 2000) (citing <u>Bourjaily v. United States</u>, 483 U.S. 171, 175 (1987)).

That Arao did not create posts for @the38superman account or personally participate in the direct message conversations is of no consequence.  The defendant need not be present at the time the co-conspirator made the statement.  <u>Sendejas v. United States</u>, 428 F.2d 1040, 1045 (9th Cir. 1970) ("It is well settled that a conversation between two co-conspirators which takes place out of the presence of a third co-conspirator is admissible into evidence against the third co-conspirator.").  Moreover, co-conspirator statements need not be made to another member of the conspiracy in order to be admissible under Federal Rule 801(d)(2)(E).  <u>See</u> <u>United States v. Zavala-Serra</u>, 853 F.2d 1512, 1516 (9th Cir. 1988).  Co-conspirator statements are admissible when made to third parties, such as government informants

1   and undercover agents.  <u>Id.</u>; <u>United States v. Lloyd</u>, 807 F.3d 1128,

2   1160-61 (9th Cir. 2015) ("It is not necessary that the statement be

3   made to another member of the conspiracy for it to come under [R]ule

4   801(d)(2)(E).").

5         Likewise, and as discussed in the context of the government's

6   Opposition to defendant Arao's Motion to Dismiss and Motion to Sever

7   (Dkt. 179 at 4-8), the fact that Fernandez's statements implicate

8   other potential federal crimes is of no legal consequence to Arao.

9   So long as a co-conspirator statement was made in furtherance of the

10  conspiracy to deal in firearms without a license, it is admissible.

11  <u>See</u> Fed. R. Evid. 801(d)(2)(E); <u>United States v. Schmit</u>, 881 F.2d

12  608, 612 (9th Cir. 1989).  In fact, the co-conspirator statement need

13  not have been made exclusively, or even primarily, to further the

14  conspiracy.  <u>Garlington v. O'Leary</u>, 879 F.2d 277, 284 (7th Cir.

15  1989).  Statements made with the intent to further the conspiracy are

16  admissible, whether or not they actually result in any benefit to the

17  conspiracy.  <u>Schmit</u>, 881 F.2d at 612; <u>United States v. Zavala-Serra</u>,

18  853 F.2d 1512, 1516 (9th Cir. 1988).  Here, the Instagram statements

19  were made to further the conspiracy to illegally deal in firearms

20  because the statements demonstrate that Fernandez advertised and

21  negotiated the repeated sale of firearms through his Instagram

22  account.

23        The admission of Arao or Fernandez's statements in the Instagram

24  records against the other does not present any <u>Bruton</u> issues at

25  trial.  While "<u>Bruton</u> precludes the admission of a defendant's

26  confession implicating a co-defendant during a joint trial . . . a

27  statement made by a co-conspirator during and in furtherance of the

28  conspiracy [is] not barred by <u>Bruton</u>." <u>United States v. Allen</u>, 425

F.3d 1231, 1235 n.5 (9th Cir. 2005) (internal citation omitted); <u>see also United States v. McCown</u>, 711 F.2d 1441, 1448 (9th Cir. 1983) (finding <u>Bruton</u> inapplicable to statements made by a co-conspirator in furtherance of a conspiracy).

> ### 5.   The Instagram Record Statements Are Not Unduly Prejudicial

The Instagram posts and direct messages are highly probative of the conspiracy to deal in firearms without a license and are not unduly prejudicial.  <u>United States v. DeCinces</u>, 808 F.3d 785, 791-92 (9th Cir. 2015).  Indeed, none of the messages are likely to "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  <u>Old Chief v. United States</u>, 519 U.S. 172, 180 (1997) ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.") (quoting Advisory Committee's Notes on Fed. R. Evid. 403).  Nor are any of the messages likely to "provoke an emotional response in the jury" that would distract from, rather than support, their "judgment as to [defendant's] guilt or innocence of the crime charged."  <u>United States v. Bailleaux</u>, 685 F.2d 1105, 1111 (9th Cir. 1982).  The Instagram statements and direct messages are simply one of the means by which Fernandez and Arao conducted business, thus constituting proof that each in fact engaged in the business of dealing in firearms.

**C.   Arao's Statements in Instagram Records**

Similarly, the government intends to introduce Instagram records for the account "@ronintacticalgroup," which the government will establish was created and used by defendant Arao.  These Instagram

1  records are admissible for the reasons set forth above in Section

2  III.B.  The statements will not be introduced for the truth of the

3  matter asserted, but only to prove that the statement were made

4  (i.e., that Arao repeatedly advertised firearms for sale, often in

5  conjunction with Fernandez).  If this Court were to find that the

6  statements are hearsay, the statements are admissible against Arao as

7  statements of a party-opponent, and against Fernandez as co-

8  conspirator statements.  For example, as described in Overt Act 60 of

9  the First Superseding Indictment, Fernandez commented on the photo of

10 the Colt .38 Super pistol posted to @ronintacticalgroup, stating

11 "this pistoldnis [sic] available here in California!  DM if

12 interested."  Arao's posts to @ronintacticalgroup also show that Arao

13 and Fernandez co-advertised and co-marketed firearms.  Fernandez then

14 used Arao's FFL, Ronin Tactical, to execute many of the charged

15 firearms transactions.  For the reasons set forth above, the

16 Instagram records are not unduly prejudicial but instead constitute

17 proof of that the defendants were engaged in the routine

18 communications necessary to engaging in the business of dealing in

19 firearms.

20     **D.   Fernandez's Statements in E-mail Records**

21     The government intends to introduce e-mail records for the

22 account "La_fusca_1911@hotmail.com," which the government will

23 establish was created and used by defendant Fernandez.  The e-mail

24 records are admissible as business records under Federal Rule of

25 Evidence 803(6) and 902(11), pursuant to the declaration of the

26 custodian of records produced in discovery (USAO_020161).  The

27 statements contained within the e-mail records are also admissible

28 for the reasons set forth above.

The same rationale that applies to the statements in the Instagram records applies to the e-mail records.  The statements will not be introduced for the truth of the matter asserted, but simply to prove that the statements were made (i.e., that Fernandez repeatedly advertised and negotiated the sale of firearms through his e-mail account).  Even if this Court were to find that the statements are hearsay, the statements are admissible against Fernandez as statements of a party-opponent.  The statements are admissible against Arao as co-conspirator statements.  And lastly, for the reasons set forth above, the e-mail records are not unduly prejudicial.

### E.   Fernandez's Statements in Text Messages

The government intends to introduce text message conversations between Fernandez and co-conspirator Camacho Jr., in the form of text messages and WhatsApp messages seized from Camacho Jr.'s phone pursuant to a federal search warrant.  These statements are admissible against Fernandez in the government's case-in-chief as a statement of a party-opponent pursuant to Federal Rule of Evidence 801(d)(2).  Camacho Jr.'s statements are admissible to provide context for Fernandez's statements, and as co-conspirator statements in furtherance of the conspiracy charged in Count Four, pursuant to Federal Rule of Evidence 801(d)(2)(E).  These text message conversations are not admissible against Arao, however, who is not charged in Count Four of the indictment.  The government would therefore request a limiting instruction to that effect at trial.

### F.   Defendants' Recorded Statements to Agents

Fernandez participated in a voluntary audio-recorded interview with the two case agents in his home on September 13, 2017.  Arao

participated in a voluntary interview with the two case agents on
September 25, 2017, which was also audio recorded.  The government
intends to introduce excerpts of the defendants' respective
interviews.

        1.    <u>The Statements Are Admissible Against Each Defendant
           as Statements of a Party-Opponent</u>

      Fernandez's recorded statements to agents are admissible against
Fernandez in the government's case-in-chief as a statement of a
party-opponent pursuant to Federal Rule of Evidence 801(d)(2), but
they are not admissible against Arao.  The government would ask the
Court to give a limiting instruction to this effect.  <u>See</u> <u>Richardson
v. Marsh</u>, 481 U.S. 200, 206-07 (1987); <u>United States v. Sauza-
Martinez</u>, 217 F.3d 754, 760 (9th Cir. 2000).  Similarly, the
government would ask for the same limiting instruction as to Arao's
recorded statements to agents, which are admissible against Arao but
not against Fernandez.

        2.    <u>The Statements Do Not Present a *Bruton* Issue</u>

      In his interview, Fernandez refers to "we" but does not identify
Arao by name.  For example, Fernandez said the following:

- "We, we went – we actually went to the, we went a couple times to the, to the... to the gun show."

- "[W]e had to set up a booth when we did it."  (Exhibit C)

Arao made similar statements, for example:

- "So, I was like, 'Well, maybe that's something where we can make more money instead of doing that's like selling less but making more.'  So, um, we ended up, uh, going to a few gun shows.  And then, it worked out pretty good.  And we're doing, you know, a gun here and a gun there.  But it wasn't uh, I mean, the money, money-wise, it was a lot better than making thirty dollars."

- "We were making three hundred, four hundred dollars depending on if we're able to sell a gun out."

- "Sometimes you get lucky, you know?  You get — we'd be able to get a thousand dollars here or there.  But it wasn't like we were making — it was, it was nothing to where we could retire from.  You know?" (Exhibit D)

These vague references to "we" do not meet the Bruton standard. Bruton only is applicable when the statements are "powerfully incriminating" or have a "devastating" impact.  See, e.g., United States v. Olano, 62 F.3d 1180, 1195-96 (9th Cir. 1995) ("None of the codefendants' statements incriminated Olano on their face.  Unlike the full-blown confession that was the subject of Bruton, the grand jury and deposition testimony of [the co-defendants] that was read to the jury plainly did not have a sufficiently 'devastating' or 'powerful' inculpatory impact to be incriminatory on its face." (quoting United States v. Wright, 742 F.2d 1215, 1223 (9th Cir. 1984)); Wright, 742 F.2d at 1223 (holding that letter did not violate Bruton because it was not "powerfully incriminating"), overruled on other grounds by United States v. Powell, 469 U.S. 57 (1987); United States v. O'Connor, 737 F.2d 814, 820 (9th Cir. 1984) (holding that conversation lacked "'powerfully incriminating' or 'devastating' impact required for a Bruton violation").

Even if defendants were able to identify statements that do implicate Bruton, the statements do not have to be excluded as long as the portions of the statements that implicate the co-defendant are redacted to eliminate any reference - express or implied - to his existence.  See Richardson, 481 U.S. at 211; see also United States v. Hernandez-Orellana, 539 F.3d 994, 1001 (9th Cir. 2008) (government's redaction of references to co-defendant from defendant's statement cured any Sixth Amendment violations and

14

negated need for severing co-defendant's trial from defendant's trial).[9]

## IV.  CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court grant the government's motion in limine to admit these defendant statements.

---

[9] If a defendant testifies, then the purported Bruton issue in this case would disappear because that defendant could be cross-examined regarding any statements he makes while on the stand, particularly if they are inconsistent with prior statements he has made.  See Nelson v. O'Neil, 402 U.S. 622, 629-30 (1971) ("We conclude that where a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth Amendments.").