NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
KATHERINE A. RYKKEN (Cal. Bar No. 267196)
Assistant United States Attorney
Major Frauds Section
VERONICA DRAGALIN (Cal. Bar No. 281370)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
        1500 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-0647
        Facsimile: (213) 894-0141
        E-mail:    katherine.rykken@usdoj.gov
                   veronica.dragalin@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-121(A)-SJO |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | |
| CARLOS MIGUEL FERNANDEZ, and EDWARD YASUHIRO ARAO, | Trial Date: November 12, 2019<br>Trial Time: 9:00 AM<br>Location:   Courtroom of the<br>            Hon. S. James Otero |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Katherine A. Rykken and Veronica Dragalin, hereby files its Trial Memorandum.

///

///

///

1

Leave is respectfully requested to file additional memoranda as may become appropriate during the course of trial.

Dated: November 6, 2019          Respectfully submitted,

                                 NICOLA T. HANNA
                                 United States Attorney

                                 BRANDON D. FOX
                                 Assistant United States Attorney
                                 Chief, Criminal Division


                                  _/s/ Katherine A. Rykken_
                                 KATHERINE A. RYKKEN
                                 VERONICA DRAGALIN
                                 Assistant United States Attorneys

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

I.  **STATUS OF THE CASE**                                                    **1**

    A.   Charges..............................................1

    B.   Trial Status........................................2

    C.   Pretrial Status of Defendants.......................2

    D.   Government's Case-in-Chief..........................2

    E.   Motions in Limine...................................3

    F.   Stipulations........................................5

    G.   Trial Indictment....................................5

II. **THE CRIMES AND THEIR ELEMENTS**                                         **6**

    A.   Conspiracy to Engage in the Business of Dealing in
         Firearms............................................6

    B.   Dealing in Firearms Without a License...............6

    C.   Conspiracy to Dispose of Firearms to a Prohibited
         Person and to Make a False Statement During Purchase
         of a Firearm........................................7

    D.   Disposing of a Firearm to a Prohibited Person.......8

    E.   Aiding and Abetting.................................8

    F.   False Statement in a Federal Firearm Licensee's
         Records.............................................9

III. **STATEMENT OF FACTS AND EVIDENCE**
     10

    A.   Counts Related to Dealing Firearms Without a License11

    B.   Counts Related to the Disposition of a Firearm to a
         Prohibited Person and Straw Purchases for Camacho Jr.12

    C.   Counts Related to the Straw Purchase of a Firearm for
         Pelayo.............................................14

IV. **EVIDENTIARY ISSUES**                                                    **15**

    A.   Authentication and Foundation......................15

    B.   Audio Recordings...................................16

    C.   Transcripts of Recordings..........................17

    D.   Photograph Evidence................................17

i

E.   Hearsay Generally..................................17

F.   Summary Charts & Witnesses.........................18

     1.   Summary Charts................................18

     2.   Summary Witnesses.............................20

G.   Expert Testimony...................................21

     1.   Federal Firearms Requirements.................21

     2.   California Firearms Requirements and
          Classifications...............................22

     3.   Phone Data....................................23

     4.   Analytical Linguist...........................23

     5.   Lay Opinion of Law Enforcement Agents.........23

H.   Cross-Examination of Defendants....................24

I.   Character Evidence.................................27

J.   Reciprocal Discovery...............................29

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

Barsky v. United States,
    339 F.2d 180 (9th Cir. 1964)..................................20

Bryan v. United States,
    524 U.S. 184 (1998).........................................7

Diamond Shamrock Corp. v. Lumbermens Mutual Casualty Co.,
    466 F.2d 722 (7th Cir. 1972)................................20

French v. United States,
    232 F.2d 736 (5th Cir. 1956)................................28

Michelson v. United States,
    335 U.S. 469 (1948).....................................27, 28

United States v. Andersson,
    813 F.2d 1450 (9th Cir. 1987)...............................21

United States v. Antonakeas,
    255 F.3d 714 (9th Cir. 2001)................................26

United States v. Arteaga,
    117 F.3d 388 (9th Cir. 1997)................................18

United States v. Bailleux,
    685 F.2d 1105 (9th Cir. 1982)...............................26

United States v. Beltran-Rios,
    878 F.2d 1208 (9th Cir. 1989)...............................24

United States v. Black,
    767 F.2d 1334 (9th Cir. 1985)...............................24

United States v. Boise,
    916 F.2d 497 (9th Cir. 1990)................................26

United States v. Camejo,
    929 F.2d 610 (9th Cir. 1991)................................27

United States v. Castillo,
    181 F.3d 1129 (9th Cir. 1999)...............................26

United States v. Chu Kong Yin,
    935 F.2d 990 (9th Cir. 1991)................................15

i

United States v. Cuozzo,
    962 F.2d 945 (9th Cir. 1992)................................24

United States v. De Peri,
    778 F.2d 963 (9th Cir. 1985)................................16

United States v. Dhinsa,
    243 F.3d 635 (2d Cir. 2001).................................15

United States v. Echeverry,
    759 F.2d 1451 (9th Cir. 1985)...............................18

United States v. Freeman,
    498 F.3d 893 (9th Cir. 2007)............................16, 24

United States v. Gardner,
    611 F.2d 770 (9th Cir. 1980)................................19

United States v. Gay,
    967 F.2d 322 (9th Cir. 1992)................................25

United States v. Gibson,
    690 F.2d 697 (9th Cir. 1982)................................18

United States v. Hadley,
    918 F.2d 848 (9th Cir. 1990)................................26

United States v. Hedgcorth,
    873 F.2d 1307 (9th Cir. 1989)...............................27

United States v. Henry,
    560 F.2d 963 (9th Cir. 1977)................................28

United States v. Johnson,
    594 F.2d 1253 (9th Cir. 1979)...............................19

United States v. Johnson,
    730 F.2d 683 (11th Cir. 1984)...............................29

United States v. King,
    587 F.2d 956 (9th Cir. 1978)................................16

United States v. King,
    735 F.3d 1098 (9th Cir. 2013)................................7

United States v. Lemire,
    720 F.2d 1327 (D.C. Cir. 1983)..............................21

United States v. May,
    622 F.2d 1000 (9th Cir. 1980)...............................17

United States v. McCollom,
    664 F.2d 56 (5th Cir. 1981)..................................28

United States v. Mehrmanesh,
    682 F.2d 1303 (9th Cir. 1982)...............................25

United States v. Meyers,
    847 F.2d 1408 (9th Cir. 1988)...............................19

United States v. Miranda-Uriarte,
    649 F.2d 1345 (9th Cir. 1981)...............................25

United States v. Oaxaca,
    569 F.2d 518 (9th Cir. 1978)................................17

United States v. Pang,
    362 F.3d 1187 (9th Cir. 2004)...............................15

United States v. Penaflor,
    91 F.3d 157 (9th Cir. 1996).................................25

United States v. Prince,
    647 F.3d 1257 (10th Cir. 2011)..............................10

United States v. Radseck,
    718 F.2d 233 (7th Cir. 1983)................................19

United States v. Reid,
    634 F.2d 469 (9th Cir. 1980)................................25

United States v. Scholl,
    166 F.3d 964 (9th Cir. 1999)................................29

United States v. Shirley,
    884 F.2d 1130 (9th Cir. 1989)...............................20

United States v. Smith,
    591 F.3d 974 (8th Cir. 2010)................................16

United States v. Soulard,
    730 F.2d 1292 (9th Cir. 1984)...............................20

United States v. Stearns,
    550 F.2d 1167 (9th Cir. 1977)...............................17

United States v. Turner,
    528 F.2d 143 (9th Cir. 1975)................................17

United States v. Webster,
    750 F.2d 307 (5th Cir. 1984)................................29

**Statutes**

18 U.S.C. § 371.................................................1

18 U.S.C. § 922(a)(1)(A)........................................1

18 U.S.C. § 922(d)(1)...........................................1

18 U.S.C. § 924(a)(1)(A).....................................2, 10

**Rules**

Fed. R. Evid. 403..............................................26

Fed. R. Evid. 405(a)...........................................28

Fed. R. Evid. 702..............................................21

Fed. R. Evid. 901(a)...........................................15

Fed. R. Evid. 901(b) or 902................................15, 16

Fed. R. Evid. 1006.............................................19

1

**GOVERNMENT'S TRIAL MEMORANDUM**

2 **I.    STATUS OF THE CASE**

3     **A.    Charges**

4     On October 31, 2018, a federal grand jury returned a twelve-
5 count first superseding indictment ("FSI") against Carlos Fernandez
6 ("Fernandez"), Edward Arao ("Arao"), and several other defendants.
7 Counts One through Three charged defendants Fernandez and Arao with
8 conspiracy to engage in the business of dealing in firearms without
9 a license in violation of 18 U.S.C. § 371 (Count One) and related
10 substantive counts.  The substantive counts separately charged
11 Fernandez (Count Two) and Arao (Count Three) with engaging in the
12 business of dealing in firearms without a license, in violation of
13 18 U.S.C. § 922(a)(1)(A).

14     Counts Four through Ten charged Fernandez with a second
15 conspiracy, involving the disposition of firearms to a prohibited
16 person and false statements,[1] and related substantive violations.
17 The conspiracy charges Fernandez along with three other co-
18 defendants, all of whom have entered guilty pleas: Oscar Morales
19 Camacho, Sr. ("Camacho Sr."), Oscar Maravilla Camacho Jr. ("Camacho
20 Jr."), and Rafael Ruben Camacho Maravilla ("Camacho Maravilla").
21 Counts Five through Seven charge Fernandez and his co-conspirators
22 with selling firearms to a felon in violation of 18 U.S.C.
23 § 922(d)(1).  Counts Eight through Ten charge Fernandez with aiding

24

25 _____

26     [1] Count Four alleges three objects of the conspiracy.  The
government intends to present evidence with respect to only the two
27 objects listed here -- disposing of firearms to a prohibited person
and making a false statement -- but does not intend to present
28 evidence related to the object of being a felon in possession of a
firearm or ammunition.

and abetting false statements made by his co-conspirators in connection with the firearms purchases in violation of 18 U.S.C. § 924(a)(1)(A).

Fernandez is charged in Count Eleven with aiding and abetting a false statement by co-defendant Bianca Ibarria ("Ibarria") in connection with firearms purchases on behalf of Adalberto Pelayo ("Pelayo"). Pelayo has entered a guilty plea. Pursuant to a diversion agreement, the government and co-defendant Ibarria will request that Ibarria be severed from the case and continue the trial date for approximately one year.[2]

**B.   Trial Status**

Trial against Fernandez and Arao is set to commence on November 12, 2019. Trial by jury has not been waived.

**C.   Pretrial Status of Defendants**

Fernandez and Arao are on bond pending trial.

**D.   Government's Case-in-Chief**

The estimated time for the presentation of the government's case-in-chief is four days. This includes the estimated time for defendants' cross-examination of the government's witnesses.[3] The government expects to call approximately nine witnesses: (1) case agent Tolliver Hart (ATF); (2) federal firearms expert David Hamilton (ATF); (3) California firearms expert Blake Graham

---

[2] Neither Fernandez nor Arao are charged in Count Twelve of the FSI.

[3] Counsel for defendant Fernandez informed the government that he expects cross-examination may extend the trial to as long as 9-11 days. The government does not believe this estimate is reasonable given the government's anticipated presentation of the evidence and number of witnesses.

1   (California DOJ); (4) Rafael Ruben Camacho Maravilla (co-defendant);

2   (5) Raul Cervantes-Corona (co-defendant); (6) Bianca Ibarria (co-

3   defendant); (7) Adalberto Pelayo (co-defendant); (8) Mario Ramirez

4   (co-defendant); and (9) case agent Kyle Duncan (ATF).  Absent

5   stipulations to the admissibility of certain exhibits, the

6   government reserves the right to call additional witnesses as needed

7   to establish chain of custody and authenticity of government

8   exhibits.

9        The government intends to bifurcate SA Hart's testimony in two

10  phases to avoid any jury confusion with respect to evidence

11  admissible against Fernandez, but not Arao.  The government will

12  first call SA Hart to discuss evidence pertaining to Counts One,

13  Two, and Three of the indictment, namely, evidence regarding

14  conspiracy to deal in firearms without a license and related

15  substantive counts.  Later in the trial, the government will re-call

16  SA Hart to testify regarding Counts Four through Ten which charge a

17  separate conspiracy and substantive counts in which Arao is not

18  charged.  Bifurcating SA Hart's testimony into two phases (separated

19  by other witnesses in-between) will ensure that there is no jury

20  confusion regarding evidence pertaining only to certain counts.  If

21  SA Hart is instead required to testify about both topics

22  continuously, defense counsel will be free to cross-examine SA Hart

23  on both topics, potentially commingling issues and evidence.

24       **E.   Motions in Limine**

25       The government has filed two motions in limine to admit

26  defendants' statements (Dkt. 185) and to admit firearms records

27  (Dkt. 186).  The government seeks to introduce five types of

28

3

statements by defendants Fernandez and Arao: (1) Fernandez's statements in Instagram records; (2) Arao's statements in Instagram records; (3) Fernandez's statements in his own e-mail records; (4) Fernandez's statements in text messages; and (5) Fernandez and Arao's recorded statements to agents in voluntary interviews. Defendant Arao filed an opposition to some of the statements the government seeks to admit, challenging the admissibility of Fernandez's statements in Instagram and e-mail records as inadmissible co-conspirator statements against Arao. (Dkt. 195.) Arao also objects to the admission of excerpts of his own interview with the ATF and instead requests the Court admit the entirety of Arao's interview. (Id.) Fernandez has not filed oppositions to the government's motion in limine regarding statements.

The government's motion in limine to admit firearms records seeks to introduce the following categories of firearms records: (1) Automated Firearms System ("AFS") records maintained by the California Department of Justice; (2) dealer records of firearms sales, including Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") Form 4473 and Ronin Tactical Group's Acquisition and Disposition log, both of which are required to be maintained by an FFL. Neither defendant has opposed the government's motion in limine to admit firearms records.

Arao filed a motion in limine to limit/exclude certain expert testimony noticed by the government. (Dkt. 192.) The government has filed a non-opposition to this motion based upon discussions with defense counsel. Defendant's motion accurately describes the agreement of the parties with respect to the noticed expert

4

testimony.  The government does not believe that Arao currently

objects to the expert testimony the government intends to offer.

Defendant Fernandez has not filed any motions in limine.

Fernandez has raised no objection to any expert testimony noticed by

the government.

The Court has not yet ruled on any of the motions in limine.

**F.    Stipulations**

The parties are currently negotiating stipulations regarding

the authenticity and/or admissibility of certain documentary,

photographic, and audio evidence, including the authenticity and

admissibility of various documents that have been translated from

Spanish into English, and documents with 902(11) certifications

and/or that were obtained through public records maintained or

required to have been maintained by state or federal laws.

**G.    Trial Indictment**

The government and defense counsel will confer to propose a

trial indictment to be provided to the jury.

**H.    Forfeiture Allegation**

The FSI also includes a forfeiture allegation providing notice

to defendants Fernandez and Arao that, if convicted, the government

will seek forfeiture of any firearms or ammunition used in the

offense.  (See FSI at 40-41, Forfeiture Allegation.)  During the

search of Fernandez's home, the ATF seized approximately 44 firearms

and thousands of rounds of ammunition.  If Fernandez is convicted,

the government will ask the Court to conduct a forfeiture proceeding

for these items.  The government has informed defense counsel for

Fernandez of this process.  Defendant Fernandez has not yet informed

the government whether he wishes any forfeiture proceeding to be decided by a jury or the Court.  The government does not anticipate a forfeiture proceeding to take place for defendant Arao.

## II.  THE CRIMES AND THEIR ELEMENTS

### A.  Conspiracy to Engage in the Business of Dealing in Firearms

Fernandez and Arao are charged in Count One with conspiring to engage in the business of dealing in firearms without a license, in violation of Section 371 of Title 18 of the United States Code.  In order for a defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning on or about July 10, 2015, and ending on or about July 26, 2017, there was an agreement between two or more persons to engage in the business of dealing in firearms without a license, as charged in the indictment;

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

Ninth Circuit Model Criminal Jury Instruction No. 8.20 [Conspiracy - Elements] (modified to reflect indictment).

### B.  Dealing in Firearms Without a License

Fernandez and Arao are individually charged in Counts Two and Three, respectively, with a substantive count of dealing in firearms without a license, in violation of Section 922(a)(1) of Title 18 of the United States Code.  In order for a defendant to be found guilty

of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, the defendant was willfully engaged in the business of dealing in firearms within the dates specified in the indictment; and

Second, the defendant did not then have a license as a firearms dealer.

Willfully, as used in this statute, requires proof that the defendant knew that his conduct was unlawful, but does not require proof that the defendant knew of the federal licensing requirement. Ninth Circuit Model Criminal Jury Instruction No. 8.53 [Firearms - Dealing, Importing, or Manufacturing Without License] (modified to reflect indictment); <u>United States v. King</u>, 735 F.3d 1098, 1107 n.8 (9th Cir. 2013); <u>Bryan v. United States</u>, 524 U.S. 184, 198-99 (1998).

### C. Conspiracy to Dispose of Firearms to a Prohibited Person and to Make a False Statement During Purchase of a Firearm

Fernandez, along with co-defendants Camacho Sr., Camacho Jr., and Camacho Maravilla (all of whom have pled guilty), is charged in Count Four with conspiring to dispose of firearms to a prohibited person and making a false statement during the purchase of a firearm, in violation of Section 371 of Title 18 of the United States Code. In order for defendant Fernandez to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, beginning on or about May 29, 2016 and ending on or about December 27, 2017, there was an agreement between two or more persons to dispose of a firearm to a prohibited person or to make a

7

1  false statement in a federal firearm licensee's records during the

2  purchase of a firearm, as charged in the indictment;

3  　　　　Second, the defendant became a member of the conspiracy knowing

4  of at least one of its objects and intending to help accomplish it;

5  and

6  　　　　Third, one of the members of the conspiracy performed at least

7  one overt act for the purpose of carrying out the conspiracy.

8  Ninth Circuit Model Criminal Jury Instruction No. 8.20

9  [Conspiracy - Elements] (modified to reflect indictment).

10  　　　　**D.　　Disposing of a Firearm to a Prohibited Person**

11  　　　　Fernandez is charged in Counts Five through Seven with selling

12  or otherwise disposing of a firearm to a prohibited person in

13  violation of Section 922(d)(1) of Title 18 of the United States

14  Code.  In order for Fernandez to be found guilty of that charge, the

15  government must prove each of the following elements beyond a

16  reasonable doubt:

17  　　　　First, the defendant knowingly disposed of a firearm to co-

18  defendant Oscar Maravilla Camacho Jr.; and

19  　　　　Second, the defendant knew or had reasonable cause to believe

20  that Oscar Maravilla Camacho Jr. was a convicted felon, meaning,

21  that he had been convicted in any court of a crime punishable by

22  imprisonment for a term exceeding one year.

23  Ninth Circuit Model Criminal Jury Instruction No. 8.61 [Firearms-

24  Unlawful Sale] (modified to reflect FSI).

25  　　　　**E.　　Aiding and Abetting**

26  　　　　Fernandez is charged with aiding and abetting co-defendants to

27  make a false statement in a federal firearm licensee's records in

28

violation of Sections 2 and 924(a)(1)(A) of Title 18 of the United States Code (Counts Eight through Eleven).  In order for defendant Fernandez to be found guilty of a charge based on aiding and abetting, the government must prove each of the following elements beyond a reasonable doubt:

First, the charged crime was committed by someone;

Second, defendant aided, counseled, commanded, induced or procured that person with respect to at least one element of the crime charged;

Third, defendant acted with the intent to facilitate the crime charged; and

Fourth, defendant acted before the crime was completed. Ninth Circuit Model Criminal Jury Instruction No.5.1 [Aiding and Abetting].

**F.   False Statement in a Federal Firearm Licensee's Records**

Fernandez is charged in Counts Eight through Eleven with aiding and abetting a false statement in a federal firearm licensee's records in violation of Section 924(a)(1)(A) of Title 18 of the United States Code.  In order for Fernandez to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:

First, a person knowingly made a false statement or representation;

Second, the statement was made in the records a licensed firearm dealer was required to maintain;

Third, the dealer was a federally licensed firearms dealer at the time the statement was made; and

1    Fourth, the person made the statement with knowledge of its

2    falsity.

3    18 U.S.C. § 924(a)(1)(A); United States v. Prince, 647 F.3d 1257,

4    1268 (10th Cir. 2011).

5    **III. STATEMENT OF FACTS AND EVIDENCE**

6         The government expects that the evidence at trial will

7    establish, among others, the following facts.

8         Fernandez and Arao were law enforcement officers with the

9    Gardena Police Department.  Arao was the CEO of a corporation, Ronin

10   Tactical Group, which had a federal license to deal in firearms.

11   Arao did not have a license to deal in firearms in his individual

12   capacity.  Fernandez did not have a federal license to deal in

13   firearms at any time.

14        From the summer of 2015 through the summer of 2017, Fernandez

15   and Arao worked in concert to purchase and sell approximately 87

16   firearms, using their status as police officers to facilitate the

17   purchase and sale of rare and valuable firearms.  Fernandez

18   advertised and sold firearms through his own Instagram account,

19   @the38superman, with sales often finalized through Ronin Tactical,

20   the FFL managed by Arao.  Similarly, Arao purchased firearms for

21   himself through Ronin Tactical and then resold them to private

22   individuals,[4] sometimes advertising them on @the38superman.

23   Fernandez and Arao appeared at gun shows together, marketing Ronin

24   _____

25        [4] The indictment charges Arao for his sale of firearms in his
26   individual capacity.  Because FFL's were prohibited from selling
     off-Roster firearms to the general public in California, Arao could
27   not sell these firearms directly from his licensed business to
     customers.  Instead, Arao transferred firearms from his business to
28   himself, as a law enforcement officer exempt from the California
     restriction.  He then resold the firearms in private transfers.

Tactical and @the38superman as business partners.  For this conduct,
Fernandez and Arao are charged in Counts One through Three with
conspiring to engage in and engaging in the business of dealing
firearms without a license.

From May 2016 through December 2017, Fernandez negotiated and
arranged the sale of ten firearms to Camacho Jr., who was a
convicted felon at the time, through Camacho Sr. and Camacho
Maravilla.  With respect to every sale, Fernandez communicated
directly with Camacho Jr. about the purchase of the firearms,
understood that Camacho Jr. could not legally purchase the firearms,
and nevertheless transferred the firearms to either Camacho Sr. or
Camacho Maravilla for Camacho Jr.'s use and possession.  This
conduct is charged in the conspiracy alleged in Count Four, while
three of the specific firearms sold form the basis for Counts Five
through Seven, which charge disposing of a firearm to a felon, and
Eight through Ten, which charge false statements in connection with
those sales.

On July 24, 2016, Fernandez sold two guns to Ibarria, one of
which Fernandez knew was for Pelayo.  Fernandez communicated solely
with Pelayo, received payment from Pelayo, and encouraged Pelayo to
have Ibarria complete the transfer of the firearms because Pelayo
was prohibited from purchasing the firearm.

To prove the above-described conduct, the government expects to
introduce at least the following evidence.

**A.   Counts Related to Dealing Firearms Without a License**

With respect to Counts One through Three, the charges against
Fernandez and Arao alleging that they engaged in the unlicensed

business of dealing in firearms, the government will introduce the following:

- Evidence that the charged transactions took place, i.e., AFS and Form 4473 records for the 87 guns sold that are charged in the conspiracy.  Similarly, these records support the 46 firearms charged against Fernandez in Count Two and the 41 firearms that are charged against Arao in Count Three.   The firearms records will also include various summary charts.

- Evidence of the federal firearms licensee status of the defendants, Ronin Tactical, and the other FFLs used during the course of the conspiracy.

- Evidence of the cost and pricing of the firearms sold, to demonstrate that defendants made a profit from their repeated sales of firearms.

- Evidence that is probative of the business nature of the gun sales including Instagram and e-mail records, bank records, and witness testimony.

- Evidence of Fernandez and Arao's knowledge of the law, including Instagram and e-mail records, excerpts of interviews with law enforcement, and personnel records from the Gardena Police Department.

**B.   Counts Related to the Disposition of a Firearm to a Prohibited Person and Straw Purchases for Camacho Jr.**

With respect to Counts Four through Ten, the charges involving the disposition of firearms to Camacho Jr., a prohibited person, and straw purchases for Camacho Jr., the government will introduce the following general types of evidence:

- Evidence that the charged transactions took place, i.e., Form 4473 records for the ten guns sold to the Camacho family, through either Camacho Sr. or Camacho Maravilla, including a summary chart of the ten firearms charged in the conspiracy count.

- Evidence that Camacho Jr. had a prior felony conviction barring him from purchasing or possessing a firearm.

- Evidence that the firearms Fernandez sold to Camacho Sr. and Camacho Maravilla were disposed of to Camacho Jr., including testimony from agents that the guns were found at a search pursuant to a federal search warrant. During the search, agents found Camacho Jr. in the residence, along with identifiers such as his passport and mail addressed to him. In addition to recovering ten firearms, nine of which were purchased through Fernandez, agents found evidence of drug trafficking throughout the house, including methamphetamine, cocaine, heroin, digital scales, and over $12,000 in cash. At the time of the search, the registered owners of the guns, Camacho Sr. and Camacho Maravilla, were not in the home. The firearms, along with ammunition, were not locked, but were instead available and accessible to Camacho Jr. In addition, the government will introduce photographs and videos seized from Camacho Jr.'s phone pursuant to a federal search warrant, showing the firearms purchased through Fernandez, including photographs of Camacho Jr. holding the firearms.

- Evidence that Fernandez knew the firearms were being purchased for Camacho Jr. and not for Camacho Sr. or Maravilla Camacho, including communications between Fernandez and Camacho Jr. acknowledging that the firearms were for Camacho Jr., the absence of

communications between Fernandez and Camacho Jr.'s relatives, witness testimony, and Instagram records acknowledging that Camacho Jr. purchased the firearms.

- Evidence that Fernandez had reasonable cause to believe Camacho Jr. was prohibited from purchasing a gun, including communications between Fernandez and Camacho Jr. regarding the need for family members to complete the paperwork, the circumstances of selling ten total firearms to Camacho Jr. and always requiring a family member to complete the paperwork, statements by Fernandez to Camacho Jr. showing the closeness of their relationship and a disrespect for law enforcement on the part of Fernandez. As a police officer, Fernandez at the very least had reasonable cause to believe that Camacho Jr. was prohibited from purchasing or possessing firearms based on the totality of the circumstances.

## C. Counts Related to the Straw Purchase of a Firearm for Pelayo

With respect to Count Eleven, the charge against Fernandez, alleging that he aided and abetted a straw purchase of a firearm to Pelayo, the government will introduce the following general types of evidence:

- Evidence that the charged transaction took place, i.e., the Form 4473 record for the gun.

- Evidence that Pelayo was prohibited from purchasing a firearm at the time.

- Evidence that the firearm was disposed of to Pelayo, including Instagram records, physical evidence and photos of the gun, along with witness testimony.

14

- • Evidence that Fernandez knew the gun was being purchased for Pelayo and not for Ibarria, including Instagram records, bank records, and witness testimony.

## IV.   EVIDENTIARY ISSUES

### A.   Authentication and Foundation

Rule 901(a) simply requires that a proponent of evidence make a prima facie showing of authenticity so that a reasonable juror could find "that the item is what the proponent claims it is." Fed. R. Evid. 901(a).  This requirement "does not erect a particularly high hurdle, and the proponent of the evidence is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be." United States v. Dhinsa, 243 F.3d 635, 658–59 (2d Cir. 2001) (citations omitted).  The proponent of evidence need not establish a proper foundation through personal knowledge; a proper foundation "can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902." See United States v. Pang, 362 F.3d 1187, 1193 (9th Cir. 2004).  The government need make only a prima facie showing of authenticity.  See United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991).

The government anticipates that the parties will enter into a stipulation regarding the foundation and authenticity of many of the firearms records, summaries thereof, translations, at least some of the Instagram and email records in this case, and much of the expert testimony noticed by the government.

1
    **B.   Audio Recordings**

2
    The government will introduce two audio recordings, one each

3
for the ATF interviews of Fernandez and Arao.  A recording is

4
admissible upon a showing that it is "accurate, authentic, and

5
generally trustworthy."  United States v. King, 587 F.2d 956, 961

6
(9th Cir. 1978).  For example, testimony that a recording depicts

7
evidence that the witness observed is sufficient to authenticate the

8
recording.  Fed. R. Evid. 901(b); United States v. Smith, 591 F.3d

9
974, 979-80 (8th Cir. 2010).  The government anticipates that

10
defendants will stipulate to foundation and authenticity as to the

11
recordings.  But even if not, here, agents have knowledge of how the

12
recordings were made.  In addition, agents observed the events in

13
real-time while the recordings were made and have familiarity with

14
the individuals interviewed and their voices.  They are therefore

15
qualified to testify about who can be seen and heard in the

16
recordings.  A lay witness, including a participant in a recorded

17
conversation, may give opinion testimony on the meaning of otherwise

18
vague or ambiguous statements made in the recordings.  See United

19
States v. Freeman, 498 F.3d 893, 902 (9th Cir. 2007) ("A lay witness

20
may provide opinion testimony regarding the meaning of vague or

21
ambiguous statements [in recorded conversations]"); United States v.

22
De Peri, 778 F.2d 963, 977-78 (9th Cir. 1985).

23
    On October 22, 2019, the government provided notice to

24
defendants of what portions of the recordings it intends to admit at

25
trial.  To date, only defendant Arao has objected based on the rule

26
of completeness in his opposition to the government's motion in

27
limine. (Dkt. 195.)

28

16

### C.   Transcripts of Recordings

The government has prepared written transcripts of audio recordings as an aid to the jury in listening to recordings.  <u>See United States v. Turner</u>, 528 F.2d 143, 167 (9th Cir. 1975) (permitting the transcripts of sound recordings to be used contemporaneously with the introduction of the recordings into evidence).  Copies of the government's transcripts have been provided to the defense and are available, should the Court desire them in advance of trial.  The transcripts will be displayed on a screen simultaneous to the playing of the audio files, and will be provided to the jury in binders, but the transcripts will not be admitted into evidence.

### D.   Photograph Evidence

The government intends to introduce a number of photographs, including photographs of various firearms that were taken during the execution of several search warrants.  Photographs are generally admissible as evidence.  <u>See</u> <u>United States v. Stearns</u>, 550 F.2d 1167, 1171 (9th Cir. 1977) (photographs of crime scene admissible).  Photographs should be admitted so long as they fairly and accurately represent the event or object in question.  <u>United States v. Oaxaca</u>, 569 F.2d 518, 525 (9th Cir. 1978).  The Ninth Circuit has held that "[p]hotographs are admissible as substantive as well as illustrative evidence."  <u>United States v. May</u>, 622 F.2d 1000, 1007 (9th Cir. 1980).

### E.   Hearsay Generally

As discussed at length in the government motion <u>in</u> <u>limine</u> to admit defendants' statements (Dkt. 185), the government intends to

admit several out-of-court statements in various forms not for the truth of the matter asserted, but to establish the fact that the statements were made and for the effect on the hearer.  This includes, for example, the various Instagram and email records from the defendants.  Federal Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Testimony that is not offered for the truth of the matter asserted, but for another purpose, is not hearsay. See e.g., United States v. Gibson, 690 F.2d 697, 700 (9th Cir. 1982) (statements admissible because offered to establish fact they were made and not for truth of matter asserted); United States v. Arteaga, 117 F.3d 388, 396 (9th Cir. 1997) (statements offered for "effect on hearer" are offered for a non-truth-related purpose and are admissible non-hearsay statements); United States v. Echeverry, 759 F.2d 1451, 1456 (9th Cir. 1985) (statements offered not for truth of matter asserted but as necessary background information admissible as non-hearsay).

**F.   Summary Charts & Witnesses**

      1.   Summary Charts

As discussed at length in the government's motion to admit summaries of various firearms records that reflect the transactions at issue here, the underlying records are admissible as public records or business records with a custodian declaration of authenticity.  (Dkt. 186.)  In addition, the government intends to admit as summary charts toll records, text messages, and Instagram direct message conversations from Fernandez's @the38superman

account.  The underlying records are admissible as business records
and can be authenticated with the Rule 902(11) custodian declaration
from At&T and Instagram.  Because those records are thousands of
pages, the government will not seek to admit the full toll records,
phone records, or Instagram business records, but summary charts
thereof.

Under Federal Rules of Evidence 1006 and 611(a), courts
routinely admit into evidence summary charts that organize
voluminous evidence and aid the jury's understanding as long as
their underlying evidence is admissible, made available to the
adverse party, and a witness with knowledge of their preparation is
available for cross-examination.  See United States v. Gardner, 611
F.2d 770, 776 (9th Cir. 1980).

A chart or summary may be admitted as evidence where the
proponent establishes that the underlying documents are voluminous,
admissible and available for inspection.  See United States v.
Meyers, 847 F.2d 1408, 1411-12 (9th Cir. 1988); United States v.
Johnson, 594 F.2d 1253, 1255-57 (9th Cir. 1979).  While the
underlying documents must be admissible, they need not be admitted.
See Meyers, 847 F.2d at 1412; Johnson, 594 F.2d at 1257 n.6.
Summary charts need not contain the defendant's version of the
evidence and may be given to the jury while a government witness
testifies about them.  See United States v. Radseck, 718 F.2d 233,
239 (7th Cir. 1983); Barsky v. United States, 339 F.2d 180, 181 (9th
Cir. 1964).

1

       2.   <u>Summary Witnesses</u>

2        Special Agent Hart will testify regarding the charts that

3  summarize the voluminous firearms records, the toll records, the

4  text messages between defendant and Camacho Jr., and the direct

5  message conversations from Fernandez's @the38superman Instagram

6  account.  SA Hart's analysis and summary charts rely on his own

7  analysis and preparation of the summary charts, as well as summary

8  charts prepared by SA Kyle Duncan and translations completed by an

9  analytical linguist.  A summary witness may rely on the analysis of

10  others where the summary witness has sufficient experience to judge

11  another person's work and incorporate as his own the fact of its

12  expertise.  The use of other persons in the preparation of summary

13  evidence goes to its weight, not its admissibility.  <u>See</u> <u>United</u>

14  <u>States v. Soulard</u>, 730 F.2d 1292, 1299 (9th Cir. 1984); <u>Diamond</u>

15  <u>Shamrock Corp. v. Lumbermens Mutual Casualty Co.</u>, 466 F.2d 722, 727

16  (7th Cir. 1972) ("It is not necessary . . . that every person who

17  assisted in the preparation of the original records or the summaries

18  be brought to the witness stand.").

19        Moreover, a summary witness may properly testify about, and use

20  a chart to summarize, evidence that has already been admitted.  The

21  Court and jury are entitled to have a witness "organize and evaluate

22  evidence which is factually complex and fragmentally revealed."

23  <u>United States v. Shirley</u>, 884 F.2d 1130, 1133-34 (9th Cir. 1989)

24  (DEA agent's testimony regarding her review of various telephone

25  records, rental receipts, and other previously offered testimony

26  held to be proper summary evidence, as it helped jury organize and

27

28

evaluate evidence; summary charts properly admitted); <u>United States</u> <u>v. Lemire</u>, 720 F.2d 1327, 1348 (D.C. Cir. 1983).

### G. Expert Testimony

The government has provided disclosure to defendants concerning various areas of expert testimony under Rule 16(a)(1)(E): (1) federal firearms requirements; (2) California firearms requirements and classifications; (3) phone data; and (6) analytical linguistics for Spanish to English translations. If specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. The Court has broad discretion to determine whether to admit expert testimony. <u>United States v. Andersson</u>, 813 F.2d 1450, 1458 (9th Cir. 1987).

As noted above, Arao filed a motion <u>in</u> <u>limine</u> to limit/exclude certain expert testimony noticed by the government. (Dkt. 192.) This motion accurately describes the agreement of the parties with respect to the noticed expert testimony. The government does not believe that Arao currently objects to the expert testimony the government intends to offer.

Fernandez has raised no objection to any expert testimony noticed by the government.

### 1. Federal Firearms Requirements

The government intends to elicit expert testimony from ATF Senior SA Hamilton regarding the licensing requirements for dealing in firearms and the records kept by federal and state authorities concerning the sale and registration of the firearms involved in

1   this investigation.  SA Hamilton will also testify about the nature

2   and characteristics of the firearms and ammunition that were

3   involved in this case.  He will testify about the market prices of

4   the firearms involved in this investigation, including in secondary

5   markets and in California compared to other states.  He will testify

6   about the on- or off-Roster nature of the firearms charged in the

7   indictment and the fact that FFL's may not sell off-Roster firearms

8   to the general public, and will provide a general description and

9   explanation of the makes and models of the charged firearms.

10  Although SA Hamilton has expert knowledge about the significance of

11  .38 Super firearms and their popularity in Mexican culture, the

12  government does not anticipate eliciting this testimony in its case-

13  in-chief.  Lastly, SA Hamilton will not opine about what constitutes

14  dealing in firearms or engaging in the business of dealing in

15  firearms.

16          2.   California Firearms Requirements and Classifications

17       The government intends to elicit expert testimony from Blake

18  Graham, an expert in California's firearms requirements and

19  classifications.  The government expects that Mr. Graham will

20  testify about California laws and regulations about firearms,

21  particularly, California's classification of on-roster and off-

22  roster firearms.  Mr. Graham will testify about the restrictions on

23  the sale of off-roster firearms, as well as the exceptions to those

24  restrictions as they apply to law enforcement officers.  Mr. Graham

25  may also testify about the market prices of off-roster firearms in

26  California.

27

28

1             3.   <u>Phone Data</u>

2       Absent a stipulation, the government intends to call Greg Estes

3 from the Orange County Regional Computer Forensics Laboratory to

4 testify about the method for extracting and interpreting cellular

5 phone data and telephone records including the following: (1) the

6 procedures followed in extracting data from two mobile phones seized

7 from Camacho Jr. during the course of this investigation; and (2)

8 interpretation of cellular telephone data and records received from

9 telephone companies, including explanations of device identifiers,

10 call origination and termination, direction and duration of call,

11 cellular towers and sectors, network elements, and Global

12 Positioning System ("GPS") coordinates of particular towers.

13             4.   <u>Analytical Linguist</u>

14       Absent a stipulation, the government also intends to call an

15 analytical linguist to testify about the translation of Spanish-

16 language text messages, Instagram post and messages, and e-mails.

17 Specifically, the analytical linguist will testify that the final

18 English translations and transcripts (produced to the defense and

19 used at trial) are true and accurate translations.

20             5.   <u>Lay Opinion of Law Enforcement Agents</u>

21       The government may elicit lay opinion testimony by law

22 enforcement agents, primarily through the case agent SA Tolliver

23 Hart.  For example, SA Hart will testify about Instagram and e-mail

24 records, many of which contain shorthand related to firearms sales.

25 For example, "PPT" means "private party transfer," "DROS" means

26 "dealer record of sale," and "nib" means "new in box."  Some of

27

28

1  these may be covered by expert SA David Hamilton but will also be

2  relevant during the testimony of SA Hart.

3       Under Ninth Circuit law, opinion testimony by law enforcement

4  officers is not necessarily expert testimony within the meaning of

5  Rule 16(a)(1)(G).  An officer's interpretation of intercepted calls

6  or code words, for example, is admissible lay opinion because it is

7  based on the officer's "direct knowledge of the investigation."  See

8  United States v. Freeman, 498 F.3d 893, 904-05 (9th Cir. 2007).

9  Once the government has established a foundation for the evidence,

10 "opinion testimony regarding the meaning of statements" is

11 admissible.  Id.  Moreover, an experienced agent's opinion testimony

12 may be based in part on information from other agents familiar with

13 the issue.  United States v. Beltran-Rios, 878 F.2d 1208, 1213 n.3

14 (9th Cir. 1989).  Here, the evidence merely contains the acronyms

15 and shorthand used by those buying and selling firearms in

16 California.  SA Hart is familiar with those acronyms and shorthand

17 based on his experience with this investigation.  Therefore, law

18 enforcement opinion testimony should be admitted here.

19      **H.   Cross-Examination of Defendants**

20           1.   Scope of Cross-Examination

21      A defendant who testifies at trial waives his right against

22 self-incrimination and subjects himself to cross-examination

23 concerning all matters reasonably related to the subject matter of

24 his testimony.  The scope of defendant's waiver is coextensive with

25 the scope of relevant cross-examination.  United States v. Cuozzo,

26 962 F.2d 945, 948 (9th Cir. 1992); United States v. Black, 767 F.2d

27 1334, 1341 (9th Cir. 1985) ("What the defendant actually discusses

28

on direct does not determine the extent of permissible cross-examination or his waiver.  Rather, the inquiry is whether 'the government's questions are reasonably related' to the subjects covered by the defendant's testimony.") (internal quotations and citation omitted).  Defendant has no right to avoid cross-examination on matters that call into question his claim of innocence.  United States v. Mehrmanesh, 682 F.2d 1303, 1310 (9th Cir. 1982), overruled on other grounds by United States v. Palafox, 764 F.2d 558, 563 (9th Cir. 1985); United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981).

                    2.   Other Act Evidence

     Defendant's credibility will be crucial if either defendant chooses to testify.  Rule 404(b) does not proscribe the use of other act evidence as an impeachment tool during cross-examination. United States v. Gay, 967 F.2d 322 (9th Cir. 1992).  Accordingly, cross-examination about other possible untruthful conduct in which defendant may have engaged is necessary for the jury to weigh whether his testimony is credible.  As the Ninth Circuit has held, Rule 608(b): "specifically contemplates inquiries into prior behavior in order to challenge a witness's credibility.  Evidence of prior frauds is considered probative of the witness's character for truthfulness or untruthfulness."  Id. at 328; see also United States v. Reid, 634 F.2d 469, 474 (9th Cir. 1980) ("The fact that appellant made the false statements [in a letter] eight years prior to trial did not destroy the relevance of the statements for impeachment purposes."); United States v. Penaflor, 91 F.3d 157 (9th Cir. 1996) ("As Penaflor's credibility was at issue, proof that she had

                              25

1   previously made false statements (including on her tax returns,
2   under the penalty of perjury) was relevant and not unduly
3   prejudicial.").

4        Moreover, the prejudicial effect of such evidence, if any, can
5   be addressed by a limiting instruction. United States v. Hadley,
6   918 F.2d 848, 852 (9th Cir. 1990).  It is well-settled that the fact
7   that the admission of such evidence might harm the defendant's case
8   does not constitute unfair prejudice.  United States v. Bailleux,
9   685 F.2d 1105, 1111 (9th Cir. 1982).  Unfair prejudice "means an
10  undue tendency to suggest decision on an improper basis, commonly,
11  though not necessarily, an emotional one."  Fed. R. Evid. 403,
12  Advisory Comm. nn.  Thus, admission of evidence regarding the
13  defendant's other bad acts might constitute unfair prejudice if the
14  jury in this case considered the evidence to establish defendant's
15  propensity to commit the charged crime.  However, this potential
16  unfair prejudice can be cured by a limiting instruction that the
17  jury should consider the evidence only for the purpose for which it
18  is introduced.  Hadley, 918 F.2d at 852; United States v. Boise, 916
19  F.2d 497, 501 (9th Cir. 1990).

20              3.   Impeachment by Contradiction
21       Under Federal Rule of Evidence 607, the government may offer
22  extrinsic evidence to prove that specific testimony is false:
23  "[D]irect-examination testimony containing a broad disclaimer of
24  misconduct sometimes can open the door for extrinsic evidence to
25  contradict even though the contradictory evidence is otherwise
26  inadmissible under Rules 404 and 608(b)."  United States v.
27  Castillo, 181 F.3d 1129, 1131-32 (9th Cir. 1999); see also United
28

1   States v. Antonakeas, 255 F.3d 714, 724 (9th Cir. 2001) ("Federal

2   Rule of Evidence 607 allows the admission of extrinsic evidence to

3   impeach specific errors or falsehoods in a witness's testimony on

4   direct examination.").

5      **I.   Character Evidence**

6      The Supreme Court has recognized that character evidence –

7   particularly cumulative character evidence – has weak probative

8   value and great potential to confuse the issues and prejudice the

9   complaining party.  See Michelson v. United States, 335 U.S. 469,

10  480, 486 (1948).  The Supreme Court has thus given trial courts wide

11  discretion to limit the presentation of character evidence.  Id.

12      In addition, the form of the proffered evidence must be proper.

13  Federal Rule of Evidence 405(a) sets forth the sole methods for

14  which character evidence may be introduced.  It specifically states

15  that where evidence of a character trait is admissible, proof may be

16  made in two ways: (1) by testimony as to reputation and (2) by

17  testimony as to opinion.  Thus, defendant may not introduce specific

18  instances of his good conduct through the testimony of others.  See

19  id. at 477 ("The witness may not testify about defendant's specific

20  acts or courses of conduct or his possession of a particular

21  disposition or of benign mental or moral traits."); see also United

22  States v. Camejo, 929 F.2d 610, 613 (9th Cir. 1991) (evidence of

23  specific instances is not admissible to prove the defendant's good

24  character); United States v. Hedgcorth, 873 F.2d 1307, 1313 (9th

25  Cir. 1989) (testimony of defendant regarding his role as government

26  intelligence operative, offered to show that he was "patriotic,"

27  "pro-government" individual unlikely to engage in acts of terrorism

28

and to prove his lawful character was properly excluded as an
attempt to prove character by specific instances of conduct); French
v. United States, 232 F.2d 736 (5th Cir. 1956) (it is not
permissible to show good character of the defendant by evidence of
particular and specific facts as, for example, battle citations).

On cross-examination of a defendant's character witness,
however, the government may inquire into specific instances of a
defendant's past conduct relevant to the character trait at issue.
See Fed. R. Evid. 405(a).  In particular, a defendant's character
witnesses may be cross-examined about their knowledge of the
defendant's wrongful acts.  See Michelson, 335 U.S. at 481.  The
only prerequisite is that there must be a good faith basis that the
incidents inquired about are relevant to the character trait at
issue.  See United States v. McCollum, 664 F.2d 56, 58 (5th Cir.
1981).

Here, Fernandez and Arao can sufficiently establish the opinion
that his family members or friends may hold of his pertinent
character traits through one or two witnesses.  The Court should
not, however, permit either defendant to turn this trial into a
parade of character witnesses, who will appear before the jury to
present the same, cumulative testimony.  To the extent defendants'
character witnesses become cumulative, the government will request
that the Court limit such testimony and witnesses, so as to avoid
barraging the jury with any cumulative or repetitive testimony that
ultimately has limited probative value.  United States v. Henry, 560
F.2d 963, 966 (9th Cir. 1977) (no abuse of discretion where trial
court limited defendant to two character witnesses, rather than the

four defendant requested); <u>United States v. Scholl</u>, 166 F.3d 964, 972 (9th Cir. 1999) (trial court did not abuse its discretion in limiting the defendant "to three character witnesses in his case-in-chief on the footing that more would be cumulative"); <u>United States v. Webster</u>, 750 F.2d 307, 330 (5th Cir. 1984) (finding no abuse of discretion where trial court limited number of cumulative character witnesses by the defense); <u>United States v. Johnson</u>, 730 F.2d 683, 688 (11th Cir. 1984) (same).

### J.   Reciprocal Discovery

The government has requested reciprocal discovery, Jencks material, and expert disclosures from defendants.  In spite of these requests, defendants have not produced any reciprocal discovery to which the government is entitled under Rules 16 and 26.2 of the Federal Rules of Criminal Procedure or the Jencks Act.  Thus, to the extent defendants may attempt to introduce or use any documents at trial that they have not previously produced, the government reserves the right to object and to seek to have such documents precluded.