Ambrosio E. Rodriguez (SBN 200880)
Michael J. Hanagan (SBN 220440)
The Rodriguez Law Group
626 Wilshire Blvd., Suite 900
Los Angeles, California 90017
213.995.6767 | Fax 213.995.6368
aer@aerlawgroup.com
mjh@aerlawgroup.com

Attorneys for Defendant Carlos Fernandez

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: CR 18-0121 SJO |
|---|---|
| Plaintiff, | |
| vs. | DEFENDANT CARLOS FERNANDEZ'S MOTION FOR MISTRIAL; MEMORANDUM OF POINTS AND AUTHORITIES |
| CARLOS MIGUEL FERNANDEZ, | |
| Defendant | |

TO THE HONORABLE COURT, THE PARTIES, AND COUNSEL:

Comes now Defendant Carlos Fernandez by and through his counsel of record and hereby moves this Honorable Court to order a mistrial in these proceedings and to dismiss all criminal charges pending against him. Defendant Fernandez has been prejudiced by the misconduct of counsel for the Government and cannot now receive a fair trial. Moreover, because jeopardy has attached, and because the actions of the Government amount demonstrate the intent to subvert the protections afforded by the Double Jeopardy Clause, the Court's dismissal of all charges against Defendant Fernandez should be with prejudice.

This motion is based on the attached memorandum of points and authorities, declaration of counsel, the record of these proceedings, and such other evidence and argument as may be developed on the hearing of the motion.

Respectfully submitted this 16th of November, 2019.

_____/S/_____

Michael J. Hanagan, Esq.
Attorney for Defendant, Carlos Miguel Fernandez

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND

Trial in this matter commenced on November 12, 2019 when the jury was empaneled and sworn. (Docket No. 237.) Trial continued over the next two days with the government calling various witnesses and introducing numerous exhibits. On November 14, 2019, the Government called Adelberto Pelayo, a cooperating witness who was testifying pursuant to a plea agreement with the Government. By his own admission, made under oath, Mr. Pelayo conspired with his fiancé, Blanca Elizabeth Ibarria, to purchase a firearm from Defendant Fernandez at a time when Mr. Pelayo knew that he was no legally permitted to do so. The purpose of Mr. Pelayo's testimony was to seek to establish the elements of Count Eleven of the indictment charging violations of 18 U.S.C. §924(a)(1)(A), 2(a), and 2(b).

During Mr. Pelayo's cross examination, Mr. Fernandez's attorney, Ambrosio E. Rodriguez, questioned Mr. Pelayo extensively regarding Pelayo's telephone interview with agents of the Bureau of Alcohol, Tobacco, and Firearms. On cross examination, Mr. Pelayo acknowledged that he had repeatedly told the ATF agents that he had never told Defendant Fernandez that he was then legally barred from purchasing firearms. Mr. Pelayo further acknowledged that after each time he denied having told Mr. Fernandez of his ineligibility to purchase a gun, the federal agents warned him about the consequences that could result if he lied to them. Mr. Rodriguez then began to question Mr. Pelayo regarding communications between Pelayo and his attorney, Mark A. Chambers. Mr. Chambers was present in the courtroom during Mr. Pelayo's cross examination.

At a critical point in the cross examination, Mr. Rodriguez asked specifically if Mr. Chambers had told Mr. Pelayo that the Government was really just after the police officers. At this juncture, counsel for the Government objected to the questioning on the grounds that it violated the attorney-client privilege. The Court correctly reminded the Government's lawyer that the privilege was not hers to

1  assert.  Mr. Rodriguez then began to ask the question again, at which point Mr.
2  Chambers came to the bar and sought to assert the privilege on Pelayo's behalf.
3  The Court called all counsel to side bar and pointed out that Mr. Chambers had not
4  asserted the attorney client privilege until he was prompted to do by the
5  Government and that counsel for the Government had actually turned directly to
6  Mr. Chambers where he was seated in the gallery in order to prompt his response.
7  The Government's assertion of a privilege it did not hold, and its active
8  encouragement of Pelayo's counsel to assert it instead amounts to witness
9  intimidation or tampering.

## II.  DISCUSSION

### A.  *The Government's Conduct Amounts to Prosecutorial Misconduct by Witness Intimidation*

The Ninth Circuit has long recognized that prosecutorial misconduct is grounds for a mistrial. *See United States v. Zimmelman*, 634 F.2d 1237 (9th Cir. 1980); *United States v. Wells*, 879 F.3d 900 (9th Cir. 2018), *Weston v. Kernan*, 50 F.3d 633 (9th Cir. 1995).  Prosecutorial misconduct such as "[u]ndue prosecutorial interference in a defense witness's decision to testify arises when the prosecution intimidates or harasses the witness to discourage the witness from testifying." *Williams v. Woodford*, 384 F.3d 567, 601 (9th Cir. 2004). In the present case, the government committed prejudicial prosecutorial misconduct when government counsel sought to interfere with Mr. Pelayo's testimony as to prevent him from responding to Mr. Rodriguez's questioning. This type of concealment and withholding of relevant evidence by the government is violative of Mr. Fernandez's Sixth Amendment right to confront witnesses and produce favorable evidence and against his Fifth Amendment right to due process.

In *U.S. v. Vavages*, the Ninth Circuit recognized that government interference with a witness's testimony can amount to prosecutorial misconduct. 151 F.3d 1185 (9th Cir. 1998). In that case, the defendant, Vavages, filed a notice

of intention to offer the defense of alibi and disclosed his alibi witness, Manuel. *Id*. at 1187. On the first day of trial, the presiding court learned through Manuel's attorney that Manuel would be invoking her Fifth Amendment right against self-incrimination. *Id*. The presiding court held a hearing to consider whether the government attorney had engaged in intimidating conduct by threatening to file perjury charges and to withdraw Manuel's plea agreement in an unrelated prosecution if Manuel were to testify in support of Vavages' alibi defense. *Id*. The Ninth Circuit found that the government counsel's conduct amounted to prosecutorial misconduct. *Id*. at 1193.

In *Vavages*, the Court's greatest concern was that the government had the threat of withdrawing Manuel's plea agreement hanging over her head if she decided to testify, regardless of whether she chose to testify truthfully or not. *Id*. at 1191. The instant case is no different as Mr. Pelayo has not been sentenced and he is testifying pursuant to a plea agreement with the government. In the present case, the Government had called Mr. Pelayo to the stand to testify against Mr. Fernandez. On cross-examination, Mr. Rodriguez asked Mr. Pelayo about statements Mr. Chambers made to Mr. Pelayo. Any answer Mr. Pelayo would have given would have neither benefitted or been detrimental to him. Mr. Chambers had no meaningful or legitimate reason to object.

It is notable that Mr. Chambers did not object when the question was made, he did not object when Government counsel raised an attorney-client privilege objection, nor did he object when the Court ruled on the Government's objection stating that it was not the Government's objection to make. It was only when Mr. Rodriguez began asking the question for the second time and Government counsel turned around to look directly at Mr. Chambers that Mr. Chambers finally made the objection claiming attorney-client privilege.

Mr. Chambers could have raised the objection at the time Mr. Rodriguez first asked about communications between Mr. Pelayo and his attorney, but he did

not. He could have raised it when the Court overruled the Government's objection, and yet he did not. The logic in his not doing so in manifest. Objecting to defense counsel's question regarding communication between Mr. Pelayo and his attorney would have served no purpose. Neither the question itself, nor its answer, would have either benefitted or harmed Pelayo who is obligated to testify truthfully pursuant to his plea agreement with the government.

When Government counsel raised her objection and then turned around to direct her attention at Mr. Chambers, the clear implication was that it was in his client's best interest to have Mr. Chambers claim the attorney-client privilege. "It does not require much of an interpretative gloss on the prosecutor's [actions] to conclude that unless [Mr. Pelayo] changed [his] testimony or refused to testify at all," the government could still withdraw from the plea agreement. *See U.S. Vavages*, 151 F.3d at 1190. In truth, the only advantage in asserting an attorney-client privilege and interfering with Pelayo's enured not to Pelayo but to the Government. And answer demonstrating that Pelayo understood that the Government was really just pursuing the police officers would have also demonstrated that he understood the need for him to testify in a certain manner in order to obtain the benefits of his bargain.

The prosecutor's conduct during Mr. Rodriguez's cross-examination of Mr. Pelayo was undoubtedly a determining factor in Mr. Chamber's decision to invoke the attorney-client privilege and interfere with Mr. Pelayo's testimony. The Government's conduct in this case is tantamount to instructing defendant, through counsel, not to testify in a manner that might be of benefit of the Mr. Fernandez even if that testimony was truthful. As discussed below, these actions amount to prosecutorial misconduct warranting a mistrial.

////
////
////

### B. The Court Should Declare a Mistrial and Dismiss the Case Against Fernandez With Prejudice Based on Double Jeopardy Principles

The Government may not put a defendant in jeopardy twice for the same offense. *Arizona v. Washington*, 434 U.S. 497, 503 (1978) (citing *Benton v. Maryland*, 395 U.S. 784 (1969)). Because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's valued right to have his trial completed by a particular tribunal. *Id.* (quotations omitted). Even if the first trial is not completed, a second prosecution may be grossly unfair as it will, as in this case, almost certainly increase the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. *Id.* at 503-04. Thus, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial. *Id.* at 505.

In addition to these principles, the Doubly Jeopardy Clause bars retrials where bad faith conduct by the prosecutor threatens the harassment of an accused by successive prosecutions or the declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict the defendant. *Id.* at 508 (quotations omitted). It is for this reason that the strictest scrutiny is appropriate where there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve tactical advantage over the accused. *Id.*

The Supreme Court has also recognized that the application of double jeopardy principles applies when it appears that the prosecutor's wrongful conduct was done with the intent to goad the defendant into requesting a mistrial. *Oregon v. Kennedy*, 456 U.S. 667, 673 (1982). Though most instances of objectionable questioning or attorney conduct are curable by application of the rules of evidence, or by admonitions to counsel, more serious infractions on the part of the prosecutor may provoke a motion for mistrial on the part of the defendant and may, in the

view of the trial court, warrant the granting of the motion. *Id*. at 675.  Thus, prosecutorial conduct can form the basis for application of the Double Jeopardy Clause in a case where the defendant has sought and obtained a mistrial when the court finds that the prosecutor's intent was to subvert the protections afforded by that clause.  *Id*. at 675-76.

     In this case, Mr. Pelayo was testifying pursuant to a plea agreement with the Government.  As in all cases where cooperating witnesses are testifying in exchange for promises offered by the Government, Mr. Pelayo's motivations for testifying and his credibility are highly relevant and can form the basis for questioning on cross examination.  For this reason, Mr. Rodriguez's questions regarding communications that Mr. Pelayo may have had with his attorney, wherein Mr. Pelayo's attorney informed him that the Government's primary object was the pursuit of Officers Fernandez and Arao, was permissible, relevant, and not subject to the privilege.  This is so because, as noted above, Mr. Pelayo is required by his plea agreement to testify truthfully and his answer to the question would in no way either help or hurt him, but could certainly have damaged the Government's case.

     Truthfulness in testifying in a criminal case must certainly also include testimony as to the cooperating witness' understanding of the Government's object in having him testify against his co-defendants.  In any event, any communications between Mr. Pealyo and his attorney related to the Government's purposes in the prosecution of the police officers is not covered by the attorney client privilege as those communications were not made for the purposes of seeking legal advice.

     At bottom, the question of the applicability of the attorney client privilege was appropriate in the instant case is immaterial.  As also noted above, it was not until the Government's attorney wantonly asserted a privilege she has no standing or authority to assert, and then physically encouraged Mr. Pelayo's counsel to assert it, that his counsel did so. This is strong evidence that Mr. Pelayo had no

intention of asserting the privilege and that the Government's actions were designed solely for the purpose of interfering with cross examination and stopping the introduction of testimony that the Government did not want the jury to hear. This was clear misconduct designed to keep the jury from hearing important testimony that related directly to Mr. Pelayo's reason for testifying the manner that he did. The Government's actions are even more egregious when taken in light of the testimony that Mr. Rodriguez had already elicited from Mr. Pelayo demonstrating the ATF's coercive actions in extracting a story from Pelayo about Officer Fernandez's knowledge of Pelayo's inability to lawfully possess firearms.

### III. CONCLUSION

The Government's improper assertion of the attorney-client privilege, followed by its subsequent encouragement of Mr. Pelayo's counsel to do so on its behalf, amounted to an effort on the Government's part to coerce, control, and intimidate Mr. Pelayo into testifying in a certain manner. This is clear misconduct made prejudicial by the fact that the Government's actions were taken while the jury was still present in the courtroom. The Government's actions warrant a finding of a mistrial. Because jeopardy has attached, the Government's misconduct must result in a dismissal of all charges against Mr. Fernandez with prejudice.

Respectfully submitted this 16th day of November 2019

_____/S/_____
Michael J. Hanagan, Esq.
Attorney for Defendant Carlos Miguel Fernandez