NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
KATHERINE A. RYKKEN (Cal. Bar No. 267196)
Assistant United States Attorney
Major Frauds Section
VERONICA DRAGALIN (Cal. Bar No. 281370)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0647
     Facsimile: (213) 894-0141
     E-mail:    katherine.rykken@usdoj.gov
                veronica.dragalin@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-121(A)-SJO |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT CARLOS FERNANDEZ'S MOTION FOR MISTRIAL (CR 248) |
| v. | |
| CARLOS MIGUEL FERNANDEZ, et al., | Hearing Date: November 18, 2019<br>Hearing Time: 10:00 a.m. |
| Defendants. | Location:    Courtroom of the<br>             Hon. S. James Otero |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys KATHERINE A. RYKKEN and VERONICA DRAGALIN, hereby files its Opposition to Defendant CARLOS FERNANDEZ's Motion for Mistrial, requesting dismissal of the case with prejudice (CR 248).

//

//

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 17, 2019

Respectfully submitted,

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

*/s/ Veronica Dragalin*

KATHERINE A. RYKKEN
VERONICA DRAGALIN
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

MEMORANDUM OF POINTS AND AUTHORITIES................................1
I.   INTRODUCTION...................................................1
II.  ARGUMENT.......................................................2
     A.   Legal Standard............................................2
     B.   Legal Principles Implicated by Defense Counsel's
          Question..................................................3
     C.   The Witness's Attorney Had a Legitimate Reason to
          Object....................................................5
     D.   It Is Proper for the Government to Raise Privilege
          Issues with the Court.....................................7
     E.   The Court Has Discretion to Overrule the Privilege
          Objection.................................................9
III. CONCLUSION....................................................10

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

**Cases**

Greater Newburyport Clamshell Alliance v. Public Serv. Co. of New
      Hampshire,
      838 F.2d 13 (1st Cir. 1988).................................... 4

Hunt v. Blackburn,
      128 U.S. 464 (1888)........................................... 4

Melton v. United States,
      398 F.2d 321 (10th Cir. 1968)................................. 9

Partington v. Gedan,
      961 F.2d 852 (9th Cir. 1992).................................. 3

San Fratello v. United States,
      340 F.2d 560 (5th Cir. 1965).................................. 9

United States v. Aulicino,
      44 F.3d 1102 (2d Cir. 1995)................................... 4

United States v. Bauer,
      132 F.3d 504 (9th Cir. 1997)............................... 4, 9

United States v. Black,
      733 F.3d 294 (9th Cir. 2013).................................. 3

United States v. Chen,
      99 F.3d 1495 (9th Cir. 1996).................................. 5

United States v. De Rosa,
      783 F.2d 1401 (9th Cir. 1986)................................. 2

United States v. Fox,
      396 F.3d 1018 (8th Cir. 2005)................................. 6

United States v. Garza-Juarez,
      992 F.2d 896 (9th Cir. 1993).................................. 2

United States v. Gurolla,
      333 F.3d 944 (9th Cir. 2003).................................. 2

United States v. Haynes,
      216 F.3d 789 (9th Cir. 2000).................................. 4

United States v. O'Connor,
      737 F.2d 814 (9th Cir. 1984).................................. 2

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

United States v. Rainone,
    32 F.3d 1203 (7th Cir. 1994)............................... 7, 10

United States v. Rogers,
    751 F.2d 1074 (9th Cir. 1985)............................... 3, 5

United States v. Simpson,
    2010 WL 1611483 (D. Ariz. 2010)................................ 2

United States v. Smith,
    454 F.3d 707 (7th Cir. 2006)............................. 6, 7, 8

United States v. Stepney,
    246 F. Supp. 2d 1069 (N.D. Cal. 2003).......................... 5

United States v. Vavages,
    151 F.3d 1185 (9th Cir. 1998)............................... 7, 8

United States v. Venegas,
    800 F.2d 868 (9th Cir. 1986)................................... 2

United States v. White,
    743 F.2d 488 (7th Cir. 1984)................................... 8

United States v. Wiley,
    794 F.2d 514 (9th Cir. 1986)................................... 2

Upjohn Co. v. United States,
    449 U.S. 383 (1981)............................................ 5

**Statutes**

Cal. Bus. & Prof. Code § 6068(e)................................... 5

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On November 14, 2019, the government called a cooperating witness in its case-in-chief ("the witness"). On the same day, counsel for Defendant CARLOS FERNANDEZ ("FERNANDEZ") began his cross-examination of this witness. When defense counsel asked a question that on its face was designed to elicit attorney-client privileged communications, the government objected. The Court noted that the government did not have standing to make such an objection. Government counsel then looked into the audience, where the witness's attorney was sitting. Thereafter, the witness's attorney objected on privilege grounds.

As things currently stand, the Court has not yet ruled on the privilege objection. The Court has discretion to sustain the objection and ask defense counsel to rephrase the question in a manner that does not force the witness to disclose conversations with his attorney. The Court also has discretion to overrule the objection and allow questioning on this topic.

Courts have held that a witness's attorney has a legitimate reason to object on privilege grounds under these circumstances. Courts have also recognized that under these circumstances, it is not improper for the government to bring a privilege issue to the trial court's attention. In light of the law on these issues, defendant FERNANDEZ fails to meet the high bar for dismissal of the case for government misconduct.

## II. ARGUMENT

### A. Legal Standard

Defendant asks this Court to declare a mistrial and dismiss the case against him with prejudice. (CR 248 at 8-10) Dismissing an indictment based on government misconduct is a remedy "frequently discuss[ed]," but "rarely invoke[d]," even when confronted with the most egregious forms of government misconduct. United States v. De Rosa, 783 F.2d 1401, 1404 (9th Cir. 1986). This is because the standard for finding outrageous government conduct is a demanding one. The government's conduct must be "so grossly shocking and so outrageous as to violate the universal sense of justice," United States v. O'Connor, 737 F.2d 814, 817 (9th Cir. 1984), and must contravene "fundamental fairness," United States v. Gurolla, 333 F.3d 944, 950 (9th Cir. 2003). Only the most "flagrant, scandalous, intolerable and offensive" conduct will meet that "extremely high" standard. United States v. Garza-Juarez, 992 F.2d 896, 904 (9th Cir. 1993). Mere negligence on the part of the government is insufficient. See United States v. Wiley, 794 F.2d 514, 516 (9th Cir. 1986) ("Because the conduct must shock the conscience ..., outrageous government conduct is not to be equated with negligence or poor judgment.").

"[S]uccessful assertion of the outrageous government conduct defense is extremely rare." United States v. Simpson, 2010 WL 1611483, No. CR 09-1040-PHX-MHM, at *6 (D. Ariz. 2010) (Murguia, J.); see also United States v. Venegas, 800 F.2d 868, 869 (9th Cir. 1986) (holding that a defendant who challenges an indictment based on prosecutorial misconduct "bears a heavy burden"). Indeed, as the Ninth Circuit has observed, there are only two reported decisions in

which federal appellate courts have reversed convictions under this doctrine. See United States v. Black, 733 F.3d 294, 302 (9th Cir. 2013) (citations omitted). As such, dismissal is a "drastic" and "disfavored" remedy, United States v. Rogers, 751 F.2d 1074, 1077 (9th Cir. 1985). Defendant fails to meet this high standard.

**B.   Legal Principles Implicated by Defense Counsel's Question**

Defendant argues that his counsel's question to the witness was proper and that "Mr. Chambers had no meaningful or legitimate reason to object." (CR 248 at p. 6) Defendant further asserts that "[o]bjecting to defense counsel's question regarding communication between [the witness] and his attorney would have served no purpose." (Id. at p. 7) Defendant contends that the answer would not have "harmed [the witness] who is obligated to testify truthfully pursuant to his plea agreement with the government." (Id.)[1] This argument completely glosses over one of the most fundamental Constitutional rights, the Sixth Amendment right to counsel, one of the most jealously guarded privileges recognized by law, and ethical rules governing attorneys.

As defendant himself recognizes, this witness "has not been sentenced" yet in the case (id. at p. 6), and thus has a pending criminal proceeding against him. As a defendant in a criminal case, the witness has a Sixth Amendment right to counsel, including a right to shield attorney-client communications. See, e.g., Partington v.

---

[1] Defendant argues that the witness's answer would have helped his case and that "the only advantage in asserting an attorney-client privilege" "enured" to the Government and not the witness. (CR 248 at p. 7) The government, of course, has no knowledge about the answer to the question posed, because the government is not privy to privileged communications between a criminal defendant and his attorney. The answer could very well help the government and hurt defendant FERNANDEZ's arguments.

3

1   Gedan, 961 F.2d 852, 863 (9th Cir. 1992), as amended (July 2, 1992)
2   (recognizing that a "violation of the attorney-client privilege" can
3   implicate "the Sixth Amendment right to counsel"); Greater
4   Newburyport Clamshell Alliance v. Public Serv. Co. of New Hampshire,
5   838 F.2d 13, 19 (1st Cir. 1988) ("The sixth amendment provides a
6   shield for the attorney-client privilege only in criminal
7   proceedings; upon the termination of those proceedings ... that
8   constitutional protection ends.").  In fact, the Ninth Circuit has
9   recognized a cognizable "claim of outrageous government conduct
10  premised upon deliberate intrusion into the attorney-client
11  relationship."  United States v. Haynes, 216 F.3d 789, 796 (9th Cir.
12  2000), cert. denied, 531 U.S. 1078 (2001).  Even the unintentional
13  interference with attorney-client relationship may violate a
14  defendant's Sixth Amendment rights where the government gains
15  confidential information and prejudice results.  See, e.g., United
16  States v. Aulicino, 44 F.3d 1102, 1117 (2d Cir. 1995).
17       The Ninth Circuit has recognized that "the attorney-client
18  privilege is, perhaps, the most sacred of all legally recognized
19  privileges, and its preservation is essential to the just and orderly
20  operation of our legal system." United States v. Bauer, 132 F.3d
21  504, 510 (9th Cir. 1997).  As the Supreme Court has long recognized,
22  "[t]he rule which places the seal of secrecy upon communications
23  between client and attorney is founded upon the necessity, in the
24  interest and administration of justice, of the aid of persons having
25  knowledge of the law and skilled in its practice, which assistance
26  can only be safely and readily availed of when free from the
27  consequences or the apprehension of disclosure." Hunt v. Blackburn,
28  128 U.S. 464, 470 (1888).  "The attorney-client privilege is an

evidentiary rule designed to prevent the forced disclosure in a judicial proceeding of certain confidential communications between a client and a lawyer." United States v. Rogers, 751 F.2d 1074, 1077 (9th Cir. 1985) (emphasis in original). "The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice, ... as well as an attorney's advice in response to such disclosures." United States v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996). "The defining principle behind this privilege is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981).

Lastly, the ethical rules governing attorneys require that all information pertaining to a client's case be kept confidential. Cal. Bus. & Prof. Code § 6068(e) (setting forth attorney's duty "[t]o maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client"); Model Rules of Prof'l Conduct, R. 1.6 (3d ed. 1999). In addition, "[p]rosecutors may also be subject to sanctions where they have induced an attorney to violate her duty of confidentiality." United States v. Stepney, 246 F. Supp. 2d 1069, 1074 (N.D. Cal. 2003) (citing Model Rules of Prof'l Conduct, R. 8.4(a)).

**C.   The Witness's Attorney Had a Legitimate Reason to Object**

Given these fundamental constitutional rights, principles underlying the attorney-client privilege, and ethical obligations, courts have recognized that a witness and his/her attorney have a legitimate right to invoke the attorney-client privilege under these exact circumstances.

5

For example, in <u>United States v. Fox</u>, during cross-examination of a government witness, defendant's counsel "attempted to ask [the witness] about conversations he had with his attorney regarding the nature of his plea agreement and the potential sentence he could receive. Counsel stated it was his intent, 'to talk to him about what his attorney told him about what the potential sentence is.'" 396 F.3d 1018, 1023 (8th Cir. 2005), <u>overruled on other grounds by</u> <u>United States v. Pirani</u>, 406 F.3d 543, 550 (8th Cir. 2005) (en banc). In response, "[t]he district court refused to allow defense counsel to inquire about communications between [the witness] and his attorney on the basis that such communications were privileged and confidential and that <u>if [the witness]'s attorney had been in court 'as he was supposed to be' he would be asserting the privilege</u>." <u>Id.</u> at 1022-1023 (emphasis added). There, "the district court did allow [defense] counsel to inquire about what [the witness]'s knowledge and understanding of his potential sentence and the guidelines was following his discussions of these issues with his attorney." <u>Id.</u>

Similarly, in <u>United States v. Smith</u>, the district court placed a limitation during cross-examination of a government witness "on questions relating to [the witness]'s discussions with his lawyer about his plea agreement. [Defense] counsel was able to elicit the nature and extent of the deal and thus the scope of the motive to lie through other means." 454 F.3d 707, 714 (7th Cir. 2006). The Seventh Circuit held: "This limit on cross-examination did not deny [defendant] the opportunity to establish that [the witness] harbored a motive to lie; rather it simply limited his ability to add extra detail to that motive." <u>Id.</u> Indeed, defense counsel "questioned

6

[the witness] thoroughly about every aspect of his direct testimony and his plea agreement, and [the witness]'s motives and biases were fully exposed. The added detail from his conversations with his attorney would not have changed the outcome given the strength of the remaining evidence." Id.

Here, too, counsel for defendant FERNANDEZ is free to question the witness about his <u>knowledge</u> and <u>understanding</u> of the plea agreement, his expected benefit as a result of his agreement with the government, and his conversations with the government. Defense counsel can do so without asking questions designed specifically to elicit privileged communications.

"A trial judge does not violate the Constitution when he limits the scope of cross-examination for a good reason, and here as in the usual case <u>desire to protect the attorney-client privilege [is] a good reason</u>." United States v. Rainone, 32 F.3d 1203, 1207 (7th Cir. 1994) (emphasis added). "[T]he incremental contribution of communications within the scope of the attorney-client privilege to effective cross-examination is likely to be small." Id. at 1206.

Given these principles, the witness's attorney in this case had a legitimate reason to object.

**D. It Is Proper for the Government to Raise Privilege Issues with the Court**

Defendant argues that the government's actions in this case "amounts to witness intimidation or tampering" (CR 248 at 5), citing no case supporting such a proposition.[2] Contrary to defendant's

---

[2] Defendant's reliance on United States v. Vavages, 151 F.3d 1185 (9th Cir. 1998), is misplaced. As defendant himself recognizes, in that case, the issue was "whether the government attorney had engaged in intimidating conduct by threatening to file perjury

7

contention that "government counsel sought to interfere with [the witness]'s testimony" (id.), the government's intent was simply to alert the Court of a potential ethical issue.  Circuit Courts have repeatedly recognized that, as officers of the Court, attorneys have a duty to bring such issues to the Court's attention during trial.  See, e.g., Smith, 454 F.3d 707, 713 ("<u>Although the government did not act inappropriately in bringing the privilege issue to the court's attention</u>, this was not a proper basis for a government *objection* to the defense questioning of Carter.") (underline added; italics in original); United States v. White, 743 F.2d 488, 494 (7th Cir. 1984) ("The Government, however, cannot appeal based upon the inadequate protection of someone else's privilege.  In so saying, <u>we are not unmindful of the duty of every lawyer to bring to the attention of the trial court possible ethical problems in the case</u>; nor do we find fault with the Government for having done so in this case.") (emphasis added).

    Defendant argues that the government committed misconduct because "the Government's actions were taken while the jury was still present in the courtroom."  (CR 248 at 10).  Defendant also argues for dismissal with prejudice because "the prosecutor's wrongful conduct was done with the intent to goad the defendant into requesting a mistrial."  (Id. at 8).  Defendant is correct in that courts have recognized that it is improper to require a witness to assert a privilege in front of the jury.  See, e.g., Melton v. United

---

charges and to withdraw [a defense witness]'s plea agreement in an unrelated prosecution."  (CR 248 at 6).  Here, unlike the defense alibi witness in Vavages, defendant has not demonstrated that the government witness has any information that will help his defense.  The government has not engaged in any intimidating or threatening conduct by bringing an ethical issue to the Court's attention, in open court.

8

States, 398 F.2d 321, 322 (10th Cir. 1968) (courts should allow witness to invoke marital privilege outside the presence of the jury); San Fratello v. United States, 340 F.2d 560, 565 (5th Cir. 1965) (it is improper for a prosecutor to require a witness to assert privilege against self-incrimination in front of the jury).  But those cases involve situations in which the government controlled the questions and had advance knowledge that the witnesses would invoke a privilege in response.  By contrast, here only defendant FERNANDEZ's counsel knew that he would seek to have the witness disclose attorney-client communications on the stand.  The government had no advance knowledge of counsel's intended inquiry.  Moreover, defendant did nothing to bring the issue to Mr. Chambers's or the Court's attention before posing the question.  Given how jealously guarded the privilege is, the objections designed to allow the witness and his counsel an opportunity to make an informed decision regarding asserting the privilege were neither inappropriate nor prejudicial. See, e.g., United States v. Bauer, 132 F.3d 504, 512 (9th Cir. 1997) ("we do not view the violation of the sacred trust between an attorney and his client as an insignificant occurrence").  Indeed, to the extent any prejudice has resulted from the witness's invocation of a privilege before the jury, the prejudice is to the government's case and the witness, not to defendant, for it is the government's witness that has refused to respond and now appears to have something to hide.

**E.  The Court Has Discretion to Overrule the Privilege Objection**

At this juncture, defendant FERNANDEZ's rights have not been prejudiced in any way.  As things currently stand, the Court has not

yet ruled on Mr. Chambers's objection.  The Court has discretion to overrule the objection and instruct the witness to answer this line of questions.  "Even the attorney-client privilege ... hallowed as it is, yet not found in the Constitution, might have to yield in a particular case if the right of confrontation, whether in its aspect as the right of cross-examination or in some other aspect, would be violated by enforcing the privilege."  Rainone, 32 F.3d at 1206.  Therefore, the Court has discretion to overrule the objection on privilege grounds if it finds that it must yield to defendant's right of confrontation.  The remedy is not dismissal of the case with prejudice.

Here, the government believes defendant FERNANDEZ's confrontation rights are not meaningfully implicated because competent counsel could easily elicit the same purported bias evidence by a multitude of other means (e.g., by simply asking the witness about his knowledge and understanding of the government's case, the benefits he will receive, etc.).

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant FERNANDEZ's motion for dismissal of the case with prejudice.