1            UNITED STATES DISTRICT COURT

2            CENTRAL DISTRICT OF CALIFORNIA

3                      ---

4        HONORABLE S. JAMES OTERO, JUDGE PRESIDING

5                      ---

6

7

8    **UNITED STATES OF AMERICA,**        )
                                          )
9                                         )
                                          )
10             Plaintiff;                 )
                                          )No. CR **18-121**SJO
11           VS                           )
                                          )
12   **CARLOS MIGUEL FERNANDEZ,**         **)**
     **EDWARD YASUSHIRO ARAO,**           )
13                                        )
                                          )
14             Defendants.                )
     _____     )

15

16

             Reporter's Transcript of Proceedings
17                **JURY TRIAL - DAY FIVE**
                  Los Angeles, California
18           **TUESDAY, NOVEMBER 19, 2019**

19

20

21

22

23           Anne Kielwasser, CRR, RPR, CSR
             Federal Official Court Reporter
24           350 WEST 1ST Street, Room 4455
             Los Angeles, California 90012
25             Telephone: (213) 894-2969
               anne.kielwasser@gmail.com

```
 1                    A P P E A R A N C E S

 2

 3      ON BEHALF OF THE PLAINTIFF:

 4      Katherine A Rykken
        Veronica Dragalin
 5      AUSA - Office of US Attorney
        General Crimes Section
 6      312 North Spring Street Suite 1200
        Los Angeles, CA 90012
 7      213-894-3659
        Fax: 213-894-0141
 8      Email: Katherine.rykken@usdoj.gov
        Email: Veronica.dragalin@usdoj.gov
 9

10      ON BEHALF OF THE DEFENDANT EDWARD Y. ARAO:

11

12      Edward M Robinson
        Rachel Robinson
13      Edward M. Robinson A Professional Law Corporation
        21515 Hawthorne Boulevard Suite 730
14      Torrance, CA 90503
        310-316-9333
15      Fax: 310-316-6442
        Email: Eroblaw@gmail.com
16
        Lisa Victoria Houle
17      Houle Law APC
        1230 Rosecrans, Suite 300
18      Manhattan Beach, CA 90266
        424-332-9079
19      Lisa@houle-law.com

20
        ON BEHALF OF THE DEFENDANT CARLOS M. FERNANDEZ:
21
        Ambrosio Eduardo Rodriguez
22      Michael J Hanagan
        The Rodriguez Law Group
23      626 Wilshire Boulevard Suite 460
        Los Angeles, CA 90017
24      213-995-6767
        Email: Aer@aerlawgroup.com

25
```

1                              **INDEX**

2      **WITNESS:**                                             **PAGE:**

3
       WITNESS, **TOLLIVER HART** SWORN                              5
4      CROSS-EXAMINATION (RESUMED) BY MR. RODRIGUEZ:                 5
       REDIRECT EXAMINATION BY MS. DRAGALIN                        23
5      RECROSS EXAMINATION BY MR. RODRIGUEZ                        30
       REDIRECT EXAMINATION BY MS. DRAGALIN                        34
6      RECROSS-EXAMINATION BY MR. RODRIGUEZ                        35
       **CLOSING ARGUMENTS BY THE GOVERNMENT**                    **117**
7      **CLOSING ARGUMENTS BY DEFENDANT ARAO**                    **152**
       **CLOSING ARGUMENT BY MR. RODRIGUEZ**                      **171**
8      **REBUTTAL CLOSING BY GOVERNMENT**                         **186**

9                                * * * * *

10                              **EXHIBITS**

11     Exhibit No. 202 received in evidence              29

12     Exhibit No. 203 received into evidence            30

13
                                * * * * * *
14

15

16

17

18

19

20

21

22

23

24

25

| | |
|---|---|
| 1 | TUESDAY, NOVEMBER 19, 2019                      9:0 A.M. |
| 2 | ~ ~ ~ |
| 3 | JURY TRIAL - FIVE |
| 09:23:13  4 | ~ ~ ~ |
| 09:39:24  5 | **THE COURT:**  We're back on the record with the |
| 09:39:25  6 | United States versus Arao and Fernandez.  We have counsel |
| 09:39:30  7 | present with the defendants.  We're about to bring the jury |
| 09:39:32  8 | in. |
| 09:39:34  9 | Ready for cross? |
| 09:39:34  10 | **MR. RODRIGUEZ:**  Yes, Your Honor.  Briefly, before |
| 09:39:35  11 | we do that, I did want to put something on the record. |
| 09:39:38  12 | I informed counsel of this.  This morning |
| 09:39:41  13 | when I came back from my car, I was putting on my shoes after |
| 09:39:45  14 | going through security, and I heard one of the security |
| 09:39:48  15 | guards make a joke of, for which I chimed in.  I looked up |
| 09:39:55  16 | and I realized he was having some chat with one of the |
| 09:39:59  17 | jurors.  I didn't know that.  As soon as I realized who it |
| 09:40:01  18 | was, I just put my head down and walked away, so -- and I |
| 09:40:04  19 | informed counsel as soon as I walked in. |
| 09:40:07  20 | **THE COURT:**  Okay, thank you very much. |
| 09:40:09  21 | COURT CLERK:  All rise for the jury, please. |
| 09:40:11  22 | (Following proceedings were held in the presence |
| 09:40:29  23 | of the jury.) |
| 09:40:34  24 | **THE COURT:**  We have the jury reassembled now with |
| 09:40:36  25 | the alternates.  Counsel are present with the defendants, |

| | | |
|---|---|---|
| 09:40:39 | 1 | and we'll continue with the cross-examination of Special |
| 09:40:42 | 2 | Agent Hart by Mr. Rodriguez. |
| 09:40:43 | 3 | Please have a seat. |
| 09:40:45 | 4 | Just in terms of housekeeping, we're going to |
| 09:40:49 | 5 | stop today at 12:00, and we'll start again at 1:20, 1:20. |
| 09:40:54 | 6 | There is a matter I have to attend to during the noon hour. |
| 09:40:58 | 7 | Go ahead. |
| 09:40:58 | 8 | COURT CLERK:  Good morning, sir.  Once again, |
| 09:40:59 | 9 | you're reminded you are still under oath. |
| 09:41:03 | 10 | Would you please state and spell your last |
| 09:41:08 | 11 | name? |
| 09:41:08 | 12 | **THE WITNESS:**  Tolliver Hart, H-A-R-T. |
| 09:41:12 | 13 | **THE COURT:**  Okay, so, I think the clerk is making |
| 09:41:16 | 14 | arrangements for the jury to have lunch today. |
| 09:41:19 | 15 | Go ahead. |
| 09:41:23 | 16 | **MR. RODRIGUEZ:**  Thank you, Your Honor. |
| 09:41:25 | 17 | WITNESS, **TOLLIVER HART** SWORN |
| 09:41:25 | 18 | CROSS-EXAMINATION (RESUMED) |
| 09:41:25 | 19 | BY MR. RODRIGUEZ: |
| 09:41:27 | 20 | Q.    Good morning, Mr. Hart. |
| 09:41:28 | 21 | A.    Good morning. |
| 09:41:29 | 22 | Q.    Now, before we recessed yesterday, I was going to ask |
| 09:41:35 | 23 | you questions concerning Exhibit 199A.  Do you recognize |
| 09:42:10 | 24 | that? |
| 09:42:10 | 25 | A.    Yes. |

| | | |
|---|---|---|
| 09:42:11 | 1 | Q.   Okay, and do you recognize the gun that is pictured on |
| 09:42:15 | 2 | the first few messages sent? |
| 09:42:20 | 3 | A.   Yes. |
| 09:42:21 | 4 | Q.   Okay, and that is -- |
| 09:42:23 | 5 | And were you able to trace this gun? |
| 09:42:26 | 6 | A.   Yes. |
| 09:42:27 | 7 | Q.   Okay, and how did you do that? |
| 09:42:30 | 8 | A.   The serial number. |
| 09:42:32 | 9 | Q.   Okay, and it was sold from Carlos Fernandez to -- |
| 09:42:40 | 10 | I'm sorry.  Strike that. |
| 09:42:41 | 11 | Was it sold from Carlos Fernandez to the |
| 09:42:49 | 12 | Camachos? |
| 09:42:50 | 13 | A.   I believe so. |
| 09:42:51 | 14 | Q.   Okay.  So, it was sold, and you were able to track |
| 09:42:54 | 15 | that through paperwork, correct? |
| 09:42:57 | 16 | A.   Yes. |
| 09:42:57 | 17 | Q.   That is the 4773s; is that correct? |
| 09:43:08 | 18 | A.   Yes. |
| 09:43:08 | 19 | Q.   And you were able to track that because you compared |
| 09:43:11 | 20 | the serial number that's pictured in the gun with the serial |
| 09:43:15 | 21 | number in the paperwork? |
| 09:43:17 | 22 | A.   Yes. |
| 09:43:17 | 23 | Q.   Paperwork that showed a sale from Carlos Fernandez |
| 09:43:24 | 24 | to -- what was it Camacho, Sr. or Rafael Camacho? |
| 09:43:28 | 25 | A.   I believe this one was Rafael Camacho Maravilla. |

UNITED STATES DISTRICT COURT

09:43:36  1    Q.    Okay.  And now, you knew that before testifying

09:43:38  2    yesterday, correct?

09:43:39  3    A.    Yes.

09:43:39  4    Q.    All right, and you knew that the --

09:43:44  5              What was the date for that sale?  Do you

09:43:48  6    remember?

09:43:48  7    A.    I believe it was the 19th -- sorry, December 19th.

09:43:54  8    Q.    Okay.  So, it was four days after this text service --

09:44:00  9    this text message going back and forth.

09:44:04  10   A.    Yes.

09:44:07  11   Q.    As you testified back on Thursday, you are the lead

09:44:18  12   agent in this case, correct?

09:44:20  13   A.    One of them, yes.

09:44:21  14   Q.    And so you and Agent Duncan are co-leaders?

09:44:28  15   A.    I'm a co-case agent, yes.

09:44:30  16   Q.    Okay.  And you were part of the prosecution team that

09:44:33  17   helped put this case together to present to the jury, right?

09:44:38  18   A.    Yes.

09:44:38  19   Q.    And when as we discussed on Thursday, when I asked you

09:44:38  20   a question, it was --

09:44:42  21              Remember, there was a long line of questions

09:44:44  22   that -- of the display that you had of guns that were

09:44:48  23   purchased, and then there was the advertised price, and there

09:44:54  24   was the $44,000?  Right?

09:44:57  25   A.    Yes.

| | | |
|---|---|---|
| 09:44:57 | 1 | Q.    And then we talked about a house, that six of those |
| 09:45:00 | 2 | guns were never even sold, right? |
| 09:45:02 | 3 | A.    Yes. |
| 09:45:02 | 4 | Q.    Okay, and how that was presented right next to |
| 09:45:05 | 5 | deposits into a bank account, right? |
| 09:45:06 | 6 | A.    Yes. |
| 09:45:07 | 7 | Q.    Now, here you presented evidence was -- or exhibits |
| 09:45:10 | 8 | were shown to you, and you were asked questions, and |
| 09:45:13 | 9 | obviously you were prepared to testify yesterday, right? |
| 09:45:16 | 10 | This wasn't just something done on the fly, right? |
| 09:45:19 | 11 | A.    Yes. |
| 09:45:19 | 12 | Q.    And the evidence was presented that -- and it says in |
| 09:45:26 | 13 | page 103, Exhibit 199A, quote:  "I asked him to sell it to me |
| 09:45:34 | 14 | without any paperwork.  I almost convinced him."  Right? |
| 09:45:39 | 15 | A.    Yes. |
| 09:45:39 | 16 | Q.    Okay.  Since -- I'm sorry. |
| 09:45:42 | 17 |         And the purpose to show this evidence was to |
| 09:45:47 | 18 | kind of -- to connect Oscar Camacho, Jr.'s intent to have a |
| 09:45:54 | 19 | gun without papers to my client, correct? |
| 09:46:00 | 20 | A.    Excuse me? |
| 09:46:02 | 21 | Q.    Sure.  You testified yesterday as to the activities of |
| 09:46:08 | 22 | Camacho, Jr. as it relates to my client, correct? |
| 09:46:11 | 23 | A.    Yes. |
| 09:46:11 | 24 | Q.    Okay.  And yesterday you were shown and presented |
| 09:46:16 | 25 | evidence in which statements were made by Camacho, Jr. that |

| | |
|---|---|
| 09:46:19 | 1 |
| 09:46:23 | 2 |
| 09:46:24 | 3 |
| 09:46:27 | 4 |
| 09:46:28 | 5 |
| 09:46:28 | 6 |
| 09:46:33 | 7 |
| 09:46:37 | 8 |
| 09:46:41 | 9 |
| 09:46:48 | 10 |
| 09:46:52 | 11 |
| 09:46:52 | 12 |
| 09:46:55 | 13 |
| 09:46:59 | 14 |
| 09:47:03 | 15 |
| 09:47:08 | 16 |
| 09:47:11 | 17 |
| 09:47:13 | 18 |
| 09:47:13 | 19 |
| 09:47:17 | 20 |
| 09:47:21 | 21 |
| 09:47:21 | 22 |
| 09:47:26 | 23 |
| 09:47:32 | 24 |
| 09:47:34 | 25 |

he wanted to sell -- buy a gun without papers?

A.    Yes.

Q.    And he wanted to buy a gun without papers from my
client, right?

A.    Yes.

Q.    And the entire reason this evidence was presented to
you in front of this jury was to give the impression of
nefarious or illegal activity on the part of my client,
correct?

A.    I think it shows that he tried but didn't actually
convince him.

Q.    Right.  And you didn't testify to that yesterday,
right?  You were never asked on direct examination:  Isn't it
true, Agent Hart, that this gun was sold with the proper
paperwork and the proper documentation by Carlos Fernandez?

        You were never asked that question on direct
examination, were you?

A.    No.

Q.    No.  In fact, you were shown two exhibits which show
Camacho, Jr.'s desire to buy a gun without papers, correct?

A.    Yes.

Q.    All right.  Again, no evidence whatsoever that Carlos
Fernandez ever sold any Camacho, Sr. or Rafael Camacho
Maravilla a gun without papers, correct?

A.    Correct.

| 09:47:34 | 1 | Q.    The guns that were found at the address in Salinas |
| 09:47:38 | 2 | were all guns that you had documentation as being sold to |
| 09:47:42 | 3 | either Camacho, Sr. or Rafael Oscar -- I'm sorry, Rafael |
| 09:47:47 | 4 | Camacho Maravilla, correct? |
| 09:47:49 | 5 | A.    Sorry.  Could you repeat that? |
| 09:47:51 | 6 | Q.    Sure.  It was really fast and there was Spanish |
| 09:47:54 | 7 | involved. |
| 09:47:54 | 8 |        All of the guns that were discovered by the |
| 09:47:57 | 9 | ATF at the house in Salinas were guns that were -- were guns |
| 09:48:03 | 10 | whose sales were documented by Carlos Fernandez or Ronin, |
| 09:48:08 | 11 | correct? |
| 09:48:08 | 12 | A.    No. |
| 09:48:08 | 13 | Q.    Okay, which guns were not sold by them? |
| 09:48:11 | 14 | A.    We also recovered a stolen firearm in the garage |
| 09:48:15 | 15 | attic. |
| 09:48:15 | 16 | Q.    Okay.  And that had nothing to do with my client. |
| 09:48:19 | 17 | A.    Correct. |
| 09:48:28 | 18 | Q.    In Exhibit 101I, you were shown a list of deposits |
| 09:49:03 | 19 | that were made to the Chase Bank account that belongs to my |
| 09:49:08 | 20 | client and his wife, correct? |
| 09:49:11 | 21 | A.    Yes. |
| 09:49:12 | 22 | Q.    Again, you never -- neither you or anyone from |
| 09:49:17 | 23 | prosecution team -- took the time to see if there were any |
| 09:49:22 | 24 | other bank accounts that belong either to my client or to his |
| 09:49:26 | 25 | wife, correct? |

09:49:28  1    A.    We attempted to find defendant Fernandez's bank

09:49:31  2    accounts.

09:49:32  3    Q.    Did you find his bank account at the credit union?

09:49:36  4    A.    I thought we -- there was two separate banks that we

09:49:42  5    got records for.  I thought one was a credit union.

09:49:46  6    Q.    Belonging to Carlos Fernandez?

09:49:49  7    A.    I thought so, yes.

09:49:51  8    Q.    And what about his wife?

09:49:54  9    A.    No, we didn't request financial information for his

09:49:59  10   wife.

09:49:59  11   Q.    Do you remember I ask you questions about this on

09:50:02  12   Thursday?

09:50:03  13   A.    Yes.

09:50:03  14   Q.    And you never --

09:50:05  15         And as you testified on Thursday, the ATF has

09:50:11  16   the resources and capabilities to find bank accounts, right?

09:50:15  17   That belong to someone, as long as you have a name, date of

09:50:21  18   birth, Social Security numbers, things like that?

09:50:24  19   A.    Yes.

09:50:24  20   Q.    Right.  Because banks are secured by the FDIC, which

09:50:29  21   is a federal agency which reports to the Department of

09:50:31  22   Treasury, and therefore they keep records of people who have

09:50:34  23   bank accounts, right?

09:50:35  24   A.    Yes.

09:50:35  25   Q.    Right.  And, in fact, under the Patriot Act, it's

| | |
|---|---|
| 09:50:40 | 1 | become much easier for federal agents to search peoples' -- |
| 09:50:44 | 2 | and get documents from people's bank accounts, right? |
| 09:50:49 | 3 | A.    I wouldn't know. |
| 09:50:51 | 4 | Q.    Okay.  So, the point is, you never subpoenaed the bank |
| 09:50:57 | 5 | records for his wife. |
| 09:50:59 | 6 | A.    Correct. |
| 09:50:59 | 7 | Q.    Even though you knew that Carlos Fernandez and his |
| 09:51:09 | 8 | wife had a joint account? |
| 09:51:10 | 9 | A.    Correct. |
| 09:51:10 | 10 | Q.    And you did not subpoena his bank account record from |
| 09:51:15 | 11 | his credit union account. |
| 09:51:17 | 12 | A.    I thought we did subpoenaed another account. |
| 09:51:19 | 13 | Q.    Okay.  At no time did you do an analysis to see |
| 09:51:23 | 14 | whether the deposits in the Chase account matched the |
| 09:51:26 | 15 | withdrawals from his credit union account? |
| 09:51:30 | 16 | A.    Correct. |
| 09:51:31 | 17 | Q.    And obviously, the same goes true for any withdrawals |
| 09:51:35 | 18 | made by his wife, seeing that they line up with the deposits |
| 09:51:38 | 19 | in the Chase account since you never did any -- since you |
| 09:51:42 | 20 | didn't find -- sorry -- since you didn't subpoena her |
| 09:51:46 | 21 | records, right? |
| 09:51:47 | 22 | A.    Correct. |
| 09:51:53 | 23 | Q.    You and Agent Duncan went to my client's home back |
| 09:52:25 | 24 | in -- towards the end of 2017, correct? |
| 09:52:28 | 25 | A.    September, September 13th. |

UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| 09:52:32 | 1 | Q.    Of 2017. |
| 09:52:33 | 2 | A.    Yes. |
| 09:52:34 | 3 | Q.    And was this something that you had coordinated with |
| 09:52:37 | 4 | my client to meet at his house, or did you just show up? |
| 09:52:41 | 5 | A.    I believe we just showed up. |
| 09:52:43 | 6 | Q.    And he brought you in the house, correct? |
| 09:52:46 | 7 | A.    Yes. |
| 09:52:46 | 8 | Q.    And he was affable with you. |
| 09:52:49 | 9 | A.    Yes. |
| 09:52:49 | 10 | Q.    All right, invited you to his house, have a seat. |
| 09:52:55 | 11 | Things like that? |
| 09:52:55 | 12 | A.    Yes. |
| 09:52:55 | 13 | Q.    Now, you showed him several photographs relating to |
| 09:53:00 | 14 | this case, right? |
| 09:53:00 | 15 | A.    Yes. |
| 09:53:01 | 16 | Q.    And one of the pictures was of Oscar Camacho, Jr., |
| 09:53:06 | 17 | right? |
| 09:53:07 | 18 | A.    Yes. |
| 09:53:07 | 19 | Q.    So, the picture that you showed him of Oscar Camacho, |
| 09:53:14 | 20 | Jr. was five years old.  Right? |
| 09:53:16 | 21 | A.    Yes. |
| 09:53:16 | 22 | Q.    And one of the things you, Agent Duncan and my client |
| 09:53:21 | 23 | talked about was how different he looked back in 2017 as |
| 09:53:26 | 24 | opposed to that picture, correct? |
| 09:53:32 | 25 | A.    It's possible. |

09:53:34  1          THE COURT:  Do you recall?

09:53:35  2          THE WITNESS:  I don't recall because we -- we

09:53:40  3  hadn't met Camacho, Jr. at that point.

09:53:43  4  BY MR. RODRIGUEZ:

09:53:44  5  Q.    But isn't it true that one of the things that my

09:53:46  6  client told you is that how much weight -- or how much fatter

09:53:52  7  Oscar Camacho, Jr. was in real life as opposed to that

09:53:56  8  five-year-old picture?

09:53:57  9  A.    Yes.

09:53:58  10 Q.    In fact, he told you, quote:  "He's not skinny."

09:54:13  11 Right?

09:54:14  12 A.    Yes.

09:54:15  13 Q.    During that interview, my client, Mr. Fernandez or

09:54:19  14 Officer Fernandez, also told you that originally he made

09:54:21  15 contact with pops, right?

09:54:24  16          MS. DRAGALIN:  Objection.  Calls for speculation.

09:54:27  17          THE COURT:  Overruled.

09:54:28  18          THE WITNESS:  Yes.

09:54:28  19 BY MR. RODRIGUEZ:

09:54:28  20 Q.    And "pops" referred to Oscar Camacho, Sr., right?

09:54:35  21 A.    Yes.

09:54:38  22 Q.    And when referring to Oscar Camacho, Jr., my client

09:54:43  23 told you that Junior was the guy that used to drive him,

09:54:49  24 meaning drive Camacho, Sr.

09:54:53  25 A.    Yes.

| | | |
|---|---|---|
| 09:54:53 | 1 | Q.    By the way, just as an aside, in the course of your |
| 09:54:56 | 2 | investigation, did you ever interview Oscar Camacho, Sr.? |
| 09:55:01 | 3 | A.    No. |
| 09:55:01 | 4 | Q.    So, you've never met Oscar Camacho, Sr.? |
| 09:55:05 | 5 | A.    No. |
| 09:55:05 | 6 | Q.    How about Rafael Camacho Maravilla?  Did you ever meet |
| 09:55:09 | 7 | him? |
| 09:55:09 | 8 | A.    No. |
| 09:55:09 | 9 | Q.    Did you ever interview him? |
| 09:55:11 | 10 | A.    No. |
| 09:55:11 | 11 | Q.    Okay, to your knowledge did Special Agent Hunter ever |
| 09:55:17 | 12 | interview -- I'm sorry -- Hunter?  Duncan.  Sorry -- Special |
| 09:55:23 | 13 | Agent Duncan ever meet Oscar Camacho, Sr.? |
| 09:55:27 | 14 | A.    I'm not sure. |
| 09:55:28 | 15 | Q.    Okay.  You're not aware if he ever has or not? |
| 09:55:32 | 16 | A.    I'm not. |
| 09:55:32 | 17 | Q.    To your knowledge, Special Agent Duncan ever meet |
| 09:55:37 | 18 | Rafael Camacho Maravilla? |
| 09:55:41 | 19 | A.    I -- I think so. |
| 09:55:45 | 20 | Q.    You're not sure.  Okay.  Now, isn't it true also that |
| 09:55:52 | 21 | Oscar Camacho, Sr. did not have an Instagram account? |
| 09:55:56 | 22 | A.    Not that I found. |
| 09:55:59 | 23 | Q.    Rafael Camacho Maravilla did not have an Instagram |
| 09:56:04 | 24 | account? |
| 09:56:04 | 25 | A.    Yes, he did. |

09:56:05    1    Q.      He did.  Okay.  And what was the handle on that?

09:56:09    2    A.      ^ Jerafa.

09:56:14    3    Q.      ^ Jerafa?  Okay.  Now, going back to your interview,

09:56:30    4    my client -- Mr. -- I'm sorry -- Officer Fernandez told you

09:56:35    5    that he dealt with Camacho, Jr. because:  He's the one who

09:56:40    6    was bringing dad.  Correct?

09:56:43    7    A.      Yes.

09:56:43    8    Q.      Agent Hart, isn't it true that a police officer, or a

09:57:30    9    sworn police officer in the State of California, cannot use

09:57:36   10    CLETS for his or her personal business?

09:57:40   11    A.      Yes.

09:57:41   12    Q.      And CLETS is the -- what, the California law

09:57:47   13    enforcement technical service?

09:57:50   14    A.      Umm, I think it might be Terminal System.

09:58:00   15    Q.      Terminal system, thank you.  And CLETS is what, in law

09:58:06   16    enforcement it's refers to as where law enforcement looks at

09:58:11   17    somebody's rap sheet, right?

09:58:12   18    A.      Yes.

09:58:12   19    Q.      All right.  It will show whether someone has been

09:58:15   20    convicted of a crime or charged with a crime, correct?

09:58:17   21    A.      Yes.

09:58:17   22    Q.      It will show what's called a CII number, right?

09:58:21   23    A.      Yes.

09:58:21   24    Q.      And if they have multiple -- they've had convictions

09:58:24   25    out of state, it will even have an FBI number, right?

09:58:28  1    A.     Yes.

09:58:28  2    Q.     And so, for example, if you, in your capacity in law

09:58:31  3    enforcement investigating this case, looked up Oscar Camacho,

09:58:38  4    Jr.'s rap sheet, you could find his conviction from Santa

09:58:43  5    Clara County, right?

09:58:44  6    A.     Yes.

09:58:44  7    Q.     But it is a crime for -- I'm sorry, let me back up.

09:58:50  8                  And as you all know, police officers, sworn

09:58:54  9    police officers in the State of California, have the

09:58:57  10   authority to use CLETS system as part of their

09:59:01  11   investigations, right?

09:59:01  12   A.     Yes.

09:59:02  13   Q.     But that investigation has to be done for a criminal

09:59:06  14   case, correct?

09:59:07  15   A.     Yes.

09:59:07  16   Q.     It would be a violation of the law for someone -- for

09:59:12  17   a sworn police officer to use CLETS for their own personal

09:59:16  18   purpose.

09:59:18  19   A.     Yes.

09:59:18  20   Q.     So, hypothetically, if a police officer is doing a

09:59:22  21   private party transfer, it would be illegal for him to use

09:59:27  22   CLETS in order to check the -- someone's background.

09:59:33  23   A.     Yes.

09:59:42  24   Q.     Now -- sorry.  Let me get something.  I'll be right

09:59:48  25   back.

UNITED STATES DISTRICT COURT

10:00:20    1              Now, as part of your work in the case, you
10:00:23    2    were at the proffer session for Adalberto Pelayo back on
10:00:29    3    August 17, 2018, correct?
10:00:31    4    A.    Yes.
10:00:31    5    Q.    And you authored a report as for that proffer session,
10:00:36    6    correct?
10:00:36    7    A.    Yes.
10:00:36    8    Q.    At the proffer session were yourself, Special Agent
10:00:42    9    Duncan, Ms. Rykken and Ms. Dragalin, correct?
10:00:46   10    A.    Yes.
10:00:46   11    Q.    Along with Mr. Pelayo and his attorney, Mr. Chambers,
10:00:51   12    whom we've seen here in court, correct?
10:00:54   13    A.    Yes.
10:00:54   14    Q.    As part of that, you wrote a three-page report,
10:01:00   15    correct?
10:01:00   16    A.    Yes.
10:01:00   17    Q.    A three-page report that you signed and dated on
10:01:04   18    August 24th, 2018.  Correct?
10:01:07   19    A.    Yes.
10:01:07   20    Q.    And that report was signed off by your supervisor,
10:01:13   21    Paul D'Angelo, on September 4th, 2018.
10:01:24   22    A.    Yes.
10:01:24   23    Q.    You wrote a second report on October 29th, 2019,
10:01:29   24    correct?
10:01:29   25    A.    Yes.

10:01:29  1   Q.    And this refers to a proffer session that you again

10:01:34  2   had in that U.S. Attorney's office with Adalaberto Pelayo,

10:01:40  3   correct?

10:01:40  4   A.    Yes.

10:01:40  5   Q.    And at the proffer session was just you and

10:01:46  6   Mr. ^ Aguilin, along with Mr. Pelayo and his attorney Mark

10:01:51  7   Chambers, correct?

10:01:52  8   A.    Yes.

10:01:52  9   Q.    Okay.  Now, you -- there is a heading states

10:01:57 10   "Narrative."  And there are --

10:01:59 11              You're familiar with this report, correct?

10:02:02 12   A.    Yes.

10:02:02 13   Q.    Would you -- would you like a copy to look at it to

10:02:04 14   refer to?

10:02:06 15   A.    Sure.

10:02:07 16         MR. RODRIGUEZ:  With the Court's permission, if I

10:02:10 17   may, Your Honor?

10:02:10 18         THE COURT:  Yes.

10:02:13 19              Maybe we can take the exhibit down, please.

10:02:16 20         MR. RODRIGUEZ:  Thank you, Your Honor.

10:02:41 21   BY MR. RODRIGUEZ:

10:02:42 22   Q.    No. 3 -- I'm sorry.

10:02:44 23              Under the heading Narrative, there are three

10:02:51 24   Roman numerals, correct?  Or Arabic numbers.  Sorry.

10:03:00 25   A.    Yes.

| | |
|---|---|
| 10:03:00 | 1 |
| 10:03:03 | 2 |
| 10:03:03 | 3 |
| 10:03:07 | 4 |
| 10:03:10 | 5 |
| 10:03:12 | 6 |
| 10:03:14 | 7 |
| 10:03:15 | 8 |
| 10:03:15 | 9 |
| 10:03:18 | 10 |
| 10:03:19 | 11 |
| 10:03:24 | 12 |
| 10:03:24 | 13 |
| 10:03:27 | 14 |
| 10:03:27 | 15 |
| 10:03:28 | 16 |
| 10:03:32 | 17 |
| 10:03:37 | 18 |
| 10:03:37 | 19 |
| 10:03:42 | 20 |
| 10:03:48 | 21 |
| 10:03:49 | 22 |
| 10:03:55 | 23 |
| 10:03:59 | 24 |
| 10:04:02 | 25 |

Q.     No. 3, could you read to the jury what you wrote for
No. 3?

              THE COURT:   Is this in reference to the October 29
or the September 24th?

              MR. RODRIGUEZ:   October 29, 2019.

              MS. DRAGALIN:   Your Honor, objection on hearsay
grounds.

              THE COURT:   Overruled.

              THE WITNESS:   "During the proffer and in addition
to reiterating statements previously made in prior
interviews, Pelayo made the following statements."
BY MR. RODRIGUEZ0:

Q.     Okay, and these are statements that you put down in
bullet points, correct?

A.     Yes.

Q.     And -- because part of your job as an agent is when
you write a report is to document evidence, right?

A.     Yes.

Q.     And if there is -- if a witness makes a statement that
is different in any way in a following -- sorry.  Let me
start all over again.

              If a witness makes a statement that is in any
way different or adds to their original statement, that's
something that you, as law enforcement, have to document,
correct?

UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| 10:04:03 | 1 | A.     Yes. |
| 10:04:03 | 2 | Q.     And that information has to be turned over, as far as |
| 10:04:08 | 3 | you know, to the defense as part of the case, right? |
| 10:04:11 | 4 | A.     Yes. |
| 10:04:11 | 5 | Q.     And so, when you -- did you -- |
| 10:04:16 | 6 | You didn't record this, correct? |
| 10:04:18 | 7 | A.     Correct. |
| 10:04:19 | 8 | Q.     You just took notes as the conversation was headed. |
| 10:04:23 | 9 | A.     Yes. |
| 10:04:23 | 10 | Q.     And this was, well, two weeks before the trial was set |
| 10:04:30 | 11 | to begin, right? |
| 10:04:31 | 12 | A.     Yes. |
| 10:04:32 | 13 | Q.     And so it was important in order to meet with a |
| 10:04:35 | 14 | witness to discuss their testimony and see if there was |
| 10:04:38 | 15 | anything missing or different, right? |
| 10:04:41 | 16 | A.     Yes. |
| 10:04:41 | 17 | Q.     And that's why you made No. 3 its own heading with |
| 10:04:48 | 18 | bullet points to say, hey, this is information that this |
| 10:04:51 | 19 | witness hasn't given us before.  Right? |
| 10:04:54 | 20 | A.     Yes. |
| 10:04:54 | 21 | Q.     And then one of the bullet points refers to a |
| 10:05:00 | 22 | statement that Mr. Pelayo said, correct? |
| 10:05:10 | 23 | A.     Yes. |
| 10:05:11 | 24 | Q.     Okay.  Do you see that there is pen writing on it? |
| 10:05:13 | 25 | A.     What's underlined? |

| | | |
|---|---|---|
| 10:05:13 | 1 | Q.    Yes, by a blue pen, I believe. |
| 10:05:15 | 2 | A.    Yes. |
| 10:05:15 | 3 | Q.    Okay.  Could you read to the jury what you wrote? |
| 10:05:18 | 4 | A.    "Fernandez made the suggestion that Ebaria purchased |
| 10:05:22 | 5 | the firearm for Pelayo." |
| 10:05:25 | 6 | Q.    Okay.  And he -- |
| 10:05:27 | 7 | And you wrote that down because Pelayo did |
| 10:05:30 | 8 | not tell you that at the original proffer back in August |
| 10:05:34 | 9 | 17th, 2018, correct? |
| 10:05:37 | 10 | A.    Yes. |
| 10:05:38 | 11 | Q.    Thank you.  Now, let me move on.  Through the course |
| 10:05:48 | 12 | of your investigation, did you find any text messages, |
| 10:05:54 | 13 | WhatsApp, DMs, Comments, linking Karina to Carlos Fernandez? |
| 10:06:00 | 14 | A.    No. |
| 10:06:00 | 15 | Q.    There is no evidence that Karina Priaz (phonetically |
| 10:06:06 | 16 | spelled) was her last name?  Do you remember? |
| 10:06:09 | 17 | A.    I don't. |
| 10:06:10 | 18 | Q.    That Karina knew Carlos Fernandez and vice versa, |
| 10:06:15 | 19 | correct? |
| 10:06:16 | 20 | A.    Correct. |
| 10:06:16 | 21 | Q.    There is no evidence that Camacho, Jr. ever shared his |
| 10:06:19 | 22 | communications with Karina with Carlos Fernandez, correct? |
| 10:06:25 | 23 | A.    Correct. |
| 10:06:57 | 24 | Q.    Going back to the interview as to the photograph of |
| 10:07:03 | 25 | Camacho, Sr., at first my client did not recognize him, |

| | | |
|---|---|---|
| 10:07:06 | 1 | correct? |
| 10:07:07 | 2 | A.      Correct. |
| 10:07:07 | 3 | Q.      And he gave you -- after he looked at the picture, he |
| 10:07:12 | 4 | told you that he did not recognize Camacho, Sr. because |
| 10:07:16 | 5 | Camacho, Sr. usually wears a hat and glasses whenever he's |
| 10:07:20 | 6 | seen him. |
| 10:07:21 | 7 | A.      Correct. |
| 10:07:21 | 8 | Q.      And you can't wear a hat in a DMV photo, right? |
| 10:07:29 | 9 | A.      Correct. |
| 10:07:29 | 10 | Q.      All right.  And the photo you showed him, Camacho, Sr. |
| 10:07:33 | 11 | did not have a hat, right? |
| 10:07:35 | 12 | A.      Correct. |
| 10:07:35 | 13 | Q.      Or glasses? |
| 10:07:36 | 14 | A.      Correct. |
| 10:07:36 | 15 | Q.      And since you've never personally met Camacho, Sr., |
| 10:07:41 | 16 | you don't -- you don't know what he looks like wearing hat |
| 10:07:45 | 17 | and glasses, right? |
| 10:07:46 | 18 | A.      Correct. |
| 10:07:55 | 19 | **MR. RODRIGUEZ:**  I have nothing further.  Thank |
| 10:07:58 | 20 | you, Your Honor.  Thank you, sir. |
| 10:08:00 | 21 | **THE COURT:**  Thank you. |
| 10:08:00 | 22 | Redirect? |
| 10:08:01 | 23 | **MS. DRAGALIN:**  Yes, Your Honor, just one moment. |
| 10:08:29 | 24 | REDIRECT EXAMINATION |
| 10:08:29 | 25 | BY MS. DRAGALIN: |

10:08:31  1    Q.    Agent Hart, you were asked questions about the exhibit

10:08:34  2    with the advertised Instagram prices.  Do you recall that?

10:08:37  3    A.    Yes.

10:08:37  4    Q.    I'm going to pull it up on the screen, Exhibit 34,

10:08:40  5    page 1.  I believe you were asked about the total amount on

10:08:45  6    this exhibit, and you were asked if it was $44,000.

10:08:49  7              What is the total on this exhibit?

10:08:52  8    A.    39,975.

10:08:54  9    Q.    You were also asked about a -- bank records showing

10:08:59  10   cash deposits.  Do you recall that?

10:09:02  11   A.    Yes.

10:09:02  12   Q.    And I believe you were asked if it was Exhibit 101I.

10:09:07  13   I'm going to pull up Exhibit 92 on the screen.

10:09:14  14              Having looked at this exhibit, is the summary

10:09:17  15   chart of cash deposits, actually Exhibit 92?

10:09:21  16   A.    Yes.

10:09:22  17   Q.    And I'm going to pull up Exhibit 6 on the screen.

10:09:30  18   Zoom in on the photo.  Who is this a photograph of?

10:09:40  19   A.    Oscar Camacho, Jr.

10:09:42  20   Q.    And did you meet Oscar Camacho, Jr. in person?

10:09:48  21   A.    Yes.

10:09:48  22   Q.    When?

10:09:49  23   A.    When we served the search warrant on December 20th,

10:09:56  24   2017.

10:09:56  25   Q.    On December 20th, 2017, did Camacho, Jr. look similar

| | | |
|---|---|---|
| 10:10:02 | 1 | to this photograph? |
| 10:10:04 | 2 | A.   Yes. |
| 10:10:05 | 3 | Q.   Now, you were asked during cross-examination about |
| 10:10:10 | 4 | certain statements that Camacho, Jr. -- that defendant |
| 10:10:14 | 5 | Fernandez made regarding Camacho, Jr.   Do you recall that? |
| 10:10:18 | 6 | A.   Yes. |
| 10:10:18 | 7 | Q.   The statements specifically were whether defendant |
| 10:10:23 | 8 | Fernandez said he drove his pops down.   Do you recall that? |
| 10:10:28 | 9 | A.   Yes. |
| 10:10:28 | 10 | Q.   Those statements from defendant Fernandez |
| 10:10:32 | 11 | acknowledging that Camacho, Jr. even existed, at what point |
| 10:10:37 | 12 | of the conversations did those come up? |
| 10:10:40 | 13 | A.   Later on. |
| 10:10:43 | 14 | Q.   Was it after you told defendant Fernandez that you've |
| 10:10:46 | 15 | reviewed Instagram messages between defendant Fernandez and |
| 10:10:50 | 16 | Camacho, Jr.? |
| 10:10:51 | 17 | A.   Yes. |
| 10:10:51 | 18 | Q.   Now, you were also asked about whether a police |
| 10:10:58 | 19 | officer can run a person through CLETS for their personal |
| 10:11:03 | 20 | businesses.   Do you recall that? |
| 10:11:05 | 21 | A.   Yes. |
| 10:11:05 | 22 | Q.   Meaning the law enforcement database showing criminal |
| 10:11:09 | 23 | records; is that right? |
| 10:11:10 | 24 | A.   There is other records on there, but it includes |
| 10:11:13 | 25 | criminal records, yes. |

10:11:14  1    Q.    Now, in California are all private party transfers

10:11:19  2    required to take place at a federal firearms licensee?

10:11:24  3    A.    Yes.

10:11:24  4    Q.    At an FFL?

10:11:27  5    A.    Yes.

10:11:27  6    Q.    As part of the FFL process, is the FFL required to run

10:11:35  7    a background check on the actual buyer of a firearm?

10:11:38  8    A.    Yes.

10:11:39  9    Q.    Going to pull up Exhibit 27, page 2.

10:11:55  10              Who is the buyer on this form?

10:11:58  11   A.    Defendant Fernandez.

10:12:00  12   Q.    And going to page 3.  We'll zoom in on question 21,

10:12:12  13   22, and 23.

10:12:18  14              Can you read Question 21A?

10:12:21  15   A.    "Dates the transferee's identifying information in

10:12:26  16   Section A was transmitted to NICS or the appropriate state

10:12:34  17   agency."

10:12:34  18   Q.    What is NICS?

10:12:38  19   A.    It's the Federal National Instant Background Check

10:12:44  20   System that does the background check for firearms transfer

10:12:47  21   if the state doesn't do it.

10:12:48  22   Q.    And what type of information would an FFL get back by

10:12:53  23   running such a search?

10:12:56  24   A.    What would they get back?  They would get these

10:13:01  25   answers on 21C, whether "proceed" or "denied" or could be

10:13:09   1   "delayed."

10:13:09   2   Q.    If the actual buyer of a firearm has a conviction, a

10:13:18   3   felony conviction, what would be the response from NICS?

10:13:22   4   A.    Denied.

10:13:22   5   Q.    And in No. 21B, can you read that heading?

10:13:29   6   A.    "The NICS" or state transaction number, "if provided,

10:13:34   7   was" --

10:13:36   8   Q.    What is your understanding of what that number shows?

10:13:38   9   A.    That's the number associated with the background

10:13:42  10   check.

10:13:53  11   Q.    I'm going to show you Exhibit 177, page 1.  Who is the

10:14:01  12   buyer listed on this form?

10:14:04  13   A.    Camacho, Sr.

10:14:05  14   Q.    And turning to page 2, what is the date of this

10:14:17  15   particular transaction?

10:14:18  16   A.    July 29, 2017.

10:14:20  17   Q.    Is that the 10th gun transaction we discussed

10:14:23  18   yesterday?

10:14:24  19   A.    Yes.

10:14:24  20   Q.    Was there a background check done for Oscar Camacho,

10:14:33  21   Sr. on July 29, 2017?

10:14:35  22   A.    Yes.

10:14:37  23   Q.    Based on your investigation, was Camacho, Sr. the

10:14:42  24   actual buyer of this firearm?

10:14:44  25   A.    No.

28

| | | |
|---|---|---|
| 10:14:46 | 1 | **MR. RODRIGUEZ:**  Objection.  Speculation. |
| 10:14:48 | 2 | **THE COURT:**  It's going to be a determination that |
| 10:14:52 | 3 | the jury is going to have to make. |
| 10:14:55 | 4 | BY MS. DRAGALIN: |
| 10:14:56 | 5 | Q.    Agent Hart, you were asked about your reports of this |
| 10:15:00 | 6 | investigation regarding proffers, do you recall that? |
| 10:15:03 | 7 | A.    Yes. |
| 10:15:03 | 8 | Q.    In a proffer report, do you write verbatim what is |
| 10:15:06 | 9 | discussed during the interview? |
| 10:15:09 | 10 | A.    No. |
| 10:15:09 | 11 | Q.    Do you write every detail that is discussed in your |
| 10:15:12 | 12 | report? |
| 10:15:12 | 13 | A.    No. |
| 10:15:14 | 14 | Q.    What is the purpose of documenting certain statements |
| 10:15:18 | 15 | in the report? |
| 10:15:21 | 16 | A.    That -- the initial proffer or additional proffer? |
| 10:15:28 | 17 | Q.    Let's start with just an initial proffer. |
| 10:15:32 | 18 | A.    Both documenting potential information that could be |
| 10:15:40 | 19 | utilized in the investigation as well as any other important |
| 10:15:49 | 20 | statements that are made. |
| 10:15:51 | 21 | Q.    And what about and follow-up interview meetings? |
| 10:15:56 | 22 | A.    Follow-up later on, new information or different |
| 10:16:01 | 23 | information. |
| 10:16:02 | 24 | Q.    Does your summary of new or additional information |
| 10:16:06 | 25 | sometimes reiterate things you've heard before? |

UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| 10:16:09 | 1 | A.    It's -- it's possible.  I -- when I do the next |
| 10:16:19 | 2 | proffer or additional -- additional proffer, I have the other |
| 10:16:24 | 3 | reports, and I try to compare and add information that I |
| 10:16:30 | 4 | don't notice in previous report. |
| 10:16:39 | 5 | MS. DRAGALIN:  And, Your Honor, I believe the |
| 10:16:40 | 6 | government failed to move to admit two exhibits that I'd like |
| 10:16:44 | 7 | to admit at this time.  They are marked as Exhibit 202, which |
| 10:16:48 | 8 | is the judicial notice? |
| 10:16:50 | 9 | THE COURT:  One moment.  Let's find it.  202?  Go |
| 10:17:03 | 10 | ahead.  Would you identify it? |
| 10:17:08 | 11 | BY MS. DRAGALIN: |
| 10:17:08 | 12 | Q.    Agent Hart, can I ask you to turn to Tab 202 in the |
| 10:17:14 | 13 | binder? |
| 10:17:14 | 14 | A.    Tab -- excuse me? |
| 10:17:17 | 15 | Q.    202. |
| 10:17:18 | 16 | A.    Sorry, the binder just goes to 201. |
| 10:17:21 | 17 | Q.    Yes, but hopefully you should see tab 202 in there? |
| 10:17:27 | 18 | THE COURT:  Is there any objection to 202? |
| 10:17:29 | 19 | MR. ROBINSON:  No, Your Honor. |
| 10:17:30 | 20 | MR. RODRIGUEZ:  We stipulated to that. |
| 10:17:31 | 21 | THE COURT:  202 is received. |
| 10:17:33 | 22 | (Exhibit No. 202 received in evidence.) |
| 10:17:34 | 23 | MS. DRAGALIN:  Thank you.  The government also |
| 10:17:35 | 24 | would move to admit 203 which I believe has been stipulated |
| 10:17:39 | 25 | to. |

| | | |
|---|---|---|
| 10:17:40 | 1 | **MR. RODRIGUEZ:**  Stipulated and signed. |
| 10:17:41 | 2 | **THE COURT:**  Okay. |
| 10:17:42 | 3 | **MR. ROBINSON:**  That's correct, Your Honor. |
| 10:17:43 | 4 | **THE COURT:**  Okay, received. |
| 10:17:45 | 5 | (Exhibit No. 203 received into evidence.) |
| 10:17:45 | 6 | **MS. DRAGALIN:**  I have no further questions. |
| 10:17:47 | 7 | **THE COURT:**  Thank you, recross? |
| 10:17:48 | 8 | **MR. ROBINSON:**  I have no questions, thank you, |
| 10:17:51 | 9 | sir. |
| 10:17:52 | 10 | **MR. RODRIGUEZ:**  I do, Your Honor.  Thank you. |
| 10:17:55 | 11 | RECROSS EXAMINATION |
| 10:17:55 | 12 | BY MR. RODRIGUEZ: |
| 10:17:57 | 13 | Q.    Okay.  So, when you were asked questions by Ms. |
| 10:18:06 | 14 | Dragalin about the NICS, right?  That's the acronym, right? |
| 10:18:11 | 15 | NICS? |
| 10:18:12 | 16 | A.    Yes. |
| 10:18:12 | 17 | Q.    Okay.  That goes to the issue of a ten-day waiting |
| 10:18:16 | 18 | period, correct?  That is, when someone buys a gun, they have |
| 10:18:21 | 19 | to file a form.  That form is submitted, and if ten days |
| 10:18:24 | 20 | later, if they clear, that's when they get the gun, right? |
| 10:18:28 | 21 | A.    In California. |
| 10:18:28 | 22 | Q.    In California.  Right? |
| 10:18:30 | 23 | A.    Yes. |
| 10:18:30 | 24 | Q.    So, it isn't a situation where if you are -- have an |
| 10:18:35 | 25 | FFL, you can just log in and just look somebody up right |

10:18:39   1    away, right?

10:18:41   2    A.      Correct.

10:18:41   3    Q.      Right.  And the -- whether or not someone is a felon

10:18:46   4    or not depends --

10:18:51   5                      Well -- strike that.

10:18:53   6                      The questions relating to NICS that were

10:19:03   7    asked during redirect have to do with the process by where if

10:19:11   8    a person tries to purchase a gun, an application has to be

10:19:15   9    turned into the government, and then the government will tell

10:19:18  10    you -- will tell the seller whether or not that person can

10:19:22  11    legally buy a gun, correct?

10:19:24  12    A.      Yes.

10:19:24  13    Q.      And that information from the government is based on

10:19:30  14    who fills out the application, correct?

10:19:32  15    A.      Yes.

10:19:32  16    Q.      Okay.  Now, you were asked questions about the report

10:19:40  17    in your -- concerning the procedures and the process that you

10:19:45  18    used.  A police -- a report -- I'm going to start calling it

10:19:55  19    police report for shorthand.  A police report never has all

10:19:59  20    of the information, correct?

10:20:01  21    A.      Yeah.

10:20:01  22    Q.      Because a police report is there to do two things:

10:20:07  23    No. 1 is to document evidence that you find relevant in the

10:20:14  24    case, right?

10:20:15  25    A.      Yes.

| | | |
|---|---|---|
| 10:20:15 | 1 | Q.    It's also there to help you refresh your memory when |
| 10:20:18 | 2 | you have to testify? |
| 10:20:19 | 3 | A.    Yes. |
| 10:20:19 | 4 | Q.    Because sometimes it can take years from the time you |
| 10:20:24 | 5 | write a report to the time you testify? |
| 10:20:27 | 6 | A.    Yes. |
| 10:20:27 | 7 | Q.    And this is the only case you have, right? |
| 10:20:30 | 8 | A.    Yes. |
| 10:20:31 | 9 | Q.    And you were asked that you don't put every detail in |
| 10:20:36 | 10 | your report, right? |
| 10:20:37 | 11 | A.    Yes. |
| 10:20:38 | 12 | Q.    But that doesn't mean you don't put in details, |
| 10:20:41 | 13 | because sometimes details are extremely important, right? |
| 10:20:45 | 14 | A.    Yes. |
| 10:20:45 | 15 | Q.    The size of the information has nothing to do with the |
| 10:20:50 | 16 | importance of that information? |
| 10:20:53 | 17 | A.    Yes. |
| 10:20:53 | 18 | Q.    Okay.  Now, when you wrote that followup and in the |
| 10:21:03 | 19 | followup from October 29, 2019, you clearly state at the top |
| 10:21:08 | 20 | of that report that some of the information provided by |
| 10:21:13 | 21 | Mr. Pelayo during that proffer is a review or a rehash of |
| 10:21:19 | 22 | what he originally told you back in August of 2018, right? |
| 10:21:25 | 23 | A.    Yes. |
| 10:21:25 | 24 | Q.    Okay.  And then you actually take the time to write |
| 10:21:30 | 25 | down -- I'm going to paraphrase here:  This is new |

10:21:36  1    information he told me today.

10:21:42  2    A.    Yes.

10:21:44  3    Q.    Right.  You would never write down:  I think I heard

10:21:51  4    of this sometime before, or:  I don't know where you got

10:21:54  5    this.  You would write down:  This is new information he's

10:21:57  6    provided today?

10:21:58  7    A.    Based on comparing the previous report.

10:22:01  8    Q.    Well, when you wrote that report, you were writing

10:22:03  9    them based on the notes you took that day.

10:22:06  10   A.    Yes, but I was comparing the additional information to

10:22:10  11   the previous report.

10:22:11  12   Q.    Right.  And so, you -- you took notes on October 29th,

10:22:17  13   once you went back to your office, you compared the notes

10:22:20  14   from October 29 to the report that you had -- you already

10:22:25  15   wrote -- you had already written the report from August 2017,

10:22:30  16   right?

10:22:31  17   A.    Correct.

10:22:31  18   Q.    So, you compared the notes from 2019 to the report of

10:22:38  19   2017.

10:22:40  20   A.    Yes.

10:22:40  21   Q.    Okay.  And you said to yourself:  Hey, this is

10:22:44  22   different.  I need to make a special section saying:  This is

10:22:48  23   new information that wasn't given to me back in 2017.

10:22:53  24   A.    In part or whole, yes.

10:22:57  25   Q.    Okay.  Thank you.

34

| | | |
|---|---|---|
| 10:22:58 | 1 | **MS. DRAGALIN:**  And, Your Honor, just briefly may I |
| 10:23:01 | 2 | just ask two questions. |
| 10:23:03 | 3 | **THE COURT:**  Two questions.  Go ahead. |
| 10:23:05 | 4 | REDIRECT EXAMINATION |
| 10:23:05 | 5 | BY **MS. Dragalin:** |
| 10:23:07 | 6 | Q.    Agent Hart, can you please turn to Tab 111 in your |
| 10:23:14 | 7 | binder.  And can you turn to page 19. |
| 10:23:40 | 8 | What date did Adalberto Pelayo sign his plea |
| 10:23:48 | 9 | agreement? |
| 10:23:48 | 10 | A.    On September -- December -- I'm sorry, September 7, |
| 10:23:54 | 11 | 2018. |
| 10:23:54 | 12 | Q.    And turning to page 11 of this plea agreement, can you |
| 10:24:00 | 13 | please read to yourself lines 4 through 6.  The pages at the |
| 10:24:23 | 14 | bottom lines 4 through 6. |
| 10:24:25 | 15 | A.    Lines 4 through 6 on page -- |
| 10:24:27 | 16 | Q.    Eleven. |
| 10:24:28 | 17 | A.    Page 11.  Yes. |
| 10:24:43 | 18 | Q.    On September 7, 2018 did Pelayo provide information |
| 10:24:53 | 19 | about defendant Fernandez suggesting that Ebaria should |
| 10:25:00 | 20 | complete the paperwork? |
| 10:25:09 | 21 | A.    No. |
| 10:25:09 | 22 | Q.    Have you read page 11?  It says page 11 of 21 at the |
| 10:25:17 | 23 | bottom. |
| 10:25:17 | 24 | A.    Lines 4 through 6? |
| 10:25:20 | 25 | Q.    Yes.  Top paragraph. |

10:25:22  1    A.     Saying "Ebaria suggested"?

10:25:27  2    Q.     Who do you understand person A to mean?

10:25:30  3    A.     Oh, person A, I apologize.  I was looking at the name.

10:25:33  4    I apologize.

10:25:46  5               Yes -- question -- could you repeat the

10:25:50  6    question please?

10:25:51  7    Q.     Sure.  On September 7, 2018, did Pelayo in his plea

10:25:57  8    agreement state that defendant Fernandez suggested that

10:26:01  9    Ebaria should complete the paperwork?

10:26:03  10   A.     Yes.

10:26:05  11              **MS. DRAGALIN:**  No further questions.

10:26:06  12              **THE COURT:**  Recross?

10:26:08  13              **MR. RODRIGUEZ:**  Yes, Your Honor.

10:26:10  14                   **THE COURT:**  Re-recross.

10:26:10  15                   RECROSS-EXAMINATION

10:26:10  16   BY MR. RODRIGUEZ:

10:26:18  17   Q.     Special Agent Hart, were you here on the date that

10:26:20  18   plea was taken?

10:26:22  19   A.     No.

10:26:22  20   Q.     Did you write that plea agreement?

10:26:23  21   A.     No.

10:26:24  22   Q.     Did you -- do you know -- strike that.

10:26:29  23              Sir, isn't it true that it was the

10:26:31  24   prosecution that wrote that plea agreement?

10:26:34  25   A.     I don't know.

| | | |
|---|---|---|
| 10:26:36 | 1 | Q.    Okay.  You, in your ten-year experience as a federal |
| 10:26:42 | 2 | agent and hundreds of cases you've been involved with, you |
| 10:26:45 | 3 | are aware that plea agreements are written by the |
| 10:26:48 | 4 | prosecution, right? |
| 10:26:51 | 5 | A.    Generally. |
| 10:26:52 | 6 | Q.    Right.  As in -- by generally, as in almost always. |
| 10:26:59 | 7 | Strike that. |
| 10:27:00 | 8 |       Let me ask you this:  Have you ever been part |
| 10:27:02 | 9 | of a case where the defense gets to write a plea agreement |
| 10:27:05 | 10 | for clients? |
| 10:27:08 | 11 | A.    Actually, I'm not involved in that part, but I believe |
| 10:27:12 | 12 | you're right. |
| 10:27:12 | 13 | Q.    Okay.  Great answer.  Thank you. |
| 10:27:17 | 14 |       MR. RODRIGUEZ:  Nothing further. |
| 10:27:18 | 15 |       THE COURT:  Thank you.  Thank you very much for |
| 10:27:22 | 16 | your testimony. |
| 10:27:22 | 17 |       Next witness? |
| 10:27:25 | 18 |       MS. DRAGALIN:  Your Honor, subject to the exhibits |
| 10:27:27 | 19 | being admitted, the government rests. |
| 10:27:32 | 20 |       THE COURT:  Defense? |
| 10:27:32 | 21 |       MR. ROBINSON:  Your Honor, may we address a matter |
| 10:27:35 | 22 | outside the presence of the jury with the Court. |
| 10:27:37 | 23 |       THE COURT:  You can approach the sidebar. |
| 10:27:53 | 24 |       (Sidebar conference.) |
| 10:27:53 | 25 |       THE COURT:  I assume you have a Rule 29 motion. |

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
| 10:27:56 | 1  | **MR. ROBINSON:**  And some others, Your Honor.              |
| 10:27:57 | 2  | Though we are, subject to our motion for                     |
| 10:28:00 | 3  | reconsideration, we're going to rest on the state of the     |
| 10:28:03 | 4  | evidence.                                                    |
| 10:28:05 | 5  | **THE COURT:**  Okay.  And put your -- for the record,       |
| 10:28:08 | 6  | you would like to make a Rule 29 motion?                     |
| 10:28:11 | 7  | **MR. ROBINSON:**  Yes, I do.  I'd like to be heard on       |
| 10:28:13 | 8  | that.  I've got another motion that I expect I'll be making  |
| 10:28:17 | 9  | as well depending on what Officer Fernandez does.            |
| 10:28:21 | 10 | **THE COURT:**  Rule 29?                                     |
| 10:28:22 | 11 | **MR. RODRIGUEZ:**  Rule 29.  Resting on the evidence.       |
| 10:28:25 | 12 | No witnesses.  We can argue today.                           |
| 10:28:28 | 13 | **THE COURT:**  A little bit of a surprise.  Okay.           |
| 10:28:30 | 14 | So --                                                        |
| 10:28:31 | 15 | **MR. RODRIGUEZ:**  You got to play as it lays.              |
| 10:28:37 | 16 | **THE COURT:**  So, maybe it would be a good idea to         |
| 10:28:40 | 17 | excuse the jury.                                             |
| 10:28:42 | 18 | **MR. ROBINSON:**  Yes, Your Honor.                          |
| 10:28:43 | 19 | **MR. RODRIGUEZ:**  Thank you.                               |
| 10:28:50 | 20 | (In open court.)                                             |
| 10:29:02 | 21 | **THE COURT:**  So, there are certain legal issues for       |
| 10:29:07 | 22 | the Court to handle at this time.  So, I'm going to excuse   |
| 10:29:12 | 23 | the jury.  It's quite early.  We were going to stop at 12:00 |
| 10:29:18 | 24 | o'clock.  So let me have the jury return at 11:00 o'clock.   |
| 10:29:23 | 25 | And then we'll -- you'll have your regular lunch at 12.  So, |

| | | |
|---|---|---|
| 10:29:27 | 1 | this is a half hour break. |
| 10:29:29 | 2 | COURT CLERK:  All rise to the jury, please. |
| 10:29:33 | 3 | (Following proceedings held outside the presence |
| 10:29:54 | 4 | of the jury.) |
| 10:30:05 | 5 | THE COURT:  Okay, we have the jury excused. |
| 10:30:06 | 6 | Counsel are present with the defendants. |
| 10:30:08 | 7 | Please have a seat. |
| 10:30:09 | 8 | So, at sidebar, there was an indication by |
| 10:30:16 | 9 | both counsel that both counsel would not be offering any |
| 10:30:20 | 10 | evidence of in the case, any witnesses in the case; is that |
| 10:30:24 | 11 | correct. |
| 10:30:24 | 12 | MR. ROBINSON:  On behalf of officer Arao, yes. |
| 10:30:28 | 13 | THE COURT:  So, Officer Arao would be resting; is |
| 10:30:31 | 14 | that correct? |
| 10:30:31 | 15 | MR. ROBINSON:  That's correct, subject to the |
| 10:30:33 | 16 | Court's ruling on the motion for reconsideration. |
| 10:30:35 | 17 | THE COURT:  Mr. Rodriguez? |
| 10:30:36 | 18 | MR. RODRIGUEZ:  The same for Officer Fernandez, we |
| 10:30:39 | 19 | will not be putting on a case.  I did yesterday or last night |
| 10:30:43 | 20 | my office filed a judicial -- a request for the Court to take |
| 10:30:48 | 21 | judicial notice of certain things. |
| 10:30:52 | 22 | THE COURT:  Did the government receive a copy of |
| 10:30:54 | 23 | that? |
| 10:30:54 | 24 | MS. DRAGALIN:  Yes, Your Honor.  We have no |
| 10:30:57 | 25 | objection. |

| | | |
|---|---|---|
| 10:30:57 | 1 | **THE COURT:**  Okay. |
| 10:31:05 | 2 | **MR. ROBINSON:**  Ms. Robinson needed to use the |
| 10:31:08 | 3 | restroom.  May she be excused with your permission? |
| 10:31:11 | 4 | **THE COURT:**  Yes, please.  Does anyone need a |
| 10:31:13 | 5 | restroom break before we start? |
| 10:31:15 | 6 | Yes, I think we have one counsel who's |
| 10:31:18 | 7 | requested it.  So, let's take a short break, a ten-minute |
| 10:31:22 | 8 | recess. |
| 10:31:27 | 9 | (Recess taken.) |
| 10:50:08 | 10 | **THE COURT:**  So, we're back on the record.  We have |
| 10:50:11 | 11 | counsel present, the defendants are present. |
| 10:50:17 | 12 | Mr. Robinson has filed with the Court a |
| 10:50:23 | 13 | motion for mistrial based on Burton error, or alleged Burton |
| 10:50:28 | 14 | error.  We'll put that aside for the time being. |
| 10:50:33 | 15 | And now, Mr. Robinson, it's your opportunity |
| 10:50:38 | 16 | to address the issues implicated in the Rule 29 motion, just |
| 10:50:49 | 17 | for purposes of the record, just to provide some guidance to |
| 10:50:54 | 18 | counsel.  So, we'll put Officer Fernandez aside for the time |
| 10:51:28 | 19 | being, and the focus here is on Officer Arao. |
| 10:51:32 | 20 | So, Officer Arao is charged in counts 1 |
| 10:51:36 | 21 | through 3, along with defendant Fernandez, with conspiracy to |
| 10:51:40 | 22 | engage in the business of dealing with firearms without a |
| 10:51:42 | 23 | license, and then the substantive counts, two and three, with |
| 10:51:50 | 24 | engaging in business of dealing in firearms without a |
| 10:51:54 | 25 | license. |

10:51:57  1        **MR. ROBINSON:**  If I may, Your Honor.  It's only

10:51:59  2  Counts One and Three for Officer Arao.

10:52:01  3        **THE COURT:**  I'm sorry, Count Two is no longer in

10:52:03  4  place.

10:52:04  5        **MR. ROBINSON:**  Count Two is as to Officer

10:52:07  6  Fernandez.

10:52:08  7        **THE COURT:**  Officer Fernandez alone.

10:52:39  8        Okay, please start.

10:52:42  9        **MR. ROBINSON:**  Your Honor, thank you.  I'm going

10:52:44  10  to be very brief on the Rule 29.

10:52:46  11        As we've discussed throughout this entire

10:52:49  12  litigation, the only issue that we're contesting with respect

10:52:54  13  to Officer Arao is whether or not the government can prove

10:52:57  14  beyond a reasonable doubt that he acted wilfully.

10:52:59  15        And we've submitted a heightened

10:53:02  16  "willfulness" instruction to the Court, but we would suggest,

10:53:06  17  respectfully, that regardless of which standard of wilfulness

10:53:10  18  is applied, including the one that was adopted for these

10:53:14  19  cases by the United States Court in the Bryan matter, the

10:53:18  20  government has failed to present evidence that Officer Arao

10:53:22  21  knew that he was violating the law, and clearly we don't

10:53:27  22  believe that there has been proof of that beyond a reasonable

10:53:30  23  doubt, and for Rule 29 purposes, we'd suggest that these

10:53:34  24  counts against Officer Arao should be dismissed.

10:53:38  25        But I'll submit to the record, Your Honor.

| | |
|---|---|
| 10:53:41 | 1 |
| 10:53:43 | 2 |
| 10:53:44 | 3 |
| 10:53:45 | 4 |
| 10:53:48 | 5 |
| 10:53:53 | 6 |
| 10:53:56 | 7 |
| 10:53:58 | 8 |
| 10:54:01 | 9 |
| 10:54:05 | 10 |
| 10:54:08 | 11 |
| 10:54:12 | 12 |
| 10:54:17 | 13 |
| 10:54:20 | 14 |
| 10:54:22 | 15 |
| 10:54:25 | 16 |
| 10:54:29 | 17 |
| 10:54:30 | 18 |
| 10:54:33 | 19 |
| 10:54:36 | 20 |
| 10:54:40 | 21 |
| 10:54:45 | 22 |
| 10:54:48 | 23 |
| 10:54:51 | 24 |
| 10:54:53 | 25 |

THE COURT:  Well, what's the evidence regarding both of those?

MS. DRAGALIN:  Yes, Your Honor, we've introduced evidence that defendant Arao went through the application process to become a federal firearms licensee.  Therefore, he of course knew of the requirements that you have to have a federal license to deal in firearms.

He also was warned every single time that he bought a gun on a Form 4473 that you need to have a federal firearms license to engage in the business of dealing in firearms.  That form furthermore defined specifically with reference to 18 USC 921 what it means to engage in the business of dealing in firearms, and the defendant had to sign that form every time he bought a gun.

So the government's position is that that evidence establishes that the defendant certainly knew of the licensing requirement.

The law on the Ninth Circuit is clear that a specific wilfulness standard is not that he knew about this specific law.  He just had to know that it was unlawful in general, meaning he could break any law.  The government had certainly proved in this case that he knew about the specific law.

THE COURT:  Mr. Robinson?

MR. ROBINSON:  Just two comments, Your Honor.  As

| | | |
|---|---|---|
| 10:54:55 | 1 | the Court is aware, 4473 law provides a definition of what |
| 10:55:00 | 2 | he's dealing, but it does not talk about what is the crime, |
| 10:55:07 | 3 | "willfulness." |
| 10:55:07 | 4 | We have in the record judicial notice of the |
| 10:55:10 | 5 | California laws which do allow for a private party transfer, |
| 10:55:15 | 6 | where you don't need a license. |
| 10:55:17 | 7 | Having said all of that, if the government is |
| 10:55:19 | 8 | going to argue that based upon the definition of what is |
| 10:55:24 | 9 | dealing and only dealing that they have prove willfulness, we |
| 10:55:27 | 10 | would suggest that it sounds like the government is trying to |
| 10:55:30 | 11 | prove a deliberate ignorance type of method of proving |
| 10:55:34 | 12 | wilfulness; and while that may be with respect to knowledge, |
| 10:55:37 | 13 | there is no position by the government that Officer Arao |
| 10:55:42 | 14 | engaged in the deliberate ignorance to prove knowledge of the |
| 10:55:45 | 15 | crime. |
| 10:55:47 | 16 | Deliberate ignorance cannot be, specifically |
| 10:55:51 | 17 | can't be used to prove wilfulness. |
| 10:55:56 | 18 | And so what we're left with are competing |
| 10:56:00 | 19 | laws, state and federal.  What we're left with is no direct |
| 10:56:09 | 20 | evidence of Officer Arao knowing that he was violating the |
| 10:56:12 | 21 | law when he was doing what he was doing, and certainly there |
| 10:56:16 | 22 | hasn't been proof beyond a reasonable doubt that Officer Arao |
| 10:56:20 | 23 | knew that he was violating the law. |
| 10:56:22 | 24 | He wasn't charged with false statements, he |
| 10:56:25 | 25 | wasn't charged with selling to a prohibited person.  The only |

```
10:56:30  1    thing that he was charged with was wilfully dealing without a
10:56:34  2    license.  And the evidence certainly doesn't rise to the
10:56:37  3    level to support a jury verdict of guilt at this stage.
10:56:42  4              And so we'd ask the Court to respectfully
10:56:45  5    grant our Rule 29 motion.
10:56:48  6         THE COURT:  Well, it's certainly a close case.
10:56:50  7    Let me hear more from the government.
10:56:52  8         MS. DRAGALIN:  Sure, Your Honor.  We've put the
10:56:56  9    Form 4473 on the screen repeatedly throughout the trial, but
10:56:59  10   if it will be helpful, I could pull it out and point to the
10:57:03  11   particular section that notifies the buyer:  It is a
10:57:06  12   violation of law to deal without a license.
10:57:08  13             That is the warning in terms of "wilfulness."
10:57:11  14   And it warns the buyer:  If you deal firearms, and you don't
10:57:16  15   have a license to do so, you are violating federal law.
10:57:20  16             And so, I don't see how it could be any more
10:57:24  17   crystal clear.
10:57:26  18        THE COURT:  It's not crystal clear.
10:57:32  19        MS. DRAGALIN:  Your Honor, the evidence here
10:57:34  20   suggests that the form itself says that to deal in firearms,
10:57:37  21   you need to have a license.
10:57:38  22             We've introduced certified records showing
10:57:40  23   that Mr. -- defendant Arao was not individually licensed to
10:57:47  24   deal in firearms.  The evidence has also established that
10:57:50  25   every single one of the charged transactions against
```

10:57:53  1    defendant Arao was done in his capacity as a private party

10:57:57  2    transfer and in his capacity as an individual.

10:57:59  3              Furthermore, the guns that were sold were

10:58:03  4    off-roster firearms that could not be sold by the FFL that he

10:58:07  5    owned.  So, of course he was operating in his individual

10:58:10  6    capacity as a police officer to sell guns that his business

10:58:14  7    could not sell to people.  So, he was acting as an

10:58:18  8    individual, and as an individual, he did not have a license,

10:58:21  9    that he knew he didn't have a license, and he knew you needed

10:58:26  10   a license because he applied for one and held one as a

10:58:29  11   business.

10:58:30  12             MR. ROBINSON:  May I briefly --

10:58:32  13             THE COURT:  Very briefly.

10:58:33  14             MR. ROBINSON:  Your Honor, you took judicial

10:58:34  15   notice of California law.  With respect to the private party

10:58:38  16   transfers, those are unlicensed transfers.

10:58:43  17             THE COURT:  What is the government's response to

10:58:45  18   the California law and the confusion it can cause?

10:58:47  19             MS. DRAGALIN:  Your Honor, the government's

10:58:49  20   position is that it is not confusing.  One, private party

10:58:53  21   transfer under California law is legal, straightforward, and

10:58:57  22   acceptable.  What is not legal is selling 41 guns in a period

10:59:03  23   of two years without a license.

10:59:06  24             We believe that the evidence this jury has

10:59:10  25   heard is very clear about the fact that that is not a

```
10:59:12   1    difficult distinction for any person, let alone for a police

10:59:17   2    officer or for someone who has actually gone through the

10:59:20   3    application process for a license.

10:59:23   4          MR. ROBINSON:   If I may, looking at the judicial

10:59:27   5    notice you have taken, California law permitting the selling

10:59:33   6    of off-roster firearms to a party transfer.  A private party

10:59:35   7    occurs when the transferor and the transferee of the firearm

10:59:37   8    were not licensed firearm dealers.

10:59:39   9                There is absolutely no limitation in

10:59:42  10    California law on the number of transfers, and it doesn't

10:59:48  11    have to be licensed.  And the government knows this.  And

10:59:51  12    this is what we raised in our vagueness challenge, but the

10:59:55  13    government has not proven in their case in chief that these

10:59:57  14    private party transfers between unlicensed people is

11:00:02  15    unlawful.  They haven't.  And that's the only evidence they

11:00:05  16    have.

11:00:05  17          THE COURT:   Let me hear from the government on

11:00:07  18    whether there is a limitation under California law as to the

11:00:09  19    number of transfers.

11:00:11  20          MS. DRAGALIN:   Your Honor, there actually is under

11:00:13  21    California law.  We don't believe that's relevant in this

11:00:15  22    case, we haven't brought it up; but there is a limitation

11:00:19  23    under California law how often you can engage in private

11:00:22  24    party transfers.  We don't think that's relevant.  They're

11:00:24  25    charged with --
```

| | | |
|---|---|---|
| 11:00:25 | 1 | **THE COURT:** Well, it is relevant. So, let me hear |
| 11:00:27 | 2 | argument. |
| 11:00:28 | 3 | **MS. DRAGALIN:** Sure. California law also has a |
| 11:00:32 | 4 | prohibition on the number of firearms that you can sell |
| 11:00:35 | 5 | through private party transfer. And so these defendants are |
| 11:00:38 | 6 | also violating California law. We will not argue that in |
| 11:00:42 | 7 | this closing. |
| 11:00:43 | 8 | **THE COURT:** You argue that California law provides |
| 11:00:47 | 9 | a limitation on the number of transfers. What's the |
| 11:00:50 | 10 | citation? |
| 11:00:51 | 11 | **MS. DRAGALIN:** I can -- |
| 11:00:52 | 12 | Just a second, Your Honor. |
| 11:00:59 | 13 | That penal code is listed in the government's |
| 11:01:04 | 14 | introductory allegations, and it should be in California |
| 11:01:11 | 15 | Penal Code Section 3200. I don't have the specific |
| 11:01:14 | 16 | subsection, but if -- we can find it in just a moment, Your |
| 11:01:19 | 17 | Honor. |
| 11:02:00 | 18 | **THE COURT:** Mr. Robinson, do you wish to address |
| 11:02:02 | 19 | the Court on this issue? |
| 11:02:03 | 20 | **MR. ROBINSON:** I absolutely do, Your Honor. |
| 11:02:04 | 21 | **THE COURT:** I need to see the citation. |
| 11:02:06 | 22 | **MR. ROBINSON:** But if I may, and I do appreciate |
| 11:02:08 | 23 | the government's position that they will not argue any |
| 11:02:11 | 24 | California limitation, because it's not relevant to this |
| 11:02:14 | 25 | case. And we agree, it's not. It was not charged in the |

11:02:20  1    indictment, and therefore it would be a constructive

11:02:23  2    amendment to argue otherwise, and we appreciate them not

11:02:26  3    arguing that.

11:02:27  4              The California private party transfer law in

11:02:30  5    the indictment deals only with the fact that private party

11:02:35  6    transfers between private parties are acceptable.  There is

11:02:39  7    no license requirement.  That's all that was indicted.  And

11:02:43  8    again, we do appreciate the government's position --

11:02:46  9         **THE COURT:**  Let me get a copy of the indictment

11:02:47 10    from the clerk.  May I have it?

11:02:50 11         COURT CLERK:  Yes, Your Honor.

11:02:58 12         **MS. DRAGALIN:**  Your Honor, just to clarify, I did

11:03:00 13    not mean to suggest that the government will not argue that

11:03:04 14    California law is irrelevant entirely.

11:03:08 15              In fact, the part -- the judicial notice does

11:03:11 16    state the exemption for law enforcement officers, and in

11:03:14 17    particular, the exemption states in California law that it

11:03:17 18    is -- for firearms to be purchased for the discharge -- to be

11:03:22 19    used in the discharge of the police officer's duty.

11:03:24 20              It is the government's position --

11:03:27 21         **THE COURT:**  Well, before we move forward, let me

11:03:29 22    have the -- I need to see the law, the California law that

11:03:34 23    the government has referred to first.

11:03:36 24         **MS. DRAGALIN:**  That specific limitation is not

11:03:39 25    included in the allegations, Your Honor.  I believe it's

|       |    |                                                                   |
|-------|----|-------------------------------------------------------------------|
| 11:03:41 | 1  | under one of these Penal Code Sections.  I don't have the      |
| 11:03:46 | 2  | specific subsection or California penal section code.  If we   |
| 11:03:54 | 3  | take a short recess, I can provide copies to the Court of      |
| 11:03:58 | 4  | that citation.                                                 |
| 11:03:59 | 5  | THE COURT:  Yeah, I think we're in the process of  |
| 11:04:01 | 6  | trying to secure them now.  So, I appreciate that.             |
| 11:04:10 | 7  | MR. ROBINSON:  May I have one moment?            |
| 11:04:12 | 8  | THE COURT:  And I'll need to review the indictment  |
| 11:04:14 | 9  | also.                                                          |
| 11:04:19 | 10 | (Discussion off the record.)                                   |
| 11:05:56 | 11 | THE COURT:  Which portions in the indictment would |
| 11:06:00 | 12 | you direct the Court to?                                        |
| 11:06:01 | 13 | MS. DRAGALIN:  Your Honor, it begins on page 3 of  |
| 11:06:03 | 14 | paragraph 9 of the introductory allegations.  This section     |
| 11:06:08 | 15 | discusses some of the relevant penal code provisions under     |
| 11:06:12 | 16 | California law with respect to buying and selling firearms.    |
| 11:07:09 | 17 | THE COURT:  What part of the penal code restricts   |
| 11:07:12 | 18 | the number of private party transfers?                         |
| 11:07:16 | 19 | MS. DRAGALIN:  That's the subsection, Your Honor,   |
| 11:07:17 | 20 | that I'm having a hard time finding.  I can represent to the   |
| 11:07:21 | 21 | Court that our expert, Mr. -- Special Agent David Hamilton     |
| 11:07:28 | 22 | told me that under California law, he believes that there is   |
| 11:07:30 | 23 | a limit of only doing five private party transfers.           |
| 11:07:35 | 24 | THE COURT:  He's not a legal expert.  I mean, he    |
| 11:07:38 | 25 | has -- he has an understanding as a Special Agent, but I'm     |

11:07:42  1    looking for the citation.

11:07:44  2              MS. DRAGALIN:   And Agent Duncan is calling him

11:07:49  3    right now to get the specific citation.

11:07:56  4              MR. ROBINSON:   And if I could direct the Court's

11:07:59  5    attention to line 21 of page 3 of the indictment where it

11:08:03  6    says "or through a private party transfer."

11:08:06  7                     And the only law in this case, because the

11:08:10  8    case is now closed, is as set forth in the judicial notice

11:08:15  9    that you took, that's an exhibit before this jury.

11:08:18  10                    And, again, I do appreciate the government

11:08:20  11   not arguing and telling this Court that if there is a

11:08:25  12   limitation, it is irrelevant in this case.  You know, I think

11:08:29  13   that's -- I agree with them, and I appreciate them taking

11:08:33  14   that position, because otherwise it would be a constructive

11:08:36  15   amendment.

11:08:37  16             THE COURT:   Yeah, I think you've said that, and --

11:08:39  17                    I'm looking at whether there is any

11:08:42  18   limitation under California law, and the first instance --

11:08:44  19   and then we can get to your second argument -- that even if

11:08:48  20   there is, it's irrelevant to the issues presented here in

11:08:51  21   reference to the indictment charged by the government.

11:09:00  22                    (Discussion off the record.)

11:09:18  23             THE COURT:   Anything further, Mr. Robinson, on

11:09:20  24   this issue?

11:09:20  25             MR. ROBINSON:   Only, Your Honor, if it's taking us

11:09:22  1  this long to find what is deemed to be a irrelevant law under

11:09:27  2  California law, then I would suggest that the government

11:09:31  3  respectfully is in a bind, and it has not proven Agent Arao's

11:09:37  4  or Officer Arao's wilfulness beyond a reasonable doubt.

11:09:40  5          And I'll submit it to you on that.  If you

11:09:43  6  have any questions, I'll address them.  Thank you.

11:09:44  7          THE COURT:  We'll come back to this I think later,

11:09:46  8  and then --

11:09:47  9          Is there a motion --

11:09:49  10         Any other motions that you wish to be heard

11:09:52  11  on?

11:09:52  12         MR. ROBINSON:  Yes, Your Honor, subject to your

11:09:54  13  ruling on the motion for Rule 29.  The parties have briefed,

11:09:57  14  I think, very thoroughly the motion for our reconsideration

11:10:02  15  of order denying introduction of evidence on

11:10:04  16  cross-examination; in the alternative, a mistrial.  That's

11:10:06  17  document 240.  And we will submit on those pleadings.

11:10:10  18         THE COURT:  The motion for reconsideration is

11:10:12  19  denied.

11:10:13  20         MR. ROBINSON:  And then, Your Honor, with respect

11:10:15  21  to the Bruton issue, which as I understand we make take that

11:10:18  22  up later only if necessary, but I do want to perfect the

11:10:21  23  record on that.

11:10:22  24         I have spoken with Mr. Rodriguez's counsel

11:10:27  25  for Officer Fernandez.  I've asked Mr. Rodriguez whether or

11:10:33  1   not Officer Fernandez would testify on behalf of Agent Arao

11:10:37  2   specifically to what occurred yesterday, and Mr. Rodriguez

11:10:40  3   has informed me that Officer Arao is going to assert his

11:10:44  4   right to remain silent under the Fifth Amendment.  Excuse me,

11:10:47  5   Officer Fernandez is going to assert his right to remain

11:10:51  6   silent under the Fifth Amendment.

11:10:54  7            MR. RODRIGUEZ:  And that's correct, Your Honor.

11:10:55  8            THE COURT:  So, I'll assume that that would be the

11:10:57  9   case, if you were to call Officer Fernandez, he would assert

11:11:02  10  his Fifth Amendment right.

11:11:03  11            So, go ahead, if you wish to argue the Burton

11:11:07  12  issue.

11:11:08  13            MR. ROBINSON:  I think the Burton issue is clear,

11:11:10  14  Your Honor.  There was evidence presented in this case

11:11:13  15  that --

11:11:13  16            THE COURT:  One moment.

11:11:16  17            MR. ROBINSON:  Yes, sir.

11:14:02  18            (Brief pause.)

11:14:04  19            THE COURT:  We'll have to come back to this.

11:16:19  20            Okay, back on the issue of whether California

11:16:22  21  law restricts the number of transactions.  So, I have a

11:16:26  22  Section 12070 of the Penal Code, and I'm referencing only in

11:16:38  23  part -- it references:  "No person shall sell, lease or

11:16:41  24  transfer firearms unless he or she has been issued a license

11:16:44  25  pursuant to Section 12071.  Any person violating this section

| | | |
|---|---|---|
| 11:16:49 | 1 | is guilty of a misdemeanor." |
| 11:16:51 | 2 | And then Subsection B states that: |
| 11:16:55 | 3 | "Subsection A does not apply to the following."  And one of |
| 11:17:02 | 4 | the items listed is the infrequent sale, lease or transfer of |
| 11:17:06 | 5 | firearms. |
| 11:17:07 | 6 | And then Subsection 19(c)(1)(A) reads as |
| 11:17:21 | 7 | follows:  "As used in this section, 'infrequent' means for |
| 11:17:27 | 8 | handguns, less than six transactions per calendar year for |
| 11:17:36 | 9 | this purpose.  'Transaction' means a single sale, lease or a |
| 11:17:36 | 10 | transfer of any number of handguns." |
| 11:17:41 | 11 | So, looks like there is a limitation for six |
| 11:17:44 | 12 | transactions per calendar year but with -- a transaction can |
| 11:17:48 | 13 | include more than one handgun.  As I understand it. |
| 11:17:51 | 14 | **MR. ROBINSON:**  Right, but that does not reference |
| 11:17:53 | 15 | the private party transfer law under 27545 of the penal code, |
| 11:18:00 | 16 | which is the one that the government is relying on in this |
| 11:18:03 | 17 | indictment, and that's why Ms. Dragalin told the Court that |
| 11:18:06 | 18 | what you're looking at is irrelevant, they don't intend to |
| 11:18:09 | 19 | argue it because it was not charged that way. |
| 11:18:12 | 20 | And if I may, 27545 of the California Penal |
| 11:18:18 | 21 | Code, which is what this Court took judicial notice of and |
| 11:18:21 | 22 | told the jury, does not put any limitation on unlicensed |
| 11:18:25 | 23 | private party transfers.  And that's what this case was |
| 11:18:25 | 24 | indicted as. |
| 11:18:30 | 25 | And I do appreciate very much Ms. Dragalin |

11:18:34  1    telling the Court that what you just looked at doesn't apply

11:18:38  2    to this case because it wasn't charged this way.  Anyway --

11:18:43  3    and by the way, there is no evidence of this anyway.

11:18:46  4    There's no evidence in the record of what you said.

11:18:46  5        **THE COURT:**  I understand.  Let's move on to the

11:18:50  6    Bruton, then.

11:18:50  7        **MR. ROBINSON:**  With respect to Bruton, Your Honor.

11:18:54  8    Yesterday Agent Hart was testifying about evidence that went

11:18:57  9    to Count Four and dealt with one of the Camachos.

11:19:01  10            This case was bifurcated so that there would

11:19:04  11   be no prejudicial spillover, and the other constructive

11:19:13  12   amendment issues that we had briefed earlier would not

11:19:15  13   present themselves.

11:19:16  14            The evidence was being presented through

11:19:19  15   Agent Hart as applied only to Officer Fernandez.  There is a

11:19:28  16   coconspirator's statement that under Federal Rule of Evidence

11:19:33  17   801(b)(2)(E) is admissible against Officer Fernandez

11:19:39  18   according to the Court's rulings, but it had nothing to do

11:19:42  19   with Officer Arao because he was not named in that

11:19:46  20   conspiracy.

11:19:48  21            The text in the exhibit there attached to our

11:19:51  22   motion talked about the Chinese.  Officers Arao is Japanese.

11:19:59  23   And that statement, pursuant to your rulings, did not apply

11:20:05  24   to Officer Arao because it was hearsay as to him, and you

11:20:10  25   instructed the jury they could not consider that evidence

11:20:13  1    against Officer Arao.

11:20:15  2                    The prosecution asked Officer Hart what he

11:20:19  3    thought or who he thought "Chinese" referred to in Officer

11:20:27  4    Fernandez's declaration.

11:20:28  5              THE COURT:  Let me stop you there.

11:20:29  6                    Why did the government elicit that question

11:20:34  7    from the Special Agent?

11:20:34  8              MS. DRAGALIN:  Yes, Your Honor.

11:20:36  9              THE COURT:  In light of the bifurcation of the

11:20:37  10   case, in light of the specific instruction the Court had

11:20:41  11   provided the jury.  And then also, separate and apart from

11:20:45  12   all of that, it's pure speculation.

11:20:47  13             MS. DRAGALIN:  And, Your Honor -- yes.  So, the

11:20:49  14   limiting instruction the Court gave specifically provided

11:20:52  15   that to the extent that you hear any evidence regarding

11:20:57  16   defendant Arao --

11:20:57  17             THE COURT:  Why did you ask the question?

11:20:58  18             MS. DRAGALIN:  Because, Your Honor, that statement

11:21:00  19   is a coconspirator statement with respect to Count One.

11:21:04  20             THE COURT:  It's pure speculation.

11:21:05  21             MS. DRAGALIN:  Your Honor, respectfully, the agent

11:21:07  22   has seen that specific phrase multiple times during this

11:21:11  23   investigation.  He used to refer --

11:21:14  24             THE COURT:  It's up to the jury to draw that

11:21:16  25   conclusion.  You can argue it.  It's pure speculation for the

11:21:20  1    agent to offer that testimony.

11:21:23  2              MS. DRAGALIN:  The agent was merely going to offer

11:21:26  3    lay opinion testimony about his understanding of certain

11:21:28  4    terms during the course of this investigation.  That was the

11:21:29  5    intent of the question, to elicit --

11:21:31  6              THE COURT:  This doesn't call for lay opinion

11:21:33  7    testimony.

11:21:34  8              MS. DRAGALIN:  Your Honor, there are cases in the

11:21:35  9    Ninth Circuit that state that an agent who has familiarity

11:21:38  10   with a case can offer an opinion as to what terms mean.

11:21:42  11             THE COURT:  Counsel, the question should not have

11:21:44  12   been asked.

11:21:44  13             MS. DRAGALIN:  And, Your Honor, but I just would

11:21:46  14   like to clarify for the record that statements made by

11:21:49  15   defendant Fernandez during the course of the conspiracy

11:21:52  16   charged in Count One are admissible as coconspirator

11:21:56  17   statements if they are done in the --

11:21:59  18             THE COURT:  I don't think you're hearing me.  The

11:22:01  19   question should not have been asked.  The Court finds it to

11:22:06  20   be improper.

11:22:06  21             MS. DRAGALIN:  I would just like for the record --

11:22:08  22             THE COURT:  I think you made the record.

11:22:08  23             MS. DRAGALIN:  Thank you, Your Honor.

11:22:09  24             THE COURT:  The question is whether it has been

11:22:11  25   cured by the instruction provided to the jury to disregard

11:22:14  1   it.

11:22:14  2          MR. ROBINSON:  And if I may, the question was

11:22:16  3   designed to put into Officer Fernandez's mouth that he was

11:22:21  4   talking about Officer Arao, that is classic Bruton error

11:22:28  5   because that statement was inadmissible against Officer Arao

11:22:33  6   because Officer Arao, as you instructed this jury and we

11:22:37  7   agreed, was not part of the conspiracy that this portion of

11:22:41  8   the case was being offered for.

11:22:43  9          And so the jury was left with the clear

11:22:47  10  impression through the agent's speculative opinion that they

11:22:54  11  heard, that Officer Arao -- excuse me, Officer Fernandez was

11:22:59  12  talking to his coconspirator No. 1 about Officer Arao.

11:23:03  13         Now, the government asked that question

11:23:06  14  knowing the limitations that had been placed by you and in

11:23:13  15  agreement by the parties on what that particular evidence was

11:23:16  16  to be used for, and it was not to be used against Officer

11:23:19  17  Arao.

11:23:19  18         Bruton stands for the very clear proposition

11:23:23  19  that if a codefendant implicates another codefendant in a

11:23:29  20  statement that is not admissible under the coconspirator

11:23:35  21  exception in the hearsay rule, that a limiting instruction

11:23:38  22  like the one you gave to this jury to disregard cannot cure

11:23:42  23  the error.  And the government then attempted to link that

11:23:45  24  inadmissible, Constitutionally impermissible statement of

11:23:52  25  Officer Fernandez to the audit report.  That is an error that

| | |
|---|---|
| 11:23:58 | 1 |
| 11:24:01 | 2 |
| 11:24:02 | 3 |
| 11:24:05 | 4 |
| 11:24:08 | 5 |
| 11:24:12 | 6 |
| 11:24:17 | 7 |
| 11:24:21 | 8 |
| 11:24:29 | 9 |
| 11:24:32 | 10 |
| 11:24:35 | 11 |
| 11:24:36 | 12 |
| 11:24:39 | 13 |
| 11:24:42 | 14 |
| 11:24:43 | 15 |
| 11:24:44 | 16 |
| 11:24:48 | 17 |
| 11:24:50 | 18 |
| 11:24:52 | 19 |
| 11:24:53 | 20 |
| 11:24:55 | 21 |
| 11:24:57 | 22 |
| 11:24:58 | 23 |
| 11:25:00 | 24 |
| 11:25:01 | 25 |

cannot be cured by a limiting instruction, according to the Supreme Court in Bruton.

This is classic Bruton error, and I would suggest that the only reason that question was asked was so that the jury could speculate that Officer Fernandez was saying that Officer Arao was not dealing -- was not doing any more transactions because of the audit that took place.  And there is no evidence whatsoever in this case -- they should never have asked that question, and it's clear Bruton error, Your Honor, and I would ask the Court to declare a mistrial for that purpose as well.

THE COURT:  I think the government should have a -- some opportunity to respond to the formal motion for a mistrial.

MR. ROBINSON:  And I appreciate that, Your Honor.

THE COURT:  And now we go to the --

Any motions --

Any other motions, Mr. Robinson?

MR. ROBINSON:  No, thank you.

THE COURT:  They're all under submission.

MS. DRAGALIN:  Just to clarify, do you mean in writing?

THE COURT:  In writing or more time to prepare an argument on that issue.

MS. DRAGALIN:  I'm prepared to address it now if

11:25:04  1   the Court would like to hear it now.

11:25:06  2           **THE COURT:**  Yes.  So, the issue is whether the

11:25:09  3   Court instruction has cured the response offered by -- or the

11:25:16  4   testimony provided by the Special Agent to the jury.

11:25:18  5           **MS. DRAGALIN:**  And, Your Honor, I'd like to start

11:25:20  6   with the fact that the defendant is alleging this is a Bruton

11:25:24  7   error.  So, Bruton applies when a codefendant makes a

11:25:27  8   statement during an -- a post-arrest interview, for example,

11:25:32  9   so an inadmissible admission to agents, for example.

11:25:36  10          Here, the statement at issue is not such a

11:25:39  11  statement.  It is a statement made during the course of the

11:25:42  12  conspiracy charged in -- in Count No. 1 by one codefendant,

11:25:50  13  and it's made to a coconspirator that's part of the same

11:25:52  14  conspiracy defendant Arao was charged with.

11:25:54  15          Defendant Arao sold guns to Camacho Maravilla

11:25:57  16  and Camacho, Jr.  The limiting instruction the Court gave to

11:26:01  17  the jury makes clear that the jury can consider evidence for

11:26:04  18  purposes of Count One and Count Three with respect to

11:26:10  19  defendant Arao.

11:26:10  20          The statement made by defendant Fernandez

11:26:14  21  on -- in March 2017 to a coconspirator does not count as an

11:26:22  22  admission that presents a Crawford problem or a Bruton

11:26:26  23  problem.  The government has briefed that issue, the Bruton

11:26:29  24  issue in its motion to -- in its opposition to the motion to

11:26:34  25  sever.

11:26:34   1               And so it is the government's position that

11:26:36   2      the statement by defendant Fernandez was a statement of a

11:26:40   3      coconspirator, admissible against defendant Arao because it

11:26:45   4      was made during the course of the conspiracy, it was to

11:26:48   5      another coconspirator, it was not in the presence of

11:26:52   6      defendant Arao, but that's not required under the law, it was

11:26:56   7      in furtherance of the conspiracy because it was done to

11:26:59   8      encourage Camacho, Jr. to buy more guns, which he did.  And

11:27:02   9      so, for those reasons, this is not a Crawford or Bruton

11:27:07  10      issue.  It is a coconspirator issue.

11:27:08  11               And so given that that is the type of

11:27:11  12      statement we're talking about, the Court's instruction to the

11:27:14  13      jury to ignore the agent's response does not -- did not

11:27:18  14      result in any type of harm or prejudice to defendant Arao

11:27:23  15      because this statement is actually admissible against

11:27:26  16      defendant Arao for purposes of Count One and Count Three.

11:27:32  17               **THE COURT:**  Okay.

11:27:33  18               **MR. ROBINSON:**  Your Honor, it's unimaginable, it's

11:27:35  19      unimaginable, given the agreement that we reached about how

11:27:39  20      the -- this case was going to be bifurcated that the

11:27:43  21      government can now say that introducing evidence of a

11:27:47  22      statement that goes only to Count Four, which Officer Arao is

11:27:51  23      not charged in, which we agreed upon, and clearly is

11:27:56  24      inadmissible evidence against Officer Arao, and the only way

11:28:02  25      he could cure it would be to call Fernandez to the stand.

|            |    |                                                                   |
|------------|----|-------------------------------------------------------------------|
| 11:28:05   | 1  | It is classic Bruton error.  Bruton does not                      |
| 11:28:08   | 2  | limit the consequence -- the constitutional deformity of this     |
| 11:28:16   | 3  | type of evidence to post-arrest statements.                       |
| 11:28:18   | 4  | THE COURT:  So, look, the -- all this issue has to                |
| 11:28:23   | 5  | be placed in the context of how this case was to be tried,        |
| 11:28:26   | 6  | and I understand there was a bifurcated proceeding.  So, the      |
| 11:28:29   | 7  | Court is going to take it under submission and consider it        |
| 11:28:32   | 8  | further.                                                          |
| 11:28:34   | 9  | Now let's move to Mr. Rodriguez.                                  |
| 11:28:48   | 10 | MR. RODRIGUEZ:  Thank you, Your Honor.                            |
| 11:28:50   | 11 | I will join in the motion that Mr. Robinson                       |
| 11:28:55   | 12 | made concerning the first three counts as it applies to my        |
| 11:29:00   | 13 | client, and I will join in the same arguments as to that.         |
| 11:29:08   | 14 | I would also add, Your Honor, that the penal                      |
| 11:29:11   | 15 | section that the government cites --                              |
| 11:29:13   | 16 | THE COURT:  In the indictment?                                    |
| 11:29:15   | 17 | MR. RODRIGUEZ:  Yes.  And that it goes to -- and                  |
| 11:29:18   | 18 | there is Section 32 -- Section 32,000 is also relevant when       |
| 11:29:25   | 19 | it comes to the issue of PPTs, and this numerical limit that      |
| 11:29:34   | 20 | the People cite to was never part of this case.                   |
| 11:29:39   | 21 | THE COURT:  Yes, I --                                             |
| 11:29:40   | 22 | MR. RODRIGUEZ:  Okay, so I'll move.                               |
| 11:29:44   | 23 | As to the counts in the indictment referring                     |
| 11:29:46   | 24 | to Camacho, Jr., there -- which I believe are counts 4, 7 and     |
| 11:29:52   | 25 | 11?  Sorry, Your Honor, I came up without my notes.  There is     |

11:29:58  1    no evidence that was provided through the course of this

11:30:03  2    trial that my client knew that Camacho, Jr. was a felon.

11:30:07  3    Nothing of the sort.

11:30:09  4              The only evidence applying to the Camachos is

11:30:13  5    that there was contact between my client and the Camachos,

11:30:19  6    sales were done, and then after the sales, even almost a year

11:30:24  7    after the last sale, there was a raid on the house and that

11:30:30  8    the guns were found, and that Camacho, Jr. had a prior

11:30:35  9    conviction for narcotics.

11:30:38  10             It would have been illegal for my client to

11:30:43  11   run Camacho, Jr. through CLETS.  Moreover, there is no

11:30:49  12   evidence in this case that my client knew, was informed, was

11:30:57  13   given a hint or anything of that nature.  There was no

11:31:03  14   knowledge established or --

11:31:06  15             Let me say that again.

11:31:07  16             There is no direct evidence that my client

11:31:11  17   had knowledge.  There is no circumstantial evidence that my

11:31:14  18   client had knowledge that Camacho, Jr. was a felon.

11:31:18  19             Moreover, there is no direct or

11:31:21  20   circumstantial evidence that my client knew that the guns

11:31:25  21   were being bought on behalf of Camacho, Jr.

11:31:30  22             We never heard from Camacho, Sr. or Rafael

11:31:34  23   Camacho Maravilla to give any statement or any evidence to

11:31:39  24   this jury that they were buying the guns on behalf of Oscar

11:31:45  25   Jr.  This -- I'm sorry -- Camacho, Jr.

| | |
|---|---|
| 11:31:48 | 1 |

```
11:31:48   1              This is pure speculation on behalf of the
11:31:52   2    government that my client knew, A, that Camacho, Jr. was a
11:31:59   3    prohibited person, and -- because it's two parts -- and that
11:32:05   4    Senior and Rafael Camacho Maravilla were buying the guns on
11:32:17   5    behalf of their son or sibling.  None.  Whatsoever.
11:32:20   6              Now, as to the testimony of Cervantes Corona,
11:32:23   7    who is the first witness the government called, there is
11:32:27   8    absolutely no testimony that my client had any knowledge of
11:32:32   9    the agreement between him and Mr. Ramirez, and that he was
11:32:37   10   using his position to buy two guns in order to give one to
11:32:41   11   someone who was a prohibited person.  None.  There is none.
11:32:48   12             What there is a lot of, Your Honor, in this
11:32:52   13   case, is a dirtying up of my client and a lot of innuendo.
11:32:59   14   ^ Clave la fusca, things of that nature, and things that
11:33:04   15   obviously I'm sure the government -- if the Court denies my
11:33:08   16   motion -- will use things like "F the feds" or "watch out for
11:33:15   17   the pigs."  None of that is evidence that my client had any
11:33:21   18   knowledge of the status of the purchasers or that they were
11:33:22   19   straw purchases, as they apply to Rafael Cervantes Corona or
11:33:26   20   the Camacho clique or gang or family -- not gang -- sorry.
11:33:32   21   So --
11:33:32   22             THE COURT:  Before you continue, I have a question
11:33:34   23   of counsel for the government.
11:33:35   24             My notes --
11:33:37   25             Let's see, the first witness that the
```

11:33:40  1    government called was Rule Cervantes Corona, who offered

11:33:51  2    testimony regarding Officer Fernandez.  My notes reflect that

11:33:51  3    he was never -- that he was never asked to identify the

11:33:55  4    defendant.

11:33:56  5             MS. DRAGALIN:  That's correct, Your Honor.  And

11:33:58  6    just to clarify, the government has not charged either

11:34:01  7    defendant with a straw purchase of Mr. Cervantes Corona.  The

11:34:04  8    only reason the government elicited that was to make clear to

11:34:07  9    this jury that this is a cooperator, has a plea deal with the

11:34:12  10   government, has a motivation to testify in court so that --

11:34:13  11            THE COURT:  Wait.  Wait.  Why did you call him as

11:34:15  12   a witness?

11:34:16  13            MS. DRAGALIN:  To show that he -- what he --

11:34:18  14            His transaction is one of the charged

11:34:21  15   transactions --

11:34:22  16            THE COURT:  Yes.

11:34:23  17            MS. DRAGALIN:  -- in Count One.

11:34:24  18            THE COURT:  Yes.

11:34:24  19            MS. DRAGALIN:  -- and Count Two and Three of

11:34:28  20   the --

11:34:28  21            THE COURT:  But it is not relevant to the -- to

11:34:31  22   the allegations in the indictment regarding these defendants

11:34:32  23   here?

11:34:32  24            MS. DRAGALIN:  It is -- no, it is relevant, in

11:34:35  25   that he's one of the customers --

11:34:35 1          THE COURT:  Yes.

11:34:37 2          MS. DRAGALIN:  -- who bought guns from these

11:34:39 3 defendants.

11:34:39 4               The government has not charged --

11:34:41 5               They are charged as a transaction that's part

11:34:43 6 of the dealing conspiracy count, and part of the dealing

11:34:47 7 count for Mr. Arao and defendant Fernandez.

11:34:50 8          THE COURT:  Why didn't you ask for that witness to

11:34:54 9 identify any of the defendants in court here?

11:34:57 10         MS. DRAGALIN:  Because the documents themselves

11:35:01 11 establish that the transactions was with defendant Arao and

11:35:03 12 defendant --

11:35:04 13         THE COURT:  Was he able to identify him?

11:35:05 14         MS. DRAGALIN:  To be honest, Your Honor, that

11:35:07 15 witness is very intimidated and scared because these two are

11:35:13 16 police officers, so we did not put him through the exercise

11:35:16 17 of having to point and identify them here in court.

11:35:21 18         MR. RODRIGUEZ:  May I --

11:35:22 19         THE COURT:  This is --

11:35:24 20               Okay.  I'm a bit surprised.

11:35:26 21               But go ahead.

11:35:27 22         MR. RODRIGUEZ:  Your Honor, based on counsel's

11:35:28 23 statement, I'm going to make another motion for a mistrial

11:35:32 24 based on misconduct.

11:35:33 25               This -- the prosecution just stated that they

11:35:35 1   called a witness to give evidence, to give the impression to

11:35:38 2   this jury of illegal activity by my client, and the reason he

11:35:45 3   wasn't -- he was asked not to identify my client is because

11:35:47 4   he can't, because he hasn't seen my client.

11:35:50 5          THE COURT:  Well, let me just --

11:35:51 6                 Does the government have knowledge one way or

11:35:55 7   the other as to whether the witness is able to identify

11:35:59 8   Officer Fernandez?

11:36:00 9          MS. DRAGALIN:  We have not asked him to -- I don't

11:36:02 10  have any knowledge on it.

11:36:03 11         THE COURT:  You don't know one way or the other.

11:36:05 12         MS. DRAGALIN:  I don't.  Well, I know he has

11:36:06 13  identified him from DMV photo.  I don't know if in person he

11:36:10 14  would be able to.

11:36:12 15         THE COURT:  I don't recall that evidence being --

11:36:13 16  the DMV photo being offered during the course of the

11:36:18 17  questioning of the witness.

11:36:19 18         MS. DRAGALIN:  No, that was done separately in an

11:36:21 19  interview, Your Honor.

11:36:23 20                So, on the -- on the stand when the witness

11:36:25 21  was up, we did put up the AFS records showing that the

11:36:30 22  transaction took place and that defendant Arao is the one who

11:36:33 23  sold the gun.

11:36:33 24                We also put up what's been stipulated and

11:36:36 25  admitted as phone records, showing that the witness had phone

| | |
|---|---|
| 11:36:40 | 1 |
| 11:36:43 | 2 |
| 11:36:46 | 3 |
| 11:36:51 | 4 |
| 11:36:54 | 5 |
| 11:36:56 | 6 |
| 11:37:01 | 7 |
| 11:37:06 | 8 |
| 11:37:08 | 9 |
| 11:37:11 | 10 |
| 11:37:11 | 11 |
| 11:37:15 | 12 |
| 11:37:19 | 13 |
| 11:37:22 | 14 |
| 11:37:25 | 15 |
| 11:37:30 | 16 |
| 11:37:34 | 17 |
| 11:37:38 | 18 |
| 11:37:42 | 19 |
| 11:37:46 | 20 |
| 11:37:49 | 21 |
| 11:37:53 | 22 |
| 11:37:56 | 23 |
| 11:38:00 | 24 |
| 11:38:03 | 25 |

calls with the phone number belonging to defendant Fernandez.

And so it is the government's position that that evidence linked that transaction to the business of the two defendants were engaged in, engaging in the business without a license.  That transaction was relevant to establish how these defendants ran a business in terms of, how they contacted the person by phone, but then the other person is the one who actually sold the gun.  It also is relevant to show how the defendant conducted themselves with their customers during the purchase of firearms in terms of wearing their uniforms, having a police car parked outside. The same conduct was observed in the undercover recording that was introduced into evidence today.

And so the government called this witness to give the jury an idea of how a customer bought guns from these two defendants, and I would just like to make clear that we did not have any evidence that the defendants knew he was committing a crime in buying a straw purchase.  They are not charged with that conduct.  This jury is not asked to decide whether these defendants knew that.

The relevancy of this witness is simply to establish how a customer that's charged in Count One and Count Two, that specific gun purchase is charged, how a customer perceives these defendants, and how these defendants acted during the course of dealing without a license.

UNITED STATES DISTRICT COURT

11:38:09   1          **THE COURT:**  I have to assume that the witness

11:38:11   2    could not have identified either of the defendants, in

11:38:14   3    particular, defendant Fernandez.

11:38:17   4          **MS. DRAGALIN:**  Your Honor, I believe he could

11:38:25   5    identify him if we called him back.  I'm happy to --

11:38:25   6          **THE COURT:**  The request to reopen is denied.

11:38:29   7          Any final argument?

11:38:31   8          **MR. RODRIGUEZ:**  Only, Your Honor, that that

11:38:34   9    particular witness was called in order to establish that he

11:38:39   10   bought a gun as a straw man and to give evidence of straw man

11:38:47   11   purchases and to imply knowledge of straw man purchases on my

11:38:53   12   client and to buttress the allegations that Pelayo's straw

11:38:58   13   man purchase my client had knowledge of because this was a

11:39:03   14   common practice.

11:39:04   15          This wasn't done innocently or by accident.

11:39:10   16   That calling Rule Cervantes Corona was done by design, with

11:39:14   17   purpose and with a mission to get a conviction, not as the

11:39:17   18   kind of innocuous description as to the defendant's customer

11:39:25   19   service practices.  Right?  I mean, that's really what the

11:39:28   20   argument by Ms. Aguilar [sic] just was, that this gentleman,

11:39:33   21   this gentleman, this gentleman who has a cooperator's

11:39:36   22   agreement, and is now a felon, was brought in to testify to

11:39:40   23   discuss their business practice in an innocuous way.  No, it

11:39:40   24   was done to get a conviction.  Everything --

11:39:44   25          I was a DA for 13 years.  Everything a

11:39:47  1    prosecutor does when we -- when they call a witness to the

11:39:49  2    stand is for one reason, one reason only, is to get a

11:39:53  3    conviction.

11:39:56  4                 And to now at the end of evidence to find out

11:40:00  5    the different reason that Cervantes Corona was called, again,

11:40:04  6    goes to the issue of misconduct, and the fact that we -- that

11:40:07  7    the prosecution in this case keeps trying to mislead this

11:40:13  8    jury.

11:40:14  9                 And I'll submit, Your Honor.

11:40:15  10            THE COURT:  Any other arguments on any other

11:40:18  11    issues?

11:40:19  12            MR. RODRIGUEZ:  I'm sorry, Your Honor.  No, Your

11:40:21  13    Honor, I address the Camacho issue, I address Raul Cervantes

11:40:29  14    Corona issue, and then I addressed the issue involving -- the

11:40:31  15    conspiracy allegations involving Mr. Fernandez and Mr. Arao.

11:40:35  16    That's it.

11:40:35  17                 Thank you so much, Your Honor.

11:40:37  18            THE COURT:  Mr. Robinson?

11:40:37  19            MR. ROBINSON:  Only to the extent that the

11:40:39  20    government's argument implicates their position on Officer

11:40:44  21    Arao, we would join.

11:40:45  22            THE COURT:  Okay, thank you.  So, let's put that

11:40:49  23    aside.  The Court will take all of those issues under

11:40:54  24    submission.  I need more time to think about it.  And let's

11:40:58  25    move to jury instructions.

11:41:45  1          So, the following -- the following

11:41:48  2   instructions would be provided by the Court, and as we go

11:41:51  3   through the instructions, let me just --

11:41:55  4          I'll hear from counsel as to whether there is

11:41:57  5   any -- any objections or requests for modifications of any

11:42:05  6   sort?

11:42:05  7          So, the first -- let's see.  I'm missing a

11:42:25  8   portion of my instructions.  Looks like I'm missing the

11:43:06  9   introduction instruction.

11:43:57  10          Let's take a short recess.

11:44:00  11          (Recess taken.)

11:53:39  12          **THE COURT:**  Okay, let's see if we can move through

11:53:42  13   this quickly.  And if not, we'll have to resume at 1:20 --

11:53:48  14   1:15.

11:53:48  15          So the first instruction that the Court will

11:53:51  16   provide, and these are standard instruction, Model

11:53:54  17   Instruction 3.1:  Members of the jury, you have heard all the

11:53:58  18   evidence.

11:53:58  19          Second instruction is:  Indictment is not

11:54:00  20   evidence.  Based on 3.2 --

11:54:03  21          So, is everybody on the same page?  I want to

11:54:06  22   make sure that you're following along.

11:54:08  23          **MS. DRAGALIN:**  We are, Your Honor.

11:54:08  24          **MR. ROBINSON:**  Now we are, thank you.

11:54:10  25          **THE COURT:**  Okay, 3.1, 3.2.

11:54:13   1        3.3:  A defendant in a criminal case has the
11:54:18   2   constitutional right not to testify.  You may not draw any
11:54:21   3   inference from the fact that the defendant did not testify.
11:54:24   4        Next in order is 3.5:  Proof beyond a
11:54:31   5   reasonable doubt.
11:54:31   6        3.6 follows:  The evidence you are to
11:54:36   7   consider consists of sworn testimony of any witness.
11:54:40   8        3.7:  In reaching your verdict, you may
11:54:43   9   consider only testimony and exhibits received in evidence.
11:54:48   10   That's 3.7.
11:54:50   11       3.8:  Direct and circumstantial evidence.
11:54:53   12   Will be given.
11:54:55   13       And then we go to 3.9:  In considering the
11:55:00   14   testimony of any witness, you may take into account -- and
11:55:04   15   then it lists all of the bullet points.
11:55:07   16       Next is 3.10:  You are only to decide -- to
11:55:12   17   determine whether the defendant is guilty or not guilty of
11:55:16   18   the charges in the indictment.
11:55:17   19       **MR. ROBINSON:**  If I may, Your Honor, we have
11:55:19   20   submitted a proposed instruction to the Court and to the
11:55:21   21   government regarding the limited use of the evidence.  It
11:55:24   22   parallels the one that you've been giving during the course
11:55:27   23   of this trial.  I think it would be appropriate at this point
11:55:31   24   in time --
11:55:31   25       **THE COURT:**  I'm not sure what your request is.

11:55:34  1          **MR. ROBINSON:**  We have a proposed instruction that

11:55:35  2     we filed with the Court.  If I may present this to Mr. Cruz

11:55:39  3     so you can look at it.

11:55:40  4          **THE COURT:**  Yes.  Let's put all of the additional

11:55:47  5     instructions aside for the time being.  Let me go through the

11:55:50  6     set that's been offered so far, and then I'll consider any

11:55:54  7     additional instructions that you would like the Court to

11:55:58  8     provide the jury.

11:55:59  9               So, we left off at 3.10.  You are only to

11:56:04  10    determine whether the defendant is guilty or not guilty of

11:56:06  11    the charges.

11:56:09  12               3.13:  A separate crime is charged against

11:56:12  13    one or more of the defendants in each count.  The charges

11:56:15  14    have been joined for trial.  You must decide the case of each

11:56:20  15    defendant on each crime charged against that defendant

11:56:22  16    separately.

11:56:23  17               And that's --

11:56:24  18               I'm going to give the full -- the full part

11:56:27  19    of 3.13.

11:56:29  20               Any issue?

11:56:31  21          **MR. ROBINSON:**  What page, Your Honor?  --

11:56:34  22               (Discussion off the record.)

11:56:37  23          **THE COURT:**  It's a standard instruction when you

11:56:39  24    have multiple defendants in separate counts.  I think we have

11:56:45  25    to move -- this is not a --

11:56:48  1          **MR. ROBINSON:**  It's not an issue, but we agree

11:56:51  2      with that, Your Honor.

11:56:52  3          **THE COURT:**  Okay.

11:56:52  4              Next is a 4.1:  The testimony --

11:56:56  5          *You have heard the testimony that a witness*

11:56:58  6      *made a statement.*

11:57:00  7              I'm assuming that still remains.  So, that's

11:57:04  8      4.1 of the model instruction.  Okay?

11:57:08  9          **MR. ROBINSON:**  Yes.

11:57:09  10         **THE COURT:**  That should be given.

11:57:10  11             Okay, and then we have the -- the cooperating

11:57:13  12     witnesses.  We have:  *Not all of the witnesses have been*

11:57:18  13     *called.*

11:57:18  14             So, Bianca Ibaria should be moved from the.

11:57:30  15             Rule Cervantes Corona remains.

11:57:33  16             We have -- Antonio Ramirez should be removed.

11:57:41  17             Rafael Rubin -- Camacho Maravilla should be

11:57:46  18     removed.

11:57:47  19             Okay, everything else remains.  Based on 4.9,

11:57:53  20     this is 4.9.

11:57:55  21             Agreed?

11:57:55  22         **MR. ROBINSON:**  Yes, Your Honor.

11:57:57  23         **MR. RODRIGUEZ:**  Yes, Your Honor.

11:57:59  24         **THE COURT:**  Okay, and then we have the instruction

11:58:01  25     concerning the opinion testimony by a Special Agent, David

| | | |
|---|---|---|
| 11:58:05 | 1 | Hamilton.  So, this is 4.14 and the name Blake Graham should |
| 11:58:12 | 2 | be removed.  He was not called. |

11:58:14  3          Then we go to 4.16:  *During the trial,*
11:58:18  4  *certain demonstrative items were shown to you.*

11:58:22  5          This should be given.  Agreed?

11:58:25  6          **MR. ROBINSON:**  Agreed, Your Honor.

11:58:27  7          **THE COURT:**  And then 4.17:  *Certain charts and*
11:58:29  8  *summaries have been admitted into evidence.*

11:58:32  9          That's a case that should be given.

11:58:34  10          And then we go to the substantive
11:58:36  11  instruction, the elements of the crime.  The government has
11:58:40  12  proposed Instruction 8.20.  That would be the first
11:58:50  13  instruction that would be given.

11:58:58  14          And then we'd go to next in order is 8.23:  *A*
11:59:04  15  *conspiracy may continue for a long period of time.*  The --
11:59:21  16  that's 8.23.

11:59:28  17          The next instruction is a disputed
11:59:31  18  instruction.  The government has proposed in Instruction No.
11:59:44  19  35, and the defendant Fernandez or both defendants have
12:00:01  20  objected to the government's proposed instruction in
12:00:05  21  particular the definition of "willfully."  The claim is, is
12:00:12  22  that the definition in the instruction is --
12:00:20  23  unconstitutionally lessens the government's burden of proof
12:00:24  24  as to "wilfully."

12:00:25  25          **MR. ROBINSON:**  We filed a proposed, alternative

| | | |
|---|---|---|
| 12:00:28 | 1 | instruction this morning, Your Honor. |
| 12:00:37 | 2 |        **MR. RODRIGUEZ:**  And I would join in that. |
| 12:00:39 | 3 |        **THE COURT:**  And does the government wish to be |
| 12:00:40 | 4 | heard further on this? |
| 12:00:42 | 5 |        **MS. DRAGALIN:**  Just briefly, that we are proposing |
| 12:00:46 | 6 | model language within the Ninth Circuit, criminal jury |
| 12:00:47 | 7 | instructions, and in particular, courts have addressed the |
| 12:00:50 | 8 | specific statute on what "wilfully" means in this particular |
| 12:00:53 | 9 | statute, the language that defendant Arao proposes comes from |
| 12:00:57 | 10 | different type -- other types of statutes that have the word |
| 12:01:00 | 11 | "wilfully" which can be defined differently into law.  The |
| 12:01:04 | 12 | courts in the Ninth Circuit have made very clear that the |
| 12:01:06 | 13 | model instruction language is how "wilfully" is to be defined |
| 12:01:10 | 14 | for purposes of Section 922(a)(1), the charge here. |
| 12:01:15 | 15 |        **THE COURT:**  Yes, and the Court agrees.  So, the |
| 12:01:17 | 16 | government's Proposed Instruction No. 35 will be given. |
| 12:01:24 | 17 |        And so I'm going to pull from this packet the |
| 12:01:31 | 18 | defendant's objections.  And it's not -- it's clear for the |
| 12:01:42 | 19 | record that you have objected. |
| 12:01:44 | 20 |        **MR. ROBINSON:**  I appreciate that.  I just want to |
| 12:01:46 | 21 | make it clear that this morning we did submit an alternative |
| 12:01:51 | 22 | proposal with respect to Court's rule, as long as our |
| 12:01:54 | 23 | proposal is in the record, we'll abide by the Court's ruling |
| 12:01:58 | 24 | obviously. |
| 12:01:59 | 25 |        **THE COURT:**  Okay. |

12:02:01  1          The next is Instruction No. 36:  *The*

12:02:06  2  *defendant Fernandez is charged in Count Four of the*

12:02:08  3  *indictment.*  This is based on 8.20.

12:02:23  4          Is there any modification to this

12:02:25  5  instruction?

12:02:25  6          **MR. RODRIGUEZ:**  Yes, Your Honor, I filed one a few

12:02:27  7  weeks ago, asking the -- that the -- in the second element,

12:02:36  8  that the words "or had reason to know" be stricken out as it

12:02:48  9  will be modified to read for the second element, would state,

12:02:51  10  quote, "second defendant knew that conspirators were involved

12:02:55  11  with those with whom the defendant directly conspired."

12:03:00  12          **THE COURT:**  You're on the --

12:03:01  13          **MR. RODRIGUEZ:**  I'm sorry, I'm on the wrong one.

12:03:04  14          **THE COURT:**  Yes.  This is an instruction based on

12:03:05  15  8.20.

12:03:06  16          Next is Instruction No. 36.

12:03:09  17          **MR. RODRIGUEZ:**  No, this is not -- sorry.  I had

12:03:11  18  the wrong number.  I apologize.

12:03:14  19          **THE COURT:**  Okay.

12:03:14  20          And then we go to -- next is Instruction No.

12:03:19  21  37.  The government has proposed a Model Instruction 8.61,

12:03:28  22  and this has to do with defendant Fernandez charged in counts

12:03:33  23  5, 6 and 7 of the indictment, and then it lists the element.

12:03:38  24          **MS. DRAGALIN:**  And, Your Honor, we should revise

12:03:42  25  as to omit a reference to 5 and 6 and leave just Count 7.

| | | |
|---|---|---|
| 12:03:45 | 1 | **THE COURT:**  So that should be -- |
| 12:03:47 | 2 | Thank you. |
| 12:03:48 | 3 | That should be removed. |
| 12:03:51 | 4 | And the defendants have objected to the |
| 12:03:53 | 5 | government's model instruction. |
| 12:03:57 | 6 | **MR. RODRIGUEZ:**  Correct, Your Honor, as it applies |
| 12:03:59 | 7 | only to the second element which reads, as proposed by the |
| 12:04:03 | 8 | government, quote:  *Second, the defendant knew or had* |
| 12:04:06 | 9 | *reasonable cause to believe that Camacho, Jr. was a felon.* |
| 12:04:09 | 10 | And that it should be -- it should just state quote:  "Second |
| 12:04:14 | 11 | the defendant knew that Camacho, Jr. was a felon." |
| 12:04:18 | 12 | And I submitted the case law in my moving |
| 12:04:21 | 13 | papers. |
| 12:04:22 | 14 | **THE COURT:**  Okay. |
| 12:04:23 | 15 | **MR. ROBINSON:**  And since this instruction does not |
| 12:04:27 | 16 | apply to Officer Arao, we take no position. |
| 12:04:29 | 17 | **THE COURT:**  Yes. |
| 12:04:30 | 18 | **MS. DRAGALIN:**  Your Honor, I don't believe there |
| 12:04:31 | 19 | was any case law cited about why that language should be |
| 12:04:35 | 20 | dropped.  In fact, Title 18, United States Code, Section |
| 12:04:38 | 21 | 922(d) specifically says:  "Knew or had reasonable cause to |
| 12:04:43 | 22 | believe." |
| 12:04:44 | 23 | So there is no reason to drop that language |
| 12:04:47 | 24 | from the jury instructions. |
| 12:04:47 | 25 | **THE COURT:**  Yeah, I agree.  The Court will give |

| | |
|---|---|
| 12:04:49 | 1 |
| 12:04:54 | 2 |
| 12:04:57 | 3 |
| 12:05:02 | 4 |
| 12:05:03 | 5 |
| 12:05:07 | 6 |
| 12:05:13 | 7 |
| 12:05:25 | 8 |
| 12:05:30 | 9 |
| 12:05:35 | 10 |
| 12:05:41 | 11 |
| 12:05:48 | 12 |
| 12:05:50 | 13 |
| 12:05:52 | 14 |
| 12:05:56 | 15 |
| 12:06:00 | 16 |
| 12:06:04 | 17 |
| 12:06:09 | 18 |
| 12:06:14 | 19 |
| 12:06:18 | 20 |
| 12:06:21 | 21 |
| 12:06:26 | 22 |
| 12:06:30 | 23 |
| 12:06:31 | 24 |
| 12:06:35 | 25 |

government's proposed instruction 37 based on 8.61.

And then we go to Instruction No. 38, a person possesses a firearm, and that's based on 3.15, that's not disputed.

Next is 5.7:  An act is done knowingly.  And that's -- that would be Instruction No. 39 based on 5.7.

The next is the Deliberate Indifference instruction.  The government has Proposed Instruction No. 40 regarding deliberate indifference, and it appears that since no witnesses have been called on behalf of the defendant, and the defendant Fernandez has not -- will not testify, that this instruction is no longer applicable; is that correct.

**MS. DRAGALIN:**  No, Your Honor.  Our -- the government's position will be that the pattern of the 10 gun transactions here gave defendant Fernandez reasonable cause to believe that defendant -- that Camacho, Jr. was a felon, and he either knew that for a fact or he -- the government would like to argue that he deliberately avoided learning the truth to prove the knowledge element.  And courts have discretion to give this instruction if there is evidence in the record that defendant Fernandez had reasonable cause -- that this instruction would apply to the facts that have been put into evidence.

Special Agent Hart testified that an FFL can run a criminal history background check on a person who is

12:06:39  1    the actual buyer of the firearm.  The evidence at trial

12:06:43  2    demonstrated that defendant Fernandez knew that Camacho, Jr.

12:06:46  3    was there, and the actual buyer of 10 firearms.  And so if he

12:06:51  4    did not ask his friend and business partner, an FFL owner, to

12:06:59  5    run a criminal history check to ensure that this actual buyer

12:07:03  6    was not prohibited, he deliberately avoided learning the

12:07:07  7    truth.

12:07:08  8             THE COURT:  I'm just reading the comment section

12:07:09  9    in the --

12:07:13  10            MR. RODRIGUEZ:  I'll wait to respond, Your Honor.

12:07:27  11            THE COURT:  Okay, yes.

12:07:29  12            MR. RODRIGUEZ:  The argument -- Ms. Dragalin's

12:07:33  13   last argument was that for -- that Mr. -- that Officer

12:07:40  14   Fernandez had a duty to force an individual to apply for

12:07:45  15   purchase of a gun in order to go through the FFL program

12:07:50  16   process in order to determine whether or not that person is a

12:07:56  17   felon.

12:07:57  18            That's just not the law.  The entire

12:08:00  19   construct of the last part of her argument is that he should

12:08:04  20   have taken steps based on a suspicion, which has never been

12:08:09  21   articulated.

12:08:10  22            There was the argument that Camacho, Jr. was

12:08:12  23   the purchaser of the guns.  There is no evidence of that at

12:08:18  24   all.  There is no financial evidence that that happened .

12:08:22  25            All we have is that -- the only evidence is

| | |
|---|---|
| 12:08:26 1 | that Camacho, Jr. was there with either his father or his |
| 12:08:29 2 | brother, and that his father and brother and himself and |
| 12:08:35 3 | mother and his girlfriend all lived in the same house.  The |
| 12:08:40 4 | guns, I would remind the Court, were not found in |
| 12:08:44 5 | Mr. Camacho, Jr.'s bedroom.  They were found in father's |
| 12:08:47 6 | master bedroom and they were found in the garage. |
| 12:08:50 7 | Again, there is no evidence that this was a |
| 12:08:54 8 | straw purchase.  We never heard from any of the Camachos. |
| 12:08:59 9 | There is no financial documents linking the sales and the |
| 12:09:03 10 | purchases or anything like that. |
| 12:09:09 11 | The only evidence that we have in this case |
| 12:09:12 12 | that claims own -- which Camacho, Jr. claims ownership, are |
| 12:09:18 13 | text message between him and his girlfriend after the sales. |
| 12:09:23 14 | That does not impugn knowledge or ignorance, or willful |
| 12:09:29 15 | ignorance or not, on the part of Fernandez.  That just goes |
| 12:09:32 16 | to Camacho, Jr. |
| 12:09:33 17 | And so the -- the -- |
| 12:09:33 18 | **THE COURT:**  How does this instruction prejudice |
| 12:09:37 19 | your client? |
| 12:09:39 20 | **MR. RODRIGUEZ:**  Yes, Your Honor, if I may.  Well, |
| 12:09:51 21 | it asks the jury to speculate and gives the jury a way to |
| 12:09:56 22 | speculate and to think of scenarios that are outside of the |
| 12:09:59 23 | evidence that he should have known. |
| 12:10:03 24 | For example, if -- let's say there is a |
| 12:10:07 25 | situation where they have evidence that my client saw |

12:10:12   1    Camacho, Jr. in court being arraigned or had a preliminary

12:10:19   2    hearing or some way or somehow would have information that --

12:10:24   3    or evidence -- of him being involved in a criminal case or

12:10:27   4    having some kind of criminal conviction or anything like

12:10:31   5    that.  There is nothing.

12:10:32   6             This instruction is asking the jury to

12:10:34   7    speculate as to ways that he could have done things.  That

12:10:39   8    is, this jury instruction is basically saying to the jury:

12:10:43   9    If you can figure out a way how Mr. Fernandez could have done

12:10:47   10   things better, then that's enough to convict him as the

12:10:51   11   counts for Camacho, Jr.

12:10:53   12            And that's -- I don't think that's the law --

12:10:55   13   **THE COURT:**  The Court is going to exercise its

12:10:57   14   discretion not to provide the instruction.  I sustain the

12:11:01   15   objection.

12:11:01   16            Okay, we go to Instruction No. 41, which is

12:11:07   17   one of the disputed instructions.  It's based on 5.1.  And

12:11:12   18   the government has offered 5.1 from model instructions.

12:11:16   19            And so I think Mr. Fernandez -- or Officer

12:11:21   20   Fernandez has objected to this through counsel.  And I think

12:11:23   21   your objections are part of the record.

12:11:25   22            Do you have anything else to add,

12:11:27   23   Mr. Rodriguez?

12:11:28   24            **MR. ROBINSON:**  No, Your Honor.

12:11:29   25            **THE COURT:**  All right, the Court is going to

12:11:30  1    provide the instruction.

12:11:31  2             MS. DRAGALIN:  And Your Honor, just to -- if we're

12:11:34  3    speaking about the Aiding and Abetting instruction, I

12:11:36  4    believe --

12:11:36  5             THE COURT:  This is model 5.1.

12:11:39  6             MS. DRAGALIN:  I believe the top should say counts

12:11:41  7    10 and 11 because we dropped a few.

12:11:45  8             THE WITNESS:  Yes, counts 10 and 11.  8 and 9 will

12:11:52  9    be struck.  Okay?

12:12:08  10            Then we go next in order, is instruction,

12:12:11  11   which has been currently marked 42, based on United States

12:12:16  12   versus Prince.  And this references counts 8, 9 and 10 and

12:12:22  13   11.  So, it would appear that I'd have to strike 8 and 9.

12:12:31  14   10 and 11 remains.

12:12:33  15            Are there additional matters to address

12:12:36  16   inference to this instruction?

12:12:37  17            MR. RODRIGUEZ:  No, Your Honor.

12:12:38  18            THE COURT:  Okay, it will be given.

12:12:40  19            And then we go to the concluding

12:12:43  20   instructions.  Well, we have Instruction No. 43, which is

12:12:54  21   based on Instruction 3.1A.  It could be possibly reordered if

12:12:58  22   everyone requested.  This is the instruction that references

12:13:01  23   the indictment charges that the offenses alleged were

12:13:05  24   committed on or about a certain date.  It's a standard

12:13:09  25   instruction.  The Court will give this instruction, and then

| | |
|---|---|
| 12:13:11 | 1 |
| 12:13:15 | 2 |
| 12:13:17 | 3 |
| 12:13:19 | 4 |
| 12:13:24 | 5 |
| 12:13:27 | 6 |
| 12:13:33 | 7 |
| 12:13:41 | 8 |
| 12:13:45 | 9 |
| 12:13:49 | 10 |
| 12:13:51 | 11 |
| 12:13:54 | 12 |
| 12:13:59 | 13 |
| 12:14:02 | 14 |
| 12:14:05 | 15 |
| 12:14:10 | 16 |
| 12:14:13 | 17 |
| 12:14:22 | 18 |
| 12:14:28 | 19 |
| 12:14:31 | 20 |
| 12:14:35 | 21 |
| 12:14:36 | 22 |
| 12:14:39 | 23 |
| 12:14:41 | 24 |
| 12:14:44 | 25 |

if you would like the Court to reorder it, feel free to make the request later.

Then we go to the concluding instructions, Instruction 7.1:  When you begin your deliberations -- this is currently marked 44, standard instruction.

Next would be Instruction No. 45, based on 7.2 regarding communication with the Court.

Then we go to Instruction No. 46, which -- regards notes, and that's based on 7.3.

Next in order is:  Punishment provided by law, based on 7.4.

And we go to 48, which is:  *A verdict form has been prepared to you,* based on 7.5.

And we go to:  *Communications with the Court during deliberations*, based on 7.6 is Instruction No. 49.

And then there is a request by Mr. Robinson to provide an instruction on behalf of Mr. Arao concerning testimony of witness Corona and Pelayo and Hart.  Is that --

**MR. ROBINSON:**  Well, I don't -- Your Honor, I don't think we need to put Pelayo and Hart in there --

**THE COURT:**  You did.

**MR. ROBINSON:**  I know, and I may have done that in error, because I didn't -- maybe not in error because I didn't know how this case was going to play out, but I think this Court has done a very good job of instructing on limited

12:14:48  1   use, and this is merely a recitation of what you've

12:14:51  2   instructed this jury previously.

12:14:52  3         **THE COURT:**  How would you like me to modified it?

12:14:54  4         **MR. ROBINSON:**  I think all you need to do is that:

12:14:57  5   *You have heard testimony in this case that I instructed you*

12:15:00  6   *to admit for a limited purpose.*  And then -- that's the first

12:15:04  7   paragraph, and the balance can be read as is.

12:15:07  8         **THE COURT:**  And where do you propose this

12:15:08  9   instruction?

12:15:12  10         **MR. ROBINSON:**  I think this should go around 2.12.

12:15:16  11               And if I can have a second, please, Your

12:15:18  12   Honor.  I think this should go around -- excuse me -- between

12:15:25  13   Instruction No. 25 and 26.

12:15:28  14         **THE COURT:**  25 or 26.

12:15:30  15         **MR. ROBINSON:**  Between 25 and 26.

12:15:33  16         **THE COURT:**  And have you provided the government a

12:15:36  17   copy of the instruction?

12:15:37  18         **MR. ROBINSON:**  We have.

12:15:38  19         **THE COURT:**  Any objection?

12:15:39  20         **MS. RYKKEN:**  Your Honor, we would just request

12:15:40  21   that the Court read the actual instruction that was read

12:15:42  22   during the course of trial.  I don't know if it differs in

12:15:45  23   any way from what defendant Arao is proposing, but the actual

12:15:49  24   instruction the Court has been reading repeatedly, I think,

12:15:53  25   is the instruction that should be given at the end of the

12:15:55  1   case as a reminder.

12:15:57  2         MR. ROBINSON:  We don't object to that either,

12:15:59  3   Your Honor.  I think we parallel your language.

12:16:04  4         THE COURT:  Anything further regarding the

12:16:05  5   instructions?

12:16:08  6         MR. RODRIGUEZ:  Not on behalf of Mr. Fernandez,

12:16:10  7   Your Honor.  Thank you.

12:16:11  8         MR. ROBINSON:  Not on behalf of Officer Arao.

12:16:13  9   Thank you.

12:16:14  10        THE COURT:  So, we'll have a final discussion

12:16:16  11  regarding the instructions later this afternoon when we

12:16:19  12  return, but I think everyone has had initial opportunity to

12:16:24  13  state their positions regarding the instruction the Court

12:16:28  14  intends to give.  You'll have one final opportunity to raise

12:16:31  15  any other issues not addressed at this point.

12:16:34  16        MS. DRAGALIN:  And, Your Honor, a related issue to

12:16:36  17  the jury instructions, since it does mention an indictment,

12:16:39  18  the government filed on Friday a proposed trial indictment

12:16:42  19  that we are requesting be sent back with the jury.  Defendant

12:16:47  20  Arao and his counsel had notified us that they -- he has no

12:16:52  21  objection.  We have not heard defendant Fernandez's position

12:16:54  22  on the matter, but we think it's appropriate given the

12:16:57  23  complexity of the charges that the jury have a copy of the

12:17:00  24  trial indictment.

12:17:01  25        THE COURT:  Okay.

12:17:02  1          **MR. RODRIGUEZ:**  Your Honor, I don't have a --

12:17:05  2          **THE COURT:**  Make sure the -- the clerk has a copy

12:17:07  3  of that so I have it up here.

12:17:09  4          **MR. RODRIGUEZ:**  I have no opposition, Your Honor.

12:17:11  5          **THE COURT:**  Okay, thank you.

12:17:11  6              We're in recess.  1:20.

12:18:00  7              (Noon recess taken.)

13:35:34  8              (Open court - jury not present.)

13:35:34  9          **THE COURT:**  Okay, we're back the record on U.S.

13:35:38  10  versus Arao and Fernandez.

13:35:39  11              Back to jury instructions, quickly.  I did

13:35:46  12  another review of the jury instructions.  I'd like to go

13:35:49  13  through them one more time on the record, very quickly.

13:35:52  14              The following instructions will be given --

13:35:54  15  and then I'll identify the modifications to make sure that

13:35:58  16  the modifications I made are correct.

13:36:00  17              3.1 will be given.  That's instruction No. 1.

13:36:06  18              3.2, Instruction No. 2.

13:36:09  19              3.3:  *A defendant in a criminal case has a*

13:36:15  20  *right not to testify.*

13:36:19  21              And then we go to 3.5, *proof beyond a*

13:36:27  22  *reasonable doubt.*  And that will be Instruction No. 4.

13:36:31  23              And then we go to 3.6:  *The evidence you are*

13:36:36  24  *to consider.*  And that's Instruction No. 5.

13:36:40  25              Next is 3.7:  *In reaching your verdict, you*

13:36:44  1    *may consider only the testimony received in evidence.*  That's

13:36:49  2    instruction 6.

13:36:50  3            Then we go to:  *Evidence may be direct or*

13:36:58  4    *circumstantial,* 3.8.  That's Instruction No. 7.

13:37:00  5            And:  *In deciding the facts of this case, you*

13:37:04  6    *may have to decide which testimony to believe and which*

13:37:06  7    *testimony not to believe.*  That's Instruction No. 8 and

13:37:09  8    that's based on 3.9.

13:37:11  9            The next instruction is the special

13:37:15  10   instruction that's been requested by both defendants, and

13:37:20  11   this is based on Ninth Circuit model 2.12.  It's the

13:37:27  12   instruction I read to the jury already a couple of times in

13:37:30  13   trial.  And it reads:  *You have heard testimony from*

13:37:35  14   *witnesses Pelayo and Hart.  I instructed you that this*

13:37:44  15   *evidence was admitted only for a limited purpose.*

13:37:48  16           And then I go:  *Defendant Fernandez is*

13:37:52  17   *charged with making a false statement in a federal firearms*

13:37:55  18   *license record and disposing of a firearm to a prohibited*

13:37:59  19   *person in violation of Title 18, United States Code, Section*

13:38:03  20   *1922(d)(1).  You have heard evidence regarding his and*

13:38:07  21   *others' conduct concerning these allegations.  Defendant Arao*

13:38:11  22   *is not charged with these crimes.  He is only charged with a*

13:38:14  23   *conspiracy to deal in an unlawful dealing in firearms without*

13:38:19  24   *a license in violation of this section.*

13:38:19  25           *To the extent you have heard any evidence*

| | |
|---|---|
| 13:38:23 | 1 |
| 13:38:26 | 2 |
| 13:38:38 | 3 |
| 13:38:41 | 4 |
| 13:38:44 | 5 |
| 13:38:45 | 6 |
| 13:38:46 | 7 |
| 13:38:49 | 8 |
| 13:38:49 | 9 |
| 13:38:54 | 10 |
| 13:38:57 | 11 |
| 13:38:57 | 12 |
| 13:39:00 | 13 |
| 13:39:05 | 14 |
| 13:39:08 | 15 |
| 13:39:13 | 16 |
| 13:39:16 | 17 |
| 13:39:18 | 18 |
| 13:39:22 | 19 |
| 13:39:26 | 20 |
| 13:39:30 | 21 |
| 13:39:33 | 22 |
| 13:39:34 | 23 |
| 13:39:34 | 24 |
| 13:39:35 | 25 |

*regarding defendant Arao during this* -- I guess it would be -- *these witnesses' testimony, you are only to consider for the limited purpose of the two crimes charged against Arao and not for any other purpose.*

Agreed?

**MR. ROBINSON:**  Yes, Your Honor.

**THE COURT:**  Okay, that would become Instruction No. 9.

Instruction No. 10 is based on 3.10:  *You are here only to determine whether the defendant is guilty or not guilty.*

And I'm not -- I'm just paraphrasing these instructions as to some of the content of the model instructions.  So, this is Instruction No. 10.

Next is based on 3.13:  *A separate crime is charged against one or more of the defendants.*  And that's Instruction No. 11.

Then we go to Instruction No. 12:  *You have heard testimony that the defendant made a statement.*

I'm assuming that both defendants are requesting this instruction.  This is based on 4.1.

**MR. RODRIGUEZ:**  Yes, Your Honor.

**MR. ROBINSON:**  Yes, Your Honor.

**THE COURT:**  Okay.

Mr. Rodriguez, did you --

13:39:37  1          **MR. RODRIGUEZ:**  Oh, I said yes.

13:39:40  2          **THE COURT:**  Thank you.

13:39:41  3          **MR. RODRIGUEZ:**  I'm sorry, Your Honor.

13:39:42  4          **THE COURT:**  And that's Instruction No. 12.

13:39:44  5          Then we go next in order, which is

13:39:46  6  Instruction No. 13, which has been modified.  This is based

13:39:49  7  on 4.9:  *You have heard testimony from witnesses Pelayo and*

13:39:54  8  *Cervantes Corona.*  And the other names have been removed.

13:39:58  9  Agreed?  Okay.

13:40:00  10         **MR. RODRIGUEZ:**  Yes, Your Honor.

13:40:01  11         **THE COURT:**  That's Instruction No. 13.

13:40:03  12         Instruction No. 14, it concerns the testimony

13:40:07  13 of David Hamilton based on 4.14, and I struck Blake Graham.

13:40:13  14         Then we go to 15, which concerns

13:40:20  15 demonstrative items based on 4.16.  That's Instruction No.

13:40:25  16 15.

13:40:25  17         Then we go to Instruction No. 17, which is

13:40:28  18 based on 4.17:  *Certain charts and summaries have been*

13:40:33  19 *admitted in evidence.*

13:40:34  20         Then we go to instruction 18, which involved

13:40:38  21 the substantive instructions regarding the elements.  And the

13:40:44  22 first instruction is 8.20, the conspiracy elements based on

13:40:54  23 model instructions.  That will be given as 18.

13:40:57  24         And then 19 is based on model instruction

13:41:03  25 8.20, again, it's conspiracy elements.

13:41:18  1          Okay, and then we go to Instruction No. 20,

13:41:21  2  which is -- let's see.  I'm sorry, Instruction No. 19 is

13:41:27  3  based on 8.23.  I didn't say --

13:41:31  4          And Instruction No. 20 is based on 8.20.  It

13:41:35  5  concerns defendant Fernandez only.  And that it refers to

13:41:41  6  Count Four of the indictment?  Is that correct?  Yes.

13:41:44  7          **MR. RODRIGUEZ:**  Yes, Your Honor.

13:41:45  8          **THE COURT:**  Okay.  And then Instruction No. 21,

13:41:52  9  refers to defendant Fernandez only.  I struck Counts Five and

13:41:59  10  Six.  What remains is Count Seven.

13:42:07  11          Instruction No. 22 is based on model

13:42:14  12  instruction 3.15:  *A person possesses a firearm.*

13:42:20  13          Instruction No. 23:  *Knowingly* defined.  *An*

13:42:32  14  *act is done knowingly if the defendant is aware of an act,*

13:42:35  15  *and does not act through ignorance, mistake or accident.*

13:42:41  16          Okay, Instruction No. 24 is government's

13:42:47  17  proposed instruction concerning -- based on model instruction

13:42:51  18  5.1, and this I struck as counts 8 and 9.  What remains is

13:42:58  19  counts 10 and 11 as to defendant Fernandez only.

13:43:03  20          And then 25 is based on United States versus

13:43:14  21  Prince, and this is defendant Fernandez only, and I struck

13:43:22  22  counts 8, 9, and 10 and 11 remain.

13:43:22  23          Instruction No. 27:  *The indictment charges*

13:43:25  24  *that the offenses alleged were committed on or about a*

13:43:27  25  *certain date.*  That remains.

13:43:29  1           And then we go to the concluding instructions
13:43:32  2    28 is based on 7.1:  *When you begin your deliberations.*
13:43:39  3           29 is:  *Communications with the Court.*  Based
13:43:47  4    on instruction 7.2.
13:43:49  5           30 is based on 7.3:  *With regards to note*
13:43:56  6    *taking.*
13:43:57  7           31 is punishment, based on 7.4.
13:44:01  8           32 is proposed -- is based on 7.5:  *A verdict*
13:44:04  9    *has been prepared for you.*
13:44:05  10           And then the final instruction:
13:44:08  11    *Communications with the Court,* based on 7.6, and that's
13:44:16  12    Instruction No. 33.
13:44:17  13           So, any additional instructions that any
13:44:21  14    party is requesting?
13:44:22  15      **MS. RYKKEN:**  Not additional one.  I think you said
13:44:25  16    "Communicating with the Court" twice in your list --
13:44:29  17      **THE COURT:**  You have to speak in the microphone.
13:44:31  18      **MS. RYKKEN:**  Sorry, Your Honor.  I thought that I
13:44:33  19    heard you say that you have the instruction for communicating
13:44:35  20    with the Court at two different places.
13:44:38  21      **THE COURT:**  Yes, and -- let's see, just to -- for
13:44:46  22    clarification.  So, Instruction No. 33 is based on 7.6:  *If*
13:44:51  23    *it becomes necessary to -- during your deliberations to*
13:44:56  24    *communicate with the Court.*
13:44:57  25           And then -- okay, and then Instruction No.

| | |
|---|---|
| 13:45:00 | 1 |
| 13:45:07 | 2 |
| 13:45:11 | 3 |
| 13:45:11 | 4 |
| 13:45:14 | 5 |
| 13:45:18 | 6 |
| 13:45:18 | 7 |
| 13:45:20 | 8 |
| 13:45:21 | 9 |
| 13:45:24 | 10 |
| 13:45:30 | 11 |
| 13:45:31 | 12 |
| 13:45:33 | 13 |
| 13:45:37 | 14 |
| 13:45:39 | 15 |
| 13:45:41 | 16 |
| 13:45:45 | 17 |
| 13:45:47 | 18 |
| 13:45:54 | 19 |
| 13:45:57 | 20 |
| 13:46:01 | 21 |
| 13:46:02 | 22 |
| 13:46:12 | 23 |
| 13:46:28 | 24 |
| 13:46:28 | 25 |

29, I misspoke, it's: *Do not communicate with anyone in any way.*  And that's based on instruction 7.2.  So they're different instructions.

So, does the government have any additional record that you would like to make regarding jury instructions?

**MS. RYKKEN:**  No, Your Honor, thank you.

**THE COURT:**  Mr. Robinson?

**MR. ROBINSON:**  No, Your Honor, thank you.

**MR. RODRIGUEZ:**  No, Your Honor, thank you.

**THE COURT:**  So, we go t.

O the first issue that remain -- well, one of the issues that remain, and that's a motion for mistrial regarding a Bruton error.

The Court has read and considered the pleadings and argument of counsel.  The motion for a mistrial would be denied.

The Court has provided a curative instruction regarding the question asked of the Special Agent, and the response of the Special Agent, and I think that suffices.  So...

And then we go to the -- the last issue is the Rule 29 motion as to Officer Arao, and as to Officer Arao --

So, I have -- what I've looked at is, I've

13:46:31   1   looked at the form that has been offered and received into

13:46:35   2   evidence, and that's Form 4473 which references -- a portion

13:46:43   3   of the form references:  "I further understand that the

13:46:46   4   repetitive purchase of firearms for the purpose of resale for

13:46:50   5   livelihood and profit without a federal firearms license is a

13:46:53   6   violation of federal law."

13:46:54   7                    And then I'm looking at the -- the elements

13:46:58   8   of the offense regarding dealing in firearms without a

13:47:07   9   license, and the first element is:  "Defendant wilfully

13:47:16   10   engaged in the business of dealing in firearms within the

13:47:19   11   sale" -- "the date specified in the indictment."

13:47:21   12                    Second is:  "Defendant did not then have a

13:47:25   13   license as a firearms dealer."

13:47:27   14                    So we know that defendant Arao did not have a

13:47:30   15   license personally Ronin did, the company that he created.

13:47:35   16   And then the third element is:  *One of the issues presented*

13:47:43   17   *in the first elements is that the -- is the term "willfully."*

13:47:52   18   "The government showed that the defendant was wilfully

13:47:52   19   engaged in business of dealing in firearms without a

13:47:57   20   license."  And then "willfully" is defined:  Requires proof

13:48:02   21   that the defendant knew that his conduct was unlawful but

13:48:05   22   does not require that defendant knew -- he knew of the

13:48:09   23   federal licensing requirements.

13:48:11   24                    So, are there any comments you wish to make

13:48:14   25   regarding that narrow issue?

13:48:16    1          **MR. ROBINSON:**  No, Your Honor, other than the ones

13:48:17    2    I've made.

13:48:19    3          **THE COURT:**  Okay.  I think this also applies to

13:48:23    4    Officer Fernandez, any additional arguments?

13:48:25    5          **MR. RODRIGUEZ:**  No, Your Honor, thank you.

13:48:26    6          **THE COURT:**  And does the government have

13:48:28    7    additional arguments?

13:48:29    8          **MS. DRAGALIN:**  Just very briefly, to clarify one

13:48:32    9    point --

13:48:32   10          **THE COURT:**  Yes.

13:48:32   11          **MS. DRAGALIN:**  -- with regard to California law.

13:48:34   12    The government intends to argue, if necessary, in rebuttal,

13:48:38   13    that the officers' conduct here did violate the California

13:48:41   14    law that's noted in point two of the judicial notice, and

13:48:45   15    that's it, no other California law.  I just wanted to clarify

13:48:50   16    that we may make that argument in rebuttal if necessary.

13:48:52   17          **THE COURT:**  Okay.  So, in ruling on a Rule 29

13:48:56   18    motion, the Court is required to draw all inferences in favor

13:48:59   19    of the government.  And so, the Court is going to deny the

13:49:03   20    Rule 29 motion.

13:49:05   21          **MR. RODRIGUEZ:**  Thank you, Your Honor.

13:49:09   22          **THE COURT:**  But I have to say, I spent a little

13:49:14   23    time thinking about the issue.  And with that being said, I

13:49:18   24    think it's probably now for --

13:49:20   25               Yes, Mr. Rodriguez?

| | | |
|---|---|---|
| 13:49:24 | 1 | I need to know how long it will take for the |
| 13:49:26 | 2 | government to present argument. |
| 13:49:28 | 3 | MS. RYKKEN:  Your Honor, I have not done all of |
| 13:49:31 | 4 | the closing, but I assume -- all at once, I think about 45 |
| 13:49:34 | 5 | minutes. |
| 13:49:35 | 6 | THE COURT:  Okay, so, that's opening and closing. |
| 13:49:37 | 7 | MS. RYKKEN:  For opening, and then rebuttal is |
| 13:49:40 | 8 | another 15.  So about an hour in total. |
| 13:49:41 | 9 | THE COURT:  Okay.  So an hour -- the government |
| 13:49:42 | 10 | can have an hour to present opening and closing.  You can |
| 13:49:44 | 11 | reserve any amount of time of that hour for your closing. |
| 13:49:44 | 12 | MS. RYKKEN:  Okay. |
| 13:49:49 | 13 | THE COURT:  Yes? |
| 13:49:49 | 14 | MR. RODRIGUEZ:  Your Honor, I'm sorry, just |
| 13:49:51 | 15 | briefly, I made Rule 29 motion as well.  Does the Court just |
| 13:49:55 | 16 | want to reserve judgment until later? |
| 13:49:57 | 17 | THE COURT:  The Rule 29 motion is denied.  All |
| 13:50:00 | 18 | issues as to both defendants. |
| 13:50:01 | 19 | MR. RODRIGUEZ:  Thank you, Your Honor. |
| 13:50:08 | 20 | THE COURT:  I think we're ready for the jury. |
| 13:50:10 | 21 | MS. RYKKEN:  Your Honor, given that I don't know |
| 13:50:17 | 22 | exactly how long, could the government have 80 minutes |
| 13:50:21 | 23 | instead of 60 minutes? |
| 13:50:23 | 24 | THE COURT:  Let's keep it to an hour. |
| 13:50:25 | 25 | MS. RYKKEN:  Okay. |

| | | |
|---|---|---|
| 13:50:35 | 1 | **THE COURT:**  Now, defense, how long are defendants |
| 13:50:36 | 2 | going to take?  Mr. Robinson? |
| 13:50:36 | 3 | **MR. ROBINSON:**  On behalf of Mr. Arao, Your Honor, |
| 13:50:38 | 4 | I expect to be within 30 and 35 minutes. |
| 13:50:42 | 5 | **MR. RODRIGUEZ:**  On behalf of Officer Fernandez, 45 |
| 13:50:46 | 6 | minutes, give or take. |
| 13:52:12 | 7 | (Following proceedings were held in the presence |
| 13:52:12 | 8 | of the jury.) |
| 13:52:13 | 9 | **THE COURT:**  Okay, we have the jury assembled with |
| 13:52:15 | 10 | the alternates, and counsel are present with the defendants. |
| 13:52:17 | 11 | Please have a seat. |
| 13:52:18 | 12 | Look, I respect that the jury has been |
| 13:52:20 | 13 | waiting patiently.  I can assure you that we have been |
| 13:52:24 | 14 | addressing various legal issues that have been presented to |
| 13:52:27 | 15 | the Court that required a little bit amount of time for |
| 13:52:30 | 16 | consideration and also for research, and so we've been |
| 13:52:34 | 17 | working on the case. |
| 13:52:35 | 18 | It's now the opportunity for the Court to |
| 13:52:38 | 19 | instruct you on the law.  The Court is going to require the |
| 13:52:42 | 20 | lawyers to prepare copies of the instruction for each jury -- |
| 13:52:47 | 21 | for each juror. |
| 13:52:48 | 22 | You're going to have the instructions in |
| 13:52:51 | 23 | written form when you start your deliberations.  So, you do |
| 13:52:54 | 24 | not have to take notes.  If you wish to take notes, feel |
| 13:52:57 | 25 | free, but it's not required.  You're going to have these |

13:53:00    1    instructions.

13:53:00    2                    Members of the jury, you have now heard all

13:53:03    3    of the evidence.  It is my duty to instruct you on the law

13:53:06    4    that applies to this case.  A copy of these instructions will

13:53:08    5    be available in the jury room for you to consult.

13:53:11    6                    It is your duty to weigh and to evaluate all

13:53:15    7    the evidence received in the case, and in that process decide

13:53:17    8    the facts.  It is also your duty to apply the law as I give

13:53:23    9    it to you to the facts as you find them, whether you agree

13:53:25   10    with the law or not.  You must decide the case solely on the

13:53:29   11    evidence and the law and must not be influenced by any likes

13:53:34   12    or dislikes -- personal likes or dislikes, opinions

13:53:38   13    prejudices or sympathy.  You will recall that you took an

13:53:41   14    oath promising to do so at the beginning of the case.

13:53:43   15                    You must follow all the instructions and not

13:53:47   16    single out some and ignore others.  They are all important.

13:53:50   17                    Do not read into these instructions or into

13:53:55   18    anything I may have said or done as a suggestion as to what

13:53:59   19    verdict you should return.  That is a matter entirely up to

13:54:03   20    you.

13:54:03   21                    The indictment is not evidence.  The

13:54:06   22    defendants have pleaded not guilty to the charges.  The

13:54:08   23    defendants are to be presume innocent unless and until the

13:54:13   24    government has proved the defendant guilty beyond a

13:54:16   25    reasonable doubt.  In addition, the defendants do not have to

13:54:18  1   testify or present any evidence to prove innocence.  The

13:54:20  2   government has the burden of proving every element of the

13:54:23  3   charge beyond a reasonable doubt.

13:54:26  4              A defendant in a criminal case has a

13:54:29  5   constitutional right not to testify.  You may not draw any

13:54:33  6   inference of any kind from the fact that the defendant did

13:54:38  7   not testify.

13:54:39  8              Proof beyond a reasonable doubt is proof that

13:54:43  9   leaves you firmly convinced that the defendant is guilty.  It

13:54:48 10   is not required that the government prove guilt beyond all

13:54:53 11   possible doubt.

13:54:54 12              A reasonable doubt is a doubt based upon

13:54:58 13   reason and common sense and is one not based purely on

13:55:04 14   speculation.  It may arise from a careful and impartial

13:55:08 15   consideration of all the evidence or from lack of the

13:55:10 16   evidence.

13:55:11 17              If after carefully and impartial

13:55:13 18   consideration of all the evidence you are not convinced

13:55:15 19   beyond a reasonable doubt that the defendant is guilty, it is

13:55:17 20   your duty to find the defendant not guilty.

13:55:21 21              On the other hand, if after careful and

13:55:24 22   impartial consideration of all the evidence you are convinced

13:55:27 23   beyond a reasonable doubt that the defendant is guilty, it is

13:55:29 24   your duty to find the defendant guilty.

13:55:31 25              The evidence you are to consider in deciding

13:55:34  1   the facts consists of the sworn testimony of any witness, the

13:55:40  2   exhibits received in evidence and any facts to which the

13:55:43  3   parties have agreed.

13:55:47  4            In reaching your verdicts, you may consider

13:55:50  5   only the testimony and exhibits received in evidence.  The

13:55:53  6   following things are not evidence, and you may not consider

13:55:56  7   them in deciding what the facts are.  Questions, statements,

13:56:00  8   objections and arguments by the lawyers are not evidence.

13:56:03  9            The lawyers are not witnesses.  Although you

13:56:06  10  may consider a lawyer's questions to understand the answers

13:56:08  11  of a witness, the lawyers's questions are not evidence.

13:56:13  12            Summarily, what the lawyers have said in

13:56:16  13  opening statements, what they will say in arguments and at

13:56:21  14  other times is intended to help you interpret the evidence,

13:56:24  15  but it is not evidence.  If the facts as you remember them

13:56:28  16  differ from the way the lawyers state them, your memory of

13:56:30  17  them controls.

13:56:32  18            Any evidence that I have excluded, stricken

13:56:36  19  or instructed you to disregard is not evidence.  In addition,

13:56:41  20  some evidence was received only for a limited purpose.  When

13:56:46  21  I have instructed you to consider certain evidence in a

13:56:48  22  limited way, you must do so.

13:56:52  23            Anything that you may have seen or heard when

13:56:54  24  the Court was not in session is not evidence.  You are to

13:57:00  25  decide the case solely on the evidence received at trial.

13:57:04  1            Evidence may be either direct or

13:57:07  2    circumstantial.  Direct evidence is direct proof of a fact

13:57:11  3    such as the testimony by a witness about what that witness

13:57:15  4    personally saw or heard or did.

13:57:18  5            Circumstantial evidence is indirect evidence,

13:57:19  6    that is, it is proof of one or more facts from which you can

13:57:24  7    find another fact.

13:57:25  8            You are to consider both direct and

13:57:28  9    circumstantial evidence.  Either may be used to prove any

13:57:31  10   fact.  The law makes no distinction between the weight to be

13:57:34  11   given to either direct or circumstantial evidence.  It is for

13:57:38  12   you to decide how much weight to give to any evidence.

13:57:41  13           In deciding the facts in this case, you may

13:57:47  14   have to decide which testimony to believe and which testimony

13:57:50  15   not to believe.  You may believe everything a witness says or

13:57:54  16   part of it or none of it.

13:57:56  17           In considering the testimony of any witness,

13:57:58  18   you may take into account the witness' opportunity and the

13:58:02  19   ability to see or hear or know the things testified to, the

13:58:07  20   witness's memory, the witness's manner while testifying, the

13:58:12  21   witness's interest in the outcome of the case, if any, the

13:58:17  22   witness's bias or prejudice if any, whether other evidence

13:58:22  23   contradicted the witness's testimony, the reasonableness of

13:58:25  24   the witness's testimony in light of all of the evidence, and

13:58:28  25   any other factors that bear upon believability.

13:58:33   1                The weight of the evidence as to a fact does

13:58:36   2  not necessarily depend on the number of witnesses who

13:58:38   3  testify.  What is important is how believable the witnesses

13:58:41   4  were, and how much weight you think their testimony deserved.

13:58:45   5                You have heard testimony from witnesses.

13:58:50   6  Mr. Pelayo and Special Agent Hart.  I instructed you that

13:58:55   7  this evidence was admitted only for a limited purpose.

13:58:58   8                Defendant Fernandez is charge with making

13:59:00   9  false statements in a federal firearms license record in

13:59:04 10  violation of Title 18, Section 924(a), in disposing of a

13:59:12 11  firearm to a prohibited person, in violation of Title 18,

13:59:16 12  Section 1922(d)(1).

13:59:17 13                You have heard evidence regarding his and

13:59:19 14  others's conduct concerning these allegations.

13:59:21 15                Defendant Arao is not charged with these two

13:59:24 16  crimes.  He is only charged with a conspiracy to deal in and

13:59:27 17  the unlawful dealing in firearms without a license, in

13:59:31 18  violation of Title 18, U.S. Code, Section 371 and 1922(a)(1).

13:59:36 19  To the extent you heard any evidence regarding defendant Arao

13:59:44 20  during these witnesses' testimony, you are only to consider

13:59:46 21  it for the limited purpose of the two crimes charged against

13:59:49 22  defendant Arao and not for any other purpose.

13:59:51 23                You are here to determine -- you are here

13:59:54 24  only to determine whether the defendant is guilty or not

13:59:56 25  guilty of the charges in the indictment.  The defendants are

13:59:59  1    not on trial for any conduct or offense not charged in the

14:00:02  2    indictment.

14:00:06  3            A separate crime is charged against one or

14:00:08  4    more of the defendants in each count.  The charges have been

14:00:12  5    joined for trial.  You must decide the case of each defendant

14:00:16  6    on each crime charged against that defendant separately.

14:00:20  7            Your verdicts on any count as to any

14:00:22  8    defendant should not control your verdict on any other count

14:00:25  9    or as to any other defendant.

14:00:27  10           All the instructions apply to each defendant

14:00:31  11   and to each count unless a specific instruction states that

14:00:34  12   it only applies only to a specific defendant or a count.

14:00:40  13           You have heard testimony that a defendant

14:00:43  14   made a statement.  It is for you to decide whether the

14:00:46  15   defendant made the statement; and if so, how much weight to

14:00:49  16   give to it.  In making these decisions, you should consider

14:00:53  17   all the evidence about the statement, including the

14:00:55  18   circumstances under which the defendant may have made it.

14:00:59  19           You have heard testimony from witnesses,

14:01:04  20   Mr. Pelayo and Mr. Corona.  These witnesses hope to receive

14:01:12  21   or have received favored treatment from the government in

14:01:15  22   connection with this case.  Some of these witnesses admitted

14:01:19  23   being accomplices to one or more of the crimes charged.  An

14:01:23  24   accomplice is one who voluntarily or intentionally joins with

14:01:26  25   another in committing a crime.

14:01:28    1          Some of these witnesses pleaded guilty to a

14:01:30    2    crime or crimes arising out of the same events for which the

14:01:36    3    defendant are on trial.  A cooperating witness's guilty plea

14:01:39    4    is not evidence against the defendant, and you may consider

14:01:41    5    it only in determining a witness's believability.

14:01:45    6          Because of the status of these witnesses in

14:01:48    7    evaluating their testimony, you should consider the extent to

14:01:52    8    which or whether their testimony may have been influenced by

14:01:55    9    any of these factors.  In addition, you should examine the

14:02:00   10    witnesses -- you should examine the testimony of these

14:02:02   11    witnesses with greater caution than that of other witnesses.

14:02:06   12          You have heard testimony from Special Agent

14:02:11   13    David Hamilton who testified to opinions and the reasons for

14:02:16   14    his opinion.  This opinion testimony is allowed because of

14:02:20   15    the education or experience of this witness.

14:02:22   16          Such opinion testimony should be judged like

14:02:25   17    any other testimony.  You may accept it or reject it and give

14:02:28   18    it as much weight as you think it deserves, considering the

14:02:32   19    witness's education and experience, the witness -- the

14:02:35   20    reasons given for the opinion, and all the other evidence in

14:02:39   21    the case.

14:02:41   22          During the trial, certain demonstrative items

14:02:47   23    were shown to you in order to help explain the evidence in

14:02:50   24    this case .  These demonstrative exhibits were not admitted

14:02:53   25    in evidence and will not go into the jury room with you.

14:02:57  1    They are not themselves evidence or proof of any facts.  If

14:03:01  2    they do not correctly reflect the facts or figures shown by

14:03:06  3    the evidence in the case, you should disregard these exhibits

14:03:08  4    and determine the facts from the underlying evidence.

14:03:10  5              Certain charts and summaries have been

14:03:13  6    admitted into evidence.  Charts and summaries are only as

14:03:17  7    good as the underlying supporting material.  You should

14:03:20  8    therefore give them only such weight as you think the

14:03:23  9    underlying material deserves.

14:03:29  10             The defendants are charged in Count One of

14:03:31  11   the indictment with conspiring to engage in the business of

14:03:33  12   dealing in firearms without a license, in violation of

14:03:36  13   Section 371, Title 18 of the United States Code.  In order

14:03:42  14   for the defendants to be found guilty of that charge, the

14:03:45  15   government must prove each of the following elements beyond a

14:03:50  16   reasonable doubt.  First, beginning on or about July 10, 2015

14:03:54  17   and ending on or about July 26, 2017, there was an agreement

14:04:01  18   between two or more persons to commit at least one crimes as

14:04:04  19   charged in the indictment.

14:04:05  20             Second:  The defendant became a member of the

14:04:08  21   conspiracy knowing of at least one of its objects and

14:04:11  22   intending to help accomplish it.

14:04:13  23             Third:  One of the members of the conspiracy

14:04:16  24   performed at least one overt act for the purpose of carrying

14:04:20  25   out a conspiracy.

14:04:21  1          A conspiracy is a kind of criminal

14:04:23  2   partnership, an agreement of two or more persons to commit

14:04:29  3   one or more crimes.  The crime of conspiracy is the agreement

14:04:31  4   to do something unlawful.  It does not matter whether the

14:04:33  5   crime agreed upon was committed.

14:04:35  6          For a conspiracy to have existed, it is not

14:04:39  7   necessary that the conspirators made a formal agreement or

14:04:43  8   that they agreed on every detail of the conspiracy.  It is

14:04:46  9   not enough, however, that they simply met, discussed matters

14:04:50  10  of common interests, acted in similar ways or perhaps helped

14:04:54  11  one another.

14:04:54  12         You must find that there was a plan to commit

14:04:57  13  at least one of the crimes alleged in the indictment as an

14:05:02  14  object of the conspiracy with all of you agreeing as to the

14:05:06  15  particular crime which the conspirators agreed to commit.

14:05:09  16         One becomes a member of a conspiracy by

14:05:13  17  wilfully participating in the unlawful plan with the intent

14:05:17  18  to advance or further some object or a purpose of the

14:05:20  19  conspiracy even though the person does not have full

14:05:23  20  knowledge of all of the details of the conspiracy.

14:05:26  21         Furthermore, one who wilfully joins an

14:05:32  22  exiting conspiracy is as responsible for it as the

14:05:34  23  originators.  On the other hand, one who has no knowledge of

14:05:38  24  the conspiracy but happens to act in a way which furthers

14:05:42  25  some object or purpose of the conspiracy does not thereby

14:05:46  1    become conspirator.  Summarily, a person does not become a

14:05:51  2    conspirator merely by associating with one or more persons

14:05:54  3    who are conspirators, nor merely by knowing that a conspiracy

14:05:58  4    exists.

14:05:59  5            An overt act does not itself have to be

14:06:03  6    unlawful.  A lawful act may be an element of a conspiracy if

14:06:08  7    it was done for the purpose of carrying out the conspiracy.

14:06:11  8    The government is not required to prove that the defendant

14:06:14  9    personally did one of the overt acts.

14:06:18  10           A conspiracy may continue for a long period

14:06:22  11   of time and may include the performance of many transactions.

14:06:26  12   It is not necessary that all members of the conspiracy join

14:06:29  13   in it at the same time, and one may become a member of a

14:06:34  14   conspiracy without full knowledge of all of the details of

14:06:39  15   the unlawful scheme or the names, identities or locations of

14:06:44  16   all of the other members.

14:06:46  17           Even though a defendant did not directly

14:06:48  18   conspire with all the other capacitors in the overall scheme,

14:06:51  19   the defendant has in effect agreed to participate in a

14:06:54  20   conspiracy if the government proves each of the following

14:06:59  21   beyond a reasonable doubt.

14:06:59  22           First, the defendant conspired with one or

14:07:02  23   more capacitors to carry out at least one of the objects of

14:07:06  24   the conspiracy.  Second, the defendant knew or had reason to

14:07:11  25   know that the other capacitors were involved with whom the

UNITED STATES DISTRICT COURT

14:07:17  1    defendant directly conspired.  And third, the defendant had

14:07:21  2    reason to believe that whatever benefits the defendants might

14:07:26  3    get from the conspiracy were probably dependent upon the

14:07:31  4    success of the entire venture.

14:07:35  5              It is not a defense that a person's

14:07:40  6    participation in a conspiracy was minor or for a short period

14:07:41  7    of time.

14:07:41  8              Defendant Fernandez is charged in Count Four

14:07:43  9    of the indictment with conspiring to dispose of a firearm to

14:07:48  10   a prohibited person and conspiring to make a false statement

14:07:52  11   during the purchase of a firearm in violation of Section 371

14:07:56  12   of Title 18 of the United States Code.

14:07:59  13             In order for defendant Fernandez to be found

14:08:01  14   guilty of that charge, the government must prove each of the

14:08:05  15   following elements beyond a reasonable doubt.

14:08:06  16             First:  Beginning on or about May 29, 2016,

14:08:11  17   and ending on or about December 27, 2017, there was an

14:08:16  18   agreement between two or more persons to commit at least one

14:08:21  19   crime as charged in the indictment.

14:08:23  20             Second:  The defendant became a member of the

14:08:25  21   conspiracy knowing of at least one of its objects and

14:08:28  22   intending to help accomplish it.

14:08:30  23             Third:  One of the members of the conspiracy

14:08:33  24   performed at least one overt act for the purpose of carrying

14:08:36  25   out the conspiracy.  The additional instruction in conspiracy

| | |
|---|---|
| 14:08:46 | 1 |
| 14:08:51 | 2 |
| 14:08:59 | 3 |
| 14:09:02 | 4 |
| 14:09:08 | 5 |
| 14:09:11 | 6 |
| 14:09:16 | 7 |
| 14:09:17 | 8 |
| 14:09:19 | 9 |
| 14:09:25 | 10 |
| 14:09:29 | 11 |
| 14:09:33 | 12 |
| 14:09:44 | 13 |
| 14:09:49 | 14 |
| 14:09:54 | 15 |
| 14:09:55 | 16 |
| 14:09:58 | 17 |
| 14:10:03 | 18 |
| 14:10:07 | 19 |
| 14:10:10 | 20 |
| 14:10:13 | 21 |
| 14:10:14 | 22 |
| 14:10:18 | 23 |
| 14:10:23 | 24 |
| 14:10:25 | 25 |

in these instructions as to Count One apply to Count Four.

Defendant Fernandez is charged in Count Seven of the indictment with disposing a firearm to a prohibited person in violation of 922(d) of Title 18 United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt.

First:  The defendant knowingly disposed of the specific firearms in Count Seven to Oscar Maravilla Camacho, Jr., and the defendant knew or had reasonable cause to believe that Camacho, Jr. was a felon.

A felony is defined as a crime punishable by imprisonment for a term exceeding one year.  The term "dispositive of" means to transfer a firearm so that the transferee acquires the possession of the firearms.

A person possesses a firearm if the person knows of its presence and has physical control of it or knows of its presence and has power and intention to control it. More than one person can be in possession of a firearm if each knows of its presence and has the power and intention to control it.

An act is done knowingly if the defendant is aware of the act and does not act through ignorance, mistake or accident.  You may consider evidence of the defendant's acts -- words, acts or omissions as long as all the other

14:10:31  1    evidence -- along with all the other evidence in deciding

14:10:36  2    whether the defendant acted knowingly.

14:10:39  3              As to counts 10 and 11, defendant Fernandez

14:10:44  4    may be found guilty of making a false statement during the

14:10:46  5    purchase of a firearm even if defendant Fernandez personally

14:10:51  6    did not commit the act or acts constituting the crime but

14:10:55  7    aided and abetted in its commission.

14:10:57  8              To aid and abet means intentionally to help

14:11:01  9    someone else commit a crime.

14:11:02  10             To prove defendant guilty of making a false

14:11:05  11   statement during the purchase of a firearm by aiding and

14:11:08  12   abetting, the government must prove each of the following

14:11:12  13   beyond a reasonable doubt.

14:11:13  14             First:  Someone else committed the crime of

14:11:17  15   making a false statement during the purchase of a firearms;

14:11:21  16   second, the defendant aided, counseled, commanded, induced or

14:11:25  17   procured that person with respect to at least one element of

14:11:27  18   the crime; third, the defendant acted with the intent to

14:11:30  19   facilitate the crime; and fourth, the defendant acted before

14:11:33  20   the crime was completed.

14:11:38  21             It is not enough that the defendant merely

14:11:40  22   associated with the person committing the crime or

14:11:43  23   unknowingly or unintentionally did things that were helpful

14:11:46  24   to that person or was present at the scene of the crime.

14:11:50  25             The evidence must show beyond a reasonable

UNITED STATES DISTRICT COURT

| 14:11:52 | 1 | doubt that the defendant acted with knowledge and intention |

14:11:52  1  doubt that the defendant acted with knowledge and intention

14:11:55  2  of helping that person commit the crime of making a false

14:11:58  3  statement during the purchase of a firearm.

14:12:01  4           A defendant acts with the intent to

14:12:03  5  facilitate the crime when the defendant actively participants

14:12:06  6  in a criminal venture with advance knowledge of the crime and

14:12:10  7  having acquired that knowledge when the defendant still had a

14:12:14  8  realistic opportunity to withdraw from the crime.

14:12:17  9           Defendant Fernandez is charged in Count 10

14:12:24  10  and 11 of the indictment with aiding and abetting of a false

14:12:28  11  statement in a federal firearms licensees records during the

14:12:33  12  purchase of a firearm in violation of Section 924(a)(1)(A) of

14:12:38  13  Title 18, United States Code.

14:12:40  14           In order for the defendant to be found guilty

14:12:42  15  of that charge, the government must prove each of the

14:12:46  16  following elements beyond a reasonable doubt:  First, a

14:12:48  17  person made a false statement or representation.

14:12:51  18           The statement made -- the statement was made

14:12:54  19  in the record that a licensed firearms dealer was required to

14:12:58  20  maintain.

14:12:59  21           Third:  The dealer was federally licensed

14:13:02  22  firearms dealer at the time the statement was made.

14:13:05  23           And fourth:  The person knew that the

14:13:07  24  statement was false.

14:13:08  25           The indictment charges that the offenses

14:13:11  1    alleged were committed on or about a certain date.  Although

14:13:15  2    it is necessary for the government to prove beyond a

14:13:18  3    reasonable doubt that the offenses were committed on a date

14:13:21  4    reasonably near the date alleged in the indictment, it is not

14:13:24  5    necessary for the government to prove that the offenses were

14:13:27  6    committed precisely on the date charged.

14:13:31  7            When you begin your deliberations, after

14:13:35  8    argument of counsel later this afternoon, you will elect one

14:13:39  9    member of the jury as your foreperson who will preside over

14:13:44  10   the deliberations and speak for you here in court.

14:13:47  11           You will then discuss the case with your

14:13:49  12   fellow jurors to reach agreement if you can do so.  Your

14:13:52  13   verdict whether guilty or not guilty must be unanimous.

14:13:55  14           Each of you must decide the case for

14:13:57  15   yourself, but you should do so only after you have considered

14:14:00  16   all of the evidence, discussed it fully with your fellow

14:14:04  17   jurors, and listened to the views of your fellow jurors.  Do

14:14:07  18   not be afraid to change your opinion if the discussion

14:14:11  19   persuades you that you should, but do not come to a decision

14:14:17  20   simply because other jurors think it is right.  It is

14:14:20  21   important that you attempt to reach a unanimous verdict but

14:14:24  22   of course only if each of you can do so after having made

14:14:27  23   your own conscientious decision.

14:14:27  24           Do not change an honest belief about the

14:14:30  25   weight and effect of the evidence simply to reach a verdict.

14:14:33    1            Because you must base your verdict only on

14:14:36    2     the evidence received in the case and on these instructions,

14:14:39    3     I remind you that you must not be exposed to any other

14:14:43    4     information about the case or to the issues it involves.

14:14:46    5     Except for discussing the case with your fellow jurors during

14:14:50    6     your deliberations.

14:14:51    7            Do not communicate with anyone in any way,

14:14:54    8     and do not let anyone else communicate with you in any way

14:14:57    9     about the merits of case or anything to do with it.  This

14:15:01   10     includes discussing the case in person, writing, phone,

14:15:04   11     electronic means, the e-mail, text messaging, Internet chat

14:15:10   12     blog, chat blog room, blog, website or other feature.  This

14:15:16   13     applies to communicating with your family members, employer,

14:15:19   14     media press and people involved in the trial.

14:15:22   15            If you are asked or approached in any way

14:15:24   16     about your jury service or anything about this case, you must

14:15:29   17     respond that you have been ordered not to discuss the matter,

14:15:31   18     and to report the contact to the Court.

14:15:35   19            Do not read, watch, listen to any news or

14:15:39   20     media accounts or to commentary about the case or anything to

14:15:43   21     do with it, and do not do any research such as consulting the

14:15:48   22     dictionaries, searching the Internet, or using other

14:15:51   23     reference materials, and do not make any investigation or in

14:15:54   24     any other way try to learn about the case on your own.

14:15:57   25            The law requires these restrictions to ensure

14:16:00  1   the parties have a fair trial based on the same evidence that

14:16:03  2   each party has had an opportunity to address.  A juror who

14:16:07  3   violates these restrictions jeopardizes the fairness of these

14:16:11  4   proceedings, and a mistrial could result that would require

14:16:15  5   the entire trial process to start over.

14:16:17  6            If a juror is exposed to any outside

14:16:20  7   information, please notify the Court immediately.

14:16:22  8            Some of you have taken notes during trial.

14:16:25  9   Whether or not you took notes, you should rely on your own

14:16:28  10  memory on what was said.  Notes are only to assist your

14:16:32  11  memory.  You should not be overly influenced by your notes or

14:16:35  12  the notes of your fellow jurors.

14:16:37  13           Punishment by law for these crimes is for the

14:16:40  14  Court to decide.  You may not consider punishment in deciding

14:16:43  15  whether the government has proved its case beyond a

14:16:46  16  reasonable doubt.  A verdict form has been prepared for you.

14:16:51  17  The verdict form will require you to follow directions on

14:16:54  18  these forms and to make certain findings that I have

14:16:57  19  previously referenced in these instructions.

14:16:59  20           After you have reached a unanimous agreement

14:17:01  21  on your verdicts, your foreperson should complete the verdict

14:17:06  22  form, according to your deliberations, sign it, date it,

14:17:10  23  advise the bailiff or clerk that you are ready to return to

14:17:16  24  the courtroom.

14:17:16  25           And if during deliberations it becomes

14:17:20  1   necessary to communicate with me, you may send a note through

14:17:23  2   the clerk or bailiff, signed by any one or more of you.  No

14:17:28  3   member of the jury should ever attempt to communicate with me

14:17:31  4   except by a signed writing, and I will respond to the jury

14:17:34  5   concerning the case only in writing or here in open court.

14:17:38  6            If you send out a question, I will consult

14:17:40  7   with counsel first before answering it which may take some

14:17:44  8   time.

14:17:44  9            You may continue your deliberations while

14:17:47  10  waiting for an answer to any question.  Remember, you are not

14:17:50  11  to tell anyone, including me, how the jury stands numerically

14:17:58  12  or otherwise on any question submitted to you including the

14:18:03  13  guilt of a defendant until after you have reached a unanimous

14:18:05  14  verdict or have otherwise been discharged by the Court.

14:18:07  15           That concludes the reading of the jury

14:18:10  16  instructions to the jury.  And with that, does counsel need

14:18:13  17  any time to set up?

14:18:15  18           **MS. RYKKEN:**  Just like one minute.

14:18:18  19           **THE COURT:**  Okay.

14:18:19  20           **MR. ROBINSON:**  Your Honor, may I have one moment

14:18:21  21  with the government?

14:18:23  22           **THE COURT:**  Yes.

14:18:23  23           **MR. ROBINSON:**  May I speak with the government for

14:18:26  24  one minute, Your Honor?

14:18:28  25           **THE COURT:**  Yes, please.

| | | |
|---|---|---|
| 14:18:34 | 1 | (Discussion off the record.) |
| 14:18:36 | 2 | **THE COURT:**  And the gentleman in the back of the |
| 14:18:38 | 3 | Court, in the chair, that's reserved for security officers |
| 14:18:42 | 4 | only. |
| 14:18:42 | 5 | **MS. RYKKEN:**  Can we approach at sidebar, please? |
| 14:18:42 | 6 | **THE COURT:**  Yes. |
| 14:19:08 | 7 | (Sidebar conference.) |
| 14:19:08 | 8 | **MR. ROBINSON:**  The parties agreed that the Court |
| 14:19:09 | 9 | did not read Instruction No. 19, which is the substantive |
| 14:19:13 | 10 | instruction on the -- on the dealing counts. |
| 14:19:48 | 11 | **THE COURT:**  Instruction No. 19. |
| 14:19:50 | 12 | **MS. RYKKEN:**  Yeah.  Our instruction -- it's the |
| 14:20:00 | 13 | substantive count against Counts Two and Three. |
| 14:20:05 | 14 | **THE COURT:**  We went through these before.  They're |
| 14:20:07 | 15 | numbered. |
| 14:20:07 | 16 | **MR. ROBINSON:**  I know, and I listened. |
| 14:20:11 | 17 | **MS. RYKKEN:**  This was the disputed instruction |
| 14:20:13 | 18 | that we revisited and you accepted. |
| 14:20:18 | 19 | **MR. ROBINSON:**  This is the government's |
| 14:20:19 | 20 | instruction. |
| 14:20:27 | 21 | **MS. RYKKEN:**  Did we know -- |
| 14:20:29 | 22 | (Discussion held off the record.) |
| 14:20:29 | 23 | **MR. ROBINSON:**  I mean, I don't mind the Court to |
| 14:20:32 | 24 | read -- it's what you ruled on in the conference, and I think |
| 14:20:34 | 25 | it's accurately -- |

| | | |
|---|---|---|
| 14:20:36 | 1 | **THE COURT:**  You -- does the -- |
| 14:20:36 | 2 | **MS. RYKKEN:**  Yes, yes, yes. |
| 14:20:37 | 3 | **THE COURT:**  -- government agree that -- |
| 14:20:40 | 4 | **MS. RYKKEN:**  Yes, yes, yes. |
| 14:20:40 | 5 | **THE COURT:**  -- we can go to the instructions if |
| 14:20:42 | 6 | this instruction was read -- |
| 14:20:44 | 7 | **MR. ROBINSON:**  I don't think it was. |
| 14:20:46 | 8 | **MS. RYKKEN:**  I don't remember that either. |
| 14:20:47 | 9 | **THE COURT:**  But this is my Instruction No. 19 |
| 14:20:49 | 10 | which is different from yours.  Let's see.  Yes. |
| 14:20:57 | 11 | **MR. ROBINSON:**  Page 37. |
| 14:20:59 | 12 | **THE COURT:**  Yes, Instruction No. 19.  The |
| 14:21:02 | 13 | instructions were numbered when we went on the record in the |
| 14:21:06 | 14 | afternoon, in consecutive order based on our discussions. |
| 14:21:12 | 15 | I'll read this instruction. |
| 14:21:13 | 16 | **MS. RYKKEN:**  Okay. |
| 14:21:13 | 17 | **MR. ROBINSON:**  If you could -- if Mr. Cruz can |
| 14:21:17 | 18 | hand it back to me. |
| 14:21:23 | 19 | (In open court.) |
| 14:21:24 | 20 | **THE COURT:**  There is another instruction that |
| 14:21:25 | 21 | counsel has asked that I read. |
| 14:21:27 | 22 | Defendant Fernandez is charged in Count Two |
| 14:21:30 | 23 | of the indictment with dealing in firearms without a license. |
| 14:21:33 | 24 | Defendant Arao is charged in Count Three of |
| 14:21:35 | 25 | the indictment with dealing with firearms without a license |

14:21:38  1   in violation of Section 922(a)(1) of Title 18 of the United

14:21:43  2   States Code.

14:21:43  3           In order for the defendant to be found guilty

14:21:45  4   of that charge, the government must prove each of the

14:21:48  5   following elements beyond a reasonable doubt.

14:21:49  6           First:  The defendant was wilfully engaged in

14:21:52  7   the business of dealing with firearms within the dates

14:21:54  8   specified in the indictment.

14:21:56  9           Second:  The defendant did not then have a

14:21:58  10  license as the firearms dealer.

14:22:02  11          The term "engaged in business" means as

14:22:05  12  applied to a dealer in firearms, a person who devotes time,

14:22:08  13  attention and labor to dealing in firearms as a regular

14:22:12  14  course of trade or business with the principal objective of

14:22:16  15  livelihood and profit through the repetitive purchase and

14:22:20  16  resale of firearms, but such term shall not include a person

14:22:23  17  who makes occasional sales, exchanges or purchases of

14:22:27  18  firearms for the enhancements of a personal collection or for

14:22:31  19  a hobby or who sells all or part of his personal collection

14:22:36  20  of firearms.

14:22:36  21          "Willfully" is used in this statute requires

14:22:40  22  proof that the defendant knew that his conduct was unlawful

14:22:43  23  but does not require proof that the defendant knew of the

14:22:47  24  federal licensing requirement.

14:22:48  25          And with that, all the instructions have now

UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| 14:22:51 | 1 | been read.  Agreed? |
| 14:22:52 | 2 | **MR. ROBINSON:**  Yes, thank you, Your Honor. |
| 14:22:54 | 3 | **THE COURT:**  Okay. |
| 14:22:54 | 4 | **MS. RYKKEN:**  Yes. |
| 14:23:18 | 5 | **THE COURT:**  The government will have approximately |
| 14:23:20 | 6 | an hour to present opening and closing arguments.  The |
| 14:23:22 | 7 | government gets two opportunities to address you.  The |
| 14:23:27 | 8 | defendants have only one opportunity, because the government |
| 14:23:32 | 9 | has the burden of proof, and it's proof beyond a reasonable |
| 14:23:34 | 10 | doubt. |
| 14:23:34 | 11 | **MS. RYKKEN:**  Thank you, Your Honor.  May I |
| 14:23:40 | 12 | proceed? |
| 14:23:41 | 13 | **THE COURT:**  One second. |
| 14:23:43 | 14 | (Discussion off the record.) |
| 14:23:47 | 15 | **THE COURT:**  It may be that during the course of |
| 14:23:49 | 16 | the argument at some point in time, we may have to take a |
| 14:23:53 | 17 | short recess. |
| 14:23:55 | 18 | **MS. RYKKEN:**  Okay.  May I proceed, Your Honor? |
| 14:23:58 | 19 | **THE COURT:**  Yes, please. |
| 14:23:59 | 20 | **MS. RYKKEN:**  Thank you. |
| 14:24:03 | 21 | (CLOSING ARGUMENTS BY THE GOVERNMENT) |
| 14:24:06 | 22 | **MS. RYKKEN:**  Defendant Fernandez and defendant |
| 14:24:10 | 23 | Arao swore an oath to uphold the law.  Instead, they broke |
| 14:24:15 | 24 | the law. |
| 14:24:15 | 25 | This is not a simple case, but it is |

14:24:17  1    straightforward.  The defendants took advantage of the

14:24:22  2    privilege that it is to be a police officer.

14:24:25  3              Defendant Fernandez broke the law flagrantly,

14:24:29  4    daring to be caught.

14:24:32  5              Defendant Arao broke the law quietly but just

14:24:37  6    as brazenly.

14:24:40  7              For two years they bought and sold gun after

14:24:43  8    gun after gun.  Of course they knew it was illegal.  It is

14:24:49  9    their job to know the law.

14:24:53  10             And defendant Fernandez, he repeatedly helped

14:24:57  11   people to complete straw purchases of a gun.  He didn't care

14:25:02  12   who the gun went to, and in fact, he sold ten guns to a

14:25:07  13   felon.

14:25:07  14             Next, I'm going to walk you through the

14:25:09  15   charges, and then what lawyers call the elements of each

14:25:13  16   crime and how the evidence that we've shown you the last week

14:25:17  17   prove each element of each crime.

14:25:20  18             There are four crimes charged here in seven

14:25:23  19   counts.  There is Conspiracy charged in Counts One and Four;

14:25:28  20   Illegal Dealing, and that's Counts Two and Three; False

14:25:33  21   Statement, Selling a Gun to a Felon, and Conspiracy.

14:25:39  22             You have to decide each of these counts

14:25:41  23   separately and as to each defendant.

14:25:45  24             Defendants Arao and Fernandez are charged

14:25:47  25   together in Count One and separately in Count Two as to

14:25:50  1    defendant Fernandez, and Count Three as to defendant Arao.

14:25:55  2    They are charged with engaging in the illegal dealing of

14:25:58  3    firearms.

14:26:00  4                Defendant Fernandez is charged with four

14:26:06  5    additional counts, that was counts 4, 7, 10 and 11 with

14:26:12  6    disposing of a gun to a felon and false statement.  I'll

14:26:15  7    discuss those in more detail later.

14:26:17  8                Let's go through the element of illegal

14:26:19  9    dealing first, counts two and three.

14:26:26 10                First:  Neither defendant had a license to

14:26:28 11    sell guns.  And second, they're engaged in the business of

14:26:33 12    dealing guns.  And third, they acted willfully.

14:26:40 13                With respect to the first element, neither

14:26:44 14    defendant had a license to sell guns as an individual.  You

14:26:47 15    know that that's true because the ATF counts records of

14:26:51 16    everyone who has a license to deal.  That's what Special

14:26:55 17    Agent Hamilton told you on the stand the first day.

14:26:57 18                Here is the document showing that defendant

14:26:59 19    Fernandez did not have a license.  That's Exhibit 20.

14:27:06 20                You know that Arao didn't have a license.

14:27:09 21    Here is the document that shows you that he didn't have a

14:27:12 22    license.  That's that exhibit 21.  Neither defendant had a

14:27:18 23    license, and that's the first element.

14:27:24 24                All right, what does it mean *to be engaged in*

14:27:27 25    *the business*?  The Court instructed you earlier that the law

| 14:27:30 | 1 | looked at several factors to determine whether the defendant |

looked at several factors to determine whether the defendant is engaged in the business of dealing firearms.  Not every single one of these need be true, but these are the relevant factors.

First:  Time, attention and labor.

Second:  In the regular course of business.

Third:  The principal objective of livelihood and profit.

And fourth:  The repetitive purchase and resale of gun.

Let's turn to the first factor:  Time, attention and labor.  For example, the defendants each maintained Instagram accounts that were designed to advertise and sell guns.  Here's the one from Ronin Tactical Group.  That's exhibit 42.  In the entry page here you can see nine images, all of which show guns, it also has some advertising and marketing materials.

Sure, Ronin Tactical sells some guns as a dealer, but the defendant Arao also used Ronin Tactical to facilitate his side business of selling off-roster guns.

Here is the38superman.  This is the first post for his account from September of 2015.  You can see what it says, the bottom line:  "That one was 7,000.  It's not for sale, but I will soon have approximately 30, 38 Supers for sale at difference prices."

14:28:58  1          From the outset defendant Fernandez intended

14:29:00  2  to sell guns, off-roster guns.

14:29:03  3          Each defendant set time, as any regular

14:29:07  4  business would, they created Instagram accounts, they had

14:29:12  5  contents that they posted to Instagram, advertisements, they

14:29:14  6  went to gun shows.

14:29:16  7          You can see from the evidence that we've

14:29:18  8  shown you that defendant Fernandez was the sales guy.  His

14:29:22  9  Instagram account had thousands of followers.  He was making

14:29:26  10  calls and arranging deals.

14:29:27  11          The defendant Arao worked behind the scenes,

14:29:32  12  receiving off-roster guns from other sellers and taking care

14:29:35  13  of the paperwork.  They went to gun shows together.  Here are

14:29:38  14  just a few:  The Ontario Gun Show in May of 2016.  The post

14:29:38  15  says that he went with the38superman.

14:29:46  16          Another gun show from July of 2016.  You can

14:29:48  17  see from the image that the38superman or defendant Fernandez

14:29:52  18  went to the gun show with defendant Arao.

14:29:56  19          They also had marketing material.  For

14:30:00  20  example, hats.  You can see T-shirts there.  You heard the

14:30:06  21  witness Pelayo tell you that he received a T-shirt from the

14:30:10  22  defendant Fernandez.  All of these are hallmarks of

14:30:13  23  conducting a regular business.  That's the second factor.

14:30:17  24          Turning to the third.  Profit.  Before we

14:30:35  25  turn to profit, I have a handful of others to show you.  You

14:30:39  1   can see that they had a wide selection of the Colt .38

14:30:39  2   Supers, the off-roster guns.  This is a posting also from the

14:30:41  3   Ronin Tactical page.

14:30:46  4              Defendant Fernandez, he even had sales.  So,

14:30:50  5   he said this gun is originally going for 2300, but for the

14:30:54  6   weekend only dropping it down to 2K.

14:30:56  7              You can also see that the products were

14:31:00  8   moving quickly from this Instagram record.  He says:  "Sold

14:31:08  9   bro, last night."

14:31:08  10             Defendant Fernandez in his e-mail said:  I

14:31:11  11  have more than 10 new ones in the box.  They are black or

14:31:14  12  stainless steel.  They go for 2000 to 2300.

14:31:19  13             You can see that they sent text messages,

14:31:23  14  they made phone calls, they negotiated prices to buy guns,

14:31:26  15  and then they actually sold guns, which I will talk about

14:31:29  16  later.  Here again defendant Fernandez is saying:  *I have*

14:31:34  17  *several new in box.  California legal on a PPT sales, which*

14:31:39  18  *you now by now is a private party transfer.  It's not a gun*

14:31:44  19  *from a dealer.*

14:31:50  20             Another from the Instagram record.  Defendant

14:31:54  21  Fernandez says:  *Look at the Instagram page.  Send me the*

14:31:57  22  *pictures -- pics -- of the ones you like, and I can give you*

14:32:00  23  *prices.*

14:32:00  24             Another hallmark of operating a business.

14:32:03  25             He even said:  *What's your budget like?  I*

14:32:09   1   *have several.  Prices vary, 4500 to 9500.*

14:32:15   2                   You can see that in Exhibit 45A.

14:32:18   3                   He had a range of prices.  You can see that.

14:32:20   4   He's telling you what the different prices are:  4500, 6500,

14:32:26   5   6000, 4800, 13,500, and 5500.

14:32:37   6                   Defendant Fernandez treated this like a

14:32:40   7   second job, he even called in sick at work.  You can see that

14:32:45   8   in this message.  He said:  *What time, old friend, so I can*

14:32:49   9   *get sick at work.*

14:32:52   10                  Then moving on to the third factor, profit.

14:32:56   11                  The defendant wanted to make money from

14:32:58   12  illegally selling guns.  And you know that they wanted to

14:33:01   13  make money because that's what they told you that they were

14:33:04   14  doing over and over again.  For example, they knew that they

14:33:08   15  could get off-roster pretty cheap.

14:33:10   16                  Here is defendant Fernandez said:  Like I

14:33:13   17  said, I get those pretty cheap because I got exempt status in

14:33:18   18  Cali and can get off-roster guns.

14:33:21   19                  Again, reading from the bottom up.  Someone

14:33:24   20  says I saw them on Gun Broker, but it was going to be a bitch

14:33:26   21  to bring into Cali.  And the defendant says:  Yep, they can't

14:33:30   22  come into the state.  They're off-roster guns.  So, the ones

14:33:35   23  that are already here get pricey.

14:33:37   24                  And he knows exactly how much he can get from

14:33:40   25  bringing the gun into the state.  He says:  *Yeah, the price*

| | | |
|---|---|---|
| 14:33:43 | 1 | *are jacked once they entered this fucked up state.  In* |
| 14:33:49 | 2 | *general, look at any gun out of state and bump it up, about* |
| 14:33:54 | 3 | *2K if sold here.* |
| 14:33:58 | 4 | And defendant Arao, he admitted that he did |
| 14:34:04 | 5 | this to make a profit.  He said:  *You're making anywhere from* |
| 14:34:08 | 6 | *three to four to $500 depending on what it is.  So, it's not* |
| 14:34:13 | 7 | *like you're making $30 off a new gun, you're making more.* |
| 14:34:17 | 8 | That was the point of selling off-roster |
| 14:34:21 | 9 | guns.  They made more money. |
| 14:34:23 | 10 | He also said:  Well -- |
| 14:34:24 | 11 | From the second sentence:  I know the ones I |
| 14:34:27 | 12 | paid for where I think I paid like almost 10,000 for.  And |
| 14:34:33 | 13 | then those sold for 12, I think.  And then he repeats that. |
| 14:34:37 | 14 | Then at the bottom:  *It's not a very good investment when* |
| 14:34:39 | 15 | *you're making -- you're putting in ten to make two, you know?* |
| 14:34:43 | 16 | *But $2000 on a $10,000 investment without doing any work,* |
| 14:34:49 | 17 | *that's a 20 percent return for free.  That is a great* |
| 14:34:53 | 18 | *investment.* |
| 14:34:56 | 19 | And the witness Cervantes, he was the first |
| 14:34:59 | 20 | witness in the case.  He came in and he told you he set up a |
| 14:35:02 | 21 | gun deal with defendant Fernandez.  He told you that he paid |
| 14:35:06 | 22 | $1600 for one gun on December 12 of 2016.  You know he bought |
| 14:35:11 | 23 | the gun.  Here is the Form 4473 for that gun.  That's at |
| 14:35:16 | 24 | Exhibit 114. |
| 14:35:17 | 25 | For that same gun, defendant Arao bought it |

14:35:20  1    just a month prior for $789.99, and you can compare the two

14:35:29  2    serial numbers for yourself on the bottom of the page on the

14:35:31  3    left.  That's an $800 profit in a month, a 100 percent

14:35:37  4    markup, and that's just one gun.

14:35:38  5                    That markup is consistent with what you saw

14:35:43  6    in the Instagram advertisement.  That's in Exhibit 74.

14:35:47  7                    You heard testimony from Agent Hart who put

14:35:50  8    this chart together.  He looked at invoices from gun dealers

14:35:54  9    to confirm the sale price, and you can check those underlying

14:35:57  10   records.  That's at exhibits 35 through 39.  He then compared

14:36:03  11   them to advertised prices on Instagram.  You can check the

14:36:07  12   underlying ads yourself.  That's Exhibit 53 through 59.  And

14:36:12  13   there is the markup.

14:36:16  14                    Let's turn to the last factor:  The

14:36:18  15   repetitive purchase and sale of guns.  You know that

14:36:23  16   defendant Arao repeatedly bought and sold guns.  He did so 41

14:36:28  17   times in two years.

14:36:30  18                    You can see that summarized for you in

14:36:32  19   Exhibit 11, and the underlying records for these are there

14:36:35  20   for the evidence and you as well -- for you as well.

14:36:38  21                    Similarly, you know that defendant Fernandez

14:36:40  22   bought and sold guns repeatedly, 45 of them in two years.

14:36:45  23   The summary chart is at Exhibit 10.

14:36:48  24                    So, I submit to you that defendant Fernandez

14:36:52  25   and defendant Arao were each engaged in the business of

14:36:55  1    dealing.  The government is not required to prove each of

14:36:59  2    these factors existed.  They're only a factor you may

14:37:02  3    consider.  But, in fact, each of these factors is present

14:37:06  4    here against both of the defendants.

14:37:12  5               So, the legal definition of engaging in the

14:37:14  6    business.  It tells you what is and is not dealing.  It has

14:37:19  7    on the spectrum, on the right side of something that is

14:37:22  8    dealing.  Time, attention, labor, the regular course of

14:37:25  9    business, profit, and repetitive.  Those are the four things

14:37:28  10   we went through.  It's not dealing on the other hand if it's

14:37:31  11   an occasional sale or part of a personal collection or a

14:37:35  12   hobby.

14:37:36  13              This was not an occasionally sale.  They were

14:37:39  14   not collectors.  If they were, what would you expect to see?

14:37:45  15   Well, you would not expect a collector to hold on to a gun

14:37:50  16   for four days in between picking it up and selling it again,

14:37:54  17   four days, 13 days, 14 days.  You can see all of these dates

14:38:00  18   in Exhibit 12.

14:38:01  19              And defendant Arao, he did the same thing.

14:38:03  20   He held on to a gun for:  Zero days, zero days, one day, and

14:38:08  21   one day.  And you can see the rest of these in Exhibit 16.

14:38:12  22              Moreover, a collector wouldn't buy the same

14:38:18  23   model again and again and again and again and again.  You can

14:38:21  24   see that defendant Fernandez repeatedly bought Colt.38

14:38:26  25   Supers.  He also bought Colt .45.

14:38:31    1      Defendant Arao, he did the same thing.  You

14:38:34    2   can see he also bought exclusively Colt .38 Supers, and he

14:38:38    3   bought multiple of the same model on the same day.  For

14:38:41    4   example, in October 22nd, 2015, he bought five them on the

14:38:49    5   same day.  I submit to you that defendant Fernandez and

14:38:51    6   defendant Arao's conduct crossed the line into dealing.

14:38:56    7      The final element of this offense is whether

14:38:59    8   or not each of defendant acted willfully.  And that's an

14:39:03    9   important element.  So, here on the screen is the legal

14:39:07   10   definition of "willfully."  Says:  "Willfully" requires proof

14:39:10   11   that the defendant knew that his conduct was unlawful but

14:39:14   12   does not require proof that the defendant knew of the federal

14:39:17   13   licensing requirement.  So, two things:  Knew conduct was

14:39:24   14   unlawful, but need not know the licensing requirement.

14:39:30   15      So, let's talk about the ways that the

14:39:32   16   defendants knew that their conduct was unlawful, that it was

14:39:36   17   willful.  Bottom line, no one in California can engage in the

14:39:41   18   business of dealing off-roster firearms to the public.  No

14:39:45   19   one.  Whether you have a license or not.  That's what this is

14:39:50   20   meant to show you.

14:39:54   21      An individual without a license to deal of

14:39:58   22   course cannot engage in the business of dealing with any guns

14:40:01   23   whether those are off-roster guns or not.

14:40:04   24      Even more, an FFL that has a license, like

14:40:09   25   Ronin Tactical, cannot engage in dealing with off-roster

14:40:13  1    firearms to the public.  Ronin Tactical couldn't do it, and

14:40:16  2    so defendant Arao and defendant Fernandez decided to do it on

14:40:20  3    their own.

14:40:21  4                    Defendants knew it was illegal.  They were

14:40:25  5    police officers who swore an oath to uphold the law.

14:40:30  6                    So, let's talk about each of them separately.

14:40:34  7    Let's go to defendant Arao first.

14:40:36  8                    Defendant Arao, he applied for a license to

14:40:38  9    be a dealer.  He operated Ronin Tactical, a federally

14:40:44  10   licensed dealership.  Of course he knew that he needed a

14:40:48  11   license to sell guns, any gun.  He knew what it meant to sell

14:40:52  12   a gun through a dealer.  He understood the requirements.

14:40:56  13                   These are what he certified, that he

14:40:58  14   understood when he opened Ronin Tactical.  That is his

14:41:02  15   signature in 2013, well before any of his off-roster sales in

14:41:07  16   this case.  And yet, defendant Arao engaged in a side

14:41:11  17   business on his own as an individual, separate and apart from

14:41:16  18   Ronin Tactical.

14:41:16  19                   There is also this Form 4473 which I know you

14:41:21  20   have seen at length.  He certified every time he signed this,

14:41:25  21   41 times, that he understood, here it is, that:  *The*

14:41:29  22   *repetitive purchase of firearms for the purpose of resale for*

14:41:34  23   *livelihood or profit without a federal firearms license is a*

14:41:40  24   *violation of law.*

14:41:41  25                   He was warned.  He knew exactly what

14:41:44  1    "engaging in the business" is.  He was warned 41 times.

14:41:47  2              I submit to you that the defendant Arao knew

14:41:50  3    he was breaking the law when he sold 41 guns without a

14:41:54  4    license.

14:41:58  5              Moving to defendant Fernandez.  This is how

14:42:02  6    you know that he understood that his conduct was unlawful.

14:42:05  7    He signed the same form 45 times.  This is Exhibit 27 if you

14:42:10  8    want to take a look.  Same certification:  I *further*

14:42:13  9    *understand that the repetitive purchase of firearms for the*

14:42:15  10   *purpose of resale for livelihood and profit without a license*

14:42:19  11   *is a violation of law.*

14:42:22  12             And you know that he knew about this because

14:42:28  13   he said so in his e-mail.  Federal firearms licensee is

14:42:32  14   referred to as an FFL.  You've heard that repeatedly in this

14:42:34  15   case.  And he says:  Below is my FFL holder's info for the

14:42:38  16   completion of the transfer.

14:42:39  17             And this is just one example of an e-mail.

14:42:41  18             And from a different e-mail he says:  *I want*

14:42:45  19   *to buy this gun, but I'm in Cali; however, I'm a full-time*

14:42:49  20   *police officer with exempt status and have an FFL ready to*

14:42:52  21   *receive it for me.*

14:42:53  22             Of course defendant Fernandez understood what

14:42:56  23   an FFL was, that you had to have a license to sell guns.  He

14:43:01  24   even says -- and I'm reading the highlighted part:  *I'm aware*

14:43:04  25   *of the restrictions, and I hate them too; however, I'm a*

14:43:08  1    *full-time police officer in the State of California with*

14:43:11  2    *exempt status.  I also have an FFL holder that is willing to*

14:43:15  3    *receive the handgun from me.*

14:43:19  4              Defendant Fernandez knew he was breaking the

14:43:21  5    law when he sold 45 guns without a license.  He even told you

14:43:25  6    that he was aware of this.  This is the ATF advisory saying:

14:43:31  7    A law enforcement official who regularly acquires off-roster

14:43:35  8    firearms and sells or disposes of them for a profit is

14:43:40  9    engaging in the business of the dealer of firearm and must be

14:43:44  10   licensed.  And further, you are not an actual

14:43:48  11   transferee/buyer of a firearm if you're acquiring the firearm

14:43:52  12   for or on behalf of any other person.

14:43:54  13             This is from March of 2017.

14:43:56  14             Defendant Fernandez continued to sell guns

14:43:59  15   after this date, and he continued to engage in straw

14:44:02  16   purchases after this date.  Of course he knew that what he

14:44:05  17   was doing was illegal.

14:44:08  18             So, for "willfully," both defendants knew

14:44:11  19   their conduct was unlawful, and even though the law does not

14:44:14  20   require that they know the licensing requirement, they both

14:44:17  21   did.

14:44:21  22             And so I submit to you that defendants

14:44:24  23   Fernandez and Arao, each wilfully engaged in the business of

14:44:27  24   dealing in firearms without a license.  The government asks

14:44:31  25   you to find them guilty.  Defendant Fernandez on Count Two,

14:44:34  1   and defendant Arao on Count Three.

14:44:38  2                   So, let's go through Count One.  This is the

14:44:42  3   conspiracy.  This is the conspiracy to engage in the business

14:44:46  4   of dealing without a license.  You have to decide this count

14:44:50  5   as to each defendant as well.

14:44:52  6                   And in order for the conduct we've just

14:44:55  7   described also to be a conspiracy, you have to find three

14:44:58  8   things are true:  First, an agreement existed between two

14:45:01  9   people; here, it will be defendant Fernandez, defendant Arao.

14:45:07  10  That each defendant joined in the conspiracy, knowing of at

14:45:11  11  least one of its objects and intending to help it along,

14:45:15  12  i.e., that each of these defendants knew that the goal was to

14:45:17  13  deal firearms and that they intended to help deal guns.

14:45:22  14                  And the third:  That one person in the

14:45:24  15  conspiracy, either one of them, committed one overt acts to

14:45:31  16  further the conspiracy.

14:45:32  17                  An overt act occurs simply when someone does

14:45:35  18  something.  So, as you'll see when you get the indictment in

14:45:37  19  the jury room, it alleges a 101 overt acts against defendants

14:45:41  20  Arao and Fernandez.  For example, sending an e-mail, filling

14:45:45  21  out paperwork, advertising, selling a gun, receiving money.

14:45:50  22  You need only decide that one of those overt acts occurred in

14:45:54  23  order to find conspiracy.

14:45:56  24                  So, how do you know that they had an

14:45:59  25  agreement?  Well, I mean they told you that they had an

14:46:01  1    agreement.  Here they are at a gun show, they're advertising

14:46:05  2    together as the38superman and Ronin Tactical.  The bottom

14:46:10  3    left it says:  Follow us on Instagram.  It says:  *We're at*

14:46:13  4    *the Sacramento Cal Expo show.*

14:46:16  5              And the next one, you can see on the comment

14:46:18  6    on the right.  It says:  *Ontario Gun Show with the38superman.*

14:46:23  7              They were acting together.

14:46:25  8              And again, on this post, for Ronin Tactical,

14:46:29  9    he has an advertisement for an off-roster gun, and the

14:46:34  10   defendant Fernandez responds and says:  *This pistol is*

14:46:36  11   *available here in California, DM if interested.*

14:46:40  12             They were going back and forth together

14:46:42  13   selling off-roster guns.

14:46:45  14             And this was from defendant Fernandez's

14:46:48  15   Instagram account.  He says:  *We work out of Gardena,*

14:46:53  16   *California from a friends's auto shop.*

14:46:55  17             And you know from the evidence that you heard

14:46:57  18   that Ronin Tactical is located in Gardena, and it was located

14:47:00  19   inside an auto shop.

14:47:03  20             So, you know each defendant joined the

14:47:15  21   conspiracy.  This is Element Two.  This here is just one of

14:47:16  22   the forms 4473.  You can see at the top the defendant

14:47:20  23   Fernandez is that transferee, and then on the right, you can

14:47:24  24   see it was done at Ronin Tactical Group and signed by Edward

14:47:28  25   Arao.  This is one of many forms 4473 that we have in this

| | | |
|---|---|---|
| 14:47:31 | 1 | case where they were working together. |
| 14:47:33 | 2 | And you can see from this pie chart that you |
| 14:47:37 | 3 | saw earlier, that for Fernandez, of the 45 guns that he sold, |
| 14:47:44 | 4 | 58 percent of them, in some fashion or another, whether by |
| 14:47:47 | 5 | purchase or sale, was transacted through Ronin Tactical. |
| 14:47:50 | 6 | So, that's the agreement.  And you know that |
| 14:47:55 | 7 | each defendant joined a conspiracy based on the same |
| 14:47:58 | 8 | evidence, and the conspiracy was only the two of them.  They |
| 14:48:02 | 9 | weren't other people. |
| 14:48:06 | 10 | And then you also each find that one overt |
| 14:48:10 | 11 | act occurred.  That's simply that one of the defendant |
| 14:48:13 | 12 | actually did something to further the conspiracy.  That could |
| 14:48:16 | 13 | be any one of the guns sold.  You've already seen that |
| 14:48:17 | 14 | evidence, and you have the records for all of the guns sold, |
| 14:48:19 | 15 | at exhibits 10, 11, 27, 29, 30 and 31.  That's the summary |
| 14:48:27 | 16 | chart for all the sales, that's the underlying records for |
| 14:48:30 | 17 | all the sales.  Any one of the Instagram posts addressed |
| 14:48:34 | 18 | messages that are alleged as an overt act.  That's another |
| 14:48:35 | 19 | one.  You can find that that constitutes an overt act.  You |
| 14:48:39 | 20 | can find those at exhibits 45 through 52. |
| 14:48:43 | 21 | So, I submit to you that the evidence shows |
| 14:48:46 | 22 | that defendant Arao and defendant Fernandez conspired |
| 14:48:49 | 23 | together to illegally deal firearms. |
| 14:48:55 | 24 | So, let's turn to the second phase of the |
| 14:48:57 | 25 | evidence that you saw.  This is the portion of the case that |

14:49:00  1    relates only to defendant Fernandez and not to defend Arao.

14:49:05  2            So as you know by now, defendant Fernandez is

14:49:08  3    separately charged with three additional crimes:  False

14:49:11  4    statements, in counts 10 and 11; disposing of a gun to a

14:49:16  5    felon, in Count Seven; and conspiracy to commit both for

14:49:21  6    those two crimes, in Count Four.

14:49:23  7            So, defendant Fernandez is charged with

14:49:25  8    aiding and abetting a straw purchase; meaning, he wasn't the

14:49:29  9    one who actually signed the Form 4473, but he did help

14:49:35  10   someone to commit that false statement.

14:49:35  11           So, this is charged in two counts, count 10,

14:49:39  12   is for his sale to Pelayo, the witness that you heard from,

14:49:39  13   and then one count is for his sale to Camacho, Jr. who was a

14:49:44  14   felon.  And that's Count 10 and Pelayo is Count 11.

14:49:49  15           So there are going to be four elements for

14:49:51  16   aiding and abetting.  First, someone else committed the crime

14:49:54  17   of making a false statement during a purchase of a firearm.

14:49:57  18           Second, defendant Fernandez aided,

14:50:00  19   counselled, commanded induced or procured that person with

14:50:04  20   respect to at least one element of the crime, i.e., the

14:50:07  21   defendant helped.

14:50:07  22           Third, the defendant acted with intent to

14:50:11  23   facilitate the crime.

14:50:12  24           And fourth, defendant Fernandez acted before

14:50:16  25   the crime was completed.

14:50:17  1      So, let's move on to the first part, that

14:50:21  2  someone committed a crime.  And here, someone committing a

14:50:24  3  crime is the straw purchase, the false statement in a

14:50:27  4  firearms record.

14:50:28  5      That particular offense has these four

14:50:30  6  elements, a false statement; second, a statement was made in

14:50:35  7  a record that a licensed firearm dealer was required to

14:50:38  8  maintain; and third, the dealer was a federally licensed

14:50:42  9  firearms dealer at the time the statement was made; and

14:50:45  10  fourth, the person making the statement knew it was false.

14:50:48  11      All right, so, that's a mouthful.  So, let's

14:50:51  12  go through it.  All right, so, you know that the Form 4473 is

14:50:56  13  a required record, that an FFl is required to keep because

14:51:00  14  that's what Special Agent Hamilton told you on the stand.

14:51:03  15  He's an expert in this.  Everyone is required to keep it.

14:51:04  16  That is an FFL.  You can see that at Exhibit 105.

14:51:07  17      You also know that with respect to Count 11,

14:51:11  18  which is the count for defendant, related to witness Pelayo,

14:51:16  19  that Turner's Outdoorsman, where the straw purchase took

14:51:20  20  place was an FFL.  And here is the document that shows you

14:51:22  21  that, at Exhibit 24.  So that's the first two, elements two

14:51:27  22  and three, required record, and the dealer was federally

14:51:30  23  licensed.

14:51:31  24      So, let's move to false statement.  The false

14:51:34  25  statement here is actually the statement of Bianca Ibaria,

14:51:39  1    Pelayo's girlfriend.  The false statement was certifying that
14:51:43  2    she was the one purchasing the gun but she was not the actual
14:51:46  3    purchaser.  It was for her boyfriend, Pelayo.  And this is
14:51:55  4    what we call throughout the -- throughout the case is what
14:51:58  5    we've called a straw purchase.
14:51:59  6               So, you can see here at Exhibit 105 the false
14:52:02  7    statement in Question 11A.  Ms. Ibaria certified that the
14:52:08  8    Colt .45 is for her, and it was not.  The witness Pelayo, he
14:52:11  9    told you that wasn't true.  He told you that the Colt .45 was
14:52:14  10   for him.  And the Colt .45 is the second gun on this list.
14:52:23  11              So, that's the first part, the false
14:52:25  12   statement.
14:52:25  13              And fourth, that Mr. Ibaria knew the
14:52:31  14   statement was false when she made it.  Well, you know that
14:52:34  15   she knew it was false because Pelayo is the person who set up
14:52:39  16   the deal from start to finish.  He told you that the Colt .45
14:52:42  17   semiautomatic was for him.  He said that he asked his
14:52:47  18   girlfriend to buy it.  He told you that defendant Fernandez
14:52:50  19   suggested that his girlfriend do the paperwork, and you know
14:52:53  20   that Pelayo's own testimony is corroborated.  We showed you
14:52:57  21   banking record, that's at Exhibit 94, and Instagram records
14:53:00  22   from the time.
14:53:01  23              This is from the day or the day after Pelayo
14:53:05  24   picked up the gun.  This is from his Instagram account.
14:53:08  25   Exhibit 108A, showing the gun that he just picked up.

14:53:12   1          And so you know that a straw purchase

14:53:15   2   occurred.  There is a false statement, and the required

14:53:18   3   record, the Form 4473, Turner's Outdoorsman with an FFL, and

14:53:25   4   the statement was false when Bianca Ibaria made, and she knew

14:53:29   5   it.

14:53:30   6          So, all of that goes to show that the first

14:53:33   7   element of aiding and abetting the straw purchase occurred.

14:53:35   8          The second element, the defendant Fernandez

14:53:37   9   aided, counselled, commanded, induced or procured that

14:53:41  10   person.  That is, the defendant helped the person commit the

14:53:44  11   crime.

14:53:47  12          All right, so you know the defendant

14:53:49  13   Fernandez helped to commit the crime of committing a false

14:53:53  14   statement because he recommended it.  He set up the deal with

14:53:57  15   Pelayo.  It was Bianca Ibaria who bought the gun.  You can

14:53:58  16   see that in Exhibit 29.

14:54:01  17          You also know that he received money from

14:54:04  18   Pelayo.  Before the transaction happened, defendant Fernandez

14:54:08  19   brought the guns to Turner's Outdoorsman on the day of the

14:54:13  20   transaction, and he actually transferred the gun to Bianca

14:54:18  21   Ibaria.

14:54:19  22          The third element is the defendant intended

14:54:21  23   to facilitate the crime.  Did he know that it was a straw

14:54:25  24   purchase?  Yes.  Did he intend to help Ibaria and Pelayo with

14:54:32  25   the straw purchase?  He did.

14:54:33   1          Let's look through some of these records.

14:54:36   2          Before the transaction, Fernandez received

14:54:40   3    $1,000 from Adalberto Pelayo.  These are the bank records

14:54:44   4    from his Chase Bank account.  Okay, on the day of the

14:54:48   5    transaction, July 24, Pelayo told you that he paid Fernandez

14:54:52   6    in cash in the parking lot before the transaction.

14:54:54   7          The transaction occurred.  Then on August

14:54:58   8    3rd, Ms. Ibaria picked up the gun.  That same day -- here is

14:55:03   9    the Instagram post from Pelayo, and he said:  Big thanks to

14:55:07  10    my compa, the38Superman, for always looking out for me.  Got

14:55:11  11    to hit the range this weekend for sure.

14:55:14  12          Agent Hart told you that when it looks like

14:55:16  13    that, @the38superman, that means that he got a notification

14:55:20  14    of this post.  Defendant Fernandez got a notification that it

14:55:25  15    was in fact Pelayo that had the gun.

14:55:28  16          So, did defendant Fernandez help them with

14:55:32  17    the crime?  Did he intend to do that?  Yes.  Pelayo told you

14:55:35  18    Fernandez knew that Pelayo was prohibited from buying a gun

14:55:40  19    because he told him; and in fact, it was defendant Fernandez

14:55:44  20    that suggested that Pelayo have Ibaria do the paperwork.  He

14:55:50  21    obviously understood that he was intending in helping a straw

14:55:52  22    purchase.

14:55:56  23          And, in fact, defendant Fernandez had no

14:55:59  24    problem telling people how to commit this crime.

14:56:02  25          This is from his Instagram account.  Someone

UNITED STATES DISTRICT COURT

| | |
|---|---|
| 14:56:05 | 1 |
| 14:56:11 | 2 |
| 14:56:16 | 3 |
| 14:56:20 | 4 |
| 14:56:23 | 5 |
| 14:56:30 | 6 |
| 14:56:32 | 7 |
| 14:56:37 | 8 |
| 14:56:38 | 9 |
| 14:56:41 | 10 |
| 14:56:45 | 11 |
| 14:56:45 | 12 |
| 14:56:58 | 13 |
| 14:57:01 | 14 |
| 14:57:04 | 15 |
| 14:57:07 | 16 |
| 14:57:08 | 17 |
| 14:57:14 | 18 |
| 14:57:17 | 19 |
| 14:57:21 | 20 |
| 14:57:23 | 21 |
| 14:57:28 | 22 |
| 14:57:29 | 23 |
| 14:57:33 | 24 |
| 14:57:34 | 25 |

asked: *How do crooks do it?* He says: *A parent, old lady, wife, girlfriend, LOL, or anyone else.* I.e., if you want a gun, this is how you do a straw purchase.

And another one, someone says: *I will need to pay my ticket. It would be a DMV reject to buy the gun.* He says: *Oh, okay.* And then the person said: *Yeah, I can't do the transfer because I owe ticks. My wife turns 21 in two months, and I can tell her to buy it.*

Instead of saying, no, no, that's a straw purchase, defendant Fernandez said: *Yes, man, let's see what I will have then.*

Defendant Fernandez understood a straw purchase. He didn't care who the guns went to. You can see it here on the last line: *You would need to buy it here rather than Mexico. What you do with it, I can't control that. LOL.*

So, that's the first three elements of aiding and abetting a straw purchase.

You also know that he acted before the crime was completed, and we talked about all of these different factors. Before the deal he set it up with Pelayo, he knew Pelayo couldn't buy a gun, recommended Pelayo to do the paperwork, received money from Pelayo, brought the gun to Turner's, and then went ahead and did the paperwork with Ibaria. All of those occurred before the crime was

140

14:57:36  1    committed.

14:57:37  2              And now Count 10.  Sorry, Count 11.  So,

14:57:45  3    count --

14:57:47  4              This should be Count 10, but Count 10 is the

14:57:51  5    count for the second straw purchase to Camacho, Jr.  This is

14:57:55  6    similar in the element, except that the gun went to Camacho,

14:57:59  7    Jr. instead.  So, I'm not going to repeat all of this for

14:58:01  8    you.  But for this county it doesn't matter if Fernandez knew

14:58:05  9    that Camacho, Jr. was a felon.  That's for a later count.  He

14:58:08  10   simply had to know that this gun was for Camacho, Jr. and not

14:58:12  11   for his father, Camacho, Sr.  That's it.  Right?

14:58:16  12              So, how do you know that defendant Fernandez

14:58:18  13   was aware, that this gun -- this is the gold plated gun that

14:58:21  14   we saw a lot of yesterday -- was for Camacho, Jr. and that

14:58:25  15   the Form 4473 was false.

14:58:27  16              All right, so let's look at the evidence

14:58:30  17   here.  So here is the gun.  This is the gun we're talking

14:58:33  18   about for count ten, it's a gold plated pistol, Serial No.

14:58:40  19   27057LW, and this is the Form 4473 for that transaction.

14:58:45  20              And you can see Camacho, Sr. bought the gun

14:58:49  21   on July 29 of 2017, and then the serial number over there,

14:58:56  22   27057 Colt Commander, a .38 pistol.  That's the gun that

14:59:00  23   we're talking about.

14:59:01  24              So, we'll put together a little timeline.

14:59:03  25   You know that the defendant Fernandez set this deal up by the

14:59:06  1   messages and Instagram, and so let's go through those.

14:59:10  2   First, on June 23rd, 2017, you have an Instagram message

14:59:14  3   between Camacho, Jr. and defendant Fernandez.  This is that

14:59:18  4   record.

14:59:19  5           Calichi Livin, who Agent Hart told you is

14:59:24  6   Camacho, Jr. says:  *I think I'm going to jump on it.  I just*

14:59:27  7   *have to wait for my dad to get back.  So we can do that in*

14:59:31  8   *about a week.*

14:59:31  9           Defendant Fernandez comes back and says:  *You*

14:59:35  10  *want the premier, or you want me to hang on to them or you*

14:59:39  11  *want to get the gold one?*  Calichi Livin Camacho, Jr. says:

14:59:44  12  *I want them all.*

14:59:46  13          About a week later on June 30th of 2017, have

14:59:49  14  an additional conversation.  Defendant Fernandez:  *Old*

14:59:53  15  *friend, my friend, says that you're interested in the gold*

14:59:58  16  *one.*  Camacho, Jr.:  *I'm on that Commander, right?*

15:00:01  17          And Commander is the model of this gun which

15:00:03  18  you saw in Form 4473, and then defendant sent a picture of

15:00:07  19  the gun, the same gold gun.  And Camacho, Jr. says:  *I think*

15:00:10  20  *I'm going to have to jump on it.*

15:00:12  21          Of course defendant Fernandez knew that this

15:00:15  22  gun was for Camacho, Jr.  There is no reference in any of

15:00:18  23  these text messages that this gun is for Camacho, Sr., only

15:00:22  24  that Camacho, Sr. would have to do the paperwork.

15:00:27  25          And this is a blow-up of the picture we just

saw.  You can actually see the serial number and the image
that defendant Fernandez sent, 27057LW.

Okay, July 7th, they have another
conversation in WhatsApp.  And Camacho, Jr. says:  I'm going
to pick -- or:  I'm picking up my pops at the airport.  We're
going to try next week.  I'll let you know like Monday or
Tuesday, see when my dad has a chance.

And then Fernandez responds:  *Okay, let me
know.  So far which ones are you going to do, which ones have
convinced you?*  And Camacho, Jr. says:  *I want all three of
them.*

And at the bottom he tells Fernandez:  *No,
no, no, you said they were for me.*

And July 10th again, another WhatsApp
message.  Defendant Fernandez says:  *You can purchase these
online.*  He says:  *If you fire the gun, LOL.  They are just
for show.*  And Camacho, Jr. says:  *So we'd have to be
changing then.*  I.e., this is the grips they're talking about
on the gun.  *When I fire it.*

And then the -- and then on July 28, the day
before the transaction, defendant Fernandez says:  So are we
still on for tomorrow?  Indicating that, yes, in fact he is
going to sell the gun to Camacho, Jr. the next day.

And then on the day of, July 29th, we have
additional text -- WhatsApp messages between them.  Defendant

15:01:54  1    Fernandez is telling him where to go at the Ammo Brothers in

15:01:58  2    Ceritos.  And he also says:  *That's ten minutes away from*

15:02:03  3    *where we meet all the time.*

15:02:04  4                    And then right before the transaction,

15:02:06  5    defendant Fernandez says:  *Okay, I'm here.  I'll be in the*

15:02:08  6    *parking lot.*

15:02:09  7                    Now, this is a blow up, is from the Form 4473

15:02:12  8    for that gun.  You can see it happened at Ammo Brothers in

15:02:16  9    Ceritos, exactly as Fernandez planned.

15:02:19  10                   Once the purchase took place, they had some

15:02:24  11   additional conversation afterward.  August 13 of 2017.  This

15:02:28  12   is from defendant Fernandez.  He says:  *Yes, it's still here.*

15:02:33  13   *My buddy @calichiliving, i.e, Camacho, Jr., is going to pick*

15:02:37  14   *them up soon.  He just bought the fully gold plated one.*

15:02:42  15                   That's the gun that we've seen again and

15:02:44  16   again and again.

15:02:45  17                   And this, the date of pickup, is August 16 of

15:02:49  18   17, three days after defendant Fernandez sends this message.

15:02:53  19                   And then, finally, this is from August 22nd,

15:03:03  20   about a week, approximately, after Camacho, Jr. has received

15:03:07  21   the gun.

15:03:09  22                   Okay, this is an Instagram post from Calichi

15:03:13  23   Livin, Camacho, Jr., and he says:  *A golden horse for the*

15:03:16  24   *collection.*

15:03:16  25                   And you can see that that's the exact same

gun.

        *Thanks to my friend @the38superman.*

        And then you can see an initial to the left,
says the38Superman, defendant Fernandez, likes the image,
indicating that he understood that this was Camacho, Jr.'s
gun.

        Okay.  So, the elements of aiding and
abetting, here they are.  The evidence shows that defendant
Fernandez aided and abetted a false statement a second time,
in selling a gun to Camacho, Jr.

        You saw the Form 4473 that Camacho, Sr.
signed, that was false.  The gun was for Camacho, Jr.

        The text messages between defendant Fernandez
and Camacho, Jr., they made clear that the gun was for
Camacho, Jr.

        Second, you know that defendant Fernandez
helped Camacho, Sr. to commit the crime of making a false
statement, i.e., he actively arranged the deal with Camacho,
Jr. for weeks ahead of time.

        He confirmed after the fact the gun was
bought by Camacho, Jr., and Camacho, Jr. confirmed that the
gun was for him.  He in fact alerted defendant Fernandez of
that in his post.

        And finally, defendant Fernandez intended to
facilitate the crime.  You saw that in the messages, and he

15:04:33  1    understood that Camacho, Sr. would be the person filling out

15:04:36  2    the paperwork.  The repeated references to "pops" were not a

15:04:43  3    mistake.

15:04:43  4                Finally, defendant acted before the crime was

15:04:46  5    complete.  You can see that from the timeline we put

15:04:50  6    together.  Towards the right is the date of the transaction,

15:04:53  7    July 29, and there are repeated messages back and forth for

15:04:58  8    the month beforehand.  And so, I submit to you that the

15:05:02  9    evidence shows that defendant Fernandez is guilty of count

15:05:07  10   11.

15:05:12  11               We're nearing the end.

15:05:14  12               Turning to Count 7, which is Disposing of a

15:05:18  13   Firearm to a Felon.  There are two elements to this offense:

15:05:23  14   Knowingly disposing of a gun to a felon; and second, that the

15:05:27  15   defendant, that is Fernandez, knew or had reasonable cause to

15:05:30  16   believe that that person was a felon.

15:05:32  17               So, this is what "dispose of" means:  To

15:05:35  18   transfer the gun so that the felon has possession.

15:05:38  19               It's this gun that we're talking about again.

15:05:41  20               The Court instructed you that a person

15:05:44  21   possesses a firearm if the person knows of its presence, who

15:05:47  22   has physical control of it, or knows of its presence and has

15:05:50  23   power and intention to control it, and also that more than

15:05:53  24   one person can be in possession of a firearm .

15:05:56  25               You know that Camacho, Jr. has possession of

15:06:01  1    this gun.  This is from a video on his own phone, on July 29

15:06:05  2    of 2017, the date of the transaction.

15:06:11  3            You know from their text messages that he had

15:06:13  4    an intention to possess and control:  I think I'm going to

15:06:17  5    jump on it.  I just have to wait for my dad to get back.  I

15:06:22  6    want them all.  I think I am going to have to jump on it.  I

15:06:26  7    want all three of them.

15:06:27  8            He also says:  *No, they're for me.*

15:06:30  9            Defendant Fernandez understood that this was

15:06:33  10   for Camacho, Jr., because he just bought the gold plated one.

15:06:38  11           And then later defendant Fernandez says:

15:06:41  12   *It's the plain one, like the one you bought.  Like the one*

15:06:45  13   *you bought.*

15:06:46  14           He is talking to Camacho, Jr.

15:06:50  15           He also understood that Camacho, Jr. was

15:06:52  16   going to be firing the gun.  *Has to be changing them, the*

15:06:56  17   *grips, when I fire it.*

15:07:00  18           So I'll tell you now that defendant Fernandez

15:07:02  19   knew that this gun was going to Camacho, Jr.

15:07:11  20           All right, so, you also know from Camacho,

15:07:14  21   Jr. was a felon.  You saw the conviction records for that.

15:07:17  22   That's not contested here.

15:07:22  23           So, the second element is that defendant

15:07:24  24   Fernandez knew or had reasonable cause to believe that he was

15:07:28  25   a felon.

15:07:30  1           All right.  So, defendant Fernandez is a

15:07:32  2    police officer.  He knows the law.  He knows that felons

15:07:36  3    cannot buy guns.  He told you:  *This is how crooks do it.*

15:07:42  4           See that?  He says:  *A parent can do it.*

15:07:44  5    Like Camacho, Sr.

15:07:46  6           This is how you do a straw purchase.  This is

15:07:48  7    how you do it if you're a crook.  And then that's exactly

15:07:52  8    what he and Camacho, Jr. did.  And you can see that in

15:07:58  9    Exhibit 46.

15:07:59  10           A reasonable person in defendant Fernandez's

15:08:03  11   position would have seen all of the red flags.  This was the

15:08:07  12   10th gun that Fernandez sold to Camacho, Jr. but did the

15:08:12  13   paperwork through his brother or his father.  You saw all of

15:08:17  14   that evidence starting at the June 2nd transaction.

15:08:22  15           In every instance defendant Fernandez talked

15:08:26  16   to Camacho, Jr. on the phone in text messages, on Instagram.

15:08:30  17   These deals were not arranged between defendant Fernandez and

15:08:34  18   either of the two people that signed the papers.

15:08:38  19           In every instance defendant Fernandez knew

15:08:41  20   that Camacho, Jr. could not complete the paperwork himself.

15:08:45  21   He had to bring his dad or his brother.  And defendant

15:08:49  22   Fernandez knew it.  And yet, the evidence shows Camacho was

15:08:55  23   there with his dad and his brother when they bought the guns.

15:09:02  24   He needed a family member every single time.

15:09:06  25           By the 10th gun defendant Fernandez had

reason to believe that Camacho, Jr. was a felon.  There is

only one explanation for defendant's behavior.  Camacho, Jr.

was a felon, and he knew it, but he didn't care because he

was making money.

Let's look at Exhibit 182A.  Defendant

Fernandez says:  *You can bring pop to do the paperwork, and I*

*can take the paper he signs, and then you can go and have a*

*great time.*

There is no legitimate reason why Camacho,

Jr.'s father would have had to do the paperwork.  There is no

legitimate reason for Fernandez to suggest that Camacho,

Jr.'s father should do the paperwork.  The only explanation

is that Fernandez knew that Camacho, Jr. was a felon, and he

couldn't do it himself.

So I submit to you that the evidence shows

that defendant Fernandez knew that Camacho, Jr. was a felon

when he sold him the 10th gun.

And, finally, the last conspiracy count,

Count Four.  This charges defendant Fernandez along with the

felon Camacho, Jr., Camacho, Sr., and Camacho Maravilla, with

conspiracy to dispose of a firearm to a felon and making a

false statement.

The crime charged in Count Four is the

agreement between defendant Fernandez and the Camachos to

provide guns to Camacho, Jr. and also to make false

15:10:35  1    statement.

15:10:35  2              You need not find both of those things were

15:10:38  3    true, that they both agreed to the straw purchase and agreed

15:10:42  4    to dispose of the guns to a felon, only that they agreed to

15:10:47  5    do one of those things.  So, it's the same element as before,

15:10:51  6    same element as before.

15:10:53  7              First, there was an agreement between two or

15:10:56  8    more people to commit a crime; second, the defendant became a

15:10:59  9    member of the conspiracy knowing of its object and intending

15:11:03  10   to help accomplish it; and, finally, one of the members of

15:11:06  11   the conspiracy committed one overt act in furtherance of the

15:11:10  12   conspiracy.

15:11:10  13             So for all the reasons we just discussed,

15:11:13  14   there was clearly an agreement between Camacho, Jr. and

15:11:17  15   defendant Fernandez.  So all of the text messages, you saw

15:11:20  16   all the Instagram posts, and you saw that there were phone

15:11:24  17   calls between them.

15:11:24  18             So the evidence of this count is the ten guns

15:11:28  19   that Fernandez sold to Camacho, Jr.  You saw evidence

15:11:32  20   throughout the trial, and you know that those guns were for

15:11:34  21   Camacho, Jr. and not for any of the people that are listed as

15:11:37  22   purchasing it on the Form 4473.

15:11:39  23             This is Exhibit 118.  You can see for

15:11:42  24   yourself the defendant Fernandez sold or coordinated the sale

15:11:46  25   of each of these ten guns.  You saw that yesterday and then

15:11:50  1    Thursday in the trial.  You saw it yesterday and Monday.

15:11:54  2    Yesterday was Monday.  So, yesterday.  Okay.

15:11:57  3              There were text messages, photographs and the

15:12:01  4    videos of each of these guns on Camacho, Jr.'s phone.  Each

15:12:05  5    of those text messages was in furtherance of the conspiracy

15:12:07  6    and is in itself an overt act.

15:12:10  7              You know that nine of the guns were recovered

15:12:13  8    from Camacho, Jr.'s house in the search.  And the sale of any

15:12:18  9    one of those ten guns is also itself an overt act.

15:12:23  10             So, there is a broader conspiracy here not

15:12:25  11   just to get that final 10th gun to Camacho, Jr., a convicted

15:12:30  12   felon, but it was to get all of those ten guns to him.

15:12:37  13             I submit to you that the evidence shows that

15:12:40  14   the defendant Fernandez conspired with the Camachos to

15:12:43  15   dispose of guns to a felon, that is Camacho, Jr., and to make

15:12:47  16   false statement, that is the straw purchases.

15:12:54  17             As I said before, this is not a simple case.

15:12:57  18   There's a lot of law thrown at you, but it is

15:13:00  19   straightforward.  Both of these defendants abused their

15:13:03  20   positions as officers of the law.  They swore an oath to

15:13:08  21   uphold the law, and they broke it for money.  They knew that

15:13:12  22   it was illegal when they did it.

15:13:15  23             Defendant Fernandez knew what a straw

15:13:17  24   purchase was.  He told people how to do a straw purchase, and

15:13:21  25   then he went ahead and did it again and again and again and

15:13:25  1    again to a convicted felon.

15:13:29  2              The United States asks you to hold them

15:13:31  3    responsible for their action and find them guilty on all

15:13:34  4    counts.

15:13:36  5         THE COURT:  Thank you, Ms. Rykken.

15:13:38  6              We're going to take a short recess.  Please

15:13:40  7    return back to the courtroom, about ten minutes recess.  So,

15:13:45  8    25 after the hour, please.

15:13:48  9         COURT CLERK:  All rise, please.

15:13:50  10             (Following proceedings held outside the presence

15:14:24  11   of the jury.)

15:14:25  12        THE COURT:  I think you have about ten minutes

15:14:27  13   left.  So, you have another ten minutes, 20 minutes for

15:14:31  14   closing.

15:14:31  15            MS. RYKKEN:  I'm sorry, another 20?

15:14:34  16        THE COURT:  Another 10, so a total of 20.

15:14:35  17            MS. RYKKEN:  Thank you, Your Honor.

15:14:39  18             (Recess taken.)

15:28:58  19        THE COURT:  I think we're ready for our jury.

15:29:09  20            MR. RODRIGUEZ:  Is the Court's intention to have

15:29:13  21   me argue today as well?

15:29:15  22        THE COURT:  Yes.

15:30:59  23             (Following proceedings were held in the presence

15:31:24  24   of the jury.)

15:31:24  25        THE COURT:  Okay, we have the jury reassembled,

15:31:27   1   with the alternates, counsel are present with the defendants,

15:31:28   2   and we'll continue with the argument.

15:31:29   3           They are -- just to bring to the Court -- to

15:31:32   4   the jury's attention, there was a person in the courtroom who

15:31:36   5   was asked to leave during the proceedings.  He's not

15:31:38   6   associated with either of the parties here or any of the

15:31:40   7   parties here.  So he was just a person that was noticed by

15:31:46   8   security.  So, that being said, let's continue.

15:31:49   9           **MR. ROBINSON:**  Thank you, Your Honor.

15:31:53   10              (CLOSING ARGUMENTS BY DEFENDANT ARAO)

15:31:56   11          **MR. ROBINSON:**  Ladies and gentlemen, good

15:31:57   12   afternoon.  On behalf of me, Lisa Houle and Rachel Robinson,

15:32:04   13   it's been an honor, and it is an honor to represent Officer

15:32:08   14   Edward Arao.

15:32:09   15          Now, before I begin my closing statement, I

15:32:11   16   want you to remember three things from the government's

15:32:14   17   opening statement.  The first thing I'd like you to remember

15:32:18   18   is that they said that Officer Arao committed the one crime

15:32:23   19   that he's charged with because the conspiracy charge and the

15:32:27   20   substantive charge are the same thing, that he quietly

15:32:35   21   committed the crime, that he acted willfully because it's his

15:32:39   22   job to know the law, and that the bottom line is, that you

15:32:47   23   cannot sell off-roster handguns in California without a

15:32:52   24   license.  Keep those three things in mind.

15:32:57   25          Now, I've been doing this for a long time,

15:33:02  1   and I do this in my closing statements, but I feel

15:33:05  2   particularly compelled to do it today.  Being a juror in a

15:33:09  3   criminal case involves constitutional principles.

15:33:13  4         When we're raised by our parents, by our

15:33:18  5   teachers, by our priests, whoever it may be, we are told that

15:33:24  6   in order to be fair, you have to hear both sides.  And none

15:33:27  7   of us want to be unfair.

15:33:30  8         If we were dealing in a civil case where

15:33:34  9   we're talking about very important things like housing to

15:33:39  10  shelter or families, clothing and food to sustain us, those

15:33:44  11  are very important things.  And in a civil case, you get to

15:33:48  12  hear both sides, and the burden of proof requires the

15:33:52  13  prevailing side, or the plaintiff, to prove to a

15:33:55  14  preponderance of the evidence that they have made their case.

15:34:01  15        Being a criminal juror is a privilege, and

15:34:04  16  it's a unique experience, because a criminal juror, unlike in

15:34:09  17  a civil case, you're dealing with the most precious interest

15:34:14  18  that we have.

15:34:17  19        And our ^ Founding Fathers said that for the

15:34:21  20  government to convict someone of a criminal charge, every

15:34:27  21  element of the charge has to be proven beyond a reasonable

15:34:33  22  doubt.  The government has the burden of proving their case,

15:34:38  23  and a defendant has no obligation -- and you cannot hold it

15:34:43  24  against a defendant who chooses not to testify.  And that's

15:34:49  25  because all of us are presumed to be innocent.  So, the

presumption of innocence, in my humble opinion, should be a
presumption of "not guilty."  Because it sounds like we have
to show some form of innocence, and that's just not the case.
Please do not be confused.

You may have some suspicions, and I suggest
in this case there aren't any, but as a criminal juror, you
may have some beliefs that the government has proven their
case to some degree, but even if you have those suspicions,
if you are not firmly convinced, meaning that you can leave
this courtroom and five years, ten years later say: *Yes, I
was convinced beyond a reasonable doubt*, then you have to
find in this case Officer Arao not guilty.

There is another very important part of this
case.  And you've heard this instruction from Judge Otero
over and over again:  You cannot consider the evidence
against the codefendant for the crimes that he's charged with
against Officer Arao.

And what's the only issue in this case
against Officer Arao, the only issue?  The only issue is
whether or not the government has proven to you beyond a
reasonable doubt that when Officer Arao was selling these
off-roster handguns, the 41, he knew that he was violating
the law.

Generally, like in a murder case, ignorance
of the law is not a defense.  You do the act, you intended to

| | |
|---|---|
| 15:36:38 | 1 |
| 15:36:41 | 2 |
| 15:36:47 | 3 |
| 15:36:51 | 4 |
| 15:36:54 | 5 |
| 15:37:00 | 6 |
| 15:37:04 | 7 |

1   do the act, and you're guilty.  It doesn't matter if you
2   don't understand it's against the law to murder someone.  But
3   we live in a highly regulated society.  You heard Officer --
4   Agent Hamilton talk about the differences that we have here
5   with state and federal and local laws.  I believe Judge Otero
6   mentioned that as well in his opening statements to you
7   during jury instructions.

8            And because we live in such a heavily
9   regulated society, like with our guns, both state and
10  federal, innocent activity where the person does not know and
11  the government cannot prove that they know what they're
12  doing, that they're breaking the law, is not a criminal, is
13  not guilty.  And that's why with respect to this specific
14  charge that Officer Arao is facing, the government needs to
15  prove beyond a reasonable doubt that he knew that his conduct
16  was unlawful.

17           They don't have to prove that he knew the law
18  as read to you on the federal firearm dealing law, but they
19  have to prove to you beyond a reasonable doubt that when
20  Officer Arao was doing what he was doing, that he knew he was
21  violating the law.

22           Now, you can always tell the strength of the
23  government's case by the way they try to prove their case,
24  and I'll suggest to you very strongly here that because the
25  government has the burden of proof in this case, there has

UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| 15:38:20 | 1 | been some design to maybe misdirect you, maybe even to |
| 15:38:27 | 2 | mislead you. |
| 15:38:28 | 3 | For instance, we know that Officer Arao was |
| 15:38:30 | 4 | interviewed for 58 minutes, but you only heard one minute, |
| 15:38:36 | 5 | and the only one minute excerpt that you heard was where |
| 15:38:41 | 6 | Officer Arao said: *Yes, I was selling those off-roster* |
| 15:38:46 | 7 | *handguns for a profit.* And we're not contesting that, and we |
| 15:38:51 | 8 | never have. |
| 15:38:53 | 9 | The prosecution talks about cash sales. They |
| 15:38:57 | 10 | talk about gun sales, but in some of these instances where |
| 15:39:03 | 11 | Officer Arao is a responsible party for Ronin Tactical who |
| 15:39:07 | 12 | holds the corporate FFL, he was doing what he was supposed to |
| 15:39:12 | 13 | do under California and federal law to transfer the handgun, |
| 15:39:19 | 14 | whether or not it was from Ronin Tactical to himself or from |
| 15:39:22 | 15 | himself to a private party, he was DROSing the gun, to use |
| 15:39:29 | 16 | the vernacular, he was following 4473, that ^ NICKS -- you |
| 15:39:38 | 17 | saw that this morning -- and Officer Arao was making sure |
| 15:39:42 | 18 | that every single transaction complied with the law so that |
| 15:39:46 | 19 | that gun did not end up in the hands of a prohibited person, |
| 15:39:53 | 20 | somebody who is a drug addict, somebody who has been deemed |
| 15:39:57 | 21 | to be mentally incompetent under the state laws. |
| 15:40:02 | 22 | He was making sure that the law was being |
| 15:40:05 | 23 | followed. And that is strong, strong evidence of his good |
| 15:40:10 | 24 | faith, and you cannot act in good faith, you just can't, and |
| 15:40:18 | 25 | knowingly act wilfully, violating the law. |

15:40:21  1        And so consider this as well.  The ATF based

15:40:27  2   upon an audits and some other information, decided to do an

15:40:33  3   attempted purchase of a handgun from Officer Arao at Ronin

15:40:38  4   Tactical.  Now, the audit was one that caused Agent Hart, and

15:40:47  5   this information was conveyed to him, to have two concerns.

15:40:48  6   The concerns were:  Some of the buyers who had purchased guns

15:40:53  7   through Ronin Tactical, and also the fact of the

15:40:58  8   codefendants's involvement.  That's it.

15:41:00  9        The government has the burden of proof.  If

15:41:04  10  there had been something in that audit that established that

15:41:12  11  Officer Arao knew he was violating the law, you can rest

15:41:16  12  assured that that auditor would have been up there on the

15:41:19  13  witness stand, and you can rest assured that that audit

15:41:22  14  report would be in your hands as a government exhibit.

15:41:25  15       The fact that it's not there tells you that

15:41:27  16  the government knows, that Agent Hart was telling the truth,

15:41:32  17  that there was nothing about the audit that concerned the

15:41:40  18  government about Officer Arao.

15:41:43  19       And so we have this undercover purchase, and

15:41:46  20  the undercover purchase is a legitimate law enforcement

15:41:51  21  tactic, but it was designed to get Officer Arao to violate

15:41:54  22  the law.  It was designed to get from Officer Arao some

15:41:58  23  indication, some knowledge, that he was acting willfully when

15:42:02  24  he was transferring these guns, because they know they have

15:42:09  25  to prove it.

15:42:10   1          You didn't, understandably, see that

15:42:12   2    undercover videotape.  You saw some photographs of Officer

15:42:16   3    Arao, you saw the gun.  But the reason you didn't see that

15:42:20   4    undercover videotape, is because there was nothing in that

15:42:24   5    undercover videotape to show that Officer Arao in any way, in

15:42:32   6    any way acted willfully.

15:42:34   7          In fact, when the agent was cross-examined

15:42:36   8    about that attempted purchase, it was clear that Officer Arao

15:42:43   9    did not conclude that purchase because he was acting in good

15:42:52  10    faith, and he was following the law.

15:42:55  11          Now, if Officer Arao were inclined to violate

15:42:59  12    the law and act willfully, maybe he would have said:  Look,

15:43:05  13    I'll give you the gun, and you call in your residency.  Or:

15:43:10  14    Look I can give you the gun, but I've got a buddy up at

15:43:15  15    Turner's who will backdate your firearm safety card, and

15:43:19  16    we're all good because I'm getting cash.

15:43:21  17          Now, if that were the case, you would have

15:43:24  18    seen that.  But the fact of the matter is, Officer Arao at

15:43:33  19    Ronin Tactical, which had been blessed by the ATF during the

15:43:38  20    application process, in his police uniform, in the front of

15:43:43  21    the office, with his police cruiser parked outside, making

15:43:49  22    absolutely no effort whatsoever to hide what he was doing, he

15:43:56  23    sold that gun, and he complied with the law.

15:44:02  24          Now, you did not hear that in the

15:44:05  25    government's direct examination.  You just didn't.  The

15:44:17  1    evidence about the field sobriety -- this is not field
15:44:20  2    sobriety -- the firearm safety card, the identification, the
15:44:25  3    residency, that had to come out on cross-examination, and
15:44:32  4    with the ATF expert, it had to come out on cross-examination
15:44:36  5    that the California DROS form and the Federal 4473 Form are
15:44:44  6    the same thing.
15:44:46  7                Remember, every single one of these
15:44:50  8    transactions that the government says support the fact that
15:44:55  9    agent -- excuse me, Officer Arao acted willfully, proving
15:45:01  10   beyond a reasonable doubt, was recorded with the California
15:45:06  11   Department of Justice, and it was reflected in the NCIS
15:45:15  12   database.
15:45:18  13               And none of these guns went into the hands of
15:45:20  14   somebody they shouldn't have, because Officer Arao did what
15:45:26  15   was required of him as a responsible party for Ronin Tactical
15:45:31  16   to comply with the law.  And he made no effort whatsoever to
15:45:36  17   hide what he was doing.
15:45:40  18               So, the only thing we're left with is
15:45:44  19   willfulness.  Has the government proven beyond a reasonable
15:45:46  20   doubt that Officer Arao knew that his conduct in these
15:45:54  21   private party transfers of these off-roster guns was
15:46:00  22   unlawful.
15:46:03  23               The government showed you the 4473 Forms, and
15:46:07  24   they did it through Agent Hart, and the 4473 Form has a
15:46:14  25   Question 16.  I'm just going to put my finger on it.  For

1    instance, it's in Exhibit 27.  It's in every single 4473
2    Form.  And it sets forth the definition of what is being --
3    was engaged in the business of dealing, and the government
4    had the agent read it to you, and the government is going to
5    stand up here and tell you that that's evidence of
6    wilfulness.  And the government is going to say:  Look,
7    because he's a police officer, he should have known.  But,
8    remember, on cross-examination, when I was talking with Agent
9    Hart, and I asked him:  Is this -- is this the definition,
10   the elements of the crime?  And he said:  Well, no.

11           And he knows this, because he went to law
12   school, he graduated from law school.  He's a federal law
13   enforcement officer who understands the law, and he
14   understands, but it had to come out on cross-examination that
15   that definition of "dealing" is just the definition of
16   "dealing."

17           If you're not acting wilfully, and the
18   government can't prove it beyond a reasonable doubt the fact
19   that you do every single thing in this definition doesn't
20   mean that you're guilty of a crime.

21           The government wants you to look at the
22   excerpts that were played to you of Officer Arao in that
23   58-minute conversation, the one minute excerpt.  And that
24   excerpt -- try to say that ten times -- the excerpt mirrors
25   what's in definition 16.  And Officer Arao said:  Yes, I was

15:48:11  1    selling those off-roster handguns in private party transfers

15:48:16  2    for money.  We have never, ever contested that.

15:48:21  3             Now, if there had been evidence in that

15:48:24  4    58-minute conversation that shows that Officer Arao acted

15:48:28  5    willfully and that he knew he was violating the law when he

15:48:33  6    was doing that, then you certainly would have heard about it,

15:48:40  7    and you'd be required to hear about it because it's the

15:48:43  8    government's burden of proof.  And the absence of that 57

15:48:48  9    minutes, you can rely on that to determine that there was

15:48:54  10   nothing in that part of the conversation between the agents

15:48:57  11   and Officer Arao that would show in any way that Officer Arao

15:49:03  12   was acting willfully, that he knew was violating the law.

15:49:10  13            And so, we have these 41 private party

15:49:13  14   transfers over a two-year period.  Less than two a month.

15:49:17  15   And we're not arguing that he wasn't engaged in dealing.

15:49:22  16   Please don't misunderstanding that.  But you need to look to

15:49:30  17   see whether or not the government has proven willfulness

15:49:33  18   beyond a reasonable doubt by looking at what the law is in

15:49:36  19   California.

15:49:36  20            The law in California prohibits the selling

15:49:40  21   of off-roster firearms to the general public.  This is

15:49:44  22   Exhibit 202.  California law permits the selling of

15:49:51  23   off-roster firearms to exempted parties, police officers, for

15:49:54  24   use in the discharge of their official duties.  And

15:49:58  25   California law requires that -- excuse me.

15:50:02  1          California law permits the selling of

15:50:05  2    off-roster firearms through private party transfers.  This is

15:50:10  3    the law.  A private party transfer occurs when the transferor

15:50:15  4    and the transferee of the firearm were not licensed firearm

15:50:20  5    dealers.

15:50:20  6          In California, under the private party law,

15:50:23  7    and that's exactly what Officer Arao was doing, you don't

15:50:28  8    need to be licensed.  It is an exception to the licensing

15:50:33  9    requirement.  And at a minimum, if that's what Officer Arao

15:50:39  10   is doing, and he's doing it openly, with no effort to hide

15:50:43  11   it, if he is DROSing and 4473ing every single one of those

15:50:50  12   private party transfers, how on earth is he trying to hide

15:50:53  13   what he's doing?

15:50:55  14          Officer Arao was telling the federal

15:50:57  15   government and he was telling the California government:  I

15:51:00  16   am doing this.  And I'm making sure that these guns do not

15:51:06  17   end up in the hands of the wrong people, to comply with the

15:51:08  18   law.

15:51:11  19          Now, Exhibit 32, it's a 90-page exhibit.

15:51:20  20   This is Ronin Tactical's acquisition and disposition record

15:51:25  21   book, and it has Ronin Tactical's acquisition and disposition

15:51:29  22   of firearms.

15:51:34  23          If there was anything that tells you that

15:51:40  24   Officer Arao was doing what he believed was right, that

15:51:46  25   exhibit shows.  And remember I asked you to think and to

15:51:50  1   remember three things.  One of those things was he was

15:51:53  2   quietly committing the crime?  My goodness, these sales and

15:51:57  3   transfers of the guns are published in the dealer record of

15:52:01  4   sales, in the DROS information that goes to California

15:52:08  5   Department of Justice and in the federal database the NCIS.

15:52:13  6   All of them are screaming out loud, nothing quite about it,

15:52:18  7   that:  I am following the law.

15:52:21  8              Now, I anticipate that the government will

15:52:23  9   say:  Well, under California law, the exempted parties,

15:52:31  10  including police officers, can get these off-roster guns for

15:52:35  11  use in the discharge of their official duties.  That's the

15:52:39  12  law, and so is the private party transfer law.  They appear

15:52:44  13  to act independently, but the fact of the matter is, the

15:52:48  14  government has to prove beyond a reasonable doubt that

15:52:50  15  Officer Arao knew that what he was doing was unlawful.

15:52:56  16             Do not be misled.  If there was any witness

15:53:01  17  at all from any police department, from the auditor from the

15:53:01  18  ATF, from any expert, anyone in the California Department of

15:53:17  19  Justice, anybody in the United States Department of Justice

15:53:20  20  who would have been able to say:  You know what?  He knew

15:53:23  21  about the limitation on the police officer exemption, you

15:53:26  22  would have heard about it.  And I guarantee you that if

15:53:32  23  Officer Arao had known about that limitation, there would

15:53:35  24  have been some effort on his part, some effort on his part to

15:53:40  25  hide what he was doing.  Because that's what people do when

UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| 15:53:43 | 1 | they know they're violating the law, and they don't want to |
| 15:53:46 | 2 | get caught.  And there was nothing in this case to support |
| 15:53:50 | 3 | that, not a single thing.  So, please do not be misled if |
| 15:53:55 | 4 | that comes up in the government's rebuttal argument.  They |
| 15:54:01 | 5 | have to prove beyond a reasonable doubt that he knew he was |
| 15:54:04 | 6 | violating the law. |
| 15:54:11 | 7 | And so -- this is critical, and I'm going to |
| 15:54:13 | 8 | end with this.  Please look at Exhibit 205.  Exhibit 205 is |
| 15:54:19 | 9 | the government's exhibit, and on page 8 of 8, which was not |
| 15:54:24 | 10 | shown to you on the screen, Agent Duncan, who had gone |
| 15:54:36 | 11 | undercover in that -- |
| 15:54:40 | 12 | Look, I'm not saying there is anything wrong |
| 15:54:43 | 13 | with doing undercover operations.  It's legal.  But nothing |
| 15:54:47 | 14 | at all came of it.  How do you know nothing came of it? |
| 15:54:52 | 15 | Because they didn't put a tape to you -- but also officer -- |
| 15:55:01 | 16 | Agent Duncan says to the38superman:  *Hey, sorry, man, I went* |
| 15:55:02 | 17 | *back, but I didn't have my FSC, my firearm safety card*.  *So* |
| 15:55:07 | 18 | *Eddie, in effect, would not give me the gun*.  Agent Duncan |
| 15:55:12 | 19 | says:  *Sorry for wasting your time.  I'm still getting used* |
| 15:55:16 | 20 | *to these California laws*. |
| 15:55:22 | 21 | Now, California laws, as you heard in the |
| 15:55:27 | 22 | judicial notice section, are different from the federal laws. |
| 15:55:35 | 23 | Officer Arao is a California police officer.  He's not a |
| 15:55:40 | 24 | federal officer.  He is working in the City of Gardena.  And |
| 15:55:46 | 25 | you will see in the evidence, he's got his business license, |

15:55:49  1   he's got his employee identification number, he's got his

15:55:53  2   franchise tax board number, he's got his board of

15:55:58  3   equalization account.  He has done every single thing the law

15:56:06  4   requires so that he can operate openly, and to use a phrase,

15:56:13  5   loudly, and not quietly.

15:56:18  6              And so, there is -- and excuse the crudeness

15:56:22  7   of this approach, but this is what I'm used to as opposed to

15:56:26  8   the stuff on the screen.  This is Exhibit 185.  All right?

15:56:31  9   And all of you have seen it in front of you.  And the first

15:56:35  10  page on Exhibit 185 is a letter from the ATF, the Bureau of

15:56:41  11  Alcohol, Tobacco, Firearms and Explosives, the federal agency

15:56:47  12  that regulates firearms.  And it's from the Department of

15:56:52  13  Justice, and it's on their letterhead from the special agent

15:56:56  14  in charge of the Los Angeles field division.

15:56:59  15             Read this letter.  It says:  *Our concern is

15:57:02  16  that law enforcement officers are purchasing and reselling

15:57:04  17  firearms in possible violation of federal law.*

15:57:10  18             And it's the ATF's goal to educate the local

15:57:14  19  officers on what the law is.  In other words, what -- what's

15:57:20  20  the reconciliation between the state laws and the federal

15:57:25  21  laws?

15:57:25  22             And here it says:  In some instance -- the

15:57:29  23  second paragraph -- the ATF has discovered officers who

15:57:32  24  purchased more than 100 off-roster firearms that were

15:57:37  25  subsequently transferred to non-law enforcement individuals.

15:57:42  1          All right?  More than double what Officer

15:57:45  2     Arao did in those two years:  And such transactions to

15:57:53  3     transfer the off-roster firearms to non-law enforcement

15:57:57  4     purchasers, so it's for profit -- potentially constitutes a

15:58:04  5     violation of federal law.

15:58:05  6          Now, when I told you that the ATF said:

15:58:09  7     Look, these are possible violations, these are potential

15:58:12  8     violations, but we're here to educate you.  The reason the

15:58:15  9     ATF is there to educate is because in a case like this, the

15:58:21  10     officers have to act willfully.  The mere dealing of the

15:58:24  11     firearms is not enough.  They must act willfully, and in a

15:58:31  12     criminal prosecution, the government has to prove beyond a

15:58:39  13     reasonable doubt they knew they're violating the law.  They

15:58:42  14     didn't even come close with respect to Officer Arao.

15:58:46  15          And there, is by the way, unlike a different

15:58:49  16     situation, there is no evidence presented to you, none

15:58:53  17     whatsoever that Officer Arao ever saw Exhibit 185.  And I

15:58:56  18     guarantee you, I guarantee you, had there been, had it been a

15:59:03  19     fellow police officer, maybe a sergeant at the Gardena Police

15:59:07  20     Department, had it been an ATF employee who held a seminar,

15:59:12  21     there is a sign-in sheet, had there been a photograph of this

15:59:16  22     posted up on the wall at the Gardena Police Department, you

15:59:20  23     would have heard about it, you would have heard about it.

15:59:24  24     And you know that the government went to extensive efforts to

15:59:28  25     investigate this case, but there is no evidence that Officer

15:59:33  1   Arao ever saw or heard about this letter, not that it hurts

15:59:40  2   him, because it sounds like the ATF says:  Potentially or

15:59:43  3   possibly we have some problems here.  Let's teach you how to

15:59:48  4   do this correctly.

15:59:49  5              Now, here is where the irony gets really,

15:59:54  6   really thick.  The second two things I asked you to remember

15:59:58  7   when I started my statement was that the prosecution in their

16:00:02  8   opening statement said:  Because Officer Arao is a police

16:00:06  9   officer, it's his job to know the law.  As if it's some kind

16:00:12  10  of strict liability situation.  He's a police officer in the

16:00:16  11  City of Gardena, arresting people for DUIs and concealed

16:00:21  12  handguns.  He's supposed to know the complexity of the

16:00:25  13  relationship between the federal laws and the state laws, all

16:00:30  14  right?  And he's the responsible party for an FFL, he's

16:00:34  15  supposed to know that same complexity, and then go out and

16:00:39  16  try to violate the law.

16:00:43  17             And the third thing that I asked you to

16:00:45  18  remember was where you were told that the bottom line -- and

16:00:51  19  this is the government's effort to misdirect this

16:00:55  20  situation -- the bottom line is that you can't sell a gun, an

16:00:59  21  off-roster gun in California without a license.

16:01:03  22             How on earth can they say that to you?  When

16:01:07  23  Judge Otero read you the California law in the judicial

16:01:11  24  notice Exhibit 202.  Yes, you can.  Yes, you absolutely can.

16:01:17  25  Look at that, in a private party transfer, neither the

16:01:22  1    seller, the buyer has to be licensed.  That's what the law

16:01:27  2    says, and that's how Officer Arao was conducting his

16:01:32  3    business, because he was DROSing a 4473ing every single one,

16:01:36  4    and he made no effort to hide it, because he felt he was

16:01:40  5    following the law, acting in good faith.

16:01:44  6              But, now I'm going to defer to technology

16:01:47  7    here because I have to.

16:01:57  8              This is the second page of Exhibit 185.  And

16:02:03  9    I'm asking you to appreciate the irony of the government's

16:02:09  10   statement to you about what is the bottom line in selling

16:02:13  11   firearms that you can't without a license in California.

16:02:16  12             This is a law enforcement advisory coming

16:02:22  13   from the United States Department of Justice, Bureau of

16:02:28  14   Alcohol, Tobacco, Firearms and Explosives.

16:02:29  15             Please look at the highlighted portion.  And

16:02:31  16   I'm going to read it.  "A law enforcement official who

16:02:36  17   regularly acquires off-roster firearms and sells or disposes

16:02:40  18   of them for a profit is engaging in the business of a dealer

16:02:48  19   in firearm."

16:02:48  20             That's true.  There's nothing about the

16:02:49  21   "willfulness" part.  Keep that in mind, please.

16:02:54  22             "And must be licensed."

16:02:57  23             The ATF in their law enforcement advisory is

16:03:02  24   telling these law enforcement officers:  Hey, if you're going

16:03:05  25   to sell these off-roster guns to the public, you need to be

16:03:08   1   licensed.

16:03:09   2                Well, guess what?  In California, you can't

16:03:12   3   do that.  Look at the judicial notice section.  In California

16:03:19   4   it doesn't matter whether you have a license or not.  That's

16:03:23   5   the private party exception.

16:03:25   6                And so when the government asks you to find

16:03:27   7   that they have proven their case against Officer Arao beyond

16:03:32   8   a reasonable doubt with respect to wilfulness, please

16:03:37   9   consider the -- the unimaginable irony here that ATF has the

16:03:44   10  law wrong.  They have the law wrong.

16:03:53   11               And so if ATF has the law wrong, and

16:03:56   12  California does in fact say, unlike what you've been told,

16:04:00   13  the bottom line is, that in a private party transfer you can

16:04:04   14  sell a gun if you're not licensed so long as you DROSed it

16:04:10   15  and 4473 it, like Officer Arao did.  And there is no

16:04:12   16  evidence, affirmative evidence whatsoever that Officer Arao

16:04:16   17  knew that the -- the police officer exception said:  Hey,

16:04:20   18  only for use in your private -- in your personal duties,

16:04:24   19  because if there had been that evidence, you certainly would

16:04:27   20  have heard of it.  All you have left is what Officer Arao

16:04:34   21  did, and he every single thing to comply with the law as he

16:04:41   22  knew it, and he did absolutely nothing to hide what he was

16:04:47   23  doing or to violate the law.

16:04:52   24               And so, ladies and gentlemen, the government

16:04:54   25  has failed to prove their case against Officer Arao.  They

| | |
|---|---|
| 16:05:00 | 1 |
| 16:05:06 | 2 |
| 16:05:09 | 3 |
| 16:05:14 | 4 |

have failed to prove beyond a reasonable doubt, to any doubt,

really, but beyond a reasonable doubt, that Officer Arao

acted willfully, and he knew he was violating the law.  It's

almost absurd.

Your job is to render justice, and I try not

to be corny, but please bear with me.

Chief Justice Jackson who was the chief

prosecutor in the Nuremberg prosecutions, he understood the

gravity his responsibility to do justice.  Can you imagine

what he had to go through?  But he was professional.  He

proved his case.  He was methodical.  And if he didn't have

the evidence, he didn't seek to misdirect the question.

He's famous for one statement that I know of.

I'm sure he's famous for a lot more.  And I'm paraphrasing

now, but Chief Justice Jackson said:  *The government, because*

*their job is to pursue justice within the construct of*

*proving their case beyond a reasonable doubt with the*

*presumption of innocence and then bearing the burden of proof*

*may strike hard blows, yes, they can; but they cannot strike*

*foul ones.*

And I would suggest to you -- I'm not

claiming that the government acted in bad faith here, but I'm

saying that their desire to win has caused them to present to

you a case that makes it so -- just because Officer Arao is a

police officer, he should have known the law, and the ATF

16:06:43    1    doesn't even understand the law.  As well as going on with

16:06:49    2    potentially, it was possibly.  Please study that.

16:06:53    3              And so, finally, we have a -- we have a man

16:06:57    4    here who's dedicated his life to serving us, he's dedicated

16:07:04    5    himself to following the law.  You know that, you've seen it,

16:07:08    6    it's glaringly obvious.  It's not right that he's sitting

16:07:14    7    here.

16:07:14    8              The government has failed to prove their

16:07:19    9    case, and I'm going to ask you to return the only verdict you

16:07:22   10    can against Officer Arao on both charges, and that is not

16:07:26   11    guilty.

16:07:26   12              Thank you.  Thank you, Your Honor.

16:07:28   13         THE COURT:  Thank you, Mr. Robinson.

16:07:30   14              Mr. Rodriguez.

16:07:33   15         MR. RODRIGUEZ:  Your Honor, may I have a minute

16:07:36   16    just to set up?

16:07:37   17         THE COURT:  Certainly.

16:09:02   18         (CLOSING ARGUMENT BY MR. RODRIGUEZ)

16:09:02   19         MR. RODRIGUEZ:  Good afternoon, ladies and

16:09:06   20    gentlemen.

16:09:06   21              To me, one of the most important things that

16:09:09   22    were said during this trial, and it's --

16:09:14   23              Well, it's always been the case that in every

16:09:16   24    trial sometimes the most telling part of the case comes from

16:09:23   25    most unexpected place.  And in this case it actually came

from Pelayo, and when Mr. Pelayo said:  *I didn't put the*
*puzzled pieces together like that.*

Because the amount of time, energy and
resources that the government has used in order to frame an
innocent man in this case comes down to what Pelayo said:  *I*
*didn't put the puzzled pieces together like that.*  And it is
my job today, in my closing argument, to help you put the
pieces together like that, to show you the steps that they
have gone through in order to mislead you.

There is something that I want you to know.
Every witness that a prosecutor puts on the stand is there to
get you to convict -- not to entertain you, not to educate
you -- to convict.

So, as you listen to my argument, and I know
it's late, and I appreciate it, as you listen to what I'm
about to tell you, and putting it all together, is think
about the time, the energy and resources they spent
misleading you.

Okay, now, in order to convict Carlos
Fernandez, they have to prove certain things beyond a
reasonable doubt, and I'll talk about what "beyond a
reasonable doubt" means at the end of my argument.

And there are three different parts of this
case, and the first one, Mr. Robinson argued extremely
eloquently just now, and it's hard to follow that, which is

16:11:03  1   the wilfulness part that is required for the government to

16:11:06  2   prove beyond a reasonable doubt, that Carlos Fernandez

16:11:16  3   wilfully violated the law.

16:11:17  4              Now, as just stated, this isn't a situation

16:11:21  5   like a murder case where somebody takes a gun, points at

16:11:26  6   somebody, shoots them.  Right?  It's clear what's going on.

16:11:30  7   This is a highly regulated field.  It's so regulated that

16:11:37  8   there is an actually department, there's a federal agency

16:11:40  9   called Alcohol, Tobacco and Firearms just to regulate booze

16:11:42  10  and cigarettes and guns.  In California we have our own

16:11:47  11  Department of Justice to regular guns as well.

16:11:50  12             There are hundreds and thousands of makes,

16:11:54  13  models, antiques -- I mean, the list goes on of the number of

16:11:59  14  guns that are available and how to regulate it, whether or

16:12:04  15  not they're automatic, semiautomatic, both action rifles,

16:12:09  16  long guns, short guns.  It goes on and on and on.  And so

16:12:13  17  that's why the law requires that the government prove beyond

16:12:13  18  a reasonable doubt that defendant Carlos Fernandez acted

16:12:20  19  willfully, that is, he knew he was violating the law.

16:12:22  20             So, let's look at how Carlos Fernandez went

16:12:25  21  about this.  He filled out every form that was required,

16:12:30  22  every -- is it 4473 -- I forgot the number, 4773s.

16:12:36  23             They told me there was going to be no math in

16:12:40  24  law school.

16:12:40  25             4473.  Every single one, he filled out.  The

DROS, whatsoever forms was required to fill out in every
sale, he filled it out by turning those forms in to the
federal government.  When those forms were filled out, they
would go into the a database, both in the State of California
and the federal government.

Again, this is someone who's wilfully
violating the law by turning in forms to both governments in
order to create a record.

By partnering up with other FFLs, either
doing transactions at Norman's -- not Norman's -- Turner's,
or through Ronin Tactical, in order to lead up, to follow the
law as required in order to create a record of every purchase
ever made.

There is no evidence of any guns sold by
Carlos Fernandez that weren't recorded.  None.  In fact, all
the guns that they claim that they argue that they used in
order to try to get you to convict Carlos Fernandez were
recorded.

So -- and in this ongoing process of
supposedly willfully violating the law, he sets up an
Instagram account, a public Instagram account, with an actual
hashtag.  So, anything who's looking for a 1911 Super .38
handgun can find him.  He engages people, he goes to gun
shows.  He has a T-shirt.  He is about as open as he can
politic be, saying:  I sell 1911 Super .38s.

16:14:40  1          There is no hiding, and that's a great point

16:14:43  2   that Mr. Robinson made.  People who wilfully commit crimes

16:14:48  3   hide their crimes.  We in the law call that consciousness of

16:14:55  4   guilt.  Someone who's embezzling money from their boss will

16:15:00  5   hide that.  Someone who's stealing from their partner will

16:15:03  6   hide that.  Right?  A person who cheats you, hides it.

16:15:10  7          When you get a call from a telemarketer,

16:15:13  8   they're not telling you they're going to rip you off.  They

16:15:17  9   tell you they got a great deal for you.  Right?

16:15:21  10          We have the exact opposite of this.  These --

16:15:24  11   Carlos Fernandez operated in the daylight, because he thought

16:15:29  12   he was doing everything that the law required, that he was

16:15:35  13   following the oath that he swore to take 18 years ago, the

16:15:41  14   oath that he remembered every morning when he put on that

16:15:46  15   uniform and went to work.

16:15:51  16          And I don't know how many of you who have

16:15:53  17   cops as family, but that is a solemn duty, to put on that

16:15:58  18   uniform and leave the house, because you know you're not

16:16:01  19   guarantied to come home.

16:16:11  20          One thing is to argue that Carlos Fernandez

16:16:14  21   is a crooked cop and broke the law; it's quite another and

16:16:21  22   quite a stretch to say that he's so dumb.  Because that's

16:16:27  23   basically what they're saying.  They're saying he's so dumb,

16:16:36  24   that he wilfully violated the law and made a record of every

16:16:39  25   transaction.

16:16:39  1          Throughout -- throughout this case, there has
16:16:43  2  been the use of evidence that doesn't apply, that isn't true,
16:16:52  3  that's misleading, that uses innuendo in order to confuse you
16:16:57  4  and to bamboozle you.
16:17:04  5          Special Agent Hart testified on Thursday.
16:17:10  6  Now, when you have -- when the prosecution puts on their
16:17:14  7  investigating officer, right, their lead investigator, the
16:17:16  8  one that kind of puts the case together, that's supposed to
16:17:19  9  be your perfect witness.  That's the witness --
16:17:22  10          Because witnesses come in, they might change
16:17:24  11  their story, they don't testify well, they don't know how to
16:17:27  12  make eye contact, whatever.  The investigating officer is
16:17:30  13  supposed to come in here and lay it all out for you, saying:
16:17:34  14  Listen, this is what I do, I put this case together.  Here is
16:17:38  15  the evidence, here is the road map to conviction.
16:17:44  16          Their best witness testified about a chart
16:17:50  17  that I can't believe they used again in closing argument,
16:17:53  18  about guns purchased, and then the -- with the markup and the
16:17:58  19  advertised price for a total, what, $39,000 and change, six
16:18:04  20  of those guns were never sold, and then that was compared
16:18:08  21  next to the deposits at Chase Bank account that equal almost
16:18:15  22  the same amount.
16:18:17  23          And the entire reason they did that was to
16:18:19  24  get you to think that all those guns were sold, all that
16:18:23  25  money was made, and all that money went into his bank

16:18:23   1   account.

16:18:26   2                      And that was a lie.  That is -- I am not

16:18:32   3   afraid to say that, that is bad faith, that that was

16:18:36   4   malfeasance, that you are being cheated and lied.  That in

16:18:41   5   this court -- to me --

16:18:42   6                      Look, I'm way cornier than Mr. Robinson.  To

16:18:47   7   me, this is a sacrad place.  This is a hallowed, secular

16:18:52   8   place of justice.

16:18:53   9                      I love being a lawyer.

16:18:55   10              And to put on a federal agent in that stand

16:18:59   11  under oath and question him about something to give you the

16:19:03   12  impression -- because with so many guns and so many serial

16:19:13   13  numbers, it's pretty easy for a lawyer not to notice, but I

16:19:16   14  did.  I'm old, but I'm not dumb.  And they would have gotten

16:19:27   15  away with it.  And you would have been left with an

16:19:30   16  impression and a reason to convict, and a feeling in your gut

16:19:36   17  that there was something wrong, and the only thing was wrong

16:19:40   18  was what they tried to do to you and what they want to do to

16:19:45   19  him because what it means to be able to convict a cop when

16:19:49   20  you're a prosecutor.  Yeah, I said it.  That's absolutely

16:19:53   21  true.

16:19:57   22              This isn't about justice.  This is about

16:20:00   23  ending Carlos Fernandez's career in exchange for theirs.  And

16:20:13   24  what is baffling to me is that --

16:20:19   25              Look, let me show you something.  You see

16:20:22   1   these?  They've been moving them around, these three binders?

16:20:27   2   They're extremely heavy.  You need lumbar support to move

16:20:31   3   them, okay?  Out of all of these exhibits, right, the one

16:20:37   4   thing they came up and showed you or one of the things that

16:20:41   5   they made a, you know, big poster and had it framed, was

16:20:46   6   misleading and a lie.

16:20:49   7            The other one with the Chase deposits, they

16:20:53   8   have no idea who made the deposits, they have no idea where

16:20:57   9   the money came from, they didn't bother to look at his

16:21:04   10   credit -- what do they call -- credit bureau?  No.  Credit

16:21:12   11   union.  Thank you.  Credit union account or his wife's credit

16:21:17   12   union account.  Right?

16:21:18   13            Look at this.  Right?  Because the rest here,

16:21:24   14   the huge majority are just forms that were signed and turned

16:21:28   15   into both the federal and the state government.  And then

16:21:32   16   they tried, after all that, after Thursday what -- in a way

16:21:35   17   it was kind of insulting -- is that they tried to do it

16:21:37   18   again, again, with showing you those text messages and those

16:21:41   19   pictures between Camacho, Jr. and Karina.

16:21:48   20            And what did they show you repeatedly over

16:21:50   21   and over and over again?

16:21:52   22            I'm trying to get these without papers, I'm

16:21:55   23   trying to get these without papers, right?  I mean that's

16:21:59   24   what Junior is trying to do, he's trying to get them without

16:22:02   25   papers.  Obviously he's got something to do with it.  Right?

16:22:07   1   Right?  It's going to be shown to you.  Right?  I mean, this

16:22:11   2   is being thrown in front of you, it's like red meat, a gun

16:22:15   3   without papers, like, that's a big deal, right?  With a

16:22:20   4   photograph of a gun that they knew was sold with papers.

16:22:31   5          When they give you evidence like that, that

16:22:37   6   is misleading, that is there to create -- not only

16:22:42   7   misleading, it never happened.  And not only that, Carlos

16:22:47   8   Fernandez had no idea what Camacho, Jr. says to his

16:22:51   9   girlfriend.  None.  There is absolutely no evidence, no proof

16:22:57  10   not even an iota, no even a hint, that Carlos Fernandez has

16:23:02  11   any knowledge what his -- Camacho, Jr. and Karina say to each

16:23:07  12   other, let alone text.  Right?

16:23:09  13          You have to ask yourself again and again:

16:23:30  14   Why would they do that?  Why after Thursday's debacle would

16:23:34  15   they try to mislead me again?  Why would they try to give me

16:23:39  16   the impression of something that didn't happen?

16:23:51  17          I'll let you answer that for yourselves, but

16:23:54  18   I'll suggest this:  That when lawyers know that they're

16:23:59  19   losing a case, sometimes they try desperate measures.

16:24:09  20   Sometimes they will try foul blows.

16:24:19  21          The first witness that we heard about, I have

16:24:23  22   no idea why he was called to testify.  Mr. -- this

16:24:31  23   is Tuesday, Wednesday?  About a week ago.  Mr. Cervantes

16:24:35  24   Corona, which we haven't talked about much, came in and

16:24:38  25   testified and said that he bought two guns, and that he

16:24:41  1   gave -- and one of the guns he bought for a buddy of his who

16:24:47  2   could have a gun, they knew he was being -- he knew his

16:24:54  3   friend couldn't have a gun.

16:24:54  4              Absolutely no evidence that Carlos Fernandez

16:24:57  5   knew anything about that.  He couldn't even identify Carlos

16:25:01  6   Fernandez.  Do you see Carlos Fernandez in the courtroom?

16:25:05  7   Never asked.

16:25:05  8              And he had a -- he had a felony, and he had

16:25:07  9   to testify, and he had to cooperate.  And even with all of

16:25:11  10  that, he never once said Carlos Fernandez knew.  Because if

16:25:17  11  he would, they would have asked him that question.

16:25:21  12             So, the fact that someone -- that Carlos

16:25:24  13  Fernandez does not know, commits a crime all by himself, has

16:25:30  14  nothing to do it, right, in no way convicts my client.  Then

16:25:41  15  why?  To dirty him up, to make him look bad.  The badder

16:25:46  16  [sic] he looks -- the badder -- the worse he looks, right,

16:25:47  17  the more you're going to think, ah, maybe, ah, close enough.

16:25:53  18  That is jury manipulation.  That is not fair.  That is not

16:25:59  19  just.

16:26:06  20             So, ladies and gentlemen, I suggest that you

16:26:09  21  completely disregard the testimony of Cervantes Corona.  It

16:26:16  22  has absolutely nothing to do with this case.  There is no tie

16:26:21  23  to my client in any of the counts.  None, whatsoever.

16:26:28  24             Now, let's talk about Mr. Pelayo.

16:26:31  25  Mr. Pelayo --

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
| 16:26:40 | 1  | When we finished up last Thursday, on that                   |

16:26:40  1           When we finished up last Thursday, on that
16:26:46  2     day, on that Thursday afternoon, Mr. Pelayo was cagey and
16:26:54  3     nervous.  And by that time he got here, he got back here on
16:26:57  4     Monday, he was terrified, and he was terrified about one
16:27:02  5     particular thing, about saying the wrong thing and messing up
16:27:09  6     his deal because Albert Pelayo is owned by the federal
16:27:16  7     government.  They own him.  His entire freedom, and whether
16:27:19  8     or not he gets to be home for Christmas, whether or not he
16:27:22  9     gets to see his son being born, whether or not he gets to do
16:27:27  10    all the things that are heartbreakingly beautiful as a
16:27:34  11    parent, when a baby comes into this world, all those things,
16:27:38  12    whether he gets to experience them or whether or not he's in
16:27:42  13    a federal penitentiary is up to them, and he knows that.
16:27:48  14    Right?  And it's not just him, it's his wife, too, right?
16:27:54  15    Because they got -- they got Bianca too.
16:28:04  16            Look, Pelayo is just a dude from Norwalk.
16:28:09  17    That's the best way to describe him.  He's a regular guy from
16:28:12  18    Norwalk who had a DUI, who did something stupid, and now he's
16:28:17  19    a felon for it, and he'll be a felon for the rest of his
16:28:20  20    life.
16:28:20  21            And the government was willing to sacrifice
16:28:24  22    Adalberto Pelayo future -- because his future is not the same
16:28:29  23    that it would have been, right?  In his ability to make money
16:28:31  24    and provide for his family.  In order to have a witness under
16:28:32  25    their grip to try to convict him.

UNITED STATES DISTRICT COURT

16:28:38  1          Pelayo is collateral damage and proof of what
16:28:43  2   government can and will do when it wants something.
16:28:53  3          Pelayo lied when he said that him and Bianca
16:28:55  4   didn't talk about it.  There is absolutely -- everyone who's
16:29:01  5   been married and especially those who have been married more
16:29:05  6   than once, know that there is no way that a couple who both
16:29:09  7   are looking at felony charges in federal government, in this
16:29:13  8   room, are not talking about it all the time.
16:29:19  9          You try to find things not to talk about,
16:29:22  10  right?  It's like fighting -- it's --
16:29:25  11         I am being compared being charged by the
16:29:30  12  federal government -- and I hope no one takes offense to this
16:29:36  13  if you or your family have gone through this, to having
16:29:37  14  cancer.  It is that big of a deal.  And instead of doctors,
16:29:41  15  you have lawyers to deal with.
16:29:42  16         They -- Bianca and Adalberto might have found
16:29:47  17  things to talk about other than this, but this is something
16:29:51  18  they talked about.  And for him to say that when she got a
16:29:55  19  letter saying you'll get diversion if you just behave, right?
16:30:01  20  Let's kind of waive this in front of you.  And that letter
16:30:06  21  was mailed -- this is -- this is evidence you'll have,
16:30:10  22  exhibits you'll have.  On October 25th, just a few days
16:30:15  23  later, he goes in and gives a different statement than he
16:30:20  24  gave a year -- about a year and a half before that, right?
16:30:24  25  And it just so happens that he makes a statement, as Agent

16:30:33   1   Hart testified, that he never said before.

16:30:35   2   But wait.  That statement was in his plea

16:30:39   3   that he signed in September of 2018.  And who wrote the plea?

16:30:48   4   Who wrote the script?

16:30:57   5   He changes or amends his statements at more

16:31:01   6   than a year after the fact because they realized that the

16:31:05   7   script that they wrote for him in order to get him to flip,

16:31:09   8   in order to get him to lie.  He hadn't said that, so they had

16:31:18   9   to fix it.

16:31:20   10   And by the way, did you notice that he was --

16:31:25   11   if he was supposedly lying to the ATF, was he ever charged

16:31:29   12   with lying to the ATF?  No.

16:31:46   13   Let's talk about Camacho, Jr.

16:32:08   14   In the opening statement, Ms. Dragalin

16:32:12   15   stated, quote: *Evidence will show Fernandez knew Camacho was*

16:32:16   16   *a felon and that guns were for him*.

16:32:19   17   There is no evidence that Carlos Fernandez

16:32:24   18   knew that Camacho, Jr. was a felon.  None.

16:32:31   19   You've looked at all the text messages that

16:32:33   20   they've shown you.  There is no evidence that he knew that --

16:32:37   21   that Fernandez knew that Camacho, Jr. was a felon.

16:32:43   22   They want you to assume, they want you to

16:32:48   23   guess, they want you to trust them, they want you to make a

16:32:52   24   leap, they want you to think that Carlos Fernandez was ready

16:32:56   25   to betray his badge and throw away an 18-year career to sell

16:33:05  1    guns that were extremely popular, right?  You could tell that
16:33:09  2    from all the stuff that we saw.  He didn't lack customers, he
16:33:16  3    didn't lack shelter, he didn't have money problems.  He did
16:33:19  4    not -- he was not a desperate man trying to make a buck and
16:33:25  5    sell a gun to whomever.  These guns are collector items.
16:33:31  6    These guns are extremely expensive.  These guns have a
16:33:38  7    market.
16:33:39  8              There is no evidence that Carlos Fernandez
16:33:42  9    knew Camacho, Jr. was a felon.  All the evidence shows is
16:33:48  10   that the Camachos would come down, they would buy guns, and
16:33:54  11   Camacho, Jr. would text and talk about the guns with Carlos
16:34:00  12   Fernandez.  So what?
16:34:03  13             The only -- according to the prosecution, the
16:34:06  14   only reason that this all happened was because Camacho, Jr.
16:34:17  15   was a felon, and that he must have known that they were for
16:34:21  16   him.  There is no evidence of that.
16:34:26  17             It could very well be that Camacho, Jr., that
16:34:28  18   his dad bought the guns because his dad liked the guns.
16:34:33  19   Period.  That is just as reasonable interpretation of the
16:34:36  20   evidence.
16:34:36  21             Camacho, Jr. is broke and lives in a messy
16:34:39  22   room with his girlfriend at his parents' house, in his late
16:34:45  23   20s.  Maybe he's not the kind of guy that has the money to
16:34:50  24   buy 7,000- or $5,000 guns, and it's something that him and
16:34:56  25   his dad do together.

16:34:58  1          None of it shows that Carlos Fernandez knew,

16:35:04  2   and that knew -- not just knew, knew beyond a reasonable

16:35:09  3   doubt, right?  Because they don't have to prove that he knew;

16:35:15  4   they had to prove that he knew beyond a reasonable doubt that

16:35:18  5   Camacho, Jr. was a felon.  They had to prove beyond a

16:35:23  6   reasonable doubt that Pelayo was telling you the truth even

16:35:30  7   though they had his life in their hands, even though when he

16:35:33  8   first was approached by the ATF, he denied three times,

16:35:40  9   right?  Like Peter in the garden.  That Carlos -- that he

16:35:44  10  told Carlos Fernandez about the DUI.  And now because --

16:35:54  11  because he had to change his story, you're supposed to

16:35:59  12  believe him.

16:36:01  13          Let me -- let me just end by saying I want to

16:36:05  14  thank each and every one of you.  It has been a long trial.

16:36:09  15  It has not been easy.  It is complicated.  The law, as

16:36:15  16  Mr. Robinson so eloquently explained, is complicated, it's

16:36:18  17  convoluted, it's confusing.

16:36:25  18          Your role as a juror in a criminal case is

16:36:30  19  the embodiment of the Constitution, and I know that sounds

16:36:35  20  corny, but please hear me out.  The Constitution of the

16:36:40  21  United States is a revolutionary document written by

16:36:43  22  revolutionaries that went to war against a king, won, and did

16:36:49  23  everything they could to set up a fair system where one of

16:36:54  24  the most important things is that the government wouldn't

16:36:59  25  have absolute power over us, and the things that they -- and

16:37:06   1    what they put in that to stop that, because they saw it

16:37:10   2    from -- they went to war with it -- for it, was the

16:37:13   3    government accusing people of crimes and convicting them on

16:37:17   4    flimsy evidence, an innuendo and misleading evidence.

16:37:23   5              That is the beauty of our Constitution, what

16:37:26   6    I call the sacred place.  And that's why we have the

16:37:33   7    presumption of innocence, and that's why anyone in America

16:37:36   8    accused of a crime has to be proven guilty beyond a

16:37:41   9    reasonable doubt, and that's why your role as a jury is not

16:37:45   10   just to question and doubt every piece of evidence that's

16:37:52   11   brought before you by the government, it is to question their

16:37:57   12   motives and their reason that they spent days trying to

16:38:01   13   mislead you and use propaganda and use misinformation to try

16:38:07   14   to get you to convict an innocent man and end the life as he

16:38:14   15   knows it.

16:38:17   16             Ladies and gentlemen, thank you so much.  And

16:38:21   17   I ask you to come back with the true verdict of not guilty on

16:38:26   18   all counts as to Carlos Fernandez.

16:38:28   19             Thank you so much.

16:38:33   20        THE COURT:  Thank you, Mr. Rodriguez.

16:38:36   21             You have 20 minutes.

16:39:03   22             (REBUTTAL CLOSING BY GOVERNMENT)

16:39:17   23        MS. DRAGALIN:  May I proceed, Your Honor?

16:39:19   24        THE COURT:  Please.

16:39:19   25        MS. DRAGALIN:  Good afternoon, ladies and

16:39:20    1    gentlemen.  I'll start with responding to some of the

16:39:22    2    arguments raised by defendant Arao's counsel.

16:39:27    3              Now, he correctly stated the only issue as to

16:39:31    4    Mr. Arao that's been disputed in this case is:  Did he act

16:39:34    5    willfully when he engaged in the business of dealing firearms

16:39:40    6    without a license?

16:39:42    7              Now, the Court instructed you on the law.

16:39:47    8    What does it mean in the law to act wilfully.  The jury

16:39:52    9    instructions will be with you in the deliberation room.  The

16:39:56   10    instruction makes clear:  It requires proof that the

16:39:58   11    defendant knew that his conduct was unlawful.

16:40:03   12              In other words, when defendant Arao

16:40:06   13    repeatedly bought and then resold guns over and over again,

16:40:12   14    did he know that it was unlawful to engage in that conduct

16:40:18   15    without having a federal license?

16:40:21   16              In this case you have straightforward

16:40:26   17    evidence that this defendant knows that it's unlawful to deal

16:40:32   18    in firearms without a license.  You saw evidence of that in

16:40:37   19    multiple ways.  You saw evidence that defendant Arao applied

16:40:45   20    for a federal firearms license.

16:40:49   21              Ladies and gentlemen, a person who applies

16:40:52   22    for a federal firearms license understands that you need to

16:40:58   23    have a license to engage in the business of dealing firearms.

16:41:03   24              You saw evidence that defendant Arao not just

16:41:08   25    applied for it, he got a federal license to deal in firearms

for the corporation that he ran, the business that was a legitimate FFL, Ronin Tactical.  He ran a business that is a license under federal law that complied with federal law, he knows there is a requirement to have a license to engage in the business of dealing firearms.

You saw the Form 4473 many, many times during this trial.  That's because this form is important.  It's the record that has to be kept by an FFL, it's the record that these two defendants signed over and over and over and over again.  Every time you buy a gun, you have to sign this form.

And, ladies and gentlemen, that form, right above the signature of the buyer says:  "I further understand that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a federal firearms license is a violation of law."

That answers the question:  Did they know that engaging in this conduct was against the law?  This Court tells them it is against the law to engage in this conduct.  That's the answer.  They're told that every time they fill out one of these forms.

It then directs the buyer:  "See instruction for Question 16."  We've shown you what that instruction says.  It has an even more detailed warning about what it means to engage in the business of dealing in firearms. That's why we're here today.  That's the crime they were

16:43:06  1    charged with.  They are engaging in the business of dealing

16:43:10  2    in firearms without a license.

16:43:13  3                    We're here for that exact law -- because they

16:43:17  4    broke the exact law that they were warned about every single

16:43:22  5    time.  You heard evidence defendant Arao signed this form at

16:43:30  6    least 41 times for the 41 guns charged in the indictment.

16:43:36  7                    You have other evidence that defendant Arao

16:43:39  8    knew that his conduct was against the law.

16:43:45  9         MR. ROBINSON:  Your Honor, I'm going to object to

16:43:48  10   what's on the screen.

16:43:51  11        THE COURT:  The objection is overruled.  It's

16:43:53  12   argument of counsel, and argument of counsel is not in

16:43:58  13   evidence.

16:43:59  14        MR. ROBINSON:  That's 404(b) notice.  No lack of

16:44:01  15   notice.  I'll submit it.

16:44:02  16        THE COURT:  Thank you.

16:44:04  17        MS. DRAGALIN:  Ladies and gentlemen, let me make

16:44:06  18   it very clear.  Defendant Arao is charged with the crime of

16:44:10  19   engaging in business of dealing in firearms without a

16:44:13  20   license.  He's also charged with conspiring with defendant

16:44:17  21   Fernandez to commit that same crime.

16:44:19  22                    He is not charged with other conduct

16:44:22  23   including committing straw purchases or anything else.

16:44:27  24   However, when you make the decision about whether this

16:44:31  25   defendant, defendant Arao, knew that his conduct was against

16:44:37  1    the law, you can take into consideration that there were

16:44:41  2    other laws that he was warned about, and that his conduct,

16:44:48  3    his conduct that he's charged for in this case violated the

16:44:52  4    law.

16:44:53  5              MR. ROBINSON:  Same objection.

16:44:55  6              THE COURT:  Let me see counsel at sidebar.

16:45:09  7              (Sidebar conference.)

16:45:09  8              MR. ROBINSON:  Okay, Your Honor, there was never

16:45:12  9    any 404(b) notice provided.  We never had the opportunity to

16:45:18  10   litigate.  Your instruction says they cannot consider this

16:45:22  11   evidence for any other purpose.  This evidence being the

16:45:25  12   false statements or the selling to a prohibited person.  But

16:45:30  13   that's exactly what the government is doing.  It's another

16:45:34  14   form of sandbagging.  I'm moving for a mistrial.  It's a

16:45:37  15   constructive amendment of the indictment, in violation of

16:45:40  16   your instruction.

16:45:40  17             MS. DRAGALIN:  Your Honor, we have to prove that

16:45:45  18   this defendant knew that he violated the law, and the law is

16:45:47  19   clear that that requirement requires the proof that he knew

16:45:50  20   he violated any law, not just the licensing requirement.

16:45:53  21             The jury has heard the evidence that he's

16:45:56  22   filled out this 4473 Form.  It's inextricably intertwined

16:46:04  23   with a conspiracy in this case.  That is not 404(b) evidence.

16:46:06  24   Even if it were, it's relevance to knowledge of the law,

16:46:10  25   which is what the government has the burden of proving.

16:46:10   1          **MR. ROBINSON:**  Your Honor, there are notice of

16:46:12   2   requirements --

16:46:12   3          **THE COURT:**  The objection is sustained.

16:46:14   4          **MR. ROBINSON:**  Your Honor, I move for a mistrial,

16:46:18   5   please.

16:46:18   6          **THE COURT:**  Denied at this time.  Other than an

16:46:20   7   option to renew.

16:46:20   8          **MR. ROBINSON:**  Instruct the jury to disregard this

16:46:23   9   argument, please.

16:46:34   10          (In open court.)

16:46:37   11          **THE COURT:**  The objection has been sustained.  You

16:46:39   12   may proceed.

16:46:41   13          **MS. DRAGALIN:**  Thank you, Your Honor.

16:46:46   14          Now, you heard comments about why would these

16:46:50   15   defendants create a paper trail if they thought they were

16:46:55   16   breaking the law?

16:46:58   17          Agent Hamilton, the expert in this case,

16:47:01   18   explained to you how a paper trail works for a gun.  Every

16:47:06   19   time there is a sale of a gun, there is a paper trail created

16:47:10   20   through the 4473 Form.  Beginning of the manufacturer who

16:47:15   21   sells it to a distributor, who sells it to an FFL, every time

16:47:20   22   there is a transfer, there is a 4473 and a paper trail.

16:47:24   23          Now, think about the scheme that these two

16:47:27   24   defendants were running together.  They're charged with

16:47:32   25   buying and selling guns over and over without a license.

16:47:38  1        Step one:  You have to buy a gun to be able

16:47:42  2    to complete the scheme.  Every time they buy a gun from a

16:47:47  3    legitimate FFL, from anyone, there is going to be a paper

16:47:50  4    trail showing that the gun was sold to defendant Fernandez or

16:47:56  5    defendant Arao.  There is a record of paper trail.

16:47:58  6        If either of these defendants sold that gun

16:48:02  7    without any paperwork, without completing the 4473, and that

16:48:07  8    gun was later found at the scene of a crime, Special Agent

16:48:13  9    Hamilton told you what would happen.  ATF or agents can run

16:48:18  10   the serial number of that gun through their system.  It will

16:48:22  11   tell them who was the last registered owner of that gun.

16:48:28  12       If they did that, without a paper trail, that

16:48:32  13   gun would lead agents straight to the door of defendant

16:48:37  14   Fernandez and straight to the door of defendant Arao.  So, of

16:48:42  15   course they had to create a paper trail.  Of course they had

16:48:47  16   to fill out the 4473 Form.

16:48:50  17       They are not charged in this case for failing

16:48:52  18   to fill out those forms.  That's not the crime.  For their

16:48:56  19   scheme to work, they had to make sure to paper it

16:49:00  20   appropriately.

16:49:02  21       They knew that dealing without a license was

16:49:07  22   unlawful because they filled out the 4473 Form every time,

16:49:12  23   because that form warned them every time.

16:49:20  24       The paper trail does not show that they

16:49:23  25   thought that what they were doing was legal.  It shows that

16:49:27  1    they were making sure they were covering their tracks in case

16:49:32  2    these guns ever got recovered in the hands of someone who

16:49:35  3    shouldn't have it.

16:49:43  4            Now, these two defendants you heard over and

16:49:46  5    over are police officers.  One issue I'd like to point out is

16:49:52  6    that the law applies to everyone equally.  It applies to

16:49:58  7    regular citizens in the exact same way that it does to police

16:50:04  8    officers.  In that regard the law applies to everyone

16:50:09  9    equally.  We are all equal under the law.

16:50:13  10           In this case, the fact that these two police

16:50:17  11   officers had a job as police officers is relevant to the

16:50:22  12   decisions you have to make, the decision about whether they

16:50:26  13   knew that their conduct was unlawful.

16:50:31  14           Now, the judicial notice 1, which is Exhibit

16:50:36  15   203, you'll have that with you, sets forth three simple

16:50:41  16   principles under California law.

16:50:47  17           Item 2 makes clear there is an exemption for

16:50:52  18   off-roster firearms for police officers for use in the

16:50:57  19   discharge of their official duties.  The exemption does not

16:51:04  20   say:  Law enforcement officers can buy off-roster firearms to

16:51:10  21   sell them to make a lot of money for use in the discharge of

16:51:16  22   their official duties.

16:51:22  23           How did these officers think that they were

16:51:25  24   following the law when they bought guns then resold them

16:51:33  25   sometimes the same day, sometimes the next day.

16:51:41    1          I also want to address the undercover

16:51:44    2   purchase that was mentioned in defendant Arao's closing.  The

16:51:50    3   defendants mentioned Exhibit 205.  You'll have a copy of the

16:51:52    4   full exhibit, and I encourage you to read it.  It's eight

16:51:55    5   pages from beginning to end.  I'll highlight just a few.

16:51:59    6          You heard testimony from Agent Hart that

16:52:01    7   these are direct messages between the undercover agent and

16:52:05    8   defendant Fernandez.  Read those messages from beginning to

16:52:09    9   end.  You'll see comments like:  6,000 for the Bryan Powley:

16:52:18   10   *These belong to a friend of mine.  He's about to set his*

16:52:21   11   *prices.*

16:52:22   12          July 17:  *My buddy said he will take 5500.*

16:52:28   13          I suggest to you $5500.

16:52:30   14          Further down:  *My partner, let me know when*

16:52:35   15   *so I can work out something with him.*

16:52:37   16          And then, if you have any doubt who he means

16:52:39   17   when he says "my partner," he says:  *Okay, my partner Eddie*

16:52:43   18   *is at the place.*

16:52:51   19          You heard Agent Hart tell you that exhibit

16:52:54   20   206 is a screen shot of the gun that Special Agent Duncan in

16:52:58   21   his undercover capacity was trying to buy on July 24, 2017.

16:53:03   22          You have this exhibit with you.  You can read

16:53:05   23   the serial number, 153LTD.  You also have in Exhibit 38 a

16:53:13   24   receipt for the purchase of that gun, 153LTD, sent to

16:53:23   25   eddiarao@hotmail.com on July 10, 2017 for $1955.  July 10,

16:53:34  1     2017, $1955.

16:53:37  2             July 24th, the text messages show the prices

16:53:41  3     they were quoting were $5500, two weeks later for this gun.

16:53:47  4     That's over $3500 markup for one gun.  The defendants are

16:53:54  5     charged for selling together in Count One 86 guns in the

16:54:03  6     course of two years.

16:54:04  7             I want to leave you an analogy on this point

16:54:07  8     about their knowledge of the law.  Now, imagine, you are a

16:54:11  9     citizen walking up to a liquor store about to buy a bottle of

16:54:15  10    liquor.  The liquor store needs a licensed to sell you the

16:54:20  11    bottled liquor.  Now, say there is a teenager waiting outside

16:54:24  12    who's 15 years old and cannot buy alcohol.  The teenager asks

16:54:28  13    you to walk into the store and buy a liquor bottle for them.

16:54:34  14    You walk into the store, you buy the liquor bottle for $10,

16:54:39  15    walk out, you give it to the teenager for $20, and you walk

16:54:44  16    away.

16:54:47  17            How could anyone think that that type of

16:54:50  18    conduct is lawful?

16:54:53  19        **MR. ROBINSON:**  Objection.  I'm going to object for

16:54:55  20    the same reasons that I objected previously that you

16:54:58  21    sustained.  This analogy is towards uncharged conduct.

16:55:04  22        **MR. RODRIGUEZ:**  Join.

16:55:05  23        **THE COURT:**  The objection is sustained.  Let's

16:55:07  24    move on and close.

16:55:09  25        **MS. DRAGALIN:**  Yes, Your Honor.

16:55:12   1          The defendants are charged with dealing

16:55:14   2   without a license.  The point is, they didn't have a license

16:55:19   3   to engage in the conduct that they were engaging in.

16:55:23   4          And lastly, I won't belabor these points, but

16:55:26   5   I do want to talk about whether these defendants were

16:55:31   6   operating out in the open, as you heard from both defendants.

16:55:36   7          I submit to you that the evidence that you

16:55:38   8   saw shows that there were certain things that were public on

16:55:42   9   Instagram, there were other things that were not public,

16:55:45   10  like, text messages, direct messages.  You heard that it

16:55:48   11  takes a search warrant to be able to get these private types

16:55:52   12  of conversation.

16:55:53   13         I encourage you to look at the records that

16:55:55   14  you have with you, look at the public posts and what they're

16:55:59   15  saying in the public posts, and compare that to what

16:56:03   16  defendant Fernandez is saying behind the scenes in private

16:56:09   17  messages with other individuals, what he is saying to people

16:56:12   18  in text messages and WhatsApp messages.

16:56:18   19         That shows the consciousness of guilt.  He

16:56:20   20  knows that he cannot say the most incriminating things in the

16:56:23   21  public posts.  That's saved for the private messages.

16:56:28   22         And the last point about putting the pieces

16:56:32   23  of the puzzle together.  Counsel for defendant Fernandez is

16:56:38   24  right, this case took a lot of work to put all the pieces of

16:56:43   25  the puzzle together.  It is not just obvious and out in the

16:56:47   1    open.

16:56:47   2              The agents had to piece together all of the

16:56:51   3    firearm records, they had to talk to witnesses, they had to

16:56:53   4    get search warrants for houses, for phones, for e-mails, for

16:56:57   5    Instagram records.  It took a lot of work to put all of these

16:57:01   6    puzzle pieces together.  It was not obvious and in the open.

16:57:06   7    That shows a consciousness of guilt.

16:57:08   8              Defendant Fernandez was trying to hide what

16:57:12   9    he was actually doing in his private communications.  That is

16:57:15   10   the best indicator of what he was doing and what he knew.

16:57:19   11             Ladies and gentlemen, you've heard evidence

16:57:23   12   over the past two weeks because the government has the burden

16:57:26   13   to prove to you beyond a reasonable doubt that these

16:57:29   14   defendants committed these crimes.  And there have been

16:57:33   15   witnesses, there have been all these records that you have to

16:57:37   16   consider, because you have to find that there is evidence of

16:57:41   17   these crimes.

16:57:42   18             And you do have to find that they are guilty

16:57:45   19   beyond a reasonable doubt.  That it is a very high standard

16:57:48   20   as it should be.  That is the same standard that every jury

16:57:52   21   has applied in a criminal case.  Every defendant who has been

16:57:57   22   convicted and found guilty in a criminal case has been found

16:58:01   23   guilty in this country under the standard beyond a reasonable

16:58:05   24   doubt.

16:58:06   25             The evidence in this case has proven that

| | |
|---|---|
| 16:58:10 | 1 |
| 16:58:15 | 2 |
| 16:58:17 | 3 |
| 16:58:23 | 4 |
| 16:58:24 | 5 |
| 16:58:26 | 6 |
| 16:58:28 | 7 |
| 16:58:32 | 8 |
| 16:58:37 | 9 |
| 16:58:39 | 10 |
| 16:58:42 | 11 |
| 16:58:45 | 12 |
| 16:58:50 | 13 |
| 16:58:50 | 14 |
| 16:58:53 | 15 |
| 16:58:57 | 16 |
| 16:58:59 | 17 |
| 16:59:36 | 18 |
| 16:59:36 | 19 |
| 16:59:38 | 20 |
| 16:59:40 | 21 |
| 16:59:46 | 22 |
| 16:59:54 | 23 |
| 16:59:57 | 24 |
| 17:00:02 | 25 |

1  these defendants are guilty beyond a reasonable doubt of each
2  of the counts they are charged with, and the government asks
3  you to return the only verdict consistent with the evidence,
4  guilty on all counts.
5          **THE COURT:**  Thank you, Ms. Dragalin.
6                  That concludes the argument of counsel.  It's
7  5:00 o'clock.  We can have the jury stay longer if everybody
8  agrees.  Otherwise, the jury would be excused.
9                  Okay, I understand that somebody needs to be
10  excused.  So, the jury is going to be excused.  Please return
11  tomorrow, and we'll start again tomorrow at 8:30.
12                  During your absence, do not discuss this case
13  amongst yourselves or with any other person, please.
14                  I'm informed by Mr. Cruz that it may rain
15  tomorrow.  So, make sure to you give yourself additional time
16  to get to the Court.
17                  (Following proceedings held outside the presence
18  of the jury.)
19          **THE COURT:**  Before we start with other matters, I
20  want to cover jury instructions again.
21                  We have the Instruction No. 19 that was read
22  after the Court read all of the instructions to the jury, and
23  again when we -- when we discussed instructions in the
24  morning and then in the afternoon today, the Court went
25  through each of the instructions in order advising all

17:00:06   1    parties of the instructions that the Court would be giving,

17:00:11   2    and then what apparently was not included was this

17:00:15   3    instruction that has -- has been identified as Instruction

17:00:18   4    19, which should have been given, I agree.  And the question

17:00:22   5    is where in the order of instructions do you want this

17:00:25   6    placed?

17:00:26   7           MS. RYKKEN:  Your Honor, in the list that the

17:00:28   8    government has sent to Mr. Cruz, it's listed as No. 19.  And

17:00:33   9    I noted that when you were reading them, you had said 19

17:00:37   10   twice or 20 twice.  So I think there just must have been some

17:00:41   11   confusion.  So that would be No. 19, and then conspiracy

17:00:46   12   elements for Count Four would be 20 --

17:00:48   13          THE COURT:  So, you've sent a new set to Mr. Cruz.

17:00:52   14          MS. RYKKEN:  I did earlier, yes.

17:00:53   15          THE COURT:  Let me have the lawyers look at that

17:00:55   16   new set to make sure that all the instructions are included.

17:01:00   17   Agreed?

17:01:00   18          MR. ROBINSON:  Yes, Your Honor.

17:01:01   19          MR. RODRIGUEZ:  Your Honor, what time would you

17:01:03   20   like counsel back tomorrow, 8:30?

17:01:06   21          THE COURT:  Yes, we're going to need you here at

17:01:10   22   8:30.  Yes.

17:01:12   23          MR. ROBINSON:  Should I just address the Court

17:01:13   24   now, Your Honor?

17:01:14   25          THE COURT:  It's up to you.

17:01:15  1           **MR. ROBINSON:**  Yes.  If I may, Your Honor, I've

17:01:44  2   never seen anything like this.  We have briefed constructive

17:01:49  3   amendment, we've briefed severance, we dealt with Bruton

17:01:53  4   issues, we agreed to bifurcate the case for presentation.  We

17:02:01  5   agreed on a limiting instruction that you gave repeatedly

17:02:06  6   that indicates -- that states, not indicates -- in this

17:02:14  7   Court's Instruction No. 9:  To the extent you have any

17:02:15  8   evidence regarding defendant Arao during these witnesses'

17:02:18  9   testimony that -- with respect to Fernandez, you are only to

17:02:21 10   consider it for the limited purpose of the two crimes charged

17:02:25 11   and not for any other purpose.

17:02:28 12           We have identified repeatedly the fact that

17:02:31 13   because Officer Arao is not charged with the false statements

17:02:37 14   and not charged with the sales to prohibited persons, that

17:02:41 15   the evidence against him is limited.

17:02:44 16           The government knows, Your Honor, that under

17:02:47 17   Federal Rule of Evidence 404(b) they must give us notice so

17:02:51 18   that we can litigate the relevance.  It's absurd that in the

17:02:56 19   rebuttal argument the government would argue the way that

17:02:59 20   they did in violation of your instruction, in an effort to

17:03:04 21   persuade this jury to consider uncharged conduct that has

17:03:08 22   never been litigated with this court as it has to be under

17:03:12 23   Rule 404(b), and you sustained my objection.

17:03:17 24           Undeterred, undeterred, Your Honor, they did

17:03:21 25   it again.  And it's just like the situation with the witness

yesterday when they asked the witness to give a lay opinion

that amounted to what I characterized as a Bruton statement,

but is a statement that we have agreed and you have agreed

and the jury has been told cannot be used against Officer

Arao, and they did it anyway, and you sustained that

objection.

The cumulative nature of the misconduct here,

Your Honor, has made it so that Officer Arao cannot receive a

fair trial.  This jury has been deliberately, in the face of

your instruction and despite your sustaining objections, has

continued to present theories that are inadmissible and

unreliable and in contravention of your orders.

I don't know what's happening here, but I do

know that the cumulative effect and a complete disregard for

your orders has created a situation where Mr. Arao cannot

receive a fair trial, and no instruction by you to this jury

is going to cure the problem that's been created.  And it's a

repetitive, ongoing, blatant problem.

And for that reason, Your Honor, I would ask

the Court to grant a mistrial as to Officer Arao.  Thank you.

**THE COURT:**  Thank you.  And just for -- to be

clear, the Court has provided the -- read the instruction

regarding the limited use of evidence on several occasions.

The Court sustained the objection of

Mr. Robinson, I think, joined in on the second round by

| | | |
|---|---|---|
| 17:04:59 | 1 | Mr. Rodriguez.  And the Court has instructed the jury in the |
| 17:05:06 | 2 | set of instructions that the defendants are charged only with |
| 17:05:09 | 3 | the charges in the indictment and not for any other conduct. |
| 17:05:12 | 4 | So, let me hear from counsel for the |
| 17:05:14 | 5 | government. |
| 17:05:15 | 6 | MS. DRAGALIN:  Yes, Your Honor. |
| 17:05:20 | 7 | Count One of the indictment charges a |
| 17:05:22 | 8 | conspiracy to deal in the business of firearms without a |
| 17:05:26 | 9 | license.  Object -- |
| 17:05:28 | 10 | One of the objects of the conspiracy is |
| 17:05:30 | 11 | listed.  Defendant Arao would transfer off-roster firearms |
| 17:05:36 | 12 | from Ronin Tactical Group to himself.  That is one of the |
| 17:05:40 | 13 | means by which this object was committed.  It is conduct that |
| 17:05:45 | 14 | is essential to the conspiracy charge, and the government's |
| 17:05:49 | 15 | theory of the case as charged in the indictment as repeatedly |
| 17:05:55 | 16 | explained in the government's motions and opposition in |
| 17:05:59 | 17 | pretrial litigation.  That has been the government's theory |
| 17:06:04 | 18 | from the start.  It has not changed in any way.  It is |
| 17:06:08 | 19 | inextricably intertwined with the conspiracy evidence.  It is |
| 17:06:14 | 20 | not other acts.  It is not 404(b) evidence of other acts. |
| 17:06:19 | 21 | THE COURT:  Ms. Robinson, please.  One moment. |
| 17:06:23 | 22 | Let counsel finish. |
| 17:06:25 | 23 | MS. DRAGALIN:  For that reason, Your Honor, |
| 17:06:27 | 24 | because the government has the burden of proof to prove that |
| 17:06:31 | 25 | the defendant acted willfully, in other words, that he knew |

he was violating the law.

And in the Ninth Circuit, it's clear that that instruction means he was violating any law, not just the licensing law.  And so it is relevant and actually essential to the government's case to be able to prove that he was violating and knew he was violating other laws.

The jury has been repeatedly instructed and warned, he is not charged with that separate crime.  However, it is relevant to his knowledge of the law that he was warned on these forms every time about a straw purchase.

And when one of the means of the conspiracy is this exact conduct, it is not an inappropriate to ask the jury to consider that for the purpose of deciding whether he acted willfully.

**THE COURT:**  One final rebuttal.

**MR. ROBINSON:**  Yes.  The means of the conspiracy, it's almost unimaginable in your rebuttal argument --

**THE COURT:**  Mr. Robinson, please direct yourself to the Court.

**MR. ROBINSON:**  In the rebuttal argument for the government to argue after we have constructed this case in a manner to -- to cure the possible constructive amendment, to protect Mr. Arao from an argument that he was being convicted for uncharged conduct, to not give notice of 404(b) like they know they're supposed to so that we can limit it, and so that

this jury could have been instructed on the limited use of
that information which says under the model instruction, it
cannot be used to convict.

       This is classic sandbagging, and they know
it.  And you sustained these objections.  And this is
cumulative misconduct.  Your Honor, this is an unfair
situation to Officer Arao, and it is gamesmanship by the
prosecutor in violation of your orders, and I ask you to
declare a mistrial.

    **THE COURT:**  The request for a motion for a
mistrial will be denied.

       That being said, there has been aggressive
prosecution on the part of the government here during the
course of this trial, which I'm concerned about.

       We are adjourned.

       (Proceedings concluded.)

    **THE COURT:**  Oh, we have verdict forms to look at.
We're back in session.

       Mr. Robinson, we're back in session.  We have
verdict forms.

       Please have a seat.

       We have the verdict form to cover.

       So, the government provided a proposed
verdict form which includes verdicts as to both defendants in
and what Mr. Cruz has done, is to separate the --

17:10:19  1          To have two different verdict forms, one for

17:10:22  2   defendant Arao and one for defendant Fernandez.  So, let me

17:10:24  3   have counsel review the verdict forms, and I think either

17:10:28  4   format is probably acceptable, but it's really up to the

17:10:32  5   parties.

17:10:33  6          **MR. ROBINSON:**  For the record, we've reviewed

17:10:35  7   them, Your Honor, and we would accept the one that Mr. Cruz

17:10:38  8   provided, where we have separate verdict forms for both

17:10:41  9   defendants.

17:10:42  10         **THE COURT:**  Let me hear from the government.

17:10:44  11         **MS. RYKKEN:**  Just one moment.

17:10:45  12         **MR. RODRIGUEZ:**  Your Honor, on behalf of

17:10:47  13  Mr. Fernandez, I reviewed them as well.  They're fine.

17:10:51  14         **THE COURT:**  Separate verdict forms.

17:10:52  15         **MR. RODRIGUEZ:**  Yes, Your Honor.

17:10:54  16         **THE COURT:**  Okay.

17:10:54  17         **MR. RODRIGUEZ:**  Thank you.

17:11:01  18         **THE COURT:**  Ms. Rykken?  Are they agreeable?

17:11:01  19         **MS. RYKKEN:**  Yes, Your Honor.

17:11:02  20         **THE COURT:**  Okay, we have agreed upon verdict

17:11:02  21  forms.

17:11:04  22          Anything further before we adjourn?

17:11:07  23         **MS. RYKKEN:**  No, Your Honor.

17:11:08  24         **MS. Dragalin:**  No, Your Honor.

17:11:10  25         **THE COURT:**  Thank you.  8:30.

17:11:13   1              COURT CLERK:  This Court is in recess.

17:11:19   2                   (Court adjourned.)

          3

          4                      ~ ~ ~

          5

          6              C E R T I F I C A T E

          7   I hereby certify that the foregoing is a true and correct

          8   transcript of the stenographically recorded proceedings in

          9   the above matter.

         10   Fees charged for this transcript, less any circuit fee

         11   reduction and/or deposit, are in conformance with the

         12   regulations of the judicial conference of the united states.

         13

         14

         15   /S/Anne Kielwasser
              _____         _11/30/2019__
         16   Anne Kielwasser, CSR, RPR        Date
              Official Court Reporter
         17

         18

         19

         20

         21

         22

         23

         24

         25

## $

**$1,000** [1] - 138:3
**$10** [1] - 195:14
**$10,000** [1] - 124:16
**$1600** [1] - 124:22
**$1955** [2] - 194:25, 195:1
**$20** [1] - 195:15
**$2000** [1] - 124:16
**$30** [1] - 124:7
**$3500** [1] - 195:4
**$39,000** [1] - 176:19
**$44,000** [2] - 7:24, 24:6
**$5,000** [1] - 184:24
**$500** [1] - 124:6
**$5500** [2] - 194:13, 195:3
**$789.99** [1] - 125:1
**$800** [1] - 125:3

## '

**'infrequent'** [1] - 52:7
**'Transaction'** [1] - 52:9

## /

**/S/Anne** [1] - 206:15

## 1

**1** [8] - 24:5, 27:11, 31:23, 39:20, 56:12, 58:12, 85:17, 193:14
**10** [26] - 77:14, 78:3, 81:7, 81:8, 81:12, 81:14, 87:9, 87:14, 89:19, 89:22, 103:16, 108:3, 109:9, 119:5, 122:11, 125:23, 133:15, 134:4, 134:11, 134:14, 140:2, 140:4, 151:16, 194:25
**10,000** [1] - 124:12
**100** [2] - 125:3, 165:24
**101** [1] - 131:19
**101l** [2] - 10:18, 24:12
**103** [1] - 8:13
**105** [2] - 135:16, 136:6
**108A** [1] - 136:25
**10th** [6] - 27:17, 142:14, 147:12,

147:25, 148:17, 150:11
**11** [22] - 34:12, 34:17, 34:22, 60:25, 81:7, 81:8, 81:13, 81:14, 87:17, 89:19, 89:22, 108:3, 109:10, 119:5, 125:19, 133:15, 134:4, 134:14, 135:17, 140:2, 145:10
**11/30/2019** [1] - 206:15
**111** [1] - 34:6
**114** [1] - 124:24
**117** [1] - 3:6
**118** [1] - 149:23
**11:00** [1] - 37:24
**11A** [1] - 136:7
**12** [6] - 37:25, 87:18, 88:4, 124:13, 124:22, 126:18
**1200** [1] - 2:6
**12070** [1] - 51:22
**12071** [1] - 51:25
**1230** [1] - 2:17
**12:00** [2] - 5:5, 37:23
**13** [5] - 67:25, 88:6, 88:11, 126:17, 143:11
**13,500** [1] - 123:5
**13th** [1] - 12:25
**14** [2] - 88:12, 126:17
**15** [4] - 88:14, 88:16, 94:8, 195:12
**152** [1] - 3:7
**153LTD** [2] - 194:23, 194:24
**16** [5] - 126:21, 143:17, 159:25, 160:25, 188:22
**17** [4] - 18:3, 88:17, 143:18, 194:12
**171** [1] - 3:7
**177** [1] - 27:11
**17th** [1] - 22:9
**18** [14] - 41:12, 76:20, 86:19, 88:20, 88:23, 100:10, 100:11, 100:18, 103:13, 106:12, 107:4, 109:13, 116:1, 175:13
**18-121SJO** [1] - 1:10
**18-year** [1] - 183:25
**182A** [1] - 148:5
**185** [4] - 165:8, 165:10, 166:17, 168:8
**186** [1] - 3:8

## 2

**19** [14] - 1:18, 4:1, 34:7, 88:24, 89:2, 114:9, 114:11, 115:9, 115:12, 198:21, 199:4, 199:8, 199:9, 199:11
**19(c)(1)(A** [1] - 52:6
**1911** [2] - 174:22, 174:25
**1922(a)(1)** [1] - 100:18
**1922(d)(1)** [2] - 86:20, 100:12
**199A** [2] - 5:23, 8:13
**19th** [2] - 7:7
**1:15** [1] - 69:14
**1:20** [4] - 5:5, 69:13, 85:6
**1ST** [1] - 1:24

## 2

**2** [4] - 26:9, 27:14, 85:18, 193:17
**2.12** [2] - 83:10, 86:11
**20** [10] - 89:1, 89:4, 119:19, 124:17, 151:13, 151:15, 151:16, 186:21, 199:10, 199:12
**2000** [1] - 122:12
**201** [1] - 29:16
**2013** [1] - 128:15
**2015** [3] - 103:16, 120:22, 127:4
**2016** [4] - 106:16, 121:14, 121:16, 124:22
**2017** [22] - 12:24, 13:1, 13:23, 24:24, 24:25, 27:16, 27:21, 33:15, 33:19, 33:23, 58:21, 103:17, 106:17, 130:13, 140:21, 141:2, 141:13, 143:11, 146:2, 194:21, 194:25, 195:1
**2018** [9] - 18:3, 18:18, 18:21, 22:9, 32:22, 34:11, 34:18, 35:7, 183:3
**2019** [6] - 1:18, 4:1, 18:23, 20:5, 32:19, 33:18
**202** [1] - 3:11, 29:7, 29:9, 29:12, 29:15, 29:17, 29:18, 29:21, 29:22, 161:22, 167:24

## 3

**203** [4] - 3:12, 29:24, 30:5, 193:15
**205** [3] - 164:8, 194:3
**206** [1] - 194:20
**20s** [1] - 184:23
**20th** [2] - 24:23, 24:25
**21** [6] - 26:12, 34:22, 49:5, 89:8, 119:22, 139:7
**213** [1] - 1:25
**213-894-0141** [1] - 2:7
**213-894-3659** [1] - 2:7
**213-995-6767** [1] - 2:24
**21515** [1] - 2:13
**21A** [1] - 26:14
**21B** [1] - 27:5
**21C** [1] - 26:25
**22** [2] - 26:13, 89:11
**22nd** [2] - 127:4, 143:19
**23** [3] - 3:4, 26:13, 89:13
**2300** [2] - 122:5, 122:12
**23rd** [1] - 141:2
**24** [4] - 89:16, 135:21, 138:5, 194:21
**240** [1] - 50:17
**24th** [3] - 18:18, 20:4, 195:2
**25** [5] - 83:13, 83:14, 83:15, 89:20, 151:8
**25th** [1] - 182:22
**26** [4] - 83:13, 83:14, 83:15, 103:17
**27** [6] - 26:9, 89:23, 106:17, 129:7, 133:15, 160:1
**27057** [1] - 140:22
**27057LW** [2] - 140:19, 142:2
**27545** [2] - 52:15, 52:20
**28** [2] - 90:2, 142:20
**29** [29] - 3:11, 20:3, 20:5, 27:16, 27:21, 32:19, 33:14, 36:25, 37:6, 37:10, 37:11, 39:16, 40:10, 40:23, 43:5, 50:13, 90:3, 91:1, 91:23, 93:17, 93:20, 94:15, 94:17, 106:16, 133:15, 137:16, 140:21, 145:7, 146:1
**29th** [3] - 18:23, 33:12, 142:24
**2K** [1] - 122:6, 124:3
**2nd** [1] - 147:14

## 3

**3** [8] - 19:22, 20:1, 20:2, 21:17, 26:12, 39:21, 48:13, 49:5
**3.1** [3] - 69:17, 69:25, 85:17
**3.10** [3] - 70:16, 71:9, 87:9
**3.13** [3] - 71:12, 71:19, 87:15
**3.15** [2] - 77:3, 89:12
**3.1A** [1] - 81:21
**3.2** [3] - 69:20, 69:25, 85:18
**3.3** [2] - 70:1, 85:19
**3.5** [2] - 70:4, 85:21
**3.6** [2] - 70:6, 85:23
**3.7** [3] - 70:8, 70:10, 85:25
**3.8** [2] - 70:11, 86:4
**3.9** [2] - 70:13, 86:8
**30** [6] - 3:5, 3:12, 90:5, 95:4, 120:24, 133:15
**300** [1] - 2:17
**30th** [1] - 141:13
**31** [2] - 90:7, 133:15
**310-316-6442** [1] - 2:15
**310-316-9333** [1] - 2:14
**312** [1] - 2:6
**32** [3] - 60:18, 90:8, 162:19
**32,000** [1] - 60:18
**3200** [1] - 46:15
**33** [2] - 90:12, 90:22
**34** [2] - 3:5, 24:4
**35** [5] - 3:6, 73:19, 74:16, 95:4, 125:10
**350** [1] - 1:24
**36** [2] - 75:1, 75:16
**37** [3] - 75:21, 77:1, 115:11
**371** [3] - 100:18, 103:13, 106:11
**38** [7] - 77:2, 120:24, 122:1, 127:2, 140:22, 174:22, 194:23
**38s** [1] - 174:25
**39** [2] - 77:6, 125:10
**39,975** [1] - 24:8
**3rd** [1] - 138:8

## 4

**4** [7] - 34:13, 34:14,

34:15, 34:24, 60:24, 85:22, 119:5
**4.1** [3] - 72:4, 72:8, 87:21
**4.14** [2] - 73:1, 88:13
**4.16** [2] - 73:3, 88:15
**4.17** [2] - 73:7, 88:18
**4.9** [3] - 72:19, 72:20, 88:7
**40** [1] - 77:8
**404(b** [7] - 189:14, 190:9, 190:23, 200:17, 200:23, 202:20, 203:24
**41** [10] - 44:22, 80:16, 125:16, 128:21, 129:1, 129:3, 154:22, 161:13, 189:6
**42** [2] - 81:11, 120:15
**424-332-9079** [1] - 2:18
**43** [1] - 81:20
**44** [1] - 82:5
**4455** [1] - 1:24
**4473** [32] - 41:9, 42:1, 43:9, 92:2, 124:23, 128:19, 132:22, 132:25, 134:9, 135:12, 137:3, 140:15, 140:19, 141:18, 143:7, 144:11, 149:22, 156:16, 159:5, 159:23, 159:24, 160:1, 169:15, 173:22, 173:25, 188:6, 190:22, 191:20, 191:22, 192:7, 192:16, 192:22
**4473ing** [2] - 162:11, 168:3
**45** [13] - 82:6, 94:4, 95:5, 125:22, 126:25, 129:7, 130:5, 133:3, 133:20, 136:8, 136:9, 136:10, 136:16
**4500** [2] - 123:1, 123:4
**45A** [1] - 123:2
**46** [2] - 82:8, 147:9
**460** [1] - 2:23
**4773s** [2] - 6:17, 173:22
**48** [1] - 82:12
**4800** [1] - 123:5
**49** [1] - 82:15
**4th** [1] - 18:21

**5**

**5** [5] - 3:3, 3:4, 75:23, 75:25, 85:24
**5.1** [4] - 80:17, 80:18, 81:5, 89:18
**5.7** [2] - 77:5, 77:6
**52** [1] - 133:20
**53** [1] - 125:12
**5500** [2] - 123:5, 194:12
**57** [1] - 161:8
**58** [2] - 133:4, 156:4
**58-minute** [2] - 160:23, 161:4
**59** [1] - 125:12
**5:00** [1] - 198:7

**6**

**6** [8] - 24:17, 34:13, 34:14, 34:15, 34:24, 75:23, 75:25, 86:2
**6,000** [1] - 194:9
**60** [1] - 94:23
**6000** [1] - 123:5
**626** [1] - 2:23
**6500** [1] - 123:4

**7**

**7** [9] - 34:10, 34:18, 35:7, 60:24, 75:23, 75:25, 86:4, 119:5, 145:12
**7,000** [2] - 120:23, 184:24
**7.1** [2] - 82:4, 90:2
**7.2** [3] - 82:7, 90:4, 91:2
**7.3** [2] - 82:9, 90:5
**7.4** [2] - 82:11, 90:7
**7.5** [2] - 82:13, 90:8
**7.6** [3] - 82:15, 90:11, 90:22
**730** [1] - 2:13
**74** [1] - 125:6
**7th** [1] - 142:3

**8**

**8** [8] - 81:8, 81:12, 81:13, 86:7, 89:18, 89:22, 164:9
**8.20** [6] - 73:12, 75:3, 75:15, 88:22, 88:25, 89:4
**8.23** [3] - 73:14, 73:16, 89:3
**8.61** [2] - 75:21, 77:1
**80** [1] - 94:22
**801(b)(2)(E** [1] - 53:17
**86** [1] - 195:5
**894-2969** [1] - 1:25
**8:30** [4] - 198:11, 199:20, 199:22, 205:25

**9**

**9** [8] - 48:14, 81:8, 81:12, 81:13, 87:8, 89:18, 89:22, 200:7
**90-page** [1] - 162:19
**90012** [2] - 1:24, 2:6
**90017** [1] - 2:23
**90266** [1] - 2:18
**90503** [1] - 2:14
**92** [2] - 24:13, 24:15
**921** [1] - 41:12
**922(a)(1** [2] - 74:14, 116:1
**922(d** [2] - 76:21, 107:4
**924(a** [1] - 100:10
**924(a)(1)(A** [1] - 109:12
**94** [1] - 136:21
**9500** [1] - 123:1
**9:0** [1] - 4:1

**A**

**A.M** [1] - 4:1
**abet** [1] - 108:8
**abetted** [2] - 108:7, 144:9
**Abetting** [1] - 81:3
**abetting** [7] - 108:12, 109:10, 134:8, 134:16, 137:7, 139:18, 144:8
**abide** [1] - 74:23
**ability** [2] - 99:19, 181:23
**able** [11] - 6:5, 6:14, 6:19, 64:13, 65:7, 65:14, 163:20, 177:19, 192:1, 196:11, 203:5
**absence** [2] - 161:8, 198:12
**absolute** [1] - 185:25
**absolutely** [11] - 45:9, 46:20, 62:8, 158:22,

167:24, 169:22, 177:20, 179:9, 180:4, 180:22, 182:4
**absurd** [2] - 170:4, 200:18
**abused** [1] - 150:19
**accept** [2] - 102:17, 205:7
**acceptable** [3] - 44:22, 47:6, 205:4
**accepted** [1] - 114:18
**accident** [3] - 67:15, 89:15, 107:24
**accomplice** [1] - 101:24
**accomplices** [1] - 101:23
**accomplish** [3] - 103:22, 106:22, 149:10
**according** [4] - 53:18, 57:1, 112:22, 184:13
**account** [27] - 8:5, 10:19, 11:3, 12:8, 12:10, 12:11, 12:12, 12:14, 12:15, 12:19, 15:21, 15:24, 70:14, 99:18, 120:22, 121:9, 132:15, 136:24, 138:4, 138:25, 165:3, 174:21, 176:21, 177:1, 178:11, 178:12
**accounts** [8] - 10:24, 11:2, 11:16, 11:23, 12:2, 111:20, 120:13, 121:4
**accurately** [1] - 114:25
**accused** [1] - 186:8
**accusing** [1] - 186:3
**acknowledging** [1] - 25:11
**acquired** [1] - 109:7
**acquires** [3] - 107:15, 130:7, 168:17
**acquiring** [1] - 130:11
**acquisition** [2] - 162:20, 162:21
**acronym** [1] - 30:14
**act** [30] - 77:5, 89:14, 89:15, 103:24, 104:24, 105:5, 105:6, 106:24, 107:22, 107:23, 108:6, 131:17, 133:11, 133:18, 133:19, 149:11, 150:6, 150:9,

154:25, 155:1, 156:24, 156:25, 158:12, 163:13, 166:10, 166:11, 187:4, 187:8
**Act** [1] - 11:25
**acted** [22] - 40:14, 66:25, 104:10, 108:2, 108:18, 108:19, 109:1, 119:12, 127:8, 134:22, 134:24, 139:19, 145:4, 152:21, 158:6, 159:9, 161:4, 170:3, 170:22, 173:18, 202:25, 203:14
**acting** [7] - 44:7, 132:7, 157:23, 158:9, 160:17, 161:12, 168:5
**action** [2] - 151:3, 173:15
**actively** [2] - 109:5, 144:18
**activities** [1] - 8:21
**activity** [3] - 9:8, 65:2, 155:10
**acts** [10] - 105:9, 107:25, 108:6, 109:4, 131:15, 131:19, 131:22, 202:20
**actual** [11] - 26:7, 27:2, 27:24, 78:1, 78:3, 78:5, 83:21, 83:23, 130:10, 136:2, 174:21
**Adalberto** [1] - 19:2
**Adalberto** [5] - 18:2, 34:8, 138:3, 181:22, 182:16
**add** [3] - 29:3, 60:14, 80:22
**addict** [1] - 156:20
**addition** [4] - 20:9, 96:25, 98:19, 102:9
**additional** [20] - 28:16, 28:24, 29:2, 33:10, 71:4, 71:7, 81:15, 90:13, 90:15, 91:4, 93:4, 93:7, 106:25, 119:5, 134:3, 141:14, 142:25, 143:11, 198:15
**address** [13] - 10:1, 36:21, 39:16, 46:18, 50:6, 57:25, 68:13, 81:15, 112:2, 117:7,

194:1, 199:23
**addressed** [4] - 68:14,
74:7, 84:15, 133:17
**addressing** [1] - 95:14
**adds** [1] - 20:23
**adjourn** [1] - 205:22
**adjourned** [2] -
204:15, 206:2
**admissible** [5] -
53:17, 55:16, 56:20,
59:3, 59:15
**admission** [2] - 58:9,
58:22
**admit** [4] - 29:6, 29:7,
29:24, 83:6
**admitted** [10] - 36:19,
65:25, 73:8, 86:15,
88:19, 100:7,
101:22, 102:24,
103:6, 124:4
**adopted** [1] - 40:18
**ads** [1] - 125:12
**advance** [2] - 104:18,
109:6
**advantage** [1] - 118:1
**advertise** [1] - 120:13
**advertised** [4] - 7:23,
24:2, 125:11, 176:19
**advertisement** [2] -
125:6, 132:9
**advertisements** [1] -
121:5
**advertising** [3] -
120:16, 131:21,
132:1
**advise** [1] - 112:23
**advising** [1] - 198:25
**advisory** [3] - 130:6,
168:12, 168:23
**aer@aerlawgroup.
com** [1] - 2:24
**affable** [1] - 13:8
**afraid** [2] - 110:18,
177:3
**AFS** [1] - 65:21
**afternoon** [8] - 84:11,
110:8, 115:14,
152:12, 171:19,
181:2, 186:25,
198:24
**agency** [4] - 11:21,
26:17, 165:11, 173:8
**Agent** [49] - 5:2, 7:14,
9:14, 12:23, 13:22,
15:11, 15:13, 15:17,
16:8, 18:8, 24:1,
28:5, 29:12, 34:6,
35:17, 48:21, 48:25,
49:2, 50:3, 51:1,
53:8, 53:15, 54:7,

58:4, 72:25, 77:24,
91:19, 91:20, 100:6,
102:12, 119:17,
125:7, 135:14,
138:12, 141:5,
154:4, 157:4,
157:16, 159:24,
160:8, 164:10,
164:16, 164:18,
176:5, 182:25,
192:8, 194:6,
194:19, 194:20
**agent** [15] - 7:12, 7:15,
20:16, 36:2, 54:21,
55:1, 55:2, 55:9,
158:7, 159:9, 160:4,
165:13, 177:10,
191:17, 194:7
**agent's** [2] - 56:10,
59:13
**agents** [6] - 12:1,
58:9, 161:10, 192:9,
192:13, 197:2
**aggressive** [1] -
204:12
**ago** [3] - 75:7, 175:13,
179:23
**agree** [7] - 46:25,
49:13, 72:1, 76:25,
96:9, 115:3, 199:4
**agreeable** [1] - 205:18
**agreed** [23] - 56:7,
59:23, 72:21, 73:5,
73:6, 87:5, 88:9,
98:3, 104:5, 104:8,
104:15, 105:19,
114:8, 117:1, 149:3,
149:4, 199:17,
200:4, 200:5, 201:3,
205:20
**agreeing** [1] - 104:14
**agreement** [24] - 34:9,
34:12, 35:8, 35:20,
35:24, 36:9, 56:15,
59:19, 62:9, 67:22,
103:17, 104:2,
104:3, 104:7,
106:18, 110:12,
112:20, 131:8,
131:25, 132:1,
133:6, 148:24,
149:7, 149:14
**agreements** [1] - 36:3
**agrees** [2] - 74:15,
198:8
**Aguilar** [1] - 67:20
**Aguilin** [1] - 19:6
**ahead** [9] - 5:7, 5:15,
29:10, 34:3, 51:11,
64:21, 139:24,

144:19, 150:25
**aid** [1] - 108:8
**aided** [5] - 108:7,
108:16, 134:18,
137:9, 144:9
**Aiding** [1] - 81:3
**aiding** [7] - 108:11,
109:10, 134:8,
134:16, 137:7,
139:17, 144:7
**airport** [1] - 142:5
**Albert** [1] - 181:6
**alcohol** [1] - 195:12
**Alcohol** [3] - 165:11,
168:14, 173:9
**alerted** [1] - 144:22
**allegations** [8] -
46:14, 47:25, 48:14,
63:22, 67:12, 68:15,
86:21, 100:14
**alleged** [7] - 39:13,
81:23, 89:24,
104:13, 110:1,
110:4, 133:18
**alleges** [1] - 131:19
**alleging** [1] - 58:6
**allow** [1] - 42:5
**allowed** [1] - 102:14
**almost** [7] - 8:14,
36:6, 61:6, 124:12,
170:4, 176:21,
203:17
**alone** [3] - 40:7, 45:1,
179:12
**alternates** [3] - 4:25,
95:10, 152:1
**alternative** [3] - 50:16,
73:25, 74:21
**Ambrosio** [1] - 2:21
**amendment** [6] - 47:2,
49:15, 53:12,
190:15, 200:3,
203:22
**Amendment** [3] -
51:4, 51:6, 51:10
**amends** [1] - 183:5
**AMERICA** [1] - 1:8
**America** [1] - 186:7
**Ammo** [2] - 143:1,
143:8
**amount** [5] - 24:5,
94:11, 95:15, 172:3,
176:22
**amounted** [1] - 201:2
**analogy** [2] - 195:7,
195:21
**analysis** [1] - 12:13
**Angeles** [5] - 1:17,
1:24, 2:6, 2:23,
165:14

**Anne** [2] - 1:23,
206:16
**anne.kielwasser@
gmail.com** [1] - 1:25
**answer** [4] - 36:13,
113:10, 179:17,
188:19
**answering** [1] - 113:7
**answers** [3] - 26:25,
98:10, 188:16
**anticipate** [1] - 163:8
**antiques** [1] - 173:13
**Antonio** [1] - 72:16
**anyway** [3] - 53:2,
53:3, 201:5
**apart** [2] - 54:11,
128:17
**APC** [1] - 2:17
**apologize** [3] - 35:3,
35:4, 75:18
**appear** [2] - 81:13,
163:12
**applicable** [1] - 77:12
**application** [5] - 31:8,
31:14, 41:4, 45:3,
158:20
**applied** [8] - 40:18,
44:10, 53:15,
116:12, 128:8,
187:19, 187:25,
197:21
**applies** [11] - 58:7,
60:12, 76:6, 93:3,
96:4, 101:12,
111:13, 187:21,
193:6, 193:8
**apply** [11] - 52:3, 53:1,
53:23, 62:19, 76:16,
77:22, 78:14, 96:8,
101:10, 107:1, 176:2
**applying** [1] - 61:4
**appreciate** [11] -
46:22, 47:2, 47:8,
48:6, 49:10, 49:13,
52:25, 57:15, 74:20,
168:9, 172:15
**approach** [3] - 36:23,
114:5, 165:7
**approached** [2] -
111:15, 185:8
**appropriate** [3] -
26:16, 70:23, 84:22
**appropriately** [1] -
192:20
**Arabic** [1] - 19:24
**Arao** [158] - 4:6, 38:12,
38:13, 39:19, 39:20,
40:2, 40:13, 40:20,
40:24, 41:4, 42:13,
42:20, 42:22, 43:23,

44:1, 51:1, 51:3,
53:19, 53:22, 53:24,
54:1, 54:16, 56:4,
56:5, 56:6, 56:11,
56:12, 56:17, 57:6,
58:14, 58:15, 58:19,
59:3, 59:6, 59:14,
59:16, 59:22, 59:24,
64:7, 64:11, 65:22,
68:15, 68:21, 74:9,
76:16, 82:17, 83:23,
84:8, 84:20, 85:10,
86:21, 87:1, 87:4,
91:23, 91:24, 92:14,
95:3, 100:15,
100:19, 100:22,
115:24, 117:23,
118:5, 118:24,
119:1, 119:20,
120:19, 121:11,
121:18, 124:4,
124:25, 125:16,
125:25, 126:19,
127:1, 128:2, 128:7,
128:8, 128:16,
129:2, 130:23,
131:1, 131:9,
131:20, 132:25,
133:22, 134:1,
152:14, 152:18,
154:12, 154:17,
154:19, 154:21,
155:14, 155:20,
156:3, 156:6,
156:11, 156:17,
157:3, 157:11,
157:18, 157:21,
157:22, 158:3,
158:5, 158:8,
158:11, 158:18,
159:9, 159:14,
159:20, 160:22,
160:25, 161:4,
161:11, 162:7,
162:9, 162:14,
162:24, 163:15,
163:23, 164:23,
166:2, 166:14,
166:17, 167:1,
167:8, 168:2, 169:7,
169:15, 169:16,
169:20, 169:25,
170:2, 170:24,
171:10, 187:4,
187:12, 187:19,
187:24, 189:5,
189:7, 189:18,
189:25, 192:5,
192:14, 200:8,
200:13, 201:5,
201:8, 201:15,

201:20, 202:11, 203:23, 204:7, 205:2
**ARAO** [4] - 1:12, 2:10, 3:7, 152:10
**Arao's** [5] - 50:3, 50:4, 127:6, 187:2, 194:2
**argue** [17] - 37:12, 42:8, 46:6, 46:8, 46:23, 47:2, 47:13, 51:11, 52:19, 54:25, 77:18, 93:12, 151:21, 174:16, 175:20, 200:19, 203:21
**argued** [1] - 172:24
**arguing** [3] - 47:3, 49:11, 161:15
**ARGUMENT** [2] - 3:7, 171:18
**argument** [29] - 46:2, 49:19, 57:24, 67:7, 67:20, 68:20, 78:12, 78:13, 78:19, 78:22, 91:16, 93:16, 94:2, 110:8, 117:16, 152:2, 164:4, 172:7, 172:14, 172:22, 176:17, 189:12, 191:9, 198:6, 200:19, 203:17, 203:20, 203:23
**arguments** [8] - 60:13, 68:10, 93:4, 93:7, 98:8, 98:13, 117:6, 187:2
**ARGUMENTS** [4] - 3:6, 3:7, 117:21, 152:10
**arise** [1] - 97:14
**arising** [1] - 102:2
**arraigned** [1] - 80:1
**arranged** [2] - 144:18, 147:17
**arrangements** [1] - 5:14
**arranging** [1] - 121:10
**arrest** [2] - 58:8, 60:3
**arresting** [1] - 167:11
**articulated** [1] - 78:21
**aside** [5] - 15:1, 39:14, 39:18, 68:23, 71:5
**assembled** [1] - 95:9
**assert** [3] - 51:3, 51:5, 51:9
**assist** [1] - 112:10
**associated** [3] - 27:9, 108:22, 152:6
**associating** [1] - 105:2
**assume** [3] - 36:25,

51:8, 67:1, 94:4, 183:22
**assuming** [2] - 72:7, 87:20
**assure** [1] - 95:13
**assured** [2] - 157:12, 157:13
**ATF** [22] - 10:9, 11:15, 119:15, 130:6, 157:1, 158:19, 159:4, 163:18, 165:10, 165:23, 166:6, 166:9, 166:20, 167:2, 168:23, 169:9, 169:11, 170:25, 183:11, 183:12, 185:8, 192:9
**ATF's** [1] - 165:18
**attached** [1] - 53:21
**attempt** [2] - 110:21, 113:3
**attempted** [4] - 11:1, 56:23, 157:3, 158:8
**attend** [1] - 5:6
**attention** [6] - 49:5, 116:13, 120:5, 120:12, 126:8, 152:4
**attic** [1] - 10:15
**attorney** [2] - 18:11, 19:6
**Attorney** [1] - 2:5
**Attorney's** [1] - 19:2
**audit** [6] - 56:25, 57:7, 157:4, 157:10, 157:13, 157:17
**auditor** [2] - 157:12, 163:17
**audits** [1] - 157:2
**August** [9] - 18:3, 18:18, 22:8, 32:22, 33:15, 138:7, 143:11, 143:17, 143:19
**AUSA** [1] - 2:5
**authored** [1] - 18:5
**authority** [1] - 17:10
**auto** [2] - 132:16, 132:19
**automatic** [1] - 173:15
**available** [3] - 96:5, 132:11, 173:14
**avoided** [2] - 77:18, 78:6
**aware** [8] - 15:15, 36:3, 42:1, 89:14, 107:23, 129:24, 130:6, 140:13

## B

**baby** [1] - 181:11
**backdate** [1] - 158:15
**Background** [1] - 26:19
**background** [6] - 17:22, 26:7, 26:20, 27:9, 27:20, 77:25
**bad** [3] - 170:22, 177:3, 180:15
**badder** [2] - 180:15, 180:16
**badge** [1] - 183:25
**baffling** [1] - 177:24
**bailiff** [2] - 112:23, 113:2
**balance** [1] - 83:7
**bamboozle** [1] - 176:4
**Bank** [3] - 10:19, 138:4, 176:21
**bank** [12] - 8:5, 10:24, 11:1, 11:3, 11:16, 11:23, 12:2, 12:4, 12:10, 24:9, 138:3, 176:25
**banking** [1] - 136:21
**banks** [2] - 11:4, 11:20
**base** [1] - 111:1
**based** [54] - 27:23, 31:13, 33:7, 33:9, 39:13, 42:8, 64:22, 64:24, 69:20, 72:19, 75:3, 75:14, 77:1, 77:3, 77:6, 78:20, 80:17, 81:11, 81:21, 82:6, 82:9, 82:11, 82:13, 82:15, 86:8, 86:11, 87:9, 87:15, 87:21, 88:6, 88:13, 88:15, 88:18, 88:22, 88:24, 89:3, 89:4, 89:11, 89:17, 89:20, 90:2, 90:3, 90:5, 90:7, 90:8, 90:11, 90:22, 91:2, 97:12, 97:13, 112:1, 115:14, 133:7, 157:1
**Beach** [1] - 2:18
**bear** [2] - 99:25, 170:6
**bearing** [1] - 170:18
**beautiful** [1] - 181:10
**beauty** [1] - 186:5
**became** [3] - 103:20, 106:20, 149:8
**become** [6] - 12:1, 41:5, 87:7, 105:1, 105:13
**becomes** [3] - 90:23,

104:16, 112:25
**bedroom** [2] - 79:5, 79:6
**beforehand** [1] - 145:8
**begin** [5] - 21:11, 82:4, 90:2, 110:7, 152:15
**beginning** [6] - 96:14, 103:16, 106:16, 191:20, 194:5, 194:8
**begins** [1] - 48:13
**behalf** [15] - 38:12, 51:1, 61:21, 61:24, 62:1, 62:5, 77:10, 82:17, 84:6, 84:8, 95:3, 95:5, 130:12, 152:12, 205:12
**BEHALF** [3] - 2:3, 2:10, 2:20
**behave** [1] - 182:19
**behavior** [1] - 148:2
**behind** [2] - 121:11, 196:16
**belabor** [1] - 196:4
**belief** [1] - 110:24
**beliefs** [1] - 154:7
**believability** [2] - 99:25, 102:5
**believable** [1] - 100:3
**believes** [1] - 48:22
**belong** [3] - 10:24, 11:17, 194:10
**belonging** [2] - 11:6, 66:1
**belongs** [1] - 10:19
**below** [1] - 129:15
**benefits** [1] - 106:2
**best** [3] - 176:16, 181:17, 197:10
**betray** [1] - 183:25
**better** [1] - 80:10
**between** [26] - 25:15, 45:14, 47:6, 61:5, 62:9, 79:13, 83:12, 83:15, 99:10, 103:18, 106:18, 126:16, 131:8, 141:3, 142:25, 144:13, 147:17, 148:24, 149:7, 149:14, 149:17, 161:10, 165:20, 167:13, 178:19, 194:7
**beyond** [51] - 40:14, 40:22, 42:22, 50:4, 70:4, 85:21, 96:24, 97:3, 97:8, 97:10, 97:19, 97:23,

103:15, 105:21, 106:15, 107:7, 108:13, 108:25, 109:16, 110:2, 112:15, 116:5, 117:9, 153:21, 154:11, 154:20, 155:15, 155:19, 159:10, 159:19, 160:18, 161:18, 163:14, 164:5, 166:12, 169:7, 170:1, 170:2, 170:17, 172:20, 172:21, 173:2, 173:17, 185:2, 185:4, 185:5, 186:8, 197:13, 197:19, 197:23, 198:1
**Bianca** [8] - 72:14, 135:25, 137:4, 137:15, 137:20, 181:15, 182:3, 182:16
**bias** [1] - 99:22
**bifurcate** [1] - 200:4
**bifurcated** [3] - 53:10, 59:20, 60:6
**bifurcation** [1] - 54:9
**big** [4] - 138:9, 178:5, 179:3, 182:14
**bind** [1] - 50:3
**binder** [3] - 29:13, 29:16, 34:7
**binders** [1] - 178:1
**birth** [1] - 11:18
**bit** [5] - 37:13, 64:20, 95:15
**bitch** [1] - 123:20
**black** [1] - 122:11
**Blake** [2] - 73:1, 88:13
**blatant** [1] - 201:18
**blessed** [1] - 158:19
**blog** [3] - 111:12
**blow** [2] - 141:25, 143:7
**blow-up** [1] - 141:25
**blows** [2] - 170:19, 179:20
**blue** [1] - 22:1
**board** [2] - 165:2
**book** [1] - 162:21
**booze** [1] - 173:9
**born** [1] - 181:9
**boss** [1] - 175:4
**bother** [1] - 178:9
**bottle** [3] - 195:9, 195:13, 195:14
**bottled** [1] - 195:11
**bottom** [14] - 34:14,

34:23, 120:23, 123:19, 124:14, 125:2, 127:17, 132:2, 142:12, 152:22, 167:18, 167:20, 168:10, 169:13

**bought** [29] - 41:9, 41:14, 61:21, 64:2, 66:15, 67:10, 118:7, 124:22, 124:25, 125:16, 125:22, 126:24, 126:25, 127:2, 127:3, 127:4, 137:15, 140:20, 143:14, 144:21, 146:10, 146:12, 146:13, 147:23, 179:25, 180:1, 184:18, 187:13, 193:24

**Boulevard** [2] - 2:13, 2:23

**box** [2] - 122:11, 122:17

**boyfriend** [1] - 136:3

**brazenly** [1] - 118:6

**break** [4] - 38:1, 39:5, 39:7, 41:21

**breaking** [4] - 129:3, 130:4, 155:12, 191:16

**brief** [1] - 40:10

**Brief** [1] - 51:18

**briefed** [5] - 50:13, 53:12, 58:23, 200:2, 200:3

**briefly** [7] - 4:10, 34:1, 44:12, 44:13, 74:5, 93:8, 94:15

**bring** [5] - 4:7, 123:21, 147:21, 148:6, 152:3

**bringing** [2] - 16:6, 123:25

**bro** [1] - 122:9

**broader** [1] - 150:10

**broke** [7] - 117:23, 118:3, 118:5, 150:21, 175:21, 184:21, 189:4

**Broker** [1] - 123:20

**brother** [5] - 79:2, 147:13, 147:21, 147:23

**Brothers** [2] - 143:1, 143:8

**brought** [6] - 13:6, 45:22, 67:22, 137:19, 139:23, 186:11

**Bruton** [18] - 50:21, 53:6, 53:7, 56:4, 56:18, 57:2, 57:3, 57:9, 58:6, 58:7, 58:22, 58:23, 59:9, 60:1, 91:14, 200:3, 201:2

**Bryan** [2] - 40:19, 194:9

**buck** [1] - 184:4

**buddy** [4] - 143:13, 158:14, 180:1, 194:12

**budget** [1] - 122:25

**bullet** [4] - 20:14, 21:18, 21:21, 70:15

**bump** [1] - 124:2

**burden** [5] - 73:23, 97:2, 117:9, 153:12, 153:22, 155:25, 157:9, 161:8, 170:18, 190:25, 197:12, 202:24

**Bureau** [2] - 165:10, 168:13

**bureau** [1] - 178:10

**Burton** [4] - 39:13, 51:11, 51:13

**business** [49] - 16:10, 39:22, 39:24, 41:10, 41:13, 44:6, 44:11, 66:3, 66:4, 66:6, 67:23, 78:4, 92:10, 92:19, 103:11, 116:7, 116:11, 116:14, 119:11, 119:25, 120:2, 120:6, 120:20, 121:4, 121:23, 122:24, 125:25, 126:6, 126:9, 127:18, 127:22, 128:17, 129:1, 130:9, 130:23, 131:3, 160:3, 164:25, 168:3, 168:18, 187:5, 187:23, 188:1, 188:2, 188:5, 188:24, 189:1, 189:19, 202:8

**businesses** [1] - 25:20

**buttress** [1] - 67:12

**buy** [26] - 9:1, 9:3, 9:20, 31:11, 59:8, 62:10, 122:14, 126:22, 129:19, 136:18, 139:5, 139:8, 139:14,

139:22, 147:3, 184:10, 184:24, 188:10, 192:1, 192:2, 193:20, 194:21, 195:9, 195:12, 195:13, 195:14

**buyer** [13] - 26:7, 26:10, 27:2, 27:12, 27:24, 43:11, 43:14, 78:1, 78:3, 78:5, 168:1, 188:12, 188:21

**buyers** [1] - 157:6

**buying** [6] - 48:16, 61:24, 62:4, 66:18, 138:18, 191:25

**buys** [1] - 30:18

**BY** [24] - 3:4, 3:4, 3:5, 3:5, 3:6, 3:6, 3:7, 3:7, 3:8, 5:19, 14:4, 14:19, 19:21, 20:12, 23:25, 28:4, 29:11, 30:12, 34:5, 35:16, 117:21, 152:10, 117:18, 186:22

---

# C

**CA** [4] - 2:6, 2:14, 2:18, 2:23

**cagey** [1] - 181:2

**Cal** [1] - 132:4

**calendar** [2] - 52:8, 52:12

**Cali** [3] - 123:18, 123:21, 129:19

**Calichi** [3] - 141:5, 141:11, 143:22

**calichiliving** [1] - 143:13

**CALIFORNIA** [1] - 1:2

**California** [67] - 1:17, 1:24, 16:9, 16:12, 17:9, 26:1, 30:21, 30:22, 42:5, 44:15, 44:18, 44:21, 45:5, 45:10, 45:18, 45:21, 45:23, 46:3, 46:6, 46:8, 46:14, 46:24, 47:4, 47:14, 47:17, 47:22, 48:2, 48:16, 48:22, 49:18, 50:2, 51:20, 52:20, 93:11, 93:13, 93:15, 122:17, 127:17, 130:1, 132:11, 132:16, 152:23, 156:13, 159:5, 159:10, 161:19,

161:20, 161:22, 161:25, 162:1, 162:6, 162:15, 163:4, 163:9, 163:18, 164:20, 164:21, 164:23, 167:21, 167:23, 168:11, 169:2, 169:3, 169:12, 173:10, 174:4, 193:16

**Camacho** [149] - 6:24, 6:25, 8:18, 8:22, 8:25, 9:20, 9:23, 10:3, 10:4, 13:16, 13:19, 14:3, 14:7, 14:20, 14:22, 14:24, 15:2, 15:4, 15:6, 15:13, 15:18, 15:21, 15:23, 16:5, 17:3, 22:21, 22:25, 23:4, 23:5, 23:10, 23:15, 24:19, 24:20, 24:25, 25:4, 25:5, 25:11, 25:16, 27:13, 27:20, 27:23, 58:15, 58:16, 59:8, 60:24, 61:2, 61:8, 61:11, 61:18, 61:21, 61:22, 61:23, 61:25, 62:2, 62:4, 62:20, 68:13, 72:17, 76:9, 76:11, 77:16, 78:2, 78:22, 79:1, 79:5, 79:12, 79:16, 80:1, 80:11, 107:10, 107:11, 134:13, 140:5, 140:6, 140:9, 140:10, 140:11, 140:14, 140:20, 141:3, 141:6, 141:11, 141:16, 141:19, 141:22, 141:23, 141:24, 142:4, 142:10, 142:17, 142:23, 143:13, 143:20, 143:23, 144:5, 144:10, 144:11, 144:12, 144:14, 144:15, 144:17, 144:18, 144:21, 145:1, 145:25, 146:10, 146:14, 146:15, 146:19, 146:20, 147:5, 147:8, 147:12, 147:16, 147:20, 147:22, 148:1, 148:2, 148:9, 148:11, 148:13, 148:16, 148:20,

148:25, 149:14, 149:19, 149:21, 150:4, 150:8, 150:11, 150:15, 178:19, 179:8, 179:11, 183:13, 183:15, 183:18, 183:21, 184:9, 184:11, 184:14, 184:17, 184:21, 185:5

**Camachos** [8] - 6:12, 53:9, 61:4, 61:5, 79:8, 148:24, 150:14, 184:10

**cancer** [1] - 182:14

**cannot** [20] - 16:9, 42:16, 56:22, 57:1, 127:22, 127:25, 147:3, 152:23, 153:23, 154:15, 155:11, 156:24, 170:19, 190:10, 195:12, 196:20, 201:4, 201:8, 201:15, 204:3

**capabilities** [1] - 11:16

**capacitors** [3] - 105:18, 105:23, 105:25

**capacity** [5] - 17:2, 44:1, 44:2, 44:6, 194:21

**car** [2] - 4:13, 66:11

**card** [3] - 158:15, 159:2, 164:17

**care** [4] - 118:11, 121:12, 139:13, 148:3

**career** [2] - 177:23, 183:25

**careful** [2] - 97:14, 97:21

**carefully** [1] - 97:17

**Carlos** [35] - 6:9, 6:11, 6:23, 9:15, 9:22, 10:10, 11:6, 12:7, 22:13, 22:18, 22:22, 172:19, 173:2, 173:18, 173:20, 174:15, 174:17, 175:11, 175:20, 177:23, 179:7, 179:10, 180:4, 180:5, 180:6, 180:10, 180:12, 183:17, 183:24, 184:8, 184:11, 185:1, 185:9,

185:10, 186:18
**CARLOS** [2] - 1:12, 2:20
**carry** [1] - 105:23
**carrying** [3] - 103:24, 105:7, 106:24
**case** [138] - 7:12, 7:15, 7:17, 13:14, 17:3, 17:14, 18:1, 21:3, 31:24, 32:7, 36:9, 38:10, 38:19, 41:22, 43:6, 45:13, 45:22, 46:25, 49:7, 49:8, 49:12, 51:9, 51:14, 52:23, 53:2, 53:10, 54:10, 55:10, 56:8, 57:8, 59:20, 60:5, 60:20, 61:12, 62:13, 68:7, 70:1, 71:14, 73:9, 76:12, 76:19, 79:11, 80:3, 82:24, 83:5, 84:1, 85:19, 86:5, 95:17, 96:4, 96:7, 96:10, 96:14, 97:4, 98:25, 99:13, 99:21, 101:5, 101:22, 102:21, 102:24, 103:3, 110:11, 110:14, 111:2, 111:4, 111:5, 111:9, 111:10, 111:16, 111:20, 111:24, 112:15, 113:5, 117:25, 124:20, 128:16, 129:15, 133:1, 133:25, 136:4, 150:17, 153:3, 153:8, 153:11, 153:14, 153:17, 153:22, 154:3, 154:6, 154:8, 154:12, 154:14, 154:18, 154:24, 155:23, 155:25, 158:17, 164:2, 166:9, 166:25, 169:7, 169:25, 170:11, 170:17, 170:24, 171:9, 171:23, 171:24, 171:25, 172:5, 172:24, 173:5, 176:1, 176:8, 176:14, 179:19, 180:22, 185:18, 187:4, 187:16, 190:3, 190:23, 191:17, 192:17, 193:1, 193:10, 196:24, 197:21,

197:22, 197:25, 198:12, 200:4, 202:15, 203:5, 203:21
**cases** [3] - 36:2, 40:19, 55:8
**cash** [5] - 24:10, 24:15, 138:6, 156:9, 158:16
**caught** [2] - 118:4, 164:2
**caused** [2] - 157:4, 170:23
**caution** [1] - 102:11
**CENTRAL** [1] - 1:2
**Ceritos** [2] - 143:2, 143:9
**certain** [17] - 25:4, 28:14, 37:21, 38:21, 55:3, 73:4, 73:7, 81:24, 88:18, 89:25, 98:21, 102:22, 103:5, 110:1, 112:18, 172:20, 196:8
**certainly** [8] - 41:16, 41:22, 42:21, 43:2, 43:6, 161:6, 169:19, 171:17
**certification** [1] - 129:8
**certified** [4] - 43:22, 128:13, 128:20, 136:7
**certify** [1] - 206:7
**certifying** [1] - 136:1
**Cervantes** [12] - 62:6, 62:19, 63:1, 63:7, 67:16, 68:5, 68:13, 72:15, 88:8, 124:19, 179:23, 180:21
**chair** [1] - 114:3
**challenge** [1] - 45:12
**Chambers** [1] - 19:7
**chambers** [1] - 18:11
**chance** [1] - 142:7
**change** [5] - 110:18, 110:24, 176:10, 176:19, 185:11
**changed** [1] - 202:18
**changes** [1] - 183:5
**changing** [2] - 142:18, 146:16
**characterized** [1] - 201:2
**charge** [15] - 74:14, 97:3, 100:8, 103:14, 106:14, 107:5, 109:15, 116:4, 152:19, 152:20,

153:20, 153:21, 155:14, 165:14, 202:14
**charged** [78] - 16:20, 39:20, 42:24, 42:25, 43:1, 43:25, 45:25, 46:25, 49:21, 52:19, 53:2, 55:16, 58:12, 58:14, 59:23, 63:6, 63:14, 64:4, 64:5, 66:19, 66:22, 66:23, 71:12, 71:15, 75:2, 75:22, 86:17, 86:22, 87:3, 87:16, 100:15, 100:16, 100:21, 101:1, 101:3, 101:6, 101:23, 103:10, 103:19, 106:8, 106:19, 107:2, 109:9, 110:6, 115:22, 115:24, 118:18, 118:19, 118:24, 119:2, 119:4, 134:3, 134:7, 134:11, 148:23, 152:19, 154:16, 182:11, 183:11, 189:1, 189:6, 189:18, 189:20, 189:22, 190:3, 191:24, 192:17, 195:5, 196:1, 198:2, 200:10, 200:13, 200:14, 202:2, 202:15, 203:8, 206:10
**charges** [16] - 70:18, 71:11, 71:13, 81:23, 84:23, 89:23, 96:22, 100:25, 101:4, 109:25, 118:15, 148:19, 171:10, 182:7, 202:3, 202:7
**chart** [6] - 24:15, 125:8, 125:23, 133:2, 133:16, 176:16
**charts** [4] - 73:7, 88:18, 103:5, 103:6
**Chase** [6] - 10:19, 12:14, 12:19, 138:4, 176:21, 178:7
**chat** [3] - 4:16, 111:11, 111:12
**cheap** [2] - 123:15, 123:17
**cheated** [1] - 177:4
**cheats** [1] - 175:6
**check** [9] - 17:22, 26:7, 26:20, 27:10,

27:20, 77:25, 78:5, 125:9, 125:11
**Check** [1] - 26:19
**chief** [2] - 45:13, 170:7
**Chief** [2] - 170:7, 170:15
**chimed** [1] - 4:15
**Chinese** [2] - 53:22, 54:3
**chooses** [1] - 153:24
**Christmas** [1] - 181:8
**cigarettes** [1] - 173:10
**CII** [1] - 16:22
**circuit** [1] - 206:10
**Circuit** [6] - 41:18, 55:9, 74:6, 74:12, 86:11, 203:2
**circumstances** [1] - 101:18
**circumstantial** [8] - 61:17, 61:20, 70:11, 86:4, 99:2, 99:5, 99:9, 99:11
**citation** [5] - 46:10, 46:21, 48:4, 49:1, 49:3
**cite** [1] - 60:20
**cited** [1] - 76:19
**cites** [1] - 60:15
**citizen** [1] - 195:9
**citizens** [1] - 193:7
**City** [2] - 164:24, 167:11
**civil** [3] - 153:8, 153:11, 153:17
**claim** [2] - 73:21, 174:16
**claiming** [1] - 170:22
**claims** [2] - 79:12
**Clara** [1] - 17:5
**clarification** [1] - 90:22
**clarify** [6] - 47:12, 55:14, 57:21, 63:6, 93:8, 93:15
**classic** [4] - 56:4, 57:3, 60:1, 204:4
**clave** [1] - 62:14
**clear** [24] - 30:20, 41:18, 43:17, 43:18, 44:25, 51:13, 56:9, 56:18, 57:9, 58:17, 63:8, 66:16, 74:12, 74:18, 74:21, 144:14, 158:8, 173:6, 187:10, 189:18, 190:19, 193:17, 201:22, 203:2
**clearly** [4] - 32:19,

40:21, 59:23, 149:14
**CLERK** [6] - 4:21, 5:8, 38:2, 47:11, 151:9, 206:1
**clerk** [5] - 5:13, 47:10, 85:2, 112:23, 113:2
**CLETS** [8] - 16:10, 16:12, 16:15, 17:10, 17:17, 17:22, 25:19, 61:11
**client** [35] - 8:19, 8:22, 9:4, 9:8, 10:16, 10:20, 10:24, 13:4, 13:22, 14:6, 14:13, 14:22, 16:4, 22:25, 60:13, 61:2, 61:5, 61:10, 61:12, 61:16, 61:18, 61:20, 62:2, 62:8, 62:13, 62:17, 65:2, 65:3, 65:4, 67:12, 67:13, 79:19, 79:25, 180:14, 180:23
**client's** [1] - 12:23
**clients** [1] - 36:10
**clique** [1] - 62:20
**close** [4] - 43:6, 166:14, 180:17, 195:24
**closed** [1] - 49:8
**CLOSING** [8] - 3:6, 3:7, 3:7, 3:8, 117:21, 152:10, 171:18, 186:22
**closing** [12] - 46:7, 94:4, 94:6, 94:10, 94:11, 117:6, 151:14, 152:15, 153:1, 172:7, 176:17, 194:2
**clothing** [1] - 153:10
**co** [2] - 7:14, 7:15
**co-case** [1] - 7:15
**co-leaders** [1] - 7:14
**coconspirator** [9] - 54:19, 55:16, 56:12, 56:20, 58:13, 58:21, 59:3, 59:5, 59:10
**coconspirator's** [1] - 53:16
**code** [5] - 46:13, 48:2, 48:15, 48:17, 52:15
**Code** [12] - 46:15, 48:1, 51:22, 52:21, 76:20, 86:19, 100:18, 103:13, 106:12, 107:4, 109:13, 116:2
**codefendant** [5] - 56:19, 58:7, 58:12,

154:16
**codefendants's** [1] -
157:8
**collateral** [1] - 182:1
**collection** [4] -
116:18, 116:19,
126:11, 143:24
**collector** [3] - 126:15,
126:22, 184:5
**collectors** [1] - 126:14
**Colt** [8] - 122:1,
126:25, 127:2,
136:8, 136:9,
136:10, 136:16,
140:22
**Colt.38** [1] - 126:24
**coming** [1] - 168:12
**commanded** [3] -
108:16, 134:19,
137:9
**Commander** [3] -
140:22, 141:16,
141:17
**comment** [2] - 78:8,
132:5
**commentary** [1] -
111:20
**comments** [4] - 41:25,
92:24, 191:14, 194:9
**Comments** [1] - 22:13
**commission** [1] -
108:7
**commit** [17] - 103:18,
104:2, 104:12,
104:15, 106:18,
108:6, 108:9, 109:2,
134:5, 134:10,
137:10, 137:13,
138:24, 144:17,
149:8, 175:2, 189:21
**commits** [1] - 180:13
**committed** [16] -
81:24, 89:24, 104:5,
108:14, 110:1,
110:3, 110:6,
131:15, 134:16,
135:2, 140:1,
149:11, 152:18,
152:21, 197:14,
202:13
**committing** [7] -
66:18, 101:25,
108:22, 135:2,
137:13, 163:2,
189:23
**common** [3] - 67:14,
97:13, 104:10
**communicate** [6] -
90:24, 91:1, 111:7,
111:8, 113:1, 113:3

**Communicating** [1] -
90:16
**communicating** [2] -
90:19, 111:13
**communication** [1] -
82:7
**communications** [5] -
22:22, 82:14, 90:3,
90:11, 197:9
**compa** [1] - 138:10
**company** [1] - 92:15
**compare** [3] - 29:3,
125:1, 196:15
**compared** [6] - 6:19,
33:13, 33:18,
125:10, 176:20,
182:11
**comparing** [2] - 33:7,
33:10
**compelled** [1] - 153:2
**competing** [1] - 42:18
**complete** [8] - 34:20,
35:9, 112:21,
118:11, 145:5,
147:20, 192:2,
201:14
**completed** [3] -
108:20, 134:25,
139:20
**completely** [1] -
180:21
**completing** [1] - 192:7
**completion** [1] -
129:16
**complexity** [3] -
84:23, 167:12,
167:15
**complicated** [2] -
185:15, 185:16
**complied** [3] - 156:18,
158:23, 188:3
**comply** [3] - 159:16,
162:17, 169:21
**concealed** [1] -
167:11
**concern** [1] - 165:15
**concerned** [2] -
157:17, 204:14
**concerning** [9] - 5:23,
31:17, 60:12, 72:25,
82:17, 86:21, 89:17,
100:14, 113:5
**concerns** [5] - 88:12,
88:14, 89:5, 157:5,
157:6
**conclude** [1] - 158:9
**concluded** [1] -
204:16
**concludes** [2] -
113:15, 198:6

**concluding** [3] -
81:19, 82:3, 90:1
**conclusion** [1] - 54:25
**conduct** [35] - 66:12,
66:19, 86:21, 92:21,
93:13, 100:14,
101:1, 116:22,
127:6, 127:11,
127:13, 127:16,
129:6, 130:19,
131:6, 155:15,
159:20, 187:11,
187:14, 188:17,
188:19, 189:8,
189:22, 189:25,
190:2, 190:3,
193:13, 195:18,
195:21, 196:3,
200:21, 202:3,
202:13, 203:12,
203:24
**conducted** [1] - 66:9
**conducting** [2] -
121:23, 168:2
**conference** [5] -
36:24, 114:7,
114:24, 190:7,
206:12
**confirm** [1] - 125:9
**confirmed** [2] -
144:20, 144:21
**conformance** [1] -
206:11
**confuse** [1] - 176:3
**confused** [1] - 154:4
**confusing** [2] - 44:20,
185:17
**confusion** [2] - 44:18,
199:11
**connect** [1] - 8:18
**connection** [1] -
101:22
**conscientious** [1] -
110:23
**consciousness** [3] -
175:3, 196:19, 197:7
**consecutive** [1] -
115:14
**consequence** [1] -
60:2
**consider** [30] - 53:25,
58:17, 60:7, 70:7,
70:9, 71:6, 85:24,
86:1, 87:2, 97:25,
98:4, 98:6, 98:10,
98:21, 99:8, 100:20,
101:16, 102:4,
102:7, 107:24,
112:14, 126:3,
154:15, 157:1,

169:9, 190:10,
197:16, 200:10,
200:21, 203:13
**consideration** [5] -
95:16, 97:15, 97:18,
97:22, 190:1
**considered** [2] -
91:15, 110:15
**considering** [3] -
70:13, 99:17, 102:18
**consistent** [2] - 125:5,
198:3
**consists** [2] - 70:7,
98:1
**Conspiracy** [2] -
118:19, 118:21
**conspiracy** [71] -
39:21, 53:20, 55:15,
56:7, 58:12, 58:14,
59:4, 59:7, 64:6,
68:15, 73:15, 86:23,
88:22, 88:25,
100:16, 103:21,
103:23, 103:25,
104:1, 104:3, 104:6,
104:8, 104:14,
104:16, 104:19,
104:20, 104:22,
104:24, 104:25,
105:3, 105:6, 105:7,
105:10, 105:12,
105:14, 105:20,
105:24, 106:3,
106:6, 106:21,
106:23, 106:25,
131:3, 131:7,
131:10, 131:15,
131:16, 131:23,
132:21, 133:7,
133:8, 133:12,
134:5, 148:18,
148:21, 149:9,
149:11, 149:12,
150:5, 150:10,
152:19, 190:23,
199:11, 202:8,
202:10, 202:14,
202:19, 203:11,
203:16
**conspirator** [2] -
105:1, 105:2
**conspirators** [4] -
75:10, 104:7,
104:15, 105:3
**conspire** [1] - 105:18
**conspired** [5] - 75:11,
105:22, 106:1,
133:22, 150:14
**conspiring** [4] -
103:11, 106:9,

106:10, 189:20
**constitutes** [2] -
133:19, 166:4
**constituting** [1] -
108:6
**Constitution** [3] -
185:19, 185:20,
186:5
**constitutional** [4] -
60:2, 70:2, 97:5,
153:3
**Constitutionally** [1] -
56:24
**construct** [2] - 78:19,
170:16
**constructed** [1] -
203:21
**constructive** [6] -
47:1, 49:14, 53:11,
190:15, 200:2,
203:22
**consult** [2] - 96:5,
113:6
**consulting** [1] -
111:21
**contact** [4] - 14:15,
61:5, 111:18, 176:12
**contacted** [1] - 66:7
**content** [1] - 87:13
**contents** [1] - 121:5
**contested** [2] -
146:22, 161:2
**contesting** [2] - 40:12,
156:7
**context** [1] - 60:5
**continue** [7] - 5:1,
62:22, 73:15,
105:10, 113:9,
152:2, 152:8
**continued** [3] -
130:14, 130:15,
201:11
**contradicted** [1] -
99:23
**contravention** [1] -
201:12
**control** [8] - 101:8,
107:17, 107:18,
107:21, 139:15,
145:22, 145:23,
146:4
**controls** [1] - 98:17
**conversation** [8] -
21:8, 141:14, 142:4,
143:11, 160:23,
161:4, 161:10,
196:12
**conversations** [1] -
25:12
**conveyed** [1] - 157:5

**convict** [11] - 80:10, 153:20, 172:12, 172:13, 172:19, 174:17, 177:16, 177:19, 181:25, 186:14, 204:3
**convicted** [5] - 16:20, 150:11, 151:1, 197:22, 203:23
**convicting** [1] - 186:3
**conviction** [10] - 17:4, 27:2, 27:3, 61:9, 67:17, 67:24, 68:3, 80:4, 146:21, 176:15
**convictions** [1] - 16:24
**convicts** [1] - 180:14
**convince** [1] - 9:11
**convinced** [7] - 8:14, 97:9, 97:18, 97:22, 142:10, 154:9, 154:11
**convoluted** [1] - 185:17
**cooperate** [1] - 180:9
**cooperating** [2] - 72:11, 102:3
**cooperator** [1] - 63:9
**cooperator's** [1] - 67:21
**coordinated** [2] - 13:3, 149:24
**cop** [2] - 175:21, 177:19
**copies** [2] - 48:3, 95:20
**cops** [1] - 175:17
**copy** [8] - 19:13, 38:22, 47:9, 83:17, 84:23, 85:2, 96:4, 194:3
**cornier** [1] - 177:6
**corny** [2] - 170:6, 185:20
**Corona** [13] - 62:6, 62:19, 63:1, 63:7, 67:16, 68:5, 68:14, 72:15, 82:18, 88:8, 101:20, 179:24, 180:21
**corporate** [1] - 156:12
**Corporation** [1] - 2:13
**corporation** [1] - 188:1
**correct** [70] - 6:15, 6:17, 7:2, 7:12, 8:19, 8:22, 9:9, 9:20, 9:24, 9:25, 10:4, 10:11, 10:17, 10:20, 10:25, 12:6, 12:9, 12:16,

12:22, 12:24, 13:6, 13:24, 16:6, 16:20, 17:14, 18:3, 18:6, 18:9, 18:12, 18:15, 18:18, 18:24, 19:3, 19:7, 19:11, 19:24, 20:14, 20:25, 21:6, 21:7, 21:22, 22:9, 22:19, 22:20, 22:22, 22:23, 23:1, 23:2, 23:7, 23:9, 23:12, 23:14, 23:18, 30:3, 30:18, 31:2, 31:11, 31:14, 31:20, 33:17, 38:11, 38:14, 38:15, 51:7, 63:5, 76:6, 77:12, 85:16, 89:6, 206:7
**correctly** [3] - 103:2, 167:4, 187:3
**corroborated** [1] - 136:20
**Counsel** [1] - 4:25
**counsel** [32] - 4:6, 4:12, 4:19, 38:6, 38:9, 39:6, 39:11, 39:18, 50:24, 55:11, 62:23, 69:4, 80:20, 84:20, 91:16, 95:10, 110:8, 113:7, 113:16, 115:21, 152:1, 187:2, 189:12, 190:6, 196:23, 198:6, 199:20, 202:4, 202:22, 205:3
**counsel's** [1] - 64:22
**counseled** [1] - 108:16
**counselled** [2] - 134:19, 137:9
**count** [21] - 58:21, 64:6, 64:7, 71:13, 101:4, 101:7, 101:8, 101:11, 101:12, 114:13, 131:4, 134:11, 134:13, 135:18, 140:3, 140:5, 140:9, 145:9, 148:18, 149:18
**Count** [49] - 40:3, 40:5, 53:9, 54:19, 55:16, 58:12, 58:18, 59:16, 59:22, 63:17, 63:19, 66:22, 66:23, 75:2, 75:25, 89:6, 89:10, 103:10, 106:8, 107:1, 107:2, 107:9, 109:9,

115:22, 115:24, 118:25, 119:1, 130:25, 131:1, 131:2, 134:5, 134:6, 134:14, 135:17, 140:2, 140:4, 145:12, 148:19, 148:23, 195:5, 199:12, 202:7
**country** [1] - 197:23
**counts** [30] - 39:20, 39:23, 40:24, 60:12, 60:23, 60:24, 71:24, 75:22, 80:11, 81:6, 81:8, 81:12, 89:18, 89:19, 89:22, 108:3, 114:10, 118:19, 118:22, 119:5, 119:9, 119:15, 134:4, 134:11, 151:4, 180:23, 186:18, 198:2, 198:4
**Counts** [5] - 40:2, 89:9, 114:13, 118:19, 118:20
**county** [1] - 140:8
**County** [1] - 17:5
**couple** [2] - 86:12, 182:6
**course** [28] - 15:1, 22:11, 41:6, 44:5, 55:4, 55:15, 58:11, 59:4, 61:1, 65:16, 66:25, 70:22, 83:22, 110:22, 116:14, 117:15, 118:8, 120:6, 126:8, 127:22, 128:10, 129:22, 130:16, 141:21, 192:15, 195:6, 204:14
**COURT** [221] - 1:1, 4:5, 4:20, 4:21, 4:24, 5:8, 5:13, 14:1, 14:17, 19:18, 20:3, 20:8, 23:21, 28:2, 29:9, 29:18, 29:21, 30:2, 30:4, 30:7, 34:3, 35:12, 35:14, 36:15, 36:20, 36:23, 36:25, 37:5, 37:10, 37:13, 37:16, 37:21, 38:2, 38:5, 38:13, 38:17, 38:22, 39:1, 39:4, 39:10, 40:3, 40:7, 41:1, 41:24, 43:6, 43:18, 44:13, 44:17, 45:17, 46:1, 46:8, 46:18, 46:21, 47:9, 47:11, 47:21,

48:5, 48:8, 48:11, 48:17, 48:24, 49:16, 49:23, 50:7, 50:18, 51:8, 51:16, 51:19, 53:5, 54:5, 54:9, 54:17, 54:20, 54:24, 55:6, 55:11, 55:18, 55:22, 55:24, 57:12, 57:16, 57:20, 57:23, 58:2, 59:17, 60:4, 60:16, 60:21, 62:22, 63:11, 63:16, 63:18, 63:21, 64:1, 64:8, 64:13, 64:19, 65:5, 65:11, 65:15, 67:1, 67:6, 68:10, 68:18, 68:22, 69:12, 69:25, 70:25, 71:4, 71:23, 72:3, 72:10, 72:24, 73:7, 74:3, 74:15, 74:25, 75:12, 75:14, 75:19, 76:1, 76:14, 76:17, 76:25, 78:8, 78:11, 79:18, 80:13, 80:25, 81:5, 81:18, 82:21, 83:3, 83:8, 83:14, 83:16, 83:19, 84:4, 84:10, 84:25, 85:2, 85:5, 85:9, 87:7, 87:24, 88:2, 88:4, 88:11, 89:8, 90:17, 90:21, 91:8, 91:11, 93:3, 93:6, 93:10, 93:17, 93:22, 94:6, 94:9, 94:13, 94:17, 94:20, 94:24, 95:1, 95:9, 113:19, 113:22, 113:25, 114:2, 114:6, 114:11, 114:14, 115:1, 115:3, 115:5, 115:9, 115:12, 115:20, 117:3, 117:5, 117:13, 117:15, 117:19, 151:5, 151:9, 151:12, 151:16, 151:19, 151:22, 151:25, 171:13, 171:17, 186:20, 186:24, 189:11, 189:16, 190:6, 191:3, 191:6, 191:11, 195:23, 198:5, 198:19, 199:13, 199:15, 199:21, 199:25, 201:21, 202:21, 203:15, 203:18, 204:10, 204:17, 205:10, 205:14,

205:16, 205:18, 205:20, 205:25, 206:1
**court** [13] - 18:12, 37:20, 63:10, 64:9, 64:17, 80:1, 85:8, 110:10, 113:5, 115:19, 177:5, 191:10, 200:22
**Court** [85] - 1:23, 36:22, 37:22, 38:20, 39:12, 40:16, 40:19, 42:1, 43:4, 46:19, 48:3, 48:12, 48:21, 49:11, 52:17, 52:21, 53:1, 54:10, 54:14, 55:19, 57:2, 57:10, 58:1, 58:3, 58:16, 60:7, 62:15, 68:23, 69:2, 69:15, 70:20, 71:2, 71:7, 74:15, 76:25, 79:4, 80:13, 80:25, 81:25, 82:1, 82:7, 82:14, 82:25, 83:21, 83:24, 84:13, 90:3, 90:11, 90:16, 90:20, 90:24, 91:15, 91:18, 93:18, 93:19, 94:15, 95:15, 95:18, 95:19, 98:24, 111:18, 112:7, 112:14, 113:14, 114:3, 114:8, 114:23, 119:25, 145:20, 152:3, 187:7, 188:18, 198:16, 198:22, 198:24, 199:1, 199:23, 201:20, 201:22, 201:24, 202:1, 203:19, 206:1, 206:2, 206:16
**Court's** [9] - 19:16, 38:16, 49:4, 53:18, 59:12, 74:22, 74:23, 151:20, 200:7
**courtroom** [5] - 112:24, 151:7, 152:4, 154:10, 180:6
**courts** [3] - 74:7, 74:12, 77:19
**cover** [2] - 198:20, 204:22
**covering** [1] - 193:1
**CR** [1] - 1:10
**Crawford** [2] - 58:22, 59:9
**create** [5] - 174:8, 174:12, 179:6, 191:15, 192:15

**created** [5] - 92:15, 121:4, 191:19, 201:15, 201:17
**credit** [9] - 11:3, 11:5, 12:11, 12:15, 178:10, 178:11
**crime** [64] - 16:20, 17:7, 42:2, 42:15, 66:18, 71:12, 71:15, 73:11, 87:15, 101:3, 101:6, 101:25, 102:2, 104:3, 104:5, 104:15, 106:19, 107:12, 108:6, 108:9, 108:14, 108:18, 108:19, 108:20, 108:22, 108:24, 109:2, 109:5, 109:6, 109:8, 118:16, 118:17, 134:16, 134:20, 134:23, 134:25, 135:2, 135:3, 137:11, 137:13, 137:23, 138:17, 138:24, 139:19, 139:25, 144:17, 144:25, 145:4, 148:23, 149:8, 152:18, 152:21, 160:10, 160:20, 163:2, 180:13, 186:8, 188:25, 189:18, 189:21, 192:8, 192:18, 203:8
**crimes** [20] - 86:22, 87:3, 100:16, 100:21, 101:23, 102:2, 103:18, 104:3, 104:13, 112:13, 118:18, 134:3, 134:6, 154:16, 175:2, 175:3, 186:3, 197:14, 197:17, 200:10
**Crimes** [1] - 2:5
**criminal** [23] - 17:13, 25:22, 25:25, 70:1, 74:6, 77:25, 78:5, 80:3, 80:4, 85:19, 97:4, 104:1, 109:6, 153:3, 153:15, 153:16, 153:20, 154:6, 155:12, 166:12, 185:18, 197:21, 197:22
**critical** [1] - 164:7
**crook** [1] - 147:7
**crooked** [1] - 175:21

**crooks** [2] - 139:1, 147:3
**CROSS** [2] - 3:4, 5:18
**cross** [9] - 4:9, 5:1, 25:3, 50:16, 158:7, 159:3, 159:4, 160:8, 160:14
**cross-examination** [7] - 5:1, 25:3, 50:16, 159:3, 159:4, 160:8, 160:14
**CROSS-EXAMINATION** [2] - 3:4, 5:18
**cross-examined** [1] - 158:7
**crossed** [1] - 127:6
**CRR** [1] - 1:23
**crudeness** [1] - 165:6
**cruiser** [1] - 158:21
**Cruz** [7] - 71:2, 115:17, 198:14, 199:8, 199:13, 204:25, 205:7
**crystal** [2] - 43:17, 43:18
**CSR** [2] - 1:23, 206:16
**cumulative** [3] - 201:7, 201:14, 204:6
**curative** [1] - 91:18
**cure** [4] - 56:22, 59:25, 201:17, 203:22
**cured** [3] - 55:25, 57:1, 58:3
**customer** [4] - 66:15, 66:22, 66:24, 67:18
**customers** [3] - 63:25, 66:10, 184:2

# D

**D'Angelo** [1] - 18:21
**DA** [1] - 67:25
**dad** [9] - 16:6, 141:7, 142:7, 146:5, 147:21, 147:23, 184:18, 184:25
**damage** [1] - 182:1
**daring** [1] - 118:4
**database** [4] - 25:22, 159:12, 163:5, 174:4
**Date** [1] - 206:16
**date** [18] - 7:5, 11:17, 27:14, 34:8, 35:17, 81:24, 89:25, 92:11, 110:1, 110:3, 110:4, 110:6, 112:22, 130:15, 130:16,

143:17, 145:6, 146:2
**dated** [1] - 18:17
**dates** [3] - 26:15, 116:7, 126:17
**David** [4] - 48:21, 72:25, 88:13, 102:13
**DAY** [1] - 1:17
**daylight** [1] - 175:11
**days** [11] - 7:8, 30:19, 126:16, 126:17, 126:20, 143:18, 182:22, 186:12
**deal** [27] - 41:7, 43:12, 43:14, 43:20, 43:24, 63:9, 86:23, 100:16, 119:16, 124:21, 127:21, 131:13, 133:23, 136:16, 137:14, 139:21, 140:25, 144:18, 175:9, 179:3, 181:6, 182:14, 182:15, 187:17, 187:25, 202:8
**dealer** [17] - 92:13, 109:19, 109:21, 109:22, 116:10, 116:12, 120:19, 122:19, 128:9, 128:12, 130:9, 135:7, 135:8, 135:9, 135:22, 163:3, 168:18
**dealers** [3] - 45:8, 125:8, 162:5
**dealership** [1] - 128:10
**Dealing** [1] - 118:20
**dealing** [53] - 39:22, 39:24, 41:10, 41:13, 42:2, 42:9, 43:1, 57:6, 64:6, 66:25, 86:23, 92:8, 92:10, 92:19, 100:17, 103:12, 114:10, 115:23, 115:25, 116:7, 116:13, 119:2, 119:9, 119:12, 120:2, 126:1, 126:6, 126:8, 126:10, 127:6, 127:18, 127:22, 127:25, 130:24, 131:4, 153:8, 153:17, 155:18, 160:3, 160:15, 160:16, 161:15, 166:10, 187:5, 187:23, 188:5, 188:24, 189:1,

189:19, 192:21, 196:1
**deals** [3] - 47:5, 121:10, 147:17
**dealt** [3] - 16:5, 53:9, 200:3
**debacle** [1] - 179:14
**December** [6] - 7:7, 24:23, 24:25, 34:10, 106:17, 124:22
**decide** [16] - 66:20, 70:16, 71:14, 86:6, 96:7, 96:10, 98:25, 99:12, 99:14, 101:5, 101:14, 110:14, 112:14, 118:22, 131:4, 131:22
**decided** [2] - 128:2, 157:2
**deciding** [7] - 86:5, 97:25, 98:7, 99:13, 108:1, 112:14, 203:13
**decision** [4] - 110:19, 110:23, 189:24, 193:12
**decisions** [2] - 101:16, 193:12
**declaration** [1] - 54:4
**declare** [2] - 57:10, 204:9
**dedicated** [2] - 171:4
**deemed** [2] - 50:1, 156:20
**defend** [1] - 134:1
**DEFENDANT** [4] - 2:10, 2:20, 3:7, 152:10
**defendant** [301] - 11:1, 25:4, 25:7, 25:10, 25:14, 25:15, 26:11, 34:19, 35:8, 39:21, 41:4, 41:13, 41:16, 43:23, 44:1, 54:16, 55:15, 58:6, 58:14, 58:15, 58:19, 58:20, 59:2, 59:3, 59:6, 59:14, 59:16, 63:4, 63:7, 64:7, 64:11, 64:12, 65:22, 66:1, 66:9, 67:3, 70:1, 70:3, 70:17, 71:10, 71:15, 73:19, 74:9, 75:2, 75:10, 75:11, 75:22, 76:8, 76:11, 77:10, 77:11, 77:15, 77:16, 77:21, 78:2, 83:23, 84:19, 84:21, 85:19, 86:16, 86:21, 87:1, 87:10, 87:19,

89:5, 89:9, 89:14, 89:19, 89:21, 92:9, 92:12, 92:14, 92:18, 92:21, 92:22, 96:24, 97:4, 97:6, 97:9, 97:19, 97:20, 97:23, 97:24, 100:8, 100:15, 100:19, 100:22, 100:24, 101:5, 101:6, 101:8, 101:9, 101:10, 101:12, 101:13, 101:15, 101:18, 102:3, 102:4, 103:20, 105:8, 105:17, 105:19, 105:22, 105:24, 106:1, 106:8, 106:13, 106:20, 107:2, 107:5, 107:8, 107:10, 107:22, 108:2, 108:3, 108:5, 108:10, 108:16, 108:18, 108:19, 108:21, 109:1, 109:4, 109:5, 109:7, 109:9, 109:14, 113:13, 115:22, 115:24, 116:3, 116:6, 116:9, 116:22, 116:23, 117:22, 118:3, 118:5, 118:10, 118:23, 119:1, 119:4, 119:10, 119:14, 119:18, 119:22, 120:1, 120:19, 121:1, 121:3, 121:8, 121:11, 121:17, 121:18, 121:22, 122:4, 122:10, 122:16, 122:20, 123:6, 123:11, 123:16, 123:21, 124:4, 124:21, 124:25, 125:16, 125:21, 125:24, 125:25, 126:19, 126:24, 127:1, 127:5, 127:6, 127:8, 127:11, 127:12, 128:2, 128:7, 128:8, 128:16, 129:2, 129:5, 129:22, 130:4, 130:14, 130:25, 131:1, 131:5, 131:9, 131:10, 132:10, 132:14, 132:20, 132:22, 133:7,

133:11, 133:22, 134:1, 134:2, 134:7, 134:18, 134:21, 134:22, 134:24, 135:18, 136:18, 137:8, 137:10, 137:12, 137:18, 137:22, 138:14, 138:16, 138:19, 138:23, 139:10, 139:12, 140:12, 140:25, 141:3, 141:9, 141:14, 141:18, 141:21, 142:2, 142:15, 142:21, 142:25, 143:5, 143:12, 143:18, 144:4, 144:8, 144:13, 144:16, 144:22, 144:24, 145:4, 145:9, 145:15, 146:9, 146:11, 146:18, 146:23, 147:1, 147:10, 147:15, 147:17, 147:19, 147:21, 147:25, 148:5, 148:16, 148:19, 148:24, 149:8, 149:15, 149:24, 150:14, 150:23, 153:23, 153:24, 173:18, 187:2, 187:11, 187:12, 187:17, 187:19, 187:24, 189:5, 189:7, 189:18, 189:20, 189:25, 190:18, 192:4, 192:5, 192:13, 192:14, 194:2, 194:8, 196:16, 196:23, 197:8, 197:21, 200:8, 202:11, 202:25, 205:2

**defendant's** [4] - 67:18, 74:18, 107:24, 148:2

**defendants** [63] - 1:14, 4:7, 4:25, 38:6, 39:11, 46:5, 63:22, 64:3, 64:9, 66:4, 66:6, 66:16, 66:17, 66:20, 66:24, 67:2, 71:13, 71:24, 73:19, 76:4, 86:10, 87:16, 87:20, 94:18, 95:1, 95:10, 96:22, 96:23, 96:25, 100:25,

101:4, 103:10, 103:14, 106:2, 117:8, 118:1, 118:24, 120:12, 126:4, 127:16, 128:4, 130:18, 130:22, 131:12, 131:19, 150:19, 152:1, 188:9, 191:15, 191:24, 192:6, 193:4, 194:3, 195:4, 196:1, 196:5, 196:6, 197:14, 198:1, 202:2, 204:24, 205:9

**defense** [6] - 21:3, 36:9, 36:20, 95:1, 106:5, 154:25

**defer** [1] - 168:6

**defined** [6] - 41:11, 74:11, 74:13, 89:13, 92:20, 107:12

**definition** [12] - 42:1, 42:8, 73:21, 73:22, 126:5, 127:10, 160:2, 160:9, 160:15, 160:19, 160:25

**deformity** [1] - 60:2

**degree** [1] - 154:8

**delayed** [1] - 27:1

**deliberate** [4] - 42:11, 42:14, 42:16, 77:9

**Deliberate** [1] - 77:7

**deliberately** [3] - 77:18, 78:6, 201:9

**deliberation** [1] - 187:9

**deliberations** [11] - 82:4, 82:15, 90:2, 90:23, 95:23, 110:7, 110:10, 111:6, 112:22, 112:25, 113:9

**demonstrated** [1] - 78:2

**demonstrative** [4] - 73:4, 88:15, 102:22, 102:24

**denied** [9] - 26:25, 27:4, 50:19, 67:6, 91:17, 94:17, 185:8, 191:6, 204:11

**denies** [1] - 62:15

**deny** [1] - 93:19

**denying** [1] - 50:15

**Department** [10] - 11:21, 159:11, 163:5, 163:18, 163:19, 165:12,

166:20, 166:22, 168:13, 173:11

**department** [2] - 163:17, 173:8

**dependent** [1] - 106:3

**deposit** [1] - 206:11

**deposits** [9] - 8:5, 10:18, 12:14, 12:18, 24:10, 24:15, 176:21, 178:7, 178:8

**describe** [1] - 181:17

**described** [1] - 131:7

**description** [1] - 67:18

**deserved** [1] - 100:4

**deserves** [2] - 102:18, 103:9

**design** [2] - 67:16, 156:1

**designed** [4] - 56:3, 120:13, 157:21, 157:22

**desire** [2] - 9:20, 170:23

**desperate** [2] - 179:19, 184:4

**despite** [1] - 201:10

**detail** [4] - 28:11, 32:9, 104:8, 119:7

**detailed** [1] - 188:23

**details** [4] - 32:12, 32:13, 104:20, 105:14

**determination** [1] - 28:2

**determine** [9] - 70:17, 71:10, 78:16, 87:10, 100:23, 100:24, 103:4, 120:1, 161:9

**determining** [1] - 102:5

**devotes** [1] - 116:12

**dictionaries** [1] - 111:22

**differ** [1] - 98:16

**difference** [1] - 120:25

**differences** [1] - 155:4

**different** [19] - 13:23, 20:20, 20:23, 21:15, 28:22, 33:22, 68:5, 74:10, 90:20, 91:3, 115:10, 123:4, 129:18, 139:20, 164:22, 166:15, 172:23, 182:23, 205:1

**differently** [1] - 74:11

**differs** [1] - 83:22

**difficult** [1] - 45:1

**direct** [18] - 9:13, 9:16, 42:19, 48:12, 49:4,

61:16, 61:19, 70:11, 86:3, 99:1, 99:2, 99:8, 99:11, 158:25, 194:7, 196:10, 203:18

**directions** [1] - 112:17

**directly** [3] - 75:11, 105:17, 106:1

**directs** [1] - 188:21

**dirty** [1] - 180:15

**dirtying** [1] - 62:13

**discharge** [6] - 47:18, 47:19, 161:24, 163:11, 193:19, 193:21

**discharged** [1] - 113:14

**discovered** [2] - 10:8, 165:23

**discretion** [2] - 77:20, 80:14

**discuss** [6] - 21:14, 67:23, 110:11, 111:17, 119:7, 198:12

**discussed** [9] - 7:19, 27:17, 28:9, 28:11, 40:11, 104:9, 110:16, 149:13, 198:23

**discusses** [1] - 48:15

**discussing** [2] - 111:5, 111:10

**Discussion** [6] - 48:10, 49:22, 71:22, 114:1, 114:22, 117:14

**discussion** [2] - 84:10, 110:18

**discussions** [1] - 115:14

**dislikes** [1] - 96:12

**dismissed** [1] - 40:24

**display** [1] - 7:22

**dispose** [5] - 106:9, 145:17, 148:21, 149:4, 150:15

**disposed** [1] - 107:8

**disposes** [2] - 130:8, 168:17

**disposing** [6] - 86:18, 100:10, 107:3, 119:6, 134:4, 145:14

**Disposing** [1] - 145:12

**disposition** [2] - 162:20, 162:21

**dispositive** [1] - 107:14

**disputed** [5] - 73:17, 77:4, 80:17, 114:17,

187:4

**disregard** [7] - 55:25, 56:22, 98:19, 103:3, 180:21, 191:8, 201:14

**distinction** [2] - 45:1, 99:10

**distributor** [1] - 191:21

**DISTRICT** [2] - 1:1, 1:2

**diversion** [1] - 182:19

**division** [1] - 165:14

**DM** [1] - 132:11

**DMs** [1] - 22:13

**DMV** [4] - 23:8, 65:13, 65:16, 139:5

**doctors** [1] - 182:14

**document** [8] - 20:17, 20:24, 31:23, 50:17, 119:18, 119:21, 135:20, 185:21

**documentation** [2] - 9:15, 10:2

**documented** [1] - 10:10

**documenting** [2] - 28:14, 28:18

**documents** [3] - 12:2, 64:10, 79:9

**done** [24] - 8:10, 17:13, 27:20, 44:1, 55:17, 59:7, 61:6, 65:18, 67:15, 67:16, 67:24, 77:5, 80:7, 80:9, 82:22, 82:25, 89:14, 94:3, 96:18, 105:7, 107:22, 132:24, 165:3, 204:25

**door** [2] - 192:13, 192:14

**double** [1] - 166:1

**doubt** [56] - 40:14, 40:23, 42:22, 50:4, 70:5, 85:22, 96:25, 97:3, 97:8, 97:11, 97:12, 97:19, 97:23, 103:16, 105:21, 106:15, 107:7, 108:13, 109:1, 109:16, 110:3, 112:16, 116:5, 117:10, 153:22, 154:11, 154:21, 155:15, 155:19, 159:10, 159:20, 160:18, 161:18, 163:14, 164:5, 166:13, 169:8, 170:1, 170:2,

170:17, 172:21, 172:22, 173:2, 173:18, 185:3, 185:4, 185:6, 186:9, 186:10, 194:16, 197:13, 197:19, 197:24, 198:1

**down** [12] - 4:18, 19:19, 20:13, 22:7, 25:8, 32:25, 33:3, 33:5, 122:6, 172:5, 184:10, 194:14

**DRAGALIN** [69] - 3:4, 3:5, 14:16, 20:6, 23:23, 23:25, 28:4, 29:5, 29:11, 29:23, 30:6, 34:1, 35:11, 36:18, 38:24, 41:3, 43:8, 43:19, 44:19, 45:20, 46:3, 46:11, 47:12, 47:24, 48:13, 48:19, 49:2, 54:8, 54:13, 54:18, 54:21, 55:2, 55:8, 55:13, 55:21, 55:23, 57:21, 57:25, 58:5, 63:5, 63:13, 63:17, 63:19, 63:24, 64:2, 64:10, 64:14, 65:9, 65:12, 65:18, 67:4, 69:23, 74:5, 75:24, 76:18, 77:13, 81:2, 81:6, 84:16, 93:8, 93:11, 186:23, 186:25, 189:17, 190:17, 191:13, 195:25, 202:6, 202:23

**dragalin** [1] - 52:25

**Dragalin** [8] - 2:4, 18:9, 30:14, 34:5, 52:17, 183:14, 198:5, 205:24

**Dragalin's** [1] - 78:12

**draw** [4] - 54:24, 70:2, 93:18, 97:5

**drive** [2] - 14:23, 14:24

**drop** [1] - 76:23

**dropped** [2] - 76:20, 81:7

**dropping** [1] - 122:6

**DROS** [3] - 159:5, 163:4, 174:1

**DROSed** [1] - 169:14

**DROSing** [3] - 156:15, 162:11, 168:3

**drove** [1] - 25:8

**drug** [1] - 156:20

**dude** [1] - 181:16

**DUI** [2] - 181:18, 185:10

**DUIs** [1] - 167:11

**dumb** [3] - 175:22, 175:23, 177:14

**Duncan** [12] - 7:14, 12:23, 13:22, 15:12, 15:13, 15:17, 18:9, 49:2, 164:10, 164:16, 164:18, 194:20

**during** [43] - 5:6, 14:13, 20:9, 25:3, 28:9, 31:7, 32:21, 54:22, 55:4, 55:15, 58:8, 58:11, 59:4, 65:16, 66:10, 66:25, 70:22, 73:3, 82:15, 83:22, 87:1, 90:23, 100:20, 102:22, 106:11, 108:4, 108:11, 108:15, 109:3, 109:11, 111:5, 112:8, 112:25, 117:15, 134:17, 152:5, 155:7, 158:19, 171:22, 188:6, 198:12, 200:8, 204:13

**duties** [5] - 161:24, 163:11, 169:18, 193:19, 193:22

**duty** [8] - 47:19, 78:14, 96:3, 96:6, 96:8, 97:20, 97:24, 175:17

## E

**e-mail** [6] - 111:11, 122:10, 129:13, 129:17, 129:18, 131:20

**e-mails** [1] - 197:4

**early** [1] - 37:23

**earth** [2] - 162:12, 167:22

**easier** [1] - 12:1

**easy** [2] - 177:13, 185:15

**Ebaria** [4] - 22:4, 34:19, 35:1, 35:9

**eddiarao@hotmail. com** [1] - 194:25

**Eddie** [2] - 164:18, 194:17

**Eduardo** [1] - 2:21

**educate** [4] - 165:18, 166:8, 166:9, 172:12

**education** [2] - 102:15, 102:19

**EDWARD** [2] - 1:12, 2:10

**Edward** [4] - 2:12, 2:13, 132:24, 152:14

**effect** [4] - 105:19, 110:25, 164:18, 201:14

**effort** [8] - 158:22, 159:16, 162:10, 163:24, 167:19, 168:4, 200:20

**efforts** [1] - 166:24

**eight** [1] - 194:4

**either** [17] - 10:3, 10:24, 63:6, 67:2, 77:17, 79:1, 84:2, 99:1, 99:9, 99:11, 115:8, 131:15, 147:18, 152:6, 174:9, 192:6, 205:3

**elect** [1] - 110:8

**electronic** [1] - 111:11

**element** [25] - 75:7, 75:9, 75:23, 76:7, 77:19, 92:9, 92:16, 97:2, 105:6, 108:17, 118:17, 119:8, 119:13, 119:23, 127:7, 127:9, 134:20, 137:7, 137:8, 137:22, 140:6, 146:23, 149:5, 149:6, 153:21

**Element** [1] - 132:21

**elements** [20] - 73:11, 88:21, 88:22, 88:25, 92:7, 92:17, 103:15, 106:15, 107:6, 109:16, 116:5, 118:15, 134:15, 135:6, 135:21, 139:17, 144:7, 145:13, 160:10, 199:12

**eleven** [1] - 34:16

**elicit** [2] - 54:6, 55:5

**elicited** [1] - 63:8

**eloquently** [2] - 172:25, 185:16

**Email** [4] - 2:8, 2:8, 2:15, 2:24

**embezzling** [1] - 175:4

**embodiment** [1] - 185:19

**employee** [2] - 165:1, 166:20

**employer** [1] - 111:13

**encourage** [3] - 59:8, 194:4, 196:13

**end** [12] - 12:24, 68:4, 83:25, 145:11, 156:19, 162:17, 164:8, 172:22, 185:13, 186:14, 194:5, 194:9

**ending** [3] - 103:17, 106:17, 177:23

**energy** [2] - 172:3, 172:17

**enforcement** [18] - 16:13, 16:16, 17:3, 20:24, 25:22, 47:16, 130:7, 157:20, 160:13, 165:16, 165:25, 166:3, 168:12, 168:16, 168:23, 168:24, 193:20

**engage** [16] - 39:22, 41:10, 41:12, 45:23, 103:11, 127:17, 127:22, 127:25, 130:15, 131:3, 187:14, 187:23, 188:4, 188:18, 188:24, 196:3

**engaged** [15] - 42:14, 66:4, 92:10, 92:19, 116:6, 116:11, 119:11, 119:24, 120:2, 125:25, 128:16, 130:23, 160:3, 161:15, 187:5

**engages** [1] - 174:23

**engaging** [11] - 39:24, 66:4, 119:2, 126:5, 129:1, 130:9, 168:18, 188:17, 189:1, 189:19, 196:3

**enhancements** [1] - 116:18

**ensure** [2] - 78:5, 111:25

**entered** [1] - 124:1

**entertain** [1] - 172:12

**entire** [7] - 9:6, 40:11, 78:18, 106:4, 112:5, 176:23, 181:7

**entirely** [2] - 47:14, 96:19

**entry** [1] - 120:15

**equal** [2] - 176:21, 193:9

**equalization** [1] - 165:3

**equally** [2] - 193:6, 193:9

**eroblaw@gmail.com** [1] - 2:15

**error** [12] - 39:13,

39:14, 56:4, 56:23, 56:25, 57:3, 57:9, 58:7, 60:1, 82:23, 91:14

**especially** [1] - 182:5

**essential** [2] - 202:14, 203:4

**establish** [4] - 64:11, 66:6, 66:22, 67:9

**established** [3] - 43:24, 61:14, 157:10

**establishes** [1] - 41:16

**evaluate** [1] - 96:6

**evaluating** [1] - 102:7

**events** [1] - 102:2

**evidence** [203] - 3:11, 3:12, 8:7, 8:12, 8:17, 8:25, 9:6, 9:22, 20:17, 22:15, 22:21, 29:22, 30:5, 31:23, 37:4, 37:11, 38:10, 40:20, 41:1, 41:4, 41:16, 42:20, 43:2, 43:19, 43:24, 44:24, 45:15, 50:15, 51:14, 53:3, 53:4, 53:8, 53:14, 53:25, 54:15, 56:15, 57:8, 58:17, 59:21, 59:24, 60:3, 61:1, 61:4, 61:12, 61:16, 61:17, 61:20, 61:23, 62:17, 65:1, 65:15, 66:3, 66:13, 66:17, 67:10, 68:4, 69:18, 69:20, 70:6, 70:9, 70:11, 70:21, 73:8, 77:20, 77:23, 78:1, 78:23, 78:24, 78:25, 79:7, 79:11, 79:23, 79:25, 80:3, 85:23, 86:1, 86:3, 86:15, 86:20, 86:25, 88:19, 92:2, 96:3, 96:7, 96:11, 96:21, 97:1, 97:15, 97:16, 97:18, 97:22, 97:25, 98:2, 98:5, 98:6, 98:8, 98:11, 98:14, 98:15, 98:18, 98:19, 98:20, 98:21, 98:24, 98:25, 99:1, 99:2, 99:5, 99:9, 99:11, 99:12, 99:22, 99:24, 100:1, 100:7, 100:13, 100:19, 101:17, 102:4, 102:20, 102:23, 102:25, 103:1, 103:3, 103:4, 103:6,

107:24, 108:1,
108:25, 110:16,
110:25, 111:2,
112:1, 118:16,
121:7, 125:20,
132:17, 133:8,
133:14, 133:21,
133:25, 140:16,
144:8, 145:9,
147:14, 147:22,
148:15, 149:18,
149:19, 150:13,
153:14, 154:15,
156:23, 159:1,
160:5, 161:3,
164:25, 166:16,
166:25, 169:16,
169:19, 170:12,
174:14, 176:2,
176:15, 179:5,
179:9, 180:4,
182:21, 183:15,
183:17, 183:20,
184:8, 184:9,
184:16, 184:20,
186:4, 186:10,
187:17, 187:18,
187:19, 187:24,
189:5, 189:7,
189:13, 190:11,
190:21, 190:23,
196:7, 197:11,
197:16, 197:25,
198:3, 200:8,
200:15, 201:23,
202:19, 202:20
**Evidence** [2] - 53:16,
200:17
**exact** [6] - 143:25,
175:10, 189:3,
189:4, 193:7, 203:12
**exactly** [7] - 94:22,
123:24, 128:25,
143:9, 147:7, 162:7,
190:13
**examination** [10] - 5:1,
9:13, 9:17, 25:3,
50:16, 158:25,
159:3, 159:4, 160:8,
160:14
**EXAMINATION** [10] -
3:4, 3:4, 3:5, 3:5,
3:6, 5:18, 23:24,
30:11, 34:4, 35:15
**examine** [2] - 102:9,
102:10
**examined** [1] - 158:7
**example** [10] - 17:2,
58:8, 58:9, 79:24,
120:12, 121:20,

123:14, 127:4,
129:17, 131:20
**exceeding** [1] -
107:13
**except** [3] - 111:5,
113:4, 140:6
**exception** [4] - 56:21,
162:8, 169:5, 169:17
**excerpt** [4] - 156:5,
160:23, 160:24
**excerpts** [1] - 160:22
**exchange** [1] - 177:23
**exchanges** [1] -
116:17
**excluded** [1] - 98:18
**exclusively** [1] - 127:2
**excuse** [10] - 8:20,
29:14, 37:17, 37:22,
51:4, 56:11, 83:12,
159:9, 161:25, 165:6
**excused** [5] - 38:5,
39:3, 198:8, 198:10
**exempt** [3] - 123:17,
129:20, 130:2
**exempted** [2] -
161:23, 163:9
**exemption** [5] - 47:16,
47:17, 163:21,
193:17, 193:19
**exercise** [2] - 64:16,
80:13
**Exhibit** [47] - 3:11,
3:12, 5:23, 8:13,
10:18, 24:4, 24:12,
24:13, 24:15, 24:17,
26:9, 27:11, 29:7,
29:22, 30:5, 119:19,
123:2, 124:24,
125:6, 125:12,
125:19, 125:23,
126:18, 126:21,
129:7, 135:16,
135:21, 136:6,
136:21, 136:25,
137:16, 147:9,
148:5, 149:23,
160:1, 161:22,
162:19, 164:8,
165:8, 165:10,
166:17, 167:24,
168:8, 193:14,
194:3, 194:23
**exhibit** [16] - 19:19,
24:1, 24:6, 24:7,
24:14, 49:9, 53:21,
119:22, 120:15,
157:14, 162:19,
162:25, 164:9,
194:4, 194:19,
194:22

**exhibits** [14] - 8:7,
9:19, 29:6, 36:18,
70:9, 98:2, 98:5,
102:24, 103:3,
125:10, 133:15,
133:20, 178:3,
182:22
**EXHIBITS** [1] - 3:10
**existed** [4] - 25:11,
104:6, 126:2, 131:8
**exists** [1] - 105:4
**exiting** [1] - 104:22
**expect** [4] - 37:8, 95:4,
126:14, 126:15
**expensive** [1] - 184:6
**experience** [5] - 36:1,
102:15, 102:19,
153:16, 181:12
**expert** [6] - 48:21,
48:24, 135:15,
159:4, 163:18,
191:17
**explain** [1] - 102:23
**explained** [3] -
185:16, 191:18,
202:16
**explanation** [2] -
148:2, 148:12
**Explosives** [2] -
165:11, 168:14
**Expo** [1] - 132:4
**exposed** [2] - 111:3,
112:6
**extensive** [1] - 166:24
**extent** [6] - 54:15,
68:19, 86:25,
100:19, 102:7, 200:7
**extremely** [5] - 32:13,
172:24, 178:2,
184:1, 184:6
**eye** [1] - 176:12

## F

**face** [1] - 201:9
**facilitate** [6] - 108:19,
109:5, 120:20,
134:23, 137:23,
144:25
**facing** [1] - 155:14
**fact** [37] - 9:19, 11:25,
14:10, 44:25, 47:5,
47:15, 58:6, 68:6,
70:3, 76:20, 77:17,
97:6, 99:2, 99:7,
99:10, 100:1,
118:12, 126:3,
138:15, 138:19,
138:23, 142:22,

144:20, 144:22,
157:7, 157:15,
158:7, 158:18,
159:8, 160:18,
163:13, 169:12,
174:15, 180:12,
183:6, 193:10,
200:12
**factor** [5] - 120:11,
121:23, 123:10,
125:14, 126:2
**factors** [7] - 99:25,
102:9, 120:1, 120:4,
126:2, 126:3, 139:21
**facts** [13] - 77:22,
86:5, 96:8, 96:9,
98:1, 98:2, 98:7,
98:15, 99:6, 99:13,
103:1, 103:2, 103:4
**failed** [5] - 29:6, 40:20,
169:25, 170:1, 171:8
**failing** [1] - 192:17
**fair** [6] - 112:1, 153:6,
180:18, 185:23,
201:9, 201:16
**fairness** [1] - 112:3
**faith** [6] - 156:24,
158:10, 168:5,
170:22, 177:3
**False** [1] - 118:20
**false** [37] - 42:24,
86:17, 100:9,
106:10, 108:4,
108:10, 108:15,
109:2, 109:10,
109:17, 109:24,
119:6, 134:3,
134:10, 134:17,
135:3, 135:6,
135:10, 135:24,
136:1, 136:6,
136:11, 136:14,
136:15, 137:2,
137:4, 137:13,
140:15, 144:9,
144:12, 144:17,
148:22, 148:25,
150:16, 190:12,
200:13
**familiar** [1] - 19:11
**familiarity** [1] - 55:9
**families** [1] - 153:10
**family** [6] - 62:20,
111:13, 147:24,
175:17, 181:24,
182:13
**famous** [2] - 170:13,
170:14
**far** [3] - 21:2, 71:6,
142:9

**fashion** [1] - 133:4
**fast** [1] - 10:6
**father** [6] - 79:1, 79:2,
140:11, 147:13,
148:10, 148:12
**father's** [1] - 79:5
**Fathers** [1] - 153:19
**fatter** [1] - 14:6
**favor** [1] - 93:18
**favored** [1] - 101:21
**Fax** [2] - 2:7, 2:15
**FBI** [1] - 16:25
**FDIC** [1] - 11:20
**feature** [1] - 111:12
**federal** [49] - 11:21,
12:1, 26:2, 36:1,
41:5, 41:7, 41:9,
42:19, 43:15, 86:17,
92:5, 92:6, 92:23,
100:9, 109:11,
116:24, 127:12,
128:23, 129:13,
155:5, 155:10,
155:18, 156:13,
160:12, 162:14,
163:5, 164:22,
164:24, 165:11,
165:17, 165:20,
166:5, 167:13,
173:8, 174:3, 174:5,
177:10, 178:15,
181:6, 181:13,
182:7, 182:12,
187:15, 187:20,
187:22, 187:25,
188:3, 188:14
**Federal** [5] - 1:23,
26:19, 53:16, 159:5,
200:17
**federally** [4] - 109:21,
128:9, 135:8, 135:22
**feds** [1] - 62:16
**fee** [1] - 206:10
**fees** [1] - 206:10
**fellow** [6] - 110:12,
110:16, 110:17,
111:5, 112:12,
166:19
**felon** [37] - 31:3, 61:2,
61:18, 67:22, 76:9,
76:11, 77:16, 78:17,
107:11, 118:13,
119:6, 134:5,
134:14, 140:9,
145:14, 145:16,
145:18, 146:21,
146:25, 148:1,
148:3, 148:13,
148:16, 148:20,
148:21, 149:4,

150:12, 150:15,
151:1, 181:19,
183:16, 183:18,
183:21, 184:9,
184:15, 185:5
**Felon** [2] - 118:21,
145:13
**felons** [1] - 147:2
**felony** [4] - 27:3,
107:12, 180:8, 182:7
**felt** [1] - 168:4
**FERNANDEZ** [2] -
1:12, 2:20
**Fernandez** [212] - 4:6,
6:9, 6:11, 6:23, 9:15,
9:23, 10:10, 11:6,
12:7, 14:13, 14:14,
16:4, 22:4, 22:13,
22:18, 22:22, 25:5,
25:8, 25:10, 25:14,
25:15, 26:11, 34:19,
35:8, 37:9, 38:18,
39:18, 39:21, 40:6,
40:7, 50:25, 51:1,
51:5, 51:9, 53:15,
53:17, 55:15, 56:11,
56:25, 57:5, 58:20,
59:2, 59:25, 63:2,
64:7, 65:8, 66:1,
67:3, 68:15, 73:19,
75:2, 75:22, 77:11,
77:15, 77:21, 78:2,
78:14, 79:15, 80:9,
80:19, 80:20, 84:6,
85:10, 86:16, 89:5,
89:9, 89:19, 89:21,
93:4, 95:5, 100:8,
106:8, 106:13,
107:2, 108:3, 108:5,
109:9, 115:22,
117:22, 118:3,
118:10, 118:24,
119:1, 119:4,
119:19, 121:1,
121:8, 121:17,
121:22, 122:4,
122:10, 122:16,
122:21, 123:6,
123:16, 124:21,
125:21, 125:24,
126:24, 127:5,
128:2, 129:5,
129:22, 130:4,
130:14, 130:23,
130:25, 131:9,
131:20, 132:10,
132:23, 133:3,
133:22, 134:1,
134:2, 134:7,
134:18, 134:24,

136:18, 137:8,
137:13, 137:18,
138:2, 138:5,
138:14, 138:16,
138:18, 138:19,
138:23, 139:10,
139:12, 140:8,
140:12, 140:25,
141:3, 141:9,
141:14, 141:21,
142:2, 142:8,
142:12, 142:15,
142:21, 143:1,
143:5, 143:9,
143:12, 143:18,
144:4, 144:9,
144:13, 144:16,
144:22, 144:24,
145:9, 145:15,
146:9, 146:11,
146:18, 146:24,
147:1, 147:12,
147:15, 147:17,
147:19, 147:22,
147:25, 148:6,
148:11, 148:13,
148:16, 148:19,
148:24, 149:15,
149:19, 149:24,
150:14, 150:23,
172:20, 173:2,
173:18, 173:20,
174:15, 174:17,
175:11, 175:20,
179:8, 179:10,
180:4, 180:6,
180:10, 180:13,
183:15, 183:17,
183:21, 183:24,
184:8, 184:12,
185:1, 185:10,
186:18, 189:21,
192:4, 192:14,
194:8, 196:16,
196:23, 197:8,
200:9, 205:2, 205:13
**Fernandez's** [7] -
11:1, 54:4, 56:3,
84:21, 132:14,
147:10, 177:23
**few** [6] - 6:2, 75:6,
81:7, 121:14,
182:22, 194:5
**FFI** [1] - 135:13
**FFL** [24] - 26:4, 26:6,
26:22, 30:25, 44:4,
77:24, 78:4, 78:15,
127:24, 129:14,
129:15, 129:20,
129:23, 130:2,
135:16, 135:20,

137:3, 156:12,
167:14, 188:2,
188:8, 191:21, 192:3
**FFLs** [1] - 174:9
**field** [4] - 159:1,
165:14, 173:7
**Fifth** [3] - 51:4, 51:6,
51:10
**fighting** [1] - 182:10
**figure** [1] - 80:9
**figures** [1] - 103:2
**file** [1] - 30:19
**filed** [6] - 38:20, 39:12,
71:2, 73:25, 75:6,
84:18
**fill** [4] - 174:1, 188:20,
192:16, 192:18
**filled** [6] - 173:21,
173:25, 174:2,
174:3, 190:22,
192:22
**filling** [2] - 131:20,
145:1
**fills** [1] - 31:14
**final** [7] - 67:7, 84:10,
84:14, 90:10, 127:7,
150:11, 203:15
**finally** [6] - 143:19,
144:24, 145:4,
148:18, 149:10,
171:3
**financial** [3] - 11:9,
78:24, 79:9
**findings** [1] - 112:18
**fine** [1] - 205:13
**finger** [1] - 159:25
**finish** [2] - 136:16,
202:22
**finished** [1] - 181:1
**fire** [3] - 142:16,
142:19, 146:17
**firearm** [38] - 10:14,
22:5, 26:7, 27:2,
27:24, 45:7, 45:8,
77:3, 78:1, 86:18,
89:12, 100:11,
106:9, 106:11,
107:3, 107:14,
107:16, 107:19,
108:5, 108:11,
109:3, 109:12,
130:9, 130:11,
134:17, 135:7,
145:21, 145:24,
148:21, 155:18,
158:15, 159:2,
162:4, 164:17,
168:19, 197:3
**Firearm** [1] - 145:13
**firearms** [88] - 26:2,

26:20, 39:22, 39:24,
41:5, 41:7, 41:10,
41:11, 41:13, 43:14,
43:20, 43:24, 44:4,
45:6, 46:4, 47:18,
48:16, 51:24, 52:5,
66:10, 78:3, 86:17,
86:23, 92:4, 92:5,
92:8, 92:10, 92:13,
92:19, 100:9,
100:17, 103:12,
107:9, 107:15,
108:15, 109:11,
109:19, 109:22,
115:23, 115:25,
116:7, 116:10,
116:12, 116:13,
116:16, 116:18,
116:20, 119:3,
120:2, 127:18,
128:1, 128:22,
128:23, 129:9,
129:13, 130:8,
130:24, 131:13,
133:23, 135:4,
135:9, 161:21,
161:23, 162:2,
162:22, 165:12,
165:17, 165:24,
166:3, 166:11,
168:11, 168:17,
187:5, 187:18,
187:20, 187:22,
187:23, 187:25,
188:5, 188:13,
188:14, 188:24,
189:2, 189:19,
193:18, 193:20,
202:8, 202:11
**Firearms** [3] - 165:11,
168:14, 173:9
**firing** [1] - 146:16
**firmly** [2] - 97:9, 154:9
**first** [47] - 6:2, 22:25,
47:23, 49:18, 60:12,
62:7, 62:25, 69:7,
69:15, 73:12, 83:6,
88:22, 91:12, 92:9,
92:17, 103:16,
105:22, 106:16,
107:8, 108:14,
109:16, 113:7,
116:6, 119:9,
119:10, 119:13,
119:17, 119:23,
120:5, 120:11,
120:21, 124:19,
128:7, 131:8,
134:16, 135:1,
135:21, 136:11,
137:6, 139:17,

141:2, 149:7,
152:17, 165:9,
172:24, 179:21,
185:8
**Five** [1] - 89:9
**FIVE** [2] - 1:17, 4:3
**five** [5] - 13:20, 14:8,
48:23, 127:4, 154:10
**five-year-old** [1] - 14:8
**fix** [1] - 183:9
**flagrantly** [1] - 118:3
**flags** [1] - 147:11
**flimsy** [1] - 186:4
**flip** [1] - 183:7
**fly** [1] - 8:10
**focus** [1] - 39:19
**follow** [7] - 28:21,
28:22, 96:15,
112:17, 132:3,
172:25, 174:11
**follow-up** [2] - 28:21,
28:22
**followed** [1] - 156:23
**followers** [1] - 121:9
**following** [22] - 20:11,
20:20, 52:3, 69:11,
69:22, 85:14, 98:6,
103:15, 105:20,
106:15, 107:6,
108:12, 109:16,
116:5, 156:16,
158:10, 163:7,
168:5, 171:5,
175:13, 193:24
**Following** [6] - 4:22,
38:3, 95:7, 151:10,
151:23, 198:17
**follows** [2] - 52:7, 70:6
**followup** [2] - 32:18,
32:19
**food** [1] - 153:10
**force** [1] - 78:14
**foregoing** [1] - 206:7
**foreperson** [2] -
110:9, 112:21
**forgot** [1] - 173:22
**form** [26] - 26:10,
27:12, 30:19, 41:11,
41:14, 43:20, 82:12,
92:1, 92:3, 95:23,
112:16, 112:17,
112:22, 129:7,
154:3, 159:5,
173:21, 188:7,
188:10, 188:11,
189:5, 190:14,
192:23, 204:22,
204:24
**Form** [22] - 41:9, 43:9,
92:2, 124:23,

128:19, 134:9,
135:12, 137:3,
140:15, 140:19,
141:18, 143:7,
144:11, 149:22,
159:5, 159:24,
160:2, 188:6,
190:22, 191:20,
192:16, 192:22
**formal** [2] - 57:13,
104:7
**format** [1] - 205:4
**Forms** [1] - 159:23
**forms** [18] - 112:18,
132:22, 132:25,
174:1, 174:2, 174:3,
174:7, 178:14,
188:20, 192:18,
203:10, 204:17,
204:20, 205:1,
205:3, 205:8,
205:14, 205:21
**forth** [6] - 7:9, 49:8,
132:12, 145:7,
160:2, 193:15
**forward** [1] - 47:21
**foul** [2] - 170:20,
179:20
**Founding** [1] - 153:19
**Four** [11] - 53:9, 59:22,
75:2, 89:6, 106:8,
107:1, 118:19,
134:6, 148:19,
148:23, 199:12
**four** [9] - 7:8, 118:18,
119:4, 124:6, 126:9,
126:16, 126:17,
134:15, 135:5
**fourth** [6] - 108:19,
109:23, 120:9,
134:24, 135:10,
136:13
**frame** [1] - 172:4
**framed** [1] - 178:5
**franchise** [1] - 165:2
**free** [3] - 82:1, 95:25,
124:17
**freedom** [1] - 181:7
**Friday** [1] - 84:18
**friend** [7] - 78:4,
123:8, 141:15,
144:2, 180:3, 194:10
**friends's** [1] - 132:16
**front** [5] - 9:7, 158:20,
165:9, 179:2, 182:20
**FSC** [1] - 164:17
**fucked** [1] - 124:1
**full** [7] - 71:18, 104:19,
105:14, 129:19,
130:1, 194:4

**full-time** [2] - 129:19,
130:1
**fully** [2] - 110:16,
143:14
**furtherance** [3] - 59:7,
149:11, 150:5
**furthermore** [3] -
41:11, 44:3, 104:21
**furthers** [1] - 104:24
**fusca** [1] - 62:14
**future** [2] - 181:22

## G

**gamesmanship** [1] -
204:7
**gang** [2] - 62:20
**garage** [2] - 10:14,
79:6
**garden** [1] - 185:9
**Gardena** [6] - 132:15,
132:18, 164:24,
166:19, 166:22,
167:11
**general** [3] - 41:21,
124:2, 161:21
**General** [1] - 2:5
**generally** [3] - 36:5,
36:6, 154:24
**gentleman** [4] - 67:20,
67:21, 114:2
**gentlemen** [10] -
152:11, 169:24,
171:20, 180:20,
186:16, 187:1,
187:21, 188:11,
189:17, 197:11
**girlfriend** [8] - 79:3,
79:13, 136:1,
136:18, 136:19,
139:2, 179:9, 184:22
**given** [21] - 21:19,
33:23, 59:11, 59:19,
61:13, 70:12, 72:10,
73:5, 73:9, 73:13,
74:16, 81:18, 83:25,
84:22, 85:14, 85:17,
88:23, 94:21, 99:11,
102:20, 199:4
**glaringly** [1] - 171:6
**glasses** [3] - 23:5,
23:13, 23:17
**goal** [2] - 131:12,
165:18
**gold** [7] - 140:13,
140:18, 141:11,
141:15, 141:19,
143:14, 146:10
**golden** [1] - 143:23

**goodness** [1] - 163:2
**GOVERNMENT** [4] -
3:6, 3:8, 117:21,
186:22
**government** [141] -
29:6, 29:23, 31:9,
31:13, 36:19, 38:22,
40:13, 40:20, 41:21,
42:7, 42:10, 42:13,
43:7, 45:11, 45:13,
45:17, 47:13, 47:23,
49:10, 49:21, 50:2,
52:16, 54:6, 56:13,
56:23, 57:12, 58:23,
59:21, 60:15, 62:2,
62:7, 62:15, 62:23,
63:1, 63:6, 63:8,
63:10, 64:4, 65:6,
66:14, 70:21, 73:11,
73:18, 74:3, 75:21,
76:8, 77:8, 77:17,
80:18, 83:16, 84:18,
91:4, 92:18, 93:6,
93:12, 93:19, 94:2,
94:9, 94:22, 96:24,
97:2, 97:10, 101:21,
103:15, 105:8,
105:20, 106:14,
107:6, 108:12,
109:15, 110:2,
110:5, 112:15,
113:21, 113:23,
115:3, 116:4, 117:5,
117:7, 117:8, 126:1,
130:24, 153:20,
153:22, 154:7,
154:20, 155:11,
155:14, 155:25,
157:9, 157:14,
157:16, 157:18,
159:8, 159:19,
159:23, 160:3,
160:4, 160:6,
160:18, 160:21,
161:17, 162:15,
163:8, 163:14,
166:12, 166:24,
169:6, 169:24,
170:15, 170:22,
171:8, 172:4, 173:1,
173:17, 174:3,
174:5, 178:15,
181:7, 181:21,
182:2, 182:7,
182:12, 185:24,
186:3, 186:11,
190:13, 190:25,
197:12, 198:2,
199:8, 200:16,
200:19, 202:5,
202:24, 203:21,

204:13, 204:23,
205:10
**government's** [30] -
41:15, 44:17, 44:19,
46:13, 46:23, 47:8,
47:20, 59:1, 66:2,
68:20, 73:20, 73:23,
74:16, 76:5, 77:1,
77:14, 89:16,
114:19, 152:16,
155:23, 158:25,
161:8, 164:4, 164:9,
167:19, 168:9,
202:14, 202:16,
202:17, 203:5
**governments** [1] -
174:7
**graduated** [1] - 160:12
**Graham** [2] - 73:1,
88:13
**grant** [2] - 43:5,
201:20
**gravity** [1] - 170:9
**great** [5] - 36:13,
124:17, 148:8,
175:1, 175:9
**greater** [1] - 102:11
**grip** [1] - 181:25
**grips** [2] - 142:18,
146:17
**grounds** [1] - 20:7
**Group** [4] - 2:22,
120:14, 132:24,
202:12
**guarantee** [3] -
163:22, 166:18
**guarantied** [1] -
175:19
**guards** [1] - 4:15
**guess** [3] - 87:1,
169:2, 183:23
**guidance** [1] - 39:17
**guilt** [4] - 43:3, 97:10,
113:13, 175:4,
196:19, 197:7
**guilty** [43] - 52:1,
70:17, 71:10, 87:10,
87:11, 96:22, 96:24,
97:9, 97:19, 97:20,
97:23, 97:24,
100:24, 100:25,
102:1, 102:3,
103:14, 106:14,
107:5, 108:4,
108:10, 109:14,
110:13, 116:3,
130:25, 145:9,
151:3, 154:2,
154:12, 155:1,
155:13, 160:20,

171:11, 186:8,
186:17, 197:18,
197:22, 197:23,
198:1, 198:4
**Gun** [4] - 118:21,
121:14, 123:20,
132:6
**gun** [136] - 6:1, 6:5,
6:20, 8:19, 9:1, 9:3,
9:14, 9:20, 9:24,
27:17, 30:18, 30:20,
31:8, 31:11, 41:9,
41:14, 65:23, 66:8,
66:23, 67:10, 77:14,
78:15, 118:7, 118:8,
118:11, 118:12,
119:6, 120:10,
121:6, 121:13,
121:16, 121:18,
122:5, 122:18,
123:25, 124:2,
124:7, 124:21,
124:22, 124:23,
124:25, 125:4,
125:8, 126:15,
126:20, 128:11,
128:12, 129:19,
131:21, 132:1,
132:9, 134:4, 136:2,
136:10, 136:24,
136:25, 137:15,
137:20, 138:8,
138:15, 138:18,
139:3, 139:5,
139:22, 139:23,
140:6, 140:10,
140:13, 140:17,
140:20, 140:22,
141:17, 141:19,
141:22, 141:23,
142:16, 142:19,
142:23, 143:8,
143:15, 143:21,
144:1, 144:6,
144:10, 144:12,
144:14, 144:20,
144:22, 145:14,
145:18, 145:19,
146:1, 146:16,
146:19, 147:12,
147:25, 148:17,
150:11, 156:10,
156:15, 156:19,
158:3, 158:13,
158:14, 158:23,
164:18, 167:20,
167:21, 169:14,
173:5, 174:23,
179:2, 179:4, 180:2,
180:3, 184:5,
188:10, 191:18,

191:19, 192:1, 192:2, 192:4, 192:6, 192:8, 192:10, 192:11, 192:13, 194:20, 194:24, 195:3, 195:4

**guns** [107] - 7:22, 8:2, 10:1, 10:2, 10:8, 10:9, 10:13, 44:3, 44:6, 44:22, 58:15, 59:8, 61:8, 61:20, 61:24, 62:4, 62:10, 64:2, 66:15, 78:23, 79:4, 118:12, 119:11, 119:12, 119:14, 120:14, 120:16, 120:18, 120:20, 121:2, 121:12, 122:2, 122:14, 122:15, 123:12, 123:18, 123:22, 124:9, 125:15, 125:16, 125:22, 127:22, 127:23, 128:11, 129:3, 129:23, 130:5, 130:14, 131:13, 132:13, 133:3, 133:13, 133:14, 137:19, 139:13, 147:3, 147:23, 148:25, 149:4, 149:18, 149:20, 149:25, 150:4, 150:7, 150:9, 150:12, 150:15, 155:9, 157:6, 157:24, 159:13, 159:21, 162:16, 163:3, 163:10, 168:25, 173:10, 173:11, 173:14, 173:16, 174:14, 174:16, 176:18, 176:20, 176:24, 177:12, 179:25, 180:1, 183:16, 184:1, 184:5, 184:6, 184:10, 184:11, 184:18, 184:24, 187:13, 189:6, 191:25, 193:2, 193:24, 195:5

**gut** [1] - 177:16

**guy** [4] - 14:23, 121:8, 181:17, 184:23

## H

**H-A-R-T** [1] - 5:12

**half** [2] - 38:1, 182:24
**hallmark** [1] - 122:24
**hallmarks** [1] - 121:22
**hallowed** [1] - 177:7
**Hamilton** [9] - 48:21, 73:1, 88:13, 102:13, 119:17, 135:14, 155:4, 191:17, 192:9
**Hanagan** [1] - 2:22
**hand** [4] - 97:21, 104:23, 115:18, 126:10
**handful** [1] - 121:25
**handgun** [5] - 52:13, 130:3, 156:13, 157:3, 174:23
**handguns** [7] - 52:8, 52:10, 152:23, 154:22, 156:7, 161:1, 167:12
**handle** [2] - 16:1, 37:22
**hands** [6] - 116:19, 157:14, 159:13, 162:17, 185:7, 193:2
**hang** [1] - 141:10
**happy** [1] - 67:5
**hard** [3] - 48:20, 170:19, 172:25
**harm** [1] - 59:14
**Hart** [29] - 5:2, 5:12, 5:20, 9:14, 16:8, 24:1, 28:5, 29:12, 34:6, 35:17, 53:8, 53:15, 54:2, 77:24, 82:18, 82:20, 86:14, 100:6, 125:7, 138:12, 141:5, 157:4, 157:16, 159:24, 160:9, 176:5, 183:1, 194:6, 194:19
**HART** [2] - 3:3, 5:17
**hashtag** [1] - 174:22
**hat** [4] - 23:5, 23:8, 23:11, 23:16
**hate** [1] - 129:25
**hats** [1] - 121:20
**Hawthorne** [1] - 2:13
**head** [1] - 4:18
**headed** [1] - 21:8
**heading** [4] - 19:9, 19:23, 21:17, 27:5
**hear** [14] - 43:7, 45:17, 46:1, 54:15, 58:1, 69:4, 99:19, 153:6, 153:12, 158:24, 161:7, 185:20, 202:4, 205:10
**heard** [55] - 4:14,

28:25, 33:3, 37:7, 44:25, 50:10, 56:11, 61:22, 69:17, 72:5, 74:4, 79:8, 83:5, 84:21, 86:13, 86:20, 86:25, 87:19, 88:7, 90:19, 96:2, 98:23, 99:4, 100:5, 100:13, 100:19, 101:13, 101:19, 102:12, 121:20, 125:7, 129:14, 132:17, 134:12, 154:14, 155:3, 156:4, 156:5, 161:6, 163:22, 164:21, 166:23, 167:1, 169:20, 179:21, 189:5, 190:21, 191:14, 193:4, 194:6, 194:19, 196:6, 196:10, 197:11
**hearing** [2] - 55:18, 80:2
**hearsay** [3] - 20:6, 53:24, 56:21
**heartbreakingly** [1] - 181:10
**heavily** [1] - 155:8
**heavy** [1] - 178:2
**heightened** [1] - 40:15
**held** [10] - 4:22, 38:3, 44:10, 95:7, 114:22, 126:20, 151:10, 151:23, 166:20, 198:17
**help** [13] - 32:1, 98:14, 102:23, 103:22, 106:22, 108:8, 131:11, 131:13, 134:9, 137:24, 138:16, 149:10, 172:7
**helped** [7] - 7:17, 104:10, 118:10, 134:21, 137:10, 137:13, 144:17
**helpful** [2] - 43:10, 108:23
**helping** [2] - 109:2, 138:21
**hereby** [1] - 206:7
**hide** [11] - 158:22, 159:17, 162:10, 162:12, 163:25, 168:4, 169:22, 175:3, 175:5, 175:6, 197:8
**hides** [1] - 175:6
**hiding** [1] - 175:1

**high** [1] - 197:19
**highlight** [1] - 194:5
**highlighted** [2] - 129:24, 168:15
**highly** [2] - 155:3, 173:7
**himself** [8] - 79:2, 147:20, 148:14, 156:14, 156:15, 171:5, 180:13, 202:12
**hint** [2] - 61:13, 179:10
**history** [2] - 77:25, 78:5
**hit** [1] - 138:11
**hobby** [2] - 116:19, 126:12
**hold** [3] - 126:15, 151:2, 153:23
**holder** [1] - 130:2
**holder's** [1] - 129:15
**holds** [1] - 156:12
**home** [3] - 12:23, 175:19, 181:8
**honest** [2] - 64:14, 110:24
**honor** [2] - 152:13
**Honor** [146] - 4:10, 5:16, 19:17, 19:20, 20:6, 23:20, 23:23, 29:5, 29:19, 30:3, 30:10, 34:1, 35:13, 36:18, 36:21, 37:1, 37:18, 38:24, 40:1, 40:9, 40:25, 41:3, 41:25, 43:8, 43:19, 44:14, 44:19, 45:20, 46:12, 46:17, 46:20, 47:11, 47:12, 47:25, 48:13, 48:19, 49:25, 50:12, 50:20, 51:7, 51:14, 53:7, 54:8, 54:13, 54:18, 54:21, 55:8, 55:13, 55:23, 57:10, 57:15, 58:5, 59:18, 60:10, 60:14, 60:25, 62:12, 63:5, 64:14, 64:22, 65:19, 67:4, 67:8, 68:9, 68:12, 68:13, 68:17, 69:23, 70:19, 71:21, 72:2, 72:22, 72:23, 73:6, 74:1, 75:6, 75:24, 76:6, 76:18, 77:13, 78:10, 79:20, 80:24, 81:2, 81:17, 82:19, 83:12, 83:20, 84:3, 84:7, 84:16, 85:1, 85:4, 87:6,

87:22, 87:23, 88:3, 88:10, 89:7, 90:18, 91:7, 91:9, 91:10, 93:1, 93:5, 93:21, 94:3, 94:14, 94:19, 94:21, 95:3, 113:20, 113:24, 117:2, 117:11, 117:18, 151:17, 152:9, 171:12, 171:15, 186:23, 189:9, 190:8, 190:17, 191:1, 191:4, 191:13, 195:25, 199:7, 199:18, 199:19, 199:24, 200:1, 200:16, 200:24, 201:8, 201:19, 202:6, 202:23, 204:6, 205:7, 205:12, 205:15, 205:19, 205:23, 205:24
**HONORABLE** [1] - 1:4
**hope** [2] - 101:20, 182:12
**hopefully** [1] - 29:17
**horse** [1] - 143:23
**Houle** [3] - 2:16, 2:17, 152:12
**hour** [9] - 5:6, 38:1, 94:8, 94:9, 94:10, 94:11, 94:24, 117:6, 151:8
**house** [10] - 8:1, 10:9, 13:4, 13:6, 13:10, 61:7, 79:3, 150:8, 175:18, 184:22
**housekeeping** [1] - 5:4
**houses** [1] - 197:4
**housing** [1] - 153:9
**huge** [1] - 178:14
**humble** [1] - 154:1
**hundreds** [2] - 36:2, 173:12
**Hunter** [2] - 15:11, 15:12
**hurts** [1] - 167:1
**hypothetically** [1] - 17:20

## I

**i.e** [6] - 131:12, 134:20, 139:2, 142:18, 143:13, 144:18
**Ibaria** [11] - 72:14,

135:25, 136:7, 136:13, 137:4, 137:15, 137:21, 137:24, 138:8, 138:20, 139:25

**idea** [6] - 37:16, 66:15, 178:8, 179:8, 179:22

**identification** [2] - 159:2, 165:1

**identified** [4] - 65:13, 67:2, 199:3, 200:12

**identify** [10] - 29:10, 63:3, 64:9, 64:13, 64:17, 65:3, 65:7, 67:5, 85:15, 180:5

**identifying** [1] - 26:15

**identities** [1] - 105:15

**ignorance** [8] - 42:11, 42:14, 42:16, 79:14, 79:15, 89:15, 107:23, 154:24

**ignore** [2] - 59:13, 96:16

**Illegal** [1] - 118:20

**illegal** [10] - 9:8, 17:21, 61:10, 65:2, 118:8, 119:2, 119:8, 128:4, 130:17, 150:22

**illegally** [2] - 123:12, 133:23

**image** [3] - 121:17, 142:1, 144:4

**images** [1] - 120:16

**imagine** [2] - 170:9, 195:8

**immediately** [1] - 112:7

**impartial** [3] - 97:14, 97:17, 97:22

**impermissible** [1] - 56:24

**implicated** [1] - 39:16

**implicates** [2] - 56:19, 68:20

**imply** [1] - 67:11

**importance** [1] - 32:16

**important** [13] - 21:13, 28:19, 32:13, 96:16, 100:3, 110:21, 127:9, 153:9, 153:11, 154:13, 171:21, 185:24, 188:7

**impression** [6] - 9:7, 56:10, 65:1, 177:12, 177:16, 179:16

**imprisonment** [1] - 107:13

**improper** [1] - 55:20

**impugn** [1] - 79:14

**inadmissible** [5] - 56:5, 56:24, 58:9, 59:24, 201:11

**inappropriate** [1] - 203:12

**inclined** [1] - 158:11

**include** [3] - 52:13, 105:11, 116:16

**included** [3] - 47:25, 199:2, 199:16

**includes** [1] - 25:24, 111:10, 204:24

**including** [6] - 40:18, 101:17, 113:11, 113:12, 163:10, 189:23

**incompetent** [1] - 156:21

**incriminating** [1] - 196:20

**independently** [1] - 163:13

**INDEX** [1] - 3:1

**indicates** [2] - 200:6

**indicating** [2] - 142:22, 144:5

**indication** [2] - 38:8, 157:23

**indicator** [1] - 197:10

**indicted** [2] - 47:7, 52:24

**indictment** [43] - 47:1, 47:5, 47:9, 48:8, 48:11, 49:5, 49:21, 52:17, 60:16, 60:23, 63:22, 69:19, 70:18, 75:3, 75:23, 81:23, 84:17, 84:18, 84:24, 89:6, 89:23, 92:11, 96:21, 100:25, 101:2, 103:11, 103:19, 104:13, 106:9, 106:19, 107:3, 109:10, 109:25, 110:4, 115:23, 115:25, 116:8, 131:18, 189:6, 190:15, 202:3, 202:7, 202:15

**Indifference** [1] - 77:7

**indifference** [1] - 77:9

**indirect** [1] - 99:5

**individual** [8] - 44:2, 44:5, 44:8, 78:14, 119:14, 127:21, 128:17

**individually** [1] - 43:23

**individuals** [2] -

165:25, 196:17

**induced** [3] - 108:16, 134:19, 137:9

**inextricably** [2] - 190:22, 202:19

**inference** [2] - 70:3, 81:16, 97:6

**inferences** [1] - 93:18

**influenced** [3] - 96:11, 102:8, 112:11

**info** [1] - 129:15

**information** [27] - 11:9, 21:2, 21:18, 26:15, 26:22, 28:18, 28:22, 28:23, 28:24, 29:3, 31:13, 31:20, 32:15, 32:16, 32:20, 33:1, 33:5, 33:10, 33:23, 34:18, 80:2, 111:4, 112:7, 157:2, 157:5, 163:4, 204:2

**informed** [5] - 4:12, 4:19, 51:3, 61:12, 198:14

**infrequent** [1] - 52:4

**initial** [4] - 28:16, 28:17, 84:12, 144:3

**innocence** [5] - 97:1, 154:1, 154:3, 170:18, 186:7

**innocent** [5] - 96:23, 153:25, 155:10, 172:5, 186:14

**innocently** [1] - 67:15

**innocuous** [2] - 67:18, 67:23

**innuendo** [3] - 62:13, 176:3, 186:4

**inside** [1] - 132:19

**Instagram** [29] - 15:21, 15:23, 24:2, 25:15, 120:13, 121:4, 121:5, 121:9, 122:8, 122:20, 122:21, 125:6, 125:11, 132:3, 132:15, 133:17, 136:21, 136:24, 138:9, 138:25, 141:1, 141:2, 143:22, 147:16, 149:16, 174:21, 196:9, 197:5

**instance** [6] - 49:18, 147:15, 147:19, 156:3, 160:1, 165:22

**instances** [1] - 156:10

**Instant** [1] - 26:19

**instead** [5] - 94:23, 117:23, 139:9,

140:7, 182:14

**instruct** [3] - 95:19, 96:3, 191:8

**instructed** [14] - 53:25, 56:6, 83:2, 83:5, 86:14, 98:19, 98:21, 100:6, 119:25, 145:20, 187:7, 202:1, 203:7, 204:1

**instructing** [1] - 82:25

**instruction** [95] - 40:16, 54:10, 54:14, 55:25, 56:21, 57:1, 58:3, 58:16, 59:12, 69:9, 69:15, 69:16, 69:19, 70:20, 71:1, 71:23, 72:8, 72:24, 73:11, 73:13, 73:17, 73:18, 73:20, 73:22, 74:1, 74:13, 75:5, 75:14, 76:5, 76:15, 77:1, 77:8, 77:12, 77:20, 77:22, 79:18, 80:6, 80:8, 80:14, 81:1, 81:3, 81:10, 81:16, 81:22, 81:25, 82:5, 82:17, 83:9, 83:17, 83:21, 83:24, 83:25, 84:13, 85:17, 86:2, 86:9, 86:10, 86:12, 87:21, 88:20, 88:22, 88:24, 89:12, 89:17, 90:4, 90:10, 90:19, 91:2, 91:18, 95:20, 101:11, 106:25, 114:10, 114:12, 114:17, 114:20, 115:6, 115:15, 115:20, 154:14, 187:10, 188:21, 188:22, 190:10, 190:16, 199:3, 200:5, 200:20, 201:10, 201:16, 201:22, 203:3, 204:2

**Instruction** [53] - 69:17, 73:12, 73:18, 74:16, 75:1, 75:16, 75:20, 75:21, 77:2, 77:6, 77:8, 80:16, 81:20, 81:21, 82:4, 82:6, 82:8, 82:15, 83:13, 85:18, 85:22, 85:24, 86:4, 86:7, 87:7, 87:9, 87:14, 87:17, 87:18, 88:4, 88:6, 88:11, 88:12, 88:15, 88:17, 89:1,

89:2, 89:4, 89:8, 89:11, 89:13, 89:16, 89:23, 90:12, 90:22, 90:25, 114:9, 114:11, 115:9, 115:12, 198:21, 199:3, 200:7

**instructions** [49] - 68:25, 69:2, 69:3, 69:8, 71:5, 71:7, 74:7, 76:24, 80:17, 80:18, 81:20, 82:3, 84:5, 84:11, 84:17, 85:11, 85:12, 85:14, 87:13, 87:14, 88:21, 88:23, 90:1, 90:13, 91:3, 91:6, 95:22, 96:1, 96:4, 96:15, 96:17, 101:10, 107:1, 111:2, 112:19, 113:16, 115:5, 115:13, 116:25, 155:7, 187:9, 198:20, 198:22, 198:23, 198:25, 199:1, 199:5, 199:16, 202:2

**insulting** [1] - 178:17

**intend** [3] - 52:18, 137:24, 138:17

**intended** [6] - 98:14, 121:1, 131:13, 137:22, 144:24, 154:25

**intending** [5] - 103:22, 106:22, 131:11, 138:21, 149:9

**intends** [2] - 84:14, 93:12

**intent** [6] - 8:18, 55:5, 104:17, 108:18, 109:4, 134:22

**intention** [6] - 107:18, 107:20, 109:1, 145:23, 146:4, 151:20

**intentionally** [2] - 101:24, 108:8

**interest** [2] - 99:21, 153:17

**interested** [2] - 132:11, 141:15

**interests** [1] - 104:10

**Internet** [2] - 111:11, 111:22

**interpret** [1] - 98:14

**interpretation** [1] - 184:19

**intertwined** [2] - 190:22, 202:19

**interview** [10] - 14:13, 15:2, 15:9, 15:12, 16:3, 22:24, 28:9, 28:21, 58:8, 65:19
**interviewed** [1] - 156:4
**interviews** [1] - 20:11
**intimidated** [1] - 64:15
**introduced** [3] - 41:3, 43:22, 66:13
**introducing** [1] - 59:21
**introduction** [2] - 50:15, 69:9
**introductory** [2] - 46:14, 48:14
**investigate** [1] - 166:25
**investigating** [3] - 17:3, 176:7, 176:12
**investigation** [9] - 15:2, 17:13, 22:12, 27:23, 28:6, 28:19, 54:23, 55:4, 111:23
**investigations** [1] - 17:11
**investigator** [1] - 176:7
**investment** [3] - 124:14, 124:16, 124:18
**invited** [1] - 13:10
**invoices** [1] - 125:8
**involved** [8] - 10:7, 36:2, 36:11, 75:10, 80:3, 88:20, 105:25, 111:14
**involvement** [1] - 157:8
**involves** [2] - 111:4, 153:3
**involving** [2] - 68:14, 68:15
**iota** [1] - 179:10
**irony** [3] - 167:5, 168:9, 169:9
**irrelevant** [5] - 47:14, 49:12, 49:20, 50:1, 52:18
**issue** [33] - 30:17, 40:12, 46:19, 49:24, 50:21, 51:12, 51:13, 51:20, 57:24, 58:22, 58:10, 58:23, 58:24, 59:10, 60:4, 60:19, 68:6, 68:13, 68:14, 71:20, 72:1, 84:16, 91:12, 91:22, 92:25, 93:23, 154:18, 154:19, 187:3, 193:5

**issued** [1] - 51:24
**issues** [13] - 37:21, 39:16, 49:20, 53:12, 68:11, 68:23, 84:15, 91:13, 92:16, 94:18, 95:14, 111:4, 200:4
**item** [1] - 193:17
**items** [5] - 52:4, 73:4, 88:15, 102:22, 184:5
**itself** [4] - 43:20, 105:5, 150:6, 150:9

### J

**jacked** [1] - 124:1
**Jackson** [2] - 170:7, 170:15
**JAMES** [1] - 1:4
**Japanese** [1] - 53:22
**jeopardizes** [1] - 112:3
**Jerafa** [2] - 16:2, 16:3
**job** [10] - 20:16, 82:25, 118:9, 123:7, 152:22, 167:9, 170:5, 170:16, 172:7, 193:11
**join** [6] - 60:11, 60:13, 68:21, 74:2, 105:12, 195:22
**joined** [6] - 71:14, 101:5, 131:10, 132:20, 133:7, 201:25
**joins** [2] - 101:24, 104:21
**joint** [1] - 12:8
**joke** [1] - 4:15
**Jr** [98] - 8:22, 8:25, 13:16, 13:20, 14:3, 14:7, 14:22, 16:5, 22:21, 24:19, 24:20, 24:25, 25:4, 25:5, 25:11, 25:16, 58:16, 59:8, 60:24, 61:2, 61:8, 61:11, 61:18, 61:21, 61:25, 62:2, 76:9, 76:11, 77:16, 78:2, 78:22, 79:1, 79:12, 79:16, 80:1, 80:11, 107:10, 107:11, 134:13, 140:5, 140:7, 140:9, 140:10, 140:14, 141:3, 141:6, 141:11, 141:16, 141:19, 141:22, 142:4, 142:10, 142:17, 142:23,

143:13, 143:20, 143:23, 144:10, 144:12, 144:14, 144:15, 144:19, 144:21, 145:25, 146:10, 146:14, 146:15, 146:19, 146:21, 147:8, 147:12, 147:16, 147:20, 148:1, 148:2, 148:13, 148:16, 148:20, 148:25, 149:14, 149:19, 149:21, 150:11, 150:15, 178:19, 179:8, 179:11, 183:13, 183:18, 183:21, 184:9, 184:11, 184:14, 184:17, 184:21, 185:5
**Jr.'s** [9] - 8:18, 9:20, 17:4, 79:5, 144:5, 148:10, 148:12, 150:4, 150:8
**JUDGE** [1] - 1:4
**Judge** [3] - 154:14, 155:5, 167:23
**judged** [1] - 102:16
**judgment** [1] - 94:16
**judicial** [15] - 29:8, 38:20, 38:21, 42:4, 44:14, 45:4, 47:15, 49:8, 52:21, 93:14, 164:22, 167:23, 169:3, 193:14, 206:12
**July** [18] - 27:16, 27:21, 103:16, 103:17, 121:16, 138:5, 140:21, 142:3, 142:14, 142:20, 142:24, 145:7, 146:1, 194:12, 194:21, 194:25, 195:2
**jump** [4] - 141:6, 141:20, 146:5, 146:6
**June** [3] - 141:2, 141:13, 147:14
**Junior** [2] - 14:23, 178:24
**juror** [8] - 95:21, 112:2, 112:6, 153:2, 153:15, 153:16, 154:6, 185:18
**jurors** [7] - 4:17, 110:12, 110:17, 110:20, 111:5, 112:12

**JURY** [2] - 1:17, 4:3
**jury** [99] - 4:7, 4:21, 4:23, 4:24, 5:14, 7:17, 9:7, 20:1, 22:3, 28:3, 36:22, 37:17, 37:23, 37:24, 38:2, 38:4, 38:5, 43:3, 44:24, 49:9, 52:22, 53:25, 54:11, 54:24, 55:25, 56:6, 56:9, 56:22, 57:5, 58:4, 58:17, 59:13, 61:24, 63:9, 65:2, 66:15, 66:19, 68:8, 68:25, 69:17, 71:8, 74:6, 76:24, 79:21, 80:6, 80:8, 83:2, 84:17, 84:19, 84:23, 85:8, 85:11, 85:12, 86:12, 91:5, 94:20, 95:8, 95:9, 95:12, 95:20, 96:2, 96:5, 102:25, 110:9, 111:16, 113:3, 113:4, 113:11, 113:15, 113:16, 131:19, 151:11, 151:19, 151:24, 151:25, 155:7, 180:18, 186:9, 187:8, 190:21, 191:8, 197:20, 198:7, 198:8, 198:10, 198:18, 198:20, 198:22, 200:21, 201:4, 201:9, 201:16, 202:1, 203:7, 203:13, 204:1
**jury's** [1] - 152:4
**Justice** [9] - 159:11, 163:5, 163:19, 165:13, 168:13, 170:7, 170:15, 173:11
**justice** [5] - 170:5, 170:9, 170:16, 177:8, 177:22

### K

**Karina** [6] - 22:13, 22:15, 22:18, 22:22, 178:19, 179:11
**Katherine** [1] - 2:4
**Katherine.rykken@ usdoj.gov** [1] - 2:8
**keep** [6] - 11:22, 94:24, 135:13, 135:15, 152:24, 168:21

**keeps** [1] - 68:7
**kept** [1] - 188:8
**Kielwasser** [3] - 1:23, 206:15, 206:16
**kind** [10] - 8:18, 67:18, 80:4, 97:6, 104:1, 167:9, 176:8, 178:17, 182:20, 184:23
**king** [1] - 185:22
**knowing** [7] - 42:20, 56:14, 103:21, 105:3, 106:21, 131:10, 149:9
**knowingly** [8] - 77:5, 89:13, 89:14, 107:8, 107:22, 108:2, 145:14, 156:25
**knowledge** [26] - 15:11, 15:17, 42:12, 42:14, 61:14, 61:17, 61:18, 62:8, 62:18, 65:6, 65:10, 67:11, 67:13, 77:19, 79:14, 104:20, 104:23, 105:14, 109:1, 109:6, 109:7, 157:23, 179:11, 190:24, 195:8, 203:9
**known** [5] - 79:23, 160:7, 163:23, 170:25, 184:15
**knows** [17] - 45:11, 107:17, 107:20, 123:24, 145:21, 145:22, 147:2, 157:16, 160:11, 181:13, 186:15, 187:17, 188:4, 196:20, 200:16

### L

**labor** [4] - 116:13, 120:5, 120:12, 126:8
**lack** [4] - 97:15, 184:2, 184:3, 189:14
**ladies** [10] - 152:11, 169:24, 171:19, 180:20, 186:16, 186:25, 187:21, 188:11, 189:17, 197:11
**lady** [1] - 139:1
**language** [6] - 74:6, 74:9, 74:13, 76:19, 76:23, 84:3
**last** [15] - 5:10, 22:16, 38:19, 61:7, 78:13, 78:19, 91:22,

118:16, 122:9, 125:14, 139:14, 148:18, 181:1, 192:11, 196:22
**lastly** [1] - 196:4
**late** [2] - 172:15, 184:22
**law** [183] - 16:12, 16:15, 16:16, 17:2, 17:16, 20:24, 25:22, 40:21, 41:18, 41:20, 41:21, 41:23, 42:1, 42:21, 42:23, 43:12, 43:15, 44:15, 44:18, 44:21, 45:5, 45:10, 45:18, 45:21, 45:23, 46:3, 46:6, 46:8, 47:4, 47:14, 47:16, 47:17, 47:22, 48:16, 48:22, 49:7, 49:18, 50:1, 50:2, 51:21, 52:15, 59:6, 74:11, 76:12, 76:19, 78:18, 80:12, 82:11, 92:6, 93:11, 93:14, 93:15, 95:19, 96:3, 96:8, 96:10, 96:11, 99:10, 111:25, 112:13, 117:23, 117:24, 118:3, 118:5, 118:9, 119:25, 128:5, 128:24, 129:3, 129:11, 130:5, 130:7, 130:19, 147:2, 150:18, 150:20, 150:21, 152:22, 154:23, 154:25, 155:2, 155:12, 155:17, 155:18, 155:21, 156:13, 156:18, 156:22, 156:25, 157:11, 157:20, 157:22, 158:10, 158:12, 158:23, 159:16, 160:11, 160:12, 160:13, 161:5, 161:12, 161:18, 161:20, 161:22, 161:25, 162:1, 162:3, 162:6, 162:18, 163:7, 163:9, 163:12, 164:1, 164:6, 165:3, 165:16, 165:17, 165:19, 165:25, 166:3, 166:5, 166:13, 167:9, 167:16, 167:23, 168:1, 168:5, 168:12, 168:16,

168:23, 168:24, 169:10, 169:11, 169:21, 169:23, 170:3, 170:25, 171:1, 171:5, 173:3, 173:17, 173:19, 173:24, 174:7, 174:12, 174:20, 175:3, 175:12, 175:21, 175:24, 185:15, 187:7, 187:8, 188:3, 188:15, 188:17, 188:18, 189:3, 189:4, 189:8, 190:1, 190:4, 190:18, 190:20, 190:24, 191:16, 193:6, 193:8, 193:9, 193:16, 193:20, 193:24, 195:8, 203:1, 203:3, 203:4, 203:9
**Law** [3] - 2:13, 2:17, 2:22
**law.com** [1] - 2:19
**lawful** [2] - 105:6, 195:18
**laws** [13] - 42:5, 42:19, 155:5, 156:21, 164:20, 164:21, 164:22, 165:20, 165:21, 167:13, 190:2, 203:6
**lawyer** [2] - 177:9, 177:13
**lawyer's** [1] - 98:10
**lawyers** [9] - 95:20, 98:8, 98:9, 98:12, 98:16, 118:15, 179:18, 182:15, 199:15
**lawyers's** [1] - 98:11
**lay** [4] - 55:3, 55:6, 176:13, 201:1
**lays** [1] - 37:15
**lead** [4] - 7:11, 174:11, 176:7, 192:13
**leaders** [1] - 7:14
**leap** [1] - 183:24
**learn** [1] - 111:24
**learning** [2] - 77:18, 78:6
**lease** [3] - 51:23, 52:4, 52:9
**least** [12] - 103:18, 103:21, 103:24, 104:13, 105:23, 106:18, 106:21, 106:24, 108:17,

131:11, 134:20, 189:6
**leave** [5] - 75:25, 152:5, 154:9, 175:18, 195:7
**leaves** [1] - 97:9
**left** [11] - 42:18, 42:19, 56:9, 71:9, 125:3, 132:3, 144:3, 151:13, 159:18, 169:20, 177:15
**legal** [10] - 37:21, 44:21, 44:22, 48:24, 95:14, 122:17, 126:5, 127:9, 164:13, 192:25
**legally** [1] - 31:11
**legitimate** [5] - 148:9, 148:11, 157:20, 188:2, 192:3
**length** [1] - 128:20
**less** [3] - 52:8, 161:14, 206:10
**lessens** [1] - 73:23
**letter** [5] - 165:10, 165:15, 167:1, 182:19, 182:20
**letterhead** [1] - 165:13
**level** [1] - 43:3
**liability** [1] - 167:10
**license** [72] - 39:23, 39:25, 41:7, 41:10, 42:6, 43:2, 43:12, 43:15, 43:21, 44:8, 44:9, 44:10, 44:23, 45:3, 47:7, 51:24, 66:5, 66:25, 86:18, 86:24, 92:5, 92:9, 92:13, 92:15, 92:20, 100:9, 100:17, 103:12, 115:23, 115:25, 116:10, 119:10, 119:14, 119:16, 119:19, 119:20, 119:22, 119:23, 127:19, 127:21, 127:24, 128:8, 128:11, 128:23, 129:4, 129:10, 129:23, 130:5, 130:24, 131:4, 152:24, 164:25, 167:21, 168:11, 169:4, 187:6, 187:15, 187:18, 187:20, 187:22, 187:23, 187:25, 188:3, 188:4, 188:15, 189:2, 189:20,

191:25, 192:21, 196:2, 202:9
**licensed** [17] - 43:23, 45:8, 45:11, 109:19, 109:21, 128:10, 130:10, 135:7, 135:8, 135:23, 162:4, 162:8, 168:1, 168:22, 169:1, 169:14, 195:10
**licensee** [3] - 26:2, 41:5, 129:13
**licensees** [1] - 109:11
**licensing** [9] - 41:17, 92:23, 116:24, 127:13, 127:14, 130:20, 162:8, 200:20, 203:4
**lie** [3] - 177:2, 178:6, 183:8
**lied** [2] - 177:4, 182:3
**life** [5] - 14:7, 171:4, 181:20, 185:7, 186:14
**light** [3] - 54:9, 54:10, 99:24
**limit** [4] - 48:23, 60:2, 60:19, 203:25
**limitation** [12] - 45:9, 45:18, 45:22, 46:9, 46:24, 47:24, 49:12, 49:18, 52:11, 52:22, 163:21, 163:23
**limitations** [1] - 56:14
**limited** [13] - 70:21, 82:25, 83:6, 86:15, 87:3, 98:20, 98:22, 100:7, 100:21, 200:10, 200:15, 201:23, 204:1
**limiting** [5] - 54:14, 56:21, 57:1, 58:16, 200:5
**line** [12] - 7:21, 12:18, 49:5, 120:23, 127:6, 127:17, 139:14, 152:22, 167:18, 167:20, 168:10, 169:13
**lines** [4] - 34:13, 34:14, 34:15, 34:24
**link** [1] - 56:23
**linked** [1] - 66:3
**linking** [2] - 22:13, 79:9
**liquor** [6] - 195:9, 195:10, 195:11, 195:13, 195:14
**lisa** [1] - 2:16
**Lisa** [1] - 152:12

lisa@houle [1] - 2:19
**lisa@houle-law.com** [1] - 2:19
**list** [5] - 10:18, 90:16, 136:10, 173:13, 199:7
**listed** [6] - 27:12, 46:13, 52:4, 149:21, 199:8, 202:11
**listen** [4] - 111:19, 172:14, 172:15, 176:14
**listened** [2] - 110:17, 114:16
**lists** [2] - 70:15, 75:23
**litigate** [2] - 190:10, 200:18
**litigated** [1] - 200:22
**litigation** [2] - 40:12, 202:17
**live** [2] - 155:3, 155:8
**lived** [1] - 79:3
**livelihood** [6] - 92:5, 116:15, 120:7, 128:23, 129:10, 188:14
**lives** [1] - 184:21
**Livin** [3] - 141:5, 141:11, 143:23
**local** [2] - 155:5, 165:18
**located** - 132:18
**locations** [1] - 105:15
**log** [1] - 30:25
**LOL** [3] - 139:2, 139:16, 142:16
**look** [34] - 19:13, 24:25, 30:25, 60:4, 71:3, 95:12, 122:21, 124:2, 129:8, 138:1, 140:16, 148:5, 158:12, 158:14, 160:6, 160:21, 161:16, 164:8, 164:12, 166:7, 167:25, 168:15, 169:3, 173:20, 177:6, 177:25, 178:9, 178:13, 180:15, 181:16, 196:13, 196:14, 199:15, 204:17
**looked** [11] - 4:15, 13:23, 17:3, 23:3, 24:14, 53:1, 91:25, 92:1, 120:1, 125:8, 183:19
**looking** [10] - 35:3, 45:4, 49:1, 49:17, 52:18, 92:7, 138:10,

161:18, 174:22,
182:7
**looks** [7] - 16:16,
23:16, 52:11, 69:8,
138:12, 180:16
**Los** [5] - 1:17, 1:24,
2:6, 2:23, 165:14
**losing** [1] - 179:19
**loud** [1] - 163:6
**loudly** [1] - 165:5
**love** [1] - 177:9
**lumbar** [1] - 178:2
**lunch** [2] - 5:14, 37:25
**lying** [2] - 183:11,
183:12

## M

**mail** [6] - 111:11,
122:10, 129:13,
129:17, 129:18,
131:20
**mailed** [1] - 182:21
**mails** [1] - 197:4
**maintain** [2] - 109:20,
135:8
**maintained** [1] -
120:13
**majority** [1] - 178:14
**malfeasance** [1] -
177:4
**man** [10] - 67:10,
67:11, 67:13,
139:10, 164:16,
171:3, 172:5, 184:4,
186:14
**Manhattan** [1] - 2:18
**manipulation** [1] -
180:18
**manner** [2] - 99:20,
203:22
**manufacturer** [1] -
191:20
**map** [1] - 176:15
**Maravilla** [12] - 6:25,
9:24, 10:4, 15:6,
15:18, 15:23, 58:15,
61:23, 62:4, 72:17,
107:9, 148:20
**March** [2] - 58:21,
130:13
**Mark** [1] - 19:6
**marked** [3] - 29:7,
81:11, 82:5
**market** [1] - 184:7
**marketing** [2] -
120:17, 121:19
**markup** [5] - 125:4,
125:5, 125:13,

176:18, 195:4
**married** [2] - 182:5
**master** [1] - 79:6
**matched** [1] - 12:14
**material** [3] - 103:7,
103:9, 121:19
**materials** [2] - 111:23,
120:17
**math** [1] - 173:23
**matter** [13] - 5:6,
36:21, 40:19, 84:22,
96:19, 104:4,
111:17, 140:8,
155:1, 158:18,
163:13, 169:4, 206:9
**matters** [3] - 81:15,
104:9, 198:19
**mean** [15] - 32:12,
35:2, 47:13, 48:24,
55:10, 57:21, 67:19,
114:23, 119:24,
131:25, 160:20,
173:13, 178:23,
179:1, 187:8
**meaning** [5] - 14:24,
25:22, 41:21, 134:8,
154:9
**means** [18] - 41:12,
52:7, 52:9, 74:8,
107:14, 108:8,
111:11, 116:11,
138:13, 145:17,
172:22, 177:19,
188:24, 194:16,
202:13, 203:3,
203:11, 203:16
**meant** [2] - 127:20,
128:11
**measures** [1] - 179:19
**meat** [1] - 179:2
**media** [2] - 111:14,
111:20
**meet** [7] - 13:4, 15:6,
15:13, 15:17, 21:13,
24:20, 143:3
**meetings** [1] - 28:21
**member** [8] - 103:20,
104:16, 105:13,
106:20, 110:9,
113:3, 147:24, 149:9
**members** [8] - 69:17,
96:2, 103:23,
105:12, 105:16,
106:23, 111:13,
149:10
**memory** [5] - 32:1,
98:16, 99:20,
112:10, 112:11
**mentally** [1] - 156:21
**mention** [1] - 84:17

**mentioned** [3] - 155:6,
194:2, 194:3
**mere** [1] - 166:10
**merely** [5] - 55:2, 83:1,
105:2, 105:3, 108:21
**merits** [1] - 111:9
**message** [6] - 7:9,
79:13, 123:8, 141:2,
142:15, 143:18
**messages** [27] - 6:2,
22:12, 25:15,
122:13, 133:18,
141:1, 141:23,
142:25, 144:13,
144:25, 145:7,
146:3, 147:16,
149:15, 150:3,
150:5, 178:18,
183:19, 194:7,
194:8, 195:2,
196:10, 196:17,
196:18, 196:21
**messaging** [1] -
111:11
**messing** [1] - 181:5
**messy** [1] - 184:21
**met** [4] - 14:3, 15:4,
23:15, 104:9
**method** [1] - 42:11
**methodical** [1] -
170:11
**Mexico** [1] - 139:15
**Michael** [1] - 2:22
**microphone** [1] -
90:17
**might** [4] - 16:14,
106:2, 176:10,
182:16
**MIGUEL** [1] - 1:12
**mind** [3] - 114:23,
152:24, 168:21
**mine** [1] - 194:10
**minimum** [1] - 162:9
**minor** [1] - 106:6
**minute** [7] - 39:7,
113:18, 113:24,
156:4, 156:5,
160:23, 171:15
**minutes** [13] - 94:5,
94:22, 94:23, 95:4,
95:6, 143:2, 151:7,
151:12, 151:13,
156:4, 161:9, 186:21
**mirrors** [1] - 160:24
**misconduct** [4] -
64:24, 68:6, 201:7,
204:6
**misdemeanor** [1] -
52:1
**misdirect** [3] - 156:1,

167:19, 170:12
**misinformation** [1] -
186:13
**mislead** [5] - 68:7,
156:2, 172:9,
179:15, 186:13
**misleading** [6] -
172:18, 176:3,
178:6, 179:6, 179:7,
186:4
**misled** [2] - 163:16,
164:3
**missing** [3] - 21:15,
69:7, 69:8
**mission** [1] - 67:17
**misspoke** [1] - 91:1
**mistake** [5] - 89:15,
107:23, 145:3
**mistrial** [13] - 39:13,
50:16, 57:10, 57:14,
64:23, 91:13, 91:16,
112:4, 190:14,
191:4, 201:20,
204:9, 204:11
**Model** [2] - 69:16,
75:21
**model** [16] - 72:8,
74:6, 74:13, 76:5,
80:18, 81:5, 86:11,
87:13, 88:23, 88:24,
89:11, 89:17,
126:23, 127:3,
141:17, 204:2
**models** [1] - 173:13
**modification** [1] - 75:4
**modifications** [3] -
69:5, 85:15, 85:16
**modified** [3] - 75:9,
83:3, 88:6
**moment** [8] - 23:23,
29:9, 46:16, 48:7,
51:16, 113:20,
202:21, 205:11
**Monday** [4] - 142:6,
150:1, 150:2, 181:4
**money** [17] - 123:11,
123:13, 124:9,
131:21, 137:17,
139:23, 148:4,
150:21, 161:2,
175:4, 176:25,
178:9, 181:23,
184:3, 184:23,
193:21
**month** [4] - 125:1,
125:3, 145:8, 161:14
**months** [1] - 139:8
**moreover** [3] - 61:11,

61:19, 126:22
**morning** [9] - 4:12,
5:8, 5:20, 5:21, 74:1,
74:21, 156:17,
175:14, 198:24
**most** [6] - 153:17,
171:21, 171:24,
171:25, 185:24,
196:20
**mother** [1] - 79:3
**motion** [27] - 36:25,
37:2, 37:6, 37:8,
38:16, 39:13, 39:16,
43:5, 50:9, 50:13,
50:14, 50:18, 53:22,
57:13, 58:24, 60:11,
62:16, 64:23, 91:13,
91:16, 91:23, 93:18,
93:20, 94:15, 94:17,
204:10
**motions** [4] - 50:10,
57:17, 57:18, 202:16
**motivation** [1] - 63:10
**motives** [1] - 186:12
**mouth** [1] - 56:3
**mouthful** [1] - 135:11
**move** [15] - 22:11,
29:6, 29:24, 47:21,
53:5, 60:9, 60:22,
68:25, 69:12, 71:25,
135:1, 135:24,
178:2, 191:4, 195:24
**moved** [1] - 72:14
**moving** [6] - 76:12,
122:8, 123:10,
129:5, 178:1, 190:14
**MR** [152] - 3:4, 3:5,
3:6, 3:7, 4:10, 5:16,
5:19, 14:4, 14:19,
19:16, 19:20, 19:21,
20:5, 20:12, 23:19,
28:1, 29:19, 29:20,
30:1, 30:3, 30:8,
30:10, 30:12, 35:13,
35:16, 36:14, 36:21,
37:1, 37:7, 37:11,
37:15, 37:18, 37:19,
38:12, 38:15, 38:18,
39:2, 40:1, 40:5,
40:9, 41:25, 44:12,
44:14, 45:4, 46:20,
46:22, 48:7, 49:4,
49:25, 50:12, 50:20,
51:7, 51:13, 51:17,
52:14, 53:7, 56:2,
57:15, 57:19, 59:18,
60:10, 60:17, 60:22,
64:18, 64:22, 67:8,
68:12, 68:19, 69:24,
70:19, 71:1, 71:21,

72:1, 72:9, 72:22, 72:23, 73:6, 73:25, 74:2, 74:20, 75:6, 75:13, 75:17, 76:6, 76:15, 78:10, 78:12, 79:20, 80:24, 81:17, 82:19, 82:22, 83:4, 83:10, 83:15, 83:18, 84:2, 84:6, 84:8, 85:1, 85:4, 87:6, 87:22, 87:23, 88:1, 88:3, 88:10, 89:7, 91:9, 91:10, 93:1, 93:5, 93:21, 94:14, 94:19, 95:3, 95:5, 113:20, 113:23, 114:8, 114:16, 114:19, 114:23, 115:7, 115:11, 115:17, 117:2, 151:20, 152:9, 152:11, 171:15, 171:18, 171:19, 189:9, 189:14, 190:5, 190:8, 191:1, 191:4, 191:8, 195:19, 195:22, 199:18, 199:19, 199:23, 200:1, 203:16, 203:20, 205:6, 205:12, 205:15, 205:17
**MS** [101] - 3:4, 3:5, 14:16, 20:6, 23:23, 23:25, 28:4, 29:5, 29:11, 29:23, 30:6, 34:1, 34:5, 35:11, 36:18, 38:24, 41:3, 43:8, 43:19, 44:19, 45:20, 46:3, 46:11, 47:12, 47:24, 48:13, 48:19, 49:2, 54:8, 54:13, 54:18, 54:21, 55:2, 55:8, 55:13, 55:21, 55:23, 57:21, 57:25, 58:5, 63:5, 63:13, 63:17, 63:19, 63:24, 64:2, 64:10, 64:14, 65:9, 65:12, 65:18, 67:4, 69:23, 74:5, 75:24, 76:18, 77:13, 81:2, 81:6, 83:20, 84:16, 90:15, 90:18, 91:7, 93:8, 93:11, 94:3, 94:7, 94:12, 94:21, 94:25, 113:18, 114:5, 114:12, 114:17, 114:21, 115:2, 115:4, 115:8, 115:16, 117:4,

117:11, 117:18, 117:20, 117:22, 151:15, 151:17, 186:23, 186:25, 189:17, 190:17, 191:13, 195:25, 199:7, 199:14, 202:6, 202:23, 205:11, 205:19, 205:23, 205:24
**multiple** [5] - 16:24, 54:22, 71:24, 127:3, 187:19
**murder** [3] - 154:24, 155:2, 173:5
**must** [25] - 71:14, 96:10, 96:11, 96:15, 98:22, 101:5, 103:15, 104:12, 106:14, 107:6, 108:12, 108:25, 109:15, 110:13, 110:14, 111:1, 111:3, 111:16, 116:4, 130:9, 166:11, 168:22, 184:15, 199:10, 200:17

### N

**name** [5] - 5:11, 11:17, 22:16, 35:3, 73:1
**named** [1] - 53:19
**names** [2] - 88:8, 105:15
**narcotics** [1] - 61:9
**Narrative** [2] - 19:10, 19:23
**narrow** [1] - 92:25
**National** [1] - 26:19
**nature** [3] - 61:13, 62:14, 201:7
**NCIS** [2] - 159:11, 163:5
**near** [1] - 110:4
**nearing** [1] - 145:11
**necessarily** [1] - 100:2
**necessary** [9] - 50:22, 90:23, 93:12, 93:16, 104:7, 105:12, 110:2, 110:5, 113:1
**need** [25] - 33:22, 39:4, 41:9, 42:6, 43:21, 46:21, 47:22, 48:8, 68:24, 82:20, 83:4, 94:1, 113:16, 120:3, 127:14, 131:22, 139:4,

139:14, 149:2, 161:16, 162:8, 168:25, 178:2, 187:22, 199:21
**needed** [4] - 39:2, 44:9, 128:10, 147:24
**needs** [3] - 155:14, 195:10, 198:9
**nefarious** [1] - 9:8
**negotiated** [1] - 122:14
**nervous** [1] - 181:3
**never** [9] - 8:2, 9:13, 9:16, 10:22, 11:14, 12:4, 12:19, 15:4, 23:15, 31:19, 33:3, 57:9, 60:20, 61:22, 63:3, 78:20, 79:8, 156:8, 161:2, 176:20, 179:7, 180:7, 180:10, 183:1, 190:8, 190:9, 200:2, 200:22
**new** [10] - 28:22, 28:24, 32:25, 33:5, 33:23, 122:11, 122:17, 124:7, 199:13, 199:16
**news** [1] - 111:19
**next** [26] - 8:4, 29:1, 36:17, 70:4, 70:16, 72:4, 73:14, 73:17, 75:1, 75:16, 75:20, 77:5, 77:7, 81:10, 82:6, 82:10, 85:25, 86:9, 87:15, 88:5, 118:14, 132:5, 142:6, 142:23, 176:21, 193:25
**NICKS** [1] - 156:16
**NICS** [7] - 26:16, 26:18, 27:3, 27:6, 30:14, 30:15, 31:6
**night** [2] - 38:19, 122:9
**nine** [2] - 120:15, 150:7
**Ninth** [6] - 41:18, 55:9, 74:6, 74:12, 86:11, 203:2
**non** [2] - 165:25, 166:3
**non-law** [2] - 165:25, 166:3
**none** [13] - 62:5, 62:11, 62:17, 99:16, 153:6, 159:13, 166:16, 174:15, 179:9, 180:23, 183:18, 185:1

Noon [1] - 85:7
**noon** [1] - 5:6
**Norman's** [2] - 174:10
**North** [1] - 2:6
**Norwalk** [2] - 181:16, 181:18
**note** [2] - 90:5, 113:1
**noted** [2] - 93:14, 199:9
**notes** [16] - 21:8, 33:9, 33:12, 33:13, 33:18, 60:25, 62:24, 63:2, 82:9, 95:24, 112:8, 112:9, 112:10, 112:11, 112:12
**nothing** [18] - 10:16, 23:19, 32:15, 36:14, 53:18, 61:3, 80:5, 157:17, 158:4, 161:10, 163:6, 164:2, 164:13, 164:14, 168:20, 169:22, 180:14, 180:22
**notice** [22] - 29:4, 29:8, 38:21, 42:4, 44:15, 45:5, 47:15, 49:8, 52:21, 93:14, 164:22, 167:24, 169:3, 177:13, 183:10, 189:14, 189:15, 190:9, 191:1, 193:14, 200:17, 203:24
**noticed** [1] - 152:7
**notification** [2] - 138:13, 138:14
**notified** [1] - 84:20
**notifies** [1] - 43:11
**notify** [1] - 112:7
**NOVEMBER** [2] - 1:18, 4:1
**number** [26] - 6:8, 6:20, 6:21, 16:22, 16:25, 27:6, 27:8, 27:9, 45:10, 45:19, 46:4, 46:9, 48:18, 51:21, 52:10, 66:1, 75:18, 100:2, 140:21, 142:1, 165:1, 165:2, 173:13, 173:22, 192:10, 194:23
**numbered** [2] - 114:15, 115:13
**numbers** [4] - 11:18, 19:24, 125:2, 177:13
**numerals** [1] - 19:24
**numerical** [1] - 60:19
**numerically** [1] -

113:11
**Nuremberg** [1] - 170:8

### O

**o'clock** [3] - 37:24, 198:7
**oath** [8] - 5:9, 96:14, 117:23, 128:5, 150:20, 175:13, 175:14, 177:11
**object** [9] - 84:2, 104:14, 104:18, 104:25, 149:9, 189:9, 195:19, 202:9, 202:13
**objected** [5] - 73:20, 74:19, 76:4, 80:20, 195:20
**objection** [17] - 14:16, 20:6, 28:1, 29:18, 38:25, 80:15, 83:19, 84:21, 189:11, 190:5, 191:3, 191:11, 195:19, 195:23, 200:23, 201:6, 201:24
**objections** [6] - 69:5, 74:18, 80:21, 98:8, 201:10, 204:5
**objective** [2] - 116:14, 120:7
**objects** [5] - 103:21, 105:23, 106:21, 131:11, 202:10
**obligation** [1] - 153:23
**observed** [1] - 66:12
**obvious** [3] - 171:6, 196:25, 197:6
**obviously** [6] - 8:9, 12:17, 62:15, 74:24, 138:21, 178:25
**occasional** [2] - 116:17, 126:11
**occasionally** [1] - 126:13
**occasions** [1] - 201:23
**occurred** [7] - 51:2, 131:22, 133:11, 137:2, 137:7, 138:7, 139:25
**occurs** [3] - 45:7, 131:17, 162:3
**October** [8] - 18:23, 20:3, 20:5, 32:19, 33:12, 33:14, 127:4, 182:22
**OF** [5] - 1:2, 1:8, 2:3,

2:10, 2:20
**off-roster** [34] - 44:4, 45:6, 120:20, 121:2, 121:12, 122:2, 123:15, 123:18, 123:22, 124:8, 127:18, 127:23, 127:25, 128:15, 130:7, 132:9, 132:13, 152:23, 154:22, 156:6, 159:21, 161:1, 161:21, 161:23, 162:2, 163:10, 165:24, 166:3, 167:21, 168:17, 168:25, 193:18, 193:20, 202:11
**offense** [6] - 92:8, 101:1, 127:7, 135:5, 145:13, 182:12
**offenses** [5] - 81:23, 89:24, 109:25, 110:3, 110:5
**offer** [3] - 55:1, 55:2, 55:10
**offered** [7] - 56:8, 58:3, 63:1, 65:16, 71:6, 80:18, 92:1
**offering** [1] - 38:9
**office** [4] - 19:2, 33:13, 38:20, 158:21
**Office** [1] - 2:5
**Officer** [111] - 14:14, 16:4, 37:9, 38:13, 38:18, 39:18, 39:19, 39:20, 40:2, 40:5, 40:7, 40:13, 40:20, 40:24, 42:13, 42:20, 42:22, 50:4, 50:25, 51:1, 51:3, 51:5, 51:9, 53:15, 53:17, 53:19, 53:24, 54:1, 54:2, 54:3, 56:3, 56:4, 56:5, 56:6, 56:11, 56:12, 56:16, 56:25, 57:5, 57:6, 59:22, 59:24, 63:2, 65:8, 68:20, 76:16, 78:13, 80:19, 84:8, 91:23, 93:4, 95:5, 152:13, 152:18, 154:12, 154:17, 154:19, 154:21, 155:3, 155:14, 155:20, 156:3, 156:6, 156:11, 156:17, 157:3, 157:11, 157:18, 157:21, 157:22,

158:2, 158:5, 158:8, 158:11, 158:18, 159:9, 159:14, 159:20, 160:22, 160:25, 161:4, 161:11, 162:7, 162:9, 162:14, 162:24, 163:15, 163:23, 164:23, 166:1, 166:14, 166:17, 166:25, 167:8, 168:2, 169:7, 169:15, 169:16, 169:20, 169:25, 170:2, 170:24, 171:10, 200:13, 201:4, 201:8, 201:20, 204:7
**officer** [25] - 16:8, 16:9, 17:17, 17:20, 25:19, 38:12, 44:6, 45:2, 118:2, 129:20, 130:1, 147:2, 160:7, 160:13, 163:21, 164:15, 164:23, 164:24, 166:19, 167:9, 167:10, 169:17, 170:25, 176:7, 176:12
**officer's** [1] - 47:19
**officers** [22] - 17:8, 17:9, 47:16, 53:22, 64:16, 114:3, 128:5, 150:20, 161:23, 163:10, 165:16, 165:19, 165:23, 166:10, 168:24, 193:5, 193:8, 193:11, 193:18, 193:20, 193:23
**officers'** [1] - 93:13
**official** [7] - 130:7, 161:24, 163:11, 168:16, 193:19, 193:22, 206:16
**Official** [1] - 1:23
**often** [1] - 45:23
**old** [7] - 13:20, 14:8, 123:8, 139:1, 141:14, 177:14, 195:12
**omissions** [1] - 107:25
**omit** [1] - 75:25
**ON** [3] - 2:3, 2:10, 2:20
**once** [7] - 5:8, 33:13, 94:4, 124:1, 143:10, 180:10, 182:6
**one** [159] - 4:14, 4:16, 6:25, 7:13, 11:5,

13:16, 13:22, 14:5, 16:5, 21:21, 23:23, 29:9, 39:6, 40:18, 43:25, 44:10, 44:20, 48:1, 48:7, 51:16, 52:3, 52:13, 52:16, 53:9, 56:22, 58:12, 62:10, 63:14, 63:25, 65:6, 65:11, 65:22, 66:8, 68:2, 70:22, 71:13, 75:6, 75:13, 80:17, 84:14, 85:13, 87:16, 90:15, 91:12, 92:16, 93:8, 97:13, 99:6, 101:3, 101:23, 101:24, 103:18, 103:21, 103:23, 103:24, 104:3, 104:11, 104:13, 104:16, 104:21, 104:23, 105:2, 105:9, 105:13, 105:22, 105:23, 106:18, 106:21, 106:23, 106:24, 107:13, 107:19, 108:17, 110:8, 113:2, 113:18, 113:20, 113:24, 117:8, 117:13, 120:3, 120:14, 120:23, 124:22, 125:4, 126:20, 126:21, 127:17, 127:19, 129:17, 131:11, 131:14, 131:15, 131:22, 132:5, 132:21, 132:25, 133:10, 133:11, 133:13, 133:17, 133:19, 134:9, 134:13, 134:20, 136:2, 139:4, 141:11, 141:16, 143:14, 145:24, 146:10, 146:12, 148:2, 149:5, 149:10, 149:11, 150:9, 152:18, 156:4, 156:5, 157:4, 159:7, 160:23, 162:11, 163:1, 168:3, 170:13, 171:21, 172:24, 173:25, 175:20, 176:8, 178:3, 178:4, 178:7, 180:1, 181:4, 182:12, 185:14, 185:23, 188:20, 192:1, 193:5, 195:4,

202:10, 202:12, 202:21, 203:11, 203:15, 205:1, 205:2, 205:7, 205:11
**One** [14] - 40:2, 54:19, 55:16, 58:18, 59:16, 63:17, 66:22, 103:10, 107:1, 118:19, 118:25, 131:2, 195:5, 202:7
**ones** [8] - 93:1, 122:11, 122:22, 123:22, 124:11, 142:9, 170:20
**ongoing** [2] - 174:19, 201:18
**online** [1] - 142:16
**Ontario** [2] - 121:14, 132:6
**open** [8] - 37:20, 113:5, 115:19, 174:24, 191:10, 196:6, 197:1, 197:6
**Open** [1] - 85:8
**opened** [1] - 128:14
**opening** [9] - 94:6, 94:7, 94:10, 98:13, 117:6, 152:17, 155:6, 167:8, 183:14
**openly** [2] - 162:10, 165:4
**operate** [1] - 165:4
**operated** [2] - 128:9, 175:11
**operating** [3] - 44:5, 122:24, 196:6
**operations** [1] - 164:13
**opinion** [12] - 55:3, 55:6, 55:10, 56:10, 72:25, 102:14, 102:16, 102:20, 110:18, 154:1, 201:1
**opinions** [2] - 96:12, 102:13
**opportunities** [1] - 117:7
**opportunity** [10] - 39:15, 57:13, 84:12, 84:14, 95:18, 99:18, 109:8, 112:2, 117:8, 190:9
**opposed** [3] - 13:24, 14:7, 165:7
**opposite** [1] - 175:10
**opposition** [3] - 58:24, 85:4, 202:16
**option** [1] - 191:7
**order** [35] - 17:22, 21:13, 50:15, 62:10,

67:9, 70:4, 73:14, 78:15, 78:16, 81:10, 82:10, 88:5, 102:23, 103:13, 106:13, 107:5, 109:14, 115:14, 116:3, 131:6, 131:23, 153:6, 172:4, 172:9, 172:19, 174:8, 174:11, 174:12, 174:17, 176:3, 181:24, 183:7, 183:8, 198:25, 199:5
**ordered** [1] - 111:17
**orders** [3] - 201:12, 201:15, 204:8
**original** [2] - 20:23, 22:8
**originally** [3] - 14:14, 32:22, 122:5
**originators** [1] - 104:23
**Oscar** [17] - 8:18, 10:3, 13:16, 13:19, 14:7, 14:20, 14:22, 15:2, 15:4, 15:13, 15:21, 17:3, 24:19, 24:20, 27:20, 61:24, 107:9
**Otero** [3] - 154:14, 155:5, 167:23
**OTERO** [1] - 1:4
**others'** [1] - 86:21
**others's** [1] - 100:14
**otherwise** [5] - 47:2, 49:14, 113:12, 113:14, 198:8
**outcome** [1] - 99:21
**Outdoorsman** [2] - 135:19, 137:3, 137:19
**outset** [1] - 121:1
**outside** [9] - 36:22, 38:3, 66:11, 79:22, 112:6, 151:10, 158:21, 195:11, 198:17
**overall** [1] - 105:18
**overly** [1] - 112:11
**overruled** [3] - 14:17, 20:8, 189:11
**overt** [14] - 103:24, 105:5, 105:9, 106:24, 131:15, 131:17, 131:19, 131:22, 133:10, 133:18, 133:19, 149:11, 150:6, 150:9
**owe** [1] - 139:7
**own** [12] - 17:17,

21:17, 79:12,
110:23, 111:24,
112:9, 128:3,
128:17, 136:20,
146:1, 173:10, 181:7
owned [2] - 44:5,
181:6
owner [2] - 78:4,
192:11
ownership [1] - 79:12

**P**

packet [1] - 74:17
PAGE [1] - 3:2
page [26] - 8:13,
18:14, 18:17, 24:5,
26:9, 26:12, 27:11,
27:14, 34:7, 34:12,
34:15, 34:17, 34:22,
48:13, 49:5, 69:21,
71:21, 115:11,
120:15, 122:3,
122:21, 125:2,
164:9, 165:10, 168:8
pages [2] - 34:13,
194:5
paid [4] - 124:12,
124:21, 138:5
paper [11] - 148:7,
191:15, 191:18,
191:19, 191:22,
192:3, 192:5,
192:12, 192:15,
192:19, 192:24
papers [12] - 8:19, 9:1,
9:3, 9:20, 9:24,
76:13, 147:18,
178:22, 178:23,
178:25, 179:3, 179:4
paperwork [21] - 6:15,
6:21, 6:23, 8:14,
9:15, 34:20, 35:9,
121:13, 131:21,
136:19, 138:20,
139:23, 139:24,
141:24, 145:2,
147:13, 147:20,
148:6, 148:10,
148:12, 192:7
paragraph [4] - 34:25,
48:14, 83:7, 165:23
parallel [1] - 84:3
parallels [1] - 70:22
paraphrase [1] - 32:25
paraphrasing [2] -
87:12, 170:14
parent [3] - 139:1,
147:4, 181:11

parents [1] - 153:4
parents' [1] - 184:22
parked [2] - 66:11,
158:21
parking [2] - 138:6,
143:6
part [37] - 7:16, 9:8,
17:10, 18:1, 18:14,
20:16, 21:3, 26:6,
33:24, 36:8, 36:11,
47:15, 48:17, 51:23,
56:7, 58:13, 60:20,
64:5, 64:6, 71:18,
78:19, 79:15, 80:21,
99:16, 116:19,
126:11, 129:24,
135:1, 136:11,
154:13, 161:10,
163:24, 168:21,
171:24, 173:1,
204:13
participants [1] -
109:5
participate [1] -
105:19
participating [1] -
104:17
participation [1] -
106:6
particular [12] - 27:15,
43:11, 47:17, 56:15,
67:3, 67:9, 73:21,
74:7, 74:8, 104:15,
135:5, 181:5
particularly [1] - 153:2
parties [12] - 47:6,
50:13, 56:15, 98:3,
112:1, 114:8, 152:6,
152:7, 161:23,
163:9, 199:1, 205:5
partner [5] - 78:4,
175:5, 194:14,
194:17
partnering [1] - 174:9
partnership [1] -
104:2
parts [2] - 62:3,
172:23
party [36] - 17:21,
26:1, 42:5, 44:1,
44:15, 44:20, 45:6,
45:14, 45:24, 46:5,
47:4, 47:5, 48:18,
48:23, 49:6, 52:15,
52:23, 90:14, 112:2,
122:18, 156:11,
156:15, 159:15,
159:21, 161:1,
161:13, 162:2,
162:3, 162:6,

162:12, 163:12,
167:14, 167:25,
169:5, 169:13
past [1] - 197:12
patiently [1] - 95:13
Patriot [1] - 11:25
pattern [1] - 77:14
Paul [1] - 18:21
pause [1] - 51:18
pay [1] - 139:5
Pelayo [52] - 18:2,
18:11, 19:2, 19:6,
20:11, 21:22, 22:5,
22:7, 32:21, 34:8,
34:18, 35:7, 82:18,
82:20, 86:14, 88:7,
100:6, 101:20,
121:21, 134:12,
134:14, 135:18,
136:3, 136:8,
136:15, 136:23,
137:15, 137:18,
137:24, 138:3,
138:5, 138:9,
138:15, 138:17,
138:18, 138:20,
139:21, 139:22,
139:23, 172:1,
172:5, 180:24,
180:25, 181:2,
181:6, 181:16,
181:22, 182:1,
182:3, 185:6
Pelayo's [3] - 67:12,
136:1, 136:20
pen [2] - 21:24, 22:1
penal [6] - 46:13, 48:2,
48:15, 48:17, 52:15,
60:14
Penal [4] - 46:15,
48:1, 51:22, 52:20
penitentiary [1] -
181:13
People [1] - 60:20
people [19] - 11:22,
44:7, 45:14, 111:14,
118:11, 131:9,
133:9, 138:24,
147:18, 149:8,
149:21, 150:24,
162:17, 163:25,
167:11, 174:23,
175:2, 186:3, 196:17
people's [1] - 12:2
peoples' [1] - 12:1
per [2] - 52:8, 52:12
perceives [1] - 66:24
percent [2] - 124:17,
125:3, 133:4
perfect [2] - 50:22,

176:9
performance [1] -
105:11
performed [2] -
103:24, 106:24
perhaps [1] - 104:10
period [7] - 30:18,
44:22, 73:15,
105:10, 106:6,
161:14, 184:19
permission [2] -
19:16, 39:3
permits [2] - 161:22,
162:1
permitting [1] - 45:5
person [59] - 24:20,
25:19, 31:8, 31:10,
35:2, 35:3, 42:25,
45:1, 51:23, 51:25,
62:3, 62:11, 65:13,
66:7, 66:8, 77:3,
77:25, 78:16, 86:19,
89:12, 100:11,
104:19, 105:1,
106:10, 107:4,
107:16, 107:19,
108:17, 108:22,
108:24, 109:2,
109:17, 109:23,
111:10, 116:12,
116:16, 130:12,
131:14, 134:19,
135:10, 136:15,
137:10, 139:6,
145:1, 145:16,
145:20, 145:21,
145:24, 147:10,
152:4, 152:7,
155:10, 156:19,
175:6, 187:21,
190:12, 198:13
person's [1] - 106:5
personal [8] - 16:10,
17:17, 25:19, 96:12,
116:18, 116:19,
126:11, 169:18
personally [5] - 23:15,
92:15, 99:4, 105:9,
108:5
persons [5] - 103:18,
104:2, 105:2,
106:18, 200:14
persuade [1] - 200:21
persuades [1] -
110:19
Peter [1] - 185:9
phase [1] - 133:24
phone [10] - 65:25,
66:1, 66:7, 111:10,
122:14, 146:1,

147:16, 149:16,
150:4
phones [1] - 197:4
phonetically [1] -
22:15
photo [5] - 23:8,
23:10, 24:18, 65:13,
65:16
photograph [5] -
22:24, 24:18, 25:1,
166:21, 179:4
photographs [3] -
13:13, 150:3, 158:2
phrase [2] - 54:22,
165:4
physical [2] - 107:17,
145:22
pick [2] - 142:5,
143:13
picked [3] - 136:24,
136:25, 138:8
picking [2] - 126:16,
142:5
pickup [1] - 143:17
pics [1] - 122:22
picture [6] - 13:19,
13:24, 14:8, 23:3,
141:18, 141:25
pictured [2] - 6:1, 6:20
pictures [3] - 13:16,
122:22, 178:19
pie [1] - 133:2
piece [2] - 186:10,
197:2
pieces [6] - 172:2,
172:6, 172:8,
196:22, 196:24,
197:6
pigs [1] - 62:17
pistol [3] - 132:10,
140:18, 140:22
place [11] - 26:2, 40:4,
57:7, 65:22, 135:20,
143:10, 171:25,
177:7, 177:8, 186:6,
194:18
placed [3] - 56:14,
60:5, 199:6
places [1] - 90:20
plain [1] - 146:12
plaintiff [2] - 1:10,
153:13
PLAINTIFF [1] - 2:3
plan [2] - 104:12,
104:17
planned [1] - 143:9
plated [4] - 140:13,
140:18, 143:14,
146:10
play [2] - 37:15, 82:24

**played** [1] - 160:22
**plea** [12] - 34:8, 34:12, 35:7, 35:18, 35:20, 35:24, 36:3, 36:9, 63:9, 102:3, 183:2, 183:3
**pleaded** [2] - 96:22, 102:1
**pleadings** [2] - 50:17, 91:16
**point** [16] - 12:4, 14:3, 25:11, 43:10, 64:17, 70:23, 84:15, 93:9, 93:14, 117:16, 124:8, 175:1, 193:5, 195:7, 196:2, 196:22
**points** [6] - 20:14, 21:18, 21:21, 70:15, 173:5, 196:4
**police** [39] - 16:8, 16:9, 17:8, 17:9, 17:17, 17:20, 25:18, 31:18, 31:19, 31:22, 44:6, 45:1, 47:19, 64:16, 66:11, 118:2, 128:5, 129:20, 130:1, 147:2, 158:20, 158:21, 160:7, 161:23, 163:10, 163:17, 163:21, 164:23, 166:19, 167:8, 167:10, 169:17, 170:25, 193:5, 193:7, 193:10, 193:11, 193:18
**Police** [2] - 166:19, 166:22
**politic** [1] - 174:25
**pop** [1] - 148:6
**pops** [5] - 14:15, 14:20, 25:8, 142:5, 145:2
**popular** [1] - 184:1
**portion** [1] - 56:7, 69:8, 92:2, 133:25, 168:15
**portions** [1] - 48:11
**position** [15] - 41:15, 42:13, 44:20, 46:23, 47:8, 47:20, 49:14, 59:1, 62:10, 66:2, 68:20, 76:16, 77:14, 84:21, 147:11
**positions** [2] - 84:13, 150:20
**possess** [1] - 146:4
**possesses** [4] - 77:3, 89:12, 107:16, 145:21

**possession** [5] - 107:15, 107:19, 145:18, 145:24, 145:25
**possible** [6] - 13:25, 29:1, 97:11, 165:17, 166:7, 203:22
**possibly** [3] - 81:21, 167:3, 171:2
**post** [9] - 58:8, 60:3, 120:22, 121:14, 132:8, 138:9, 138:14, 143:22, 144:23
**post-arrest** [2] - 58:8, 60:3
**posted** [2] - 121:5, 166:22
**poster** [1] - 178:5
**posting** [1] - 122:2
**posts** [5] - 133:17, 149:16, 196:14, 196:15, 196:21
**potential** [2] - 28:18, 166:7
**potentially** [3] - 166:4, 167:2, 171:2
**power** [4] - 107:18, 107:20, 145:23, 185:25
**Powley** [1] - 194:9
**PPT** [1] - 122:17
**PPTs** [1] - 60:19
**practice** [2] - 67:14, 67:23
**practices** [1] - 67:19
**precious** [1] - 153:17
**precisely** [1] - 110:6
**prejudice** [3] - 59:14, 79:18, 99:22
**prejudices** [1] - 96:13
**prejudicial** [1] - 53:11
**preliminary** [1] - 80:1
**premier** [1] - 141:10
**prepare** [2] - 57:23, 95:20
**prepared** [5] - 8:9, 57:25, 82:13, 90:9, 112:16
**preponderance** [1] - 153:14
**presence** [13] - 4:22, 36:22, 38:3, 59:5, 95:7, 107:17, 107:18, 107:20, 145:21, 145:22, 151:10, 151:23, 198:17
**present** [20] - 4:7, 4:25, 7:17, 38:6,

39:11, 40:20, 53:13, 71:2, 85:8, 94:2, 94:10, 95:10, 97:1, 108:24, 117:6, 126:3, 152:1, 170:23, 201:11
**presentation** [1] - 200:4
**presented** [11] - 8:4, 8:7, 8:12, 8:24, 9:6, 49:20, 51:14, 53:14, 92:16, 95:14, 166:16
**presents** [1] - 58:22
**preside** [1] - 110:9
**PRESIDING** [1] - 1:4
**press** [1] - 111:14
**presume** [1] - 96:23
**presumed** [1] - 153:25
**presumption** [4] - 154:1, 154:2, 170:18, 186:7
**pretrial** [1] - 202:17
**pretty** [3] - 123:15, 123:17, 177:13
**prevailing** [1] - 153:13
**previous** [3] - 29:4, 33:7, 33:11
**previously** [4] - 20:10, 83:2, 112:19, 195:20
**Priaz** [1] - 22:15
**price** [4] - 7:23, 123:25, 125:9, 176:19
**prices** [10] - 24:2, 120:25, 122:14, 122:23, 123:1, 123:3, 123:4, 125:11, 194:11, 195:2
**pricey** [1] - 123:23
**priests** [1] - 153:5
**Prince** [2] - 81:12, 89:21
**principal** [2] - 116:14, 120:7
**principles** [2] - 153:3, 193:16
**private** [36] - 17:21, 26:1, 42:5, 44:1, 44:15, 44:20, 45:6, 45:14, 45:23, 46:5, 47:4, 47:5, 47:6, 48:18, 48:23, 49:6, 52:15, 52:23, 122:18, 156:15, 159:21, 161:1, 161:13, 162:2, 162:3, 162:6, 162:12, 163:12, 167:25, 169:5,

169:13, 169:18, 196:11, 196:16, 196:21, 197:9
**privilege** [2] - 118:2, 153:15
**problem** [5] - 58:22, 58:23, 138:24, 201:17, 201:18
**problems** [2] - 167:3, 184:3
**procedures** [1] - 31:17
**proceed** [5] - 26:25, 117:12, 117:18, 186:23, 191:12
**proceeding** [1] - 60:6
**proceedings** [9] - 4:22, 38:3, 95:7, 112:4, 151:10, 151:23, 152:5, 198:17, 206:8
**Proceedings** [2] - 1:16, 204:16
**process** [11] - 26:6, 31:7, 31:17, 41:5, 45:3, 48:5, 78:16, 96:7, 112:5, 158:20, 174:19
**procured** [2] - 108:17, 134:19, 137:9
**products** [1] - 122:7
**Professional** [1] - 2:13
**professional** [1] - 170:10
**proffer** [14] - 18:2, 18:5, 18:8, 19:1, 19:5, 20:9, 22:8, 28:8, 28:16, 28:17, 29:2, 32:21
**proffers** [1] - 28:6
**profit** [16] - 92:5, 116:15, 120:8, 121:24, 121:25, 123:10, 124:5, 125:3, 126:9, 128:23, 129:10, 130:8, 156:7, 166:4, 168:18, 188:14
**program** [1] - 78:15
**prohibited** [12] - 42:25, 62:3, 62:11, 78:6, 86:18, 100:11, 106:10, 107:3, 138:18, 156:19, 190:12, 200:14
**prohibition** [1] - 46:4
**prohibits** [1] - 161:20
**promising** [1] - 96:14
**proof** [27] - 40:22, 42:22, 70:4, 73:23,

169:13, 169:18, 196:11, 196:16, 196:21, 197:9
**privilege** [2] - 118:2, 153:15
**problem** [5] - 58:22, 58:23, 138:24, 201:17, 201:18
**problems** [2] - 167:3, 184:3
**procedures** [1] - 31:17
**proceed** [5] - 26:25, 117:12, 117:18, 186:23, 191:12
**proceeding** [1] - 60:6
**proceedings** [9] - 4:22, 38:3, 95:7, 112:4, 151:10, 151:23, 152:5, 198:17, 206:8
**Proceedings** [2] - 1:16, 204:16
**process** [11] - 26:6, 31:7, 31:17, 41:5, 45:3, 48:5, 78:16, 96:7, 112:5, 158:20, 174:19
**procured** [2] - 108:17, 134:19, 137:9
**products** [1] - 122:7
**Professional** [1] - 2:13
**professional** [1] - 170:10
**proffer** [14] - 18:2, 18:5, 18:8, 19:1, 19:5, 20:9, 22:8, 28:8, 28:16, 28:17, 29:2, 32:21
**proffers** [1] - 28:6
**profit** [16] - 92:5, 116:15, 120:8, 121:24, 121:25, 123:10, 124:5, 125:3, 126:9, 128:23, 129:10, 130:8, 156:7, 166:4, 168:18, 188:14
**program** [1] - 78:15
**prohibited** [12] - 42:25, 62:3, 62:11, 78:6, 86:18, 100:11, 106:10, 107:3, 138:18, 156:19, 190:12, 200:14
**prohibition** [1] - 46:4
**prohibits** [1] - 161:20
**promising** [1] - 96:14
**proof** [27] - 40:22, 42:22, 70:4, 73:23,

85:21, 92:20, 97:8, 99:2, 99:6, 103:1, 116:22, 116:23, 117:9, 127:10, 127:12, 153:12, 155:25, 157:9, 161:8, 170:18, 179:9, 182:1, 187:10, 190:19, 202:24
**propaganda** [1] - 186:13
**proper** [2] - 9:14, 9:15
**proposal** [2] - 74:22, 74:23
**propose** [1] - 83:8
**proposed** [13] - 70:20, 71:1, 73:12, 73:18, 73:20, 73:25, 75:21, 76:7, 77:1, 84:18, 89:17, 90:8, 204:23
**Proposed** [2] - 74:16, 77:8
**proposes** [1] - 74:9
**proposing** [2] - 74:5, 83:23
**proposition** [1] - 56:18
**prosecution** [13] - 7:16, 10:23, 35:24, 36:4, 54:2, 64:25, 68:7, 156:9, 166:12, 167:7, 176:6, 184:13, 204:13
**prosecutions** [1] - 170:8
**prosecutor** [5] - 68:1, 170:8, 172:11, 177:20, 204:8
**protect** [1] - 203:23
**prove** [45] - 40:13, 42:9, 42:11, 42:14, 42:17, 77:19, 97:1, 97:10, 99:9, 103:15, 105:8, 106:14, 107:6, 108:10, 108:12, 109:15, 110:2, 110:5, 116:4, 118:17, 126:1, 153:13, 155:11, 155:15, 155:17, 155:19, 155:23, 157:25, 160:18, 163:14, 164:5, 166:12, 169:25, 170:1, 171:8, 172:20, 173:2, 177:17, 185:3, 185:4, 185:5, 190:17, 197:13,

202:24, 203:5
**proved** [4] - 41:22, 96:24, 112:15, 170:11
**proven** [10] - 45:13, 50:3, 153:21, 154:7, 154:20, 159:19, 161:17, 169:7, 186:8, 197:25
**proves** [1] - 105:20
**provide** [10] - 34:18, 39:17, 48:3, 69:16, 71:8, 80:14, 81:1, 82:17, 148:25, 181:24
**provided** [16] - 27:6, 32:20, 33:6, 54:11, 54:14, 55:25, 58:4, 61:1, 69:2, 82:10, 83:16, 91:18, 190:9, 201:22, 204:23, 205:8
**provides** [2] - 42:1, 46:8
**proving** [6] - 42:11, 97:2, 153:22, 153:9, 170:17, 190:25
**provisions** [1] - 48:15
**public** [10] - 127:18, 128:1, 161:21, 168:25, 174:21, 196:8, 196:9, 196:14, 196:15, 196:21
**published** [1] - 163:3
**pull** [6] - 24:4, 24:13, 24:17, 26:9, 43:10, 74:17
**punishable** [1] - 107:12
**punishment** [4] - 82:10, 90:7, 112:13, 112:14
**purchase** [52] - 31:8, 63:7, 66:10, 66:18, 66:23, 67:13, 78:15, 79:8, 92:4, 106:11, 108:5, 108:11, 108:15, 109:3, 109:12, 116:15, 120:9, 125:15, 128:22, 129:9, 133:5, 134:8, 134:17, 135:3, 135:19, 136:5, 137:1, 137:7, 137:24, 137:25, 138:22, 139:3, 139:10, 139:13, 139:18, 140:5,

142:15, 143:10, 147:6, 149:3, 150:24, 157:3, 157:19, 157:20, 158:8, 158:9, 174:12, 188:13, 194:2, 194:24, 203:10
**purchased** [6] - 7:23, 22:4, 47:18, 157:6, 165:24, 176:18
**purchaser** [2] - 78:23, 136:3
**purchasers** [2] - 62:18, 166:4
**purchases** [9] - 62:19, 67:11, 79:10, 116:17, 118:11, 130:16, 150:16, 189:23
**purchasing** [3] - 136:2, 149:22, 165:16
**pure** [4] - 54:12, 54:20, 54:25, 62:1
**purely** [1] - 97:13
**purpose** [27] - 8:17, 17:18, 28:14, 52:9, 57:11, 67:17, 83:6, 86:15, 87:3, 87:4, 92:4, 98:20, 100:7, 100:21, 100:22, 103:24, 104:18, 104:25, 105:7, 106:24, 128:22, 129:10, 188:13, 190:11, 200:10, 200:11, 203:13
**purposes** [5] - 39:17, 40:23, 58:18, 59:16, 74:14
**pursuant** [2] - 51:25, 53:23
**pursue** [1] - 170:16
**put** [34] - 4:11, 4:18, 7:17, 20:13, 32:9, 32:12, 37:5, 39:14, 39:18, 43:8, 52:22, 56:3, 64:16, 65:21, 65:24, 68:22, 71:4, 77:23, 82:20, 125:7, 140:24, 145:5, 159:25, 164:15, 172:1, 172:6, 172:7, 175:14, 175:17, 176:14, 177:10, 186:1, 196:24, 197:5
**puts** [3] - 172:11, 176:6, 176:8
**putting** [5] - 4:13,

38:19, 124:15, 172:16, 196:22
**puzzle** [3] - 196:23, 196:25, 197:6
**puzzled** [2] - 172:2, 172:6

## Q

**questioning** [1] - 65:17
**questions** [17] - 5:23, 7:21, 8:8, 11:11, 24:1, 30:6, 30:8, 30:13, 31:6, 31:16, 34:2, 34:3, 35:11, 50:6, 98:7, 98:10, 98:11
**quickly** [4] - 69:13, 85:11, 85:13, 122:8
**quietly** [4] - 118:5, 152:20, 163:2, 165:5
**quite** [4] - 37:23, 163:6, 175:21, 175:22
**quote** [6] - 8:13, 14:10, 75:10, 76:8, 76:10, 183:15
**quoting** [1] - 195:3

## R

**Rachel** [2] - 2:12, 152:12
**Rafael** [12] - 6:24, 6:25, 9:23, 10:3, 15:6, 15:18, 15:23, 61:22, 62:4, 62:19, 72:17
**raid** [1] - 61:7
**rain** [1] - 198:14
**raise** [1] - 84:14
**raised** [3] - 45:12, 153:4, 187:2
**Ramirez** [2] - 62:9, 72:16
**ran** [3] - 66:6, 188:1, 188:2
**range** [2] - 123:3, 138:11
**rap** [2] - 16:17, 17:4
**rather** [1] - 139:15
**Raul** [1] - 68:13
**re** [1] - 35:14
**re-recross** [1] - 35:14
**reach** [3] - 110:12, 110:21, 110:25
**reached** [3] - 59:19, 112:20, 113:13

**reaching** [3] - 70:8, 85:25, 98:4
**read** [31] - 20:1, 22:3, 26:14, 27:5, 34:13, 34:22, 75:9, 83:7, 83:21, 86:12, 91:15, 96:17, 111:19, 114:9, 114:24, 115:6, 115:15, 115:21, 117:1, 155:18, 160:4, 165:15, 167:23, 168:16, 194:4, 194:8, 194:22, 198:21, 198:22, 201:22
**reading** [6] - 78:8, 83:24, 113:15, 123:19, 129:24, 199:9
**reads** [3] - 52:6, 76:7, 86:13
**ready** [6] - 4:9, 94:20, 112:23, 129:20, 151:19, 183:24
**real** [1] - 14:7
**realistic** [1] - 109:8
**realized** [3] - 4:16, 4:17, 183:6
**really** [6] - 10:6, 67:19, 167:5, 167:6, 170:2, 205:4
**reason** [9] - 9:6, 57:4, 63:8, 65:2, 68:2, 68:5, 75:8, 76:23, 97:13, 105:24, 106:2, 148:1, 148:9, 148:11, 158:3, 166:8, 176:23, 177:16, 184:14, 186:12, 201:19, 202:23
**reasonable** [60] - 40:14, 40:22, 42:22, 50:4, 70:5, 76:9, 76:21, 77:15, 77:21, 85:22, 96:25, 97:3, 97:8, 97:12, 97:19, 97:23, 103:16, 105:21, 106:15, 107:7, 107:10, 108:13, 108:25, 109:16, 110:3, 112:16, 116:5, 117:9, 145:15, 146:24, 147:10, 153:21, 154:11, 154:21, 155:15, 155:19, 159:10, 159:19, 160:18,

161:18, 163:14, 164:5, 166:13, 169:8, 170:1, 170:2, 170:17, 172:21, 172:22, 173:2, 173:18, 184:19, 185:2, 185:4, 185:6, 186:9, 197:13, 197:19, 197:23, 198:1
**reasonableness** [1] - 99:23
**reasonably** [1] - 110:4
**reasons** [5] - 59:9, 102:13, 102:20, 149:13, 195:20
**reassembled** [2] - 4:24, 151:25
**REBUTTAL** [2] - 3:8, 186:22
**rebuttal** [8] - 93:12, 93:16, 94:7, 164:4, 200:19, 203:15, 203:17, 203:20
**receipt** [1] - 194:24
**receive** [6] - 38:22, 101:20, 129:21, 130:3, 201:8, 201:16
**received** [21] - 3:11, 3:12, 29:21, 29:22, 30:4, 30:5, 70:9, 86:1, 92:1, 96:7, 98:2, 98:5, 98:20, 98:25, 101:21, 111:2, 121:21, 137:17, 138:2, 139:23, 143:20
**receiving** [2] - 121:12, 131:21
**recess** [9] - 39:8, 48:3, 69:10, 85:6, 85:7, 117:17, 151:6, 151:7, 206:1
**Recess** [3] - 39:9, 69:11, 151:18
**recessed** [1] - 5:22
**recitation** [1] - 83:1
**recognize** [4] - 5:23, 6:1, 22:25, 23:4
**recommended** [2] - 137:14, 139:22
**reconciliation** [1] - 165:20
**reconsideration** [4] - 37:3, 38:16, 50:14, 50:18
**record** [49] - 4:5, 4:11, 12:10, 21:6, 37:5, 39:10, 39:17, 40:25, 42:4, 48:10, 49:22,

50:23, 53:4, 55:14, 55:21, 55:22, 71:22, 74:19, 74:23, 77:21, 80:21, 85:9, 85:13, 86:18, 91:5, 100:9, 109:19, 114:1, 114:22, 115:13, 117:14, 122:8, 122:20, 135:4, 135:7, 135:13, 135:22, 136:21, 137:3, 141:4, 162:20, 163:3, 174:8, 174:12, 175:24, 188:8, 192:5, 205:6
**recorded** [4] - 159:10, 174:15, 174:18, 206:8
**recording** [1] - 66:12
**records** [25] - 11:5, 11:22, 12:5, 12:21, 24:9, 25:23, 25:24, 25:25, 43:22, 65:21, 65:25, 109:11, 119:15, 125:10, 125:19, 133:14, 133:16, 136:21, 138:1, 138:3, 146:21, 196:13, 197:3, 197:5, 197:15
**recovered** [3] - 10:14, 150:7, 193:2
**RECROSS** [4] - 3:5, 3:6, 30:11, 35:15
**recross** [3] - 30:7, 35:12, 35:14
**RECROSS-EXAMINATION** [2] - 3:6, 35:15
**red** [2] - 147:11, 179:2
**redirect** [2] - 23:22, 31:7
**REDIRECT** [4] - 3:4, 3:5, 23:24, 34:4
**reduction** [1] - 206:11
**refer** [2] - 19:14, 54:23
**reference** [7] - 20:3, 41:12, 49:21, 52:14, 75:25, 111:23, 141:22
**referenced** [1] - 112:19
**references** [6] - 51:23, 81:12, 81:22, 92:2, 92:3, 145:2
**referencing** [1] - 51:22
**referred** [4] - 14:20, 47:23, 54:3, 129:14
**referring** [2] - 14:22,

60:23
**refers** [5] - 16:16, 19:1, 21:21, 89:5, 89:9
**reflect** [2] - 63:2, 103:2
**reflected** [1] - 159:11
**refresh** [1] - 32:1
**regard** [2] - 93:11, 193:8
**regarding** [24] - 25:5, 28:6, 41:1, 54:15, 63:2, 63:22, 70:21, 77:9, 82:7, 84:4, 84:11, 84:13, 86:20, 87:1, 88:21, 91:5, 91:14, 91:19, 92:8, 92:25, 100:13, 100:19, 200:8, 201:23
**regardless** [1] - 40:17
**regards** [2] - 82:9, 90:5
**registered** [1] - 192:11
**regular** [9] - 37:25, 116:13, 120:6, 121:3, 121:23, 126:8, 173:11, 181:17, 193:7
**regularly** [2] - 130:7, 168:17
**regulate** [2] - 173:9, 173:14
**regulated** [4] - 155:3, 155:9, 173:7
**regulates** [1] - 165:12
**regulations** [1] - 206:12
**rehash** [1] - 32:21
**reiterate** [1] - 28:25
**reiterating** [1] - 20:10
**reject** [2] - 102:17, 139:5
**related** [2] - 84:16, 135:18
**relates** [2] - 8:22, 134:1
**relating** [2] - 13:13, 31:6
**relationship** [1] - 167:13
**relevance** [2] - 190:24, 200:18
**relevancy** [1] - 66:21
**relevant** [15] - 31:23, 45:21, 45:24, 46:1, 46:24, 48:15, 60:18, 63:21, 63:24, 66:5, 66:9, 120:3, 193:11, 203:4, 203:9

**rely** [2] - 112:9, 161:9
**relying** [1] - 52:16
**remain** [5] - 51:4, 51:5, 89:22, 91:12, 91:13
**remains** [7] - 72:7, 72:15, 72:19, 81:14, 89:10, 89:18, 89:25
**remember** [15] - 7:6, 7:21, 11:11, 22:16, 98:15, 113:10, 115:8, 152:16, 152:17, 159:7, 160:8, 162:25, 163:1, 167:6, 167:18
**remembered** [1] - 175:14
**remind** [2] - 79:4, 111:3
**reminded** [1] - 5:9
**reminder** [1] - 84:1
**removed** [5] - 72:16, 72:18, 73:2, 76:3, 88:8
**render** [1] - 170:5
**renew** [1] - 191:7
**reopen** [1] - 67:6
**reorder** [1] - 82:1
**reordered** [1] - 81:21
**repeat** [3] - 10:5, 35:5, 140:7
**repeated** [2] - 145:2, 145:7
**repeatedly** [13] - 43:9, 83:24, 118:10, 125:16, 125:22, 126:24, 129:14, 178:20, 187:13, 200:5, 200:12, 202:15, 203:7
**repeats** [1] - 124:13
**repetitive** [9] - 92:4, 116:15, 120:9, 125:15, 126:9, 128:22, 129:9, 188:13, 201:18
**report** [28] - 18:5, 18:14, 18:17, 18:20, 18:23, 19:11, 20:17, 28:8, 28:12, 28:15, 29:4, 31:16, 31:18, 31:19, 31:22, 32:5, 32:10, 32:20, 33:7, 33:8, 33:11, 33:14, 33:15, 33:18, 56:25, 111:18, 157:14
**Reporter** [2] - 1:23, 206:16
**Reporter's** [1] - 1:16
**reports** [3] - 11:21,

28:5, 29:3
**represent** [2] - 48:20, 152:13
**representation** [1] - 109:17
**request** [8] - 11:9, 38:20, 67:6, 70:25, 82:2, 82:16, 83:20, 204:10
**requested** [3] - 39:7, 81:22, 86:10
**requesting** [3] - 84:19, 87:21, 90:14
**requests** [1] - 69:5
**require** [7] - 92:22, 95:19, 112:4, 112:17, 116:23, 127:12, 130:20
**required** [23] - 26:2, 26:6, 59:6, 93:18, 95:15, 95:25, 97:10, 105:8, 109:19, 126:1, 135:7, 135:13, 135:15, 135:22, 137:2, 159:15, 161:7, 173:1, 173:21, 174:1, 174:12, 175:12
**requirement** [10] - 41:17, 47:7, 116:24, 127:13, 127:14, 130:20, 162:9, 188:4, 190:19, 190:20
**requirements** [4] - 41:6, 92:23, 128:12, 191:2
**requires** [10] - 92:20, 111:25, 116:21, 127:10, 153:12, 161:25, 165:4, 173:17, 187:10, 190:19
**resale** [6] - 92:4, 116:16, 120:10, 128:22, 129:10, 188:14
**research** [2] - 95:16, 111:21
**reselling** [1] - 165:16
**reserve** [2] - 94:11, 94:16
**reserved** [1] - 114:3
**residency** [2] - 158:13, 159:3
**resold** [2] - 187:13, 193:24
**resources** [3] - 11:16, 172:4, 172:17

**respect** [18] - 40:12, 42:12, 44:15, 48:16, 50:20, 53:7, 54:19, 58:18, 74:22, 95:12, 108:17, 119:13, 134:20, 135:17, 155:13, 166:14, 169:8, 200:9
**respectfully** [4] - 40:17, 43:4, 50:3, 54:21
**respond** [4] - 57:13, 78:10, 111:17, 113:4
**responding** [1] - 187:1
**responds** [2] - 132:10, 142:8
**response** [5] - 27:3, 44:17, 58:3, 59:13, 91:20
**responsibility** [1] - 170:9
**responsible** [5] - 104:22, 151:3, 156:11, 159:15, 167:14
**rest** [6] - 37:3, 126:21, 157:11, 157:13, 178:13, 181:19
**resting** [2] - 37:11, 38:13
**restrictions** [3] - 111:25, 112:3, 129:25
**restricts** [2] - 48:17, 51:21
**restroom** [2] - 39:3, 39:5
**rests** [1] - 36:19
**result** [2] - 59:14, 112:4
**resume** [1] - 69:13
**RESUMED** [2] - 3:4, 5:18
**return** [9] - 37:24, 84:12, 96:19, 112:23, 124:17, 151:7, 171:9, 198:3, 198:10
**review** [4] - 32:21, 48:8, 85:12, 205:3
**reviewed** [3] - 25:15, 205:6, 205:13
**revise** [1] - 75:24
**revisited** [1] - 114:18
**revolutionaries** [1] - 185:22
**revolutionary** [1] - 185:21
**rifles** [1] - 173:15

rip [1] - 175:8
rise [4] - 4:21, 38:2, 43:2, 151:9
road [1] - 176:15
ROBINSON [84] - 29:19, 30:3, 30:8, 36:21, 37:1, 37:7, 37:18, 38:12, 38:15, 39:2, 40:1, 40:5, 40:9, 41:25, 44:12, 44:14, 45:4, 46:20, 46:22, 48:7, 49:4, 49:25, 50:12, 50:20, 51:13, 51:17, 52:14, 53:7, 56:2, 57:15, 57:19, 59:18, 68:19, 69:24, 70:19, 71:1, 71:21, 72:1, 72:9, 72:22, 73:6, 73:25, 74:20, 76:15, 80:24, 82:19, 82:22, 83:4, 83:10, 83:15, 83:18, 84:2, 84:8, 87:6, 87:23, 91:9, 93:1, 95:3, 113:20, 113:23, 114:8, 114:16, 114:19, 114:23, 115:7, 115:11, 115:17, 117:2, 152:9, 152:11, 189:9, 189:14, 190:5, 190:8, 191:1, 191:4, 191:8, 195:19, 199:18, 199:23, 200:1, 203:16, 203:20, 205:6
Robinson [24] - 2:12, 2:12, 2:13, 39:2, 39:12, 39:15, 41:24, 46:18, 49:23, 57:18, 60:11, 68:18, 82:16, 91:8, 152:12, 171:13, 172:24, 175:2, 177:6, 185:16, 201:25, 202:21, 203:18, 204:19
robinson [1] - 95:2
Rodriguez [13] - 2:21, 2:22, 5:2, 38:17, 50:25, 51:2, 60:9, 80:23, 87:25, 93:25, 171:14, 186:20, 202:1
RODRIGUEZ [67] - 3:4, 3:5, 3:6, 3:7, 4:10, 5:16, 5:19, 14:4, 14:19, 19:16, 19:20, 19:21, 20:5,

23:19, 28:1, 29:20, 30:1, 30:10, 30:12, 35:13, 35:16, 36:14, 37:11, 37:15, 37:19, 38:18, 51:7, 60:10, 60:17, 60:22, 64:18, 64:22, 67:8, 68:12, 72:23, 74:2, 75:6, 75:13, 75:17, 76:6, 78:10, 78:12, 79:20, 81:17, 84:6, 85:1, 85:4, 87:22, 88:1, 88:3, 88:10, 89:7, 91:10, 93:5, 93:21, 94:14, 94:19, 95:5, 151:20, 171:15, 171:18, 171:19, 195:22, 199:19, 205:12, 205:15, 205:17
Rodriguez's [1] - 50:24
RODRIGUEZ0 [1] - 20:12
role [2] - 185:18, 186:9
Roman [1] - 19:24
Ronin [27] - 10:10, 92:15, 120:14, 120:18, 120:19, 122:3, 127:25, 128:1, 128:9, 128:14, 128:18, 132:2, 132:8, 132:18, 132:24, 133:5, 156:11, 156:14, 157:3, 157:7, 158:19, 159:15, 162:20, 162:21, 174:11, 188:2, 202:12
room [7] - 96:5, 102:25, 111:12, 131:19, 182:8, 184:22, 187:9
Room [1] - 1:24
Rosecrans [1] - 2:17
roster [34] - 44:4, 45:6, 120:20, 121:2, 121:12, 122:2, 123:15, 123:18, 123:22, 124:8, 127:18, 127:23, 127:25, 128:15, 130:7, 132:9, 132:13, 152:23, 154:22, 156:6, 159:21, 161:1, 161:21, 161:23, 162:2, 163:10,

165:24, 166:3, 167:21, 168:17, 168:25, 193:18, 193:20, 202:11
round [1] - 201:25
RPR [2] - 1:23, 206:16
Rubin [1] - 72:17
rule [2] - 56:21, 74:22
Rule [20] - 36:25, 37:6, 37:10, 37:11, 39:16, 40:10, 40:23, 43:5, 50:13, 53:16, 63:1, 67:16, 72:15, 91:23, 93:17, 93:20, 94:15, 94:17, 200:17, 200:23
ruled [1] - 114:24
ruling [4] - 38:16, 50:13, 74:23, 93:17
rulings [2] - 53:18, 53:23
run [6] - 25:19, 26:6, 61:11, 77:25, 78:5, 192:9
running [2] - 26:23, 191:24
RYKKEN [30] - 83:20, 90:15, 90:18, 91:7, 94:3, 94:7, 94:12, 94:21, 94:25, 113:18, 114:5, 114:12, 114:17, 114:21, 115:2, 115:4, 115:8, 115:16, 117:4, 117:11, 117:18, 117:20, 117:22, 151:15, 151:17, 199:7, 199:14, 205:11, 205:19, 205:23
Rykken [4] - 2:4, 18:9, 151:5, 205:18

## S

sacrad [1] - 177:7
Sacramento [1] - 132:4
sacred [1] - 186:6
sacrifice [1] - 181:21
safety [3] - 158:15, 159:2, 164:17
sale [19] - 6:23, 7:5, 52:4, 52:9, 61:7, 92:11, 120:24, 120:25, 125:9, 125:15, 126:11, 126:13, 133:5,

134:12, 134:13, 149:24, 150:8, 174:2, 191:19
sales [17] - 10:10, 61:6, 79:9, 79:13, 116:17, 121:8, 122:4, 122:17, 128:15, 133:16, 133:17, 156:9, 156:10, 163:2, 163:4, 200:14
Salinas [2] - 10:1, 10:9
sandbagging [2] - 190:14, 204:4
Santa [1] - 17:4
saved [1] - 196:21
saw [30] - 79:25, 99:4, 123:20, 125:5, 133:3, 133:25, 140:14, 141:18, 142:1, 144:11, 144:25, 146:21, 147:13, 149:15, 149:16, 149:19, 149:25, 150:1, 156:17, 158:2, 158:3, 166:17, 167:1, 184:2, 186:1, 187:18, 187:19, 187:24, 188:6, 196:8
scared [1] - 64:15
scenarios [1] - 79:22
scene [2] - 108:24, 192:8
scenes [2] - 121:11, 196:16
scheme [5] - 105:15, 105:18, 191:23, 192:2, 192:19
school [3] - 160:12, 173:24
screaming [1] - 163:6
screen [9] - 24:4, 24:13, 24:17, 43:9, 127:9, 164:10, 165:8, 189:10, 194:20
script [2] - 183:4, 183:7
search [6] - 12:1, 24:23, 26:23, 150:8, 196:11, 197:4
searching [1] - 111:22
seat [5] - 5:3, 13:10, 38:7, 95:11, 204:21
second [38] - 18:23, 46:12, 49:19, 69:19, 75:7, 75:9, 75:10, 76:7, 76:8, 76:10,

83:11, 92:12, 103:20, 105:24, 106:20, 108:16, 116:9, 117:13, 119:11, 120:6, 121:23, 123:7, 124:11, 133:24, 134:18, 135:6, 136:10, 137:8, 140:5, 144:9, 144:16, 145:14, 146:23, 149:8, 165:23, 167:6, 168:8, 201:25
Section [17] - 2:5, 26:16, 46:15, 51:22, 51:25, 60:18, 74:14, 76:20, 86:19, 100:10, 100:12, 100:18, 103:13, 106:11, 109:12, 116:1
section [11] - 33:22, 43:11, 48:2, 48:14, 51:25, 52:7, 60:15, 78:8, 86:24, 164:22, 169:3
Sections [1] - 48:1
secular [1] - 177:7
secure [1] - 48:6
secured [1] - 11:20
security [4] - 4:14, 114:3, 152:8
Security [1] - 11:18
see [62] - 10:23, 12:13, 21:14, 21:24, 29:17, 43:16, 46:21, 47:22, 62:25, 69:7, 69:12, 89:2, 90:21, 99:19, 115:10, 120:15, 120:22, 121:7, 121:17, 121:20, 122:1, 122:7, 122:13, 123:2, 123:3, 123:7, 125:18, 126:14, 126:17, 126:21, 126:24, 127:2, 131:18, 132:5, 132:22, 132:24, 133:2, 135:16, 136:6, 137:16, 139:10, 139:13, 140:20, 142:1, 142:7, 143:8, 143:25, 144:3, 145:5, 147:4, 147:8, 149:23, 158:1, 158:3, 161:17, 164:25, 177:25,

180:6, 181:9, 188:21, 190:6, 194:9
**seeing** [1] - 12:18
**seek** [1] - 170:12
**selection** [1] - 122:1
**sell** [24] - 8:13, 9:1, 44:6, 44:7, 46:4, 51:23, 119:11, 119:14, 120:14, 121:2, 128:11, 129:23, 130:14, 142:23, 152:23, 167:20, 168:25, 169:14, 174:25, 183:25, 184:5, 193:21, 195:10
**seller** [2] - 31:10, 168:1
**sellers** [1] - 121:12
**selling** [21] - 42:25, 44:22, 45:5, 48:16, 120:20, 123:12, 124:8, 126:16, 131:21, 132:13, 144:10, 154:21, 156:6, 161:1, 161:20, 161:22, 162:1, 168:10, 190:12, 191:25, 195:5
**Selling** [1] - 118:21
**sells** [6] - 116:19, 120:18, 130:8, 168:17, 191:21
**semiautomatic** [2] - 136:17, 173:15
**seminar** [1] - 166:20
**send** [3] - 113:1, 113:6, 122:21
**sending** [1] - 131:20
**sends** [1] - 143:18
**Senior** [1] - 62:4
**sense** [1] - 97:13
**sent** [8] - 6:2, 84:19, 122:13, 141:18, 142:2, 194:24, 199:8, 199:13
**sentence** [1] - 124:11
**separate** [11] - 11:4, 54:11, 71:12, 71:24, 87:15, 101:3, 128:17, 203:8, 204:25, 205:8, 205:14
**separately** [7] - 65:18, 71:16, 101:6, 118:23, 118:25, 128:6, 134:3
**September** [10] - 12:25, 18:21, 20:4,

34:10, 34:18, 35:7, 120:22, 183:3
**sergeant** [1] - 166:19
**Serial** [1] - 140:18
**serial** [9] - 6:8, 6:20, 125:2, 140:21, 142:1, 177:12, 192:10, 194:23
**served** [1] - 24:23
**service** [4] - 7:8, 16:13, 67:19, 111:16
**serving** [1] - 171:4
**session** [8] - 18:2, 18:5, 18:8, 19:1, 19:5, 98:24, 204:18, 204:19
**set** [16] - 21:10, 49:8, 71:6, 113:17, 121:3, 124:20, 136:15, 137:14, 139:21, 140:25, 171:16, 185:23, 194:10, 199:13, 199:16, 202:2
**sets** [3] - 160:2, 174:20, 193:15
**seven** [1] - 118:18
**Seven** [4] - 89:10, 107:2, 107:9, 134:5
**sever** [1] - 58:25
**several** [5] - 13:13, 120:1, 122:17, 123:1, 201:23
**severance** [1] - 200:3
**shall** [2] - 51:23, 116:16
**shared** [1] - 22:21
**sheet** [3] - 16:17, 17:4, 166:21
**shelter** [2] - 153:10, 184:3
**shirt** [2] - 121:21, 174:24
**shirts** [1] - 121:20
**shoes** [1] - 4:13
**shoots** [1] - 173:6
**shop** [2] - 132:16, 132:19
**short** [7] - 39:7, 48:3, 69:10, 106:6, 117:17, 151:6, 173:16
**shorthand** [1] - 31:19
**shot** [1] - 194:20
**Show** [2] - 121:14, 132:6
**show** [27] - 8:17, 9:19, 13:4, 16:19, 16:22, 27:11, 63:13, 66:9, 108:25, 120:16,

121:16, 121:18, 121:25, 127:20, 132:1, 132:4, 137:6, 142:17, 154:3, 158:5, 161:11, 172:8, 177:25, 178:20, 183:15, 192:24, 195:2
**showed** [9] - 6:23, 13:5, 13:13, 13:19, 23:10, 92:18, 136:20, 159:23, 178:4
**showing** [9] - 24:9, 25:22, 43:22, 65:21, 65:25, 119:18, 136:25, 178:18, 192:4
**shown** [13] - 8:8, 8:24, 9:19, 10:18, 73:4, 102:23, 103:2, 118:16, 121:8, 164:10, 179:1, 183:20, 188:22
**shows** [21] - 9:10, 27:8, 119:21, 121:6, 121:13, 133:21, 135:20, 144:8, 145:9, 147:22, 148:15, 150:13, 161:4, 162:25, 174:24, 184:9, 185:1, 192:25, 196:8, 196:19, 197:7
**sibling** [1] - 62:5
**sic** [2] - 67:20, 180:16
**sick** [2] - 123:7, 123:9
**side** [4] - 120:20, 126:7, 128:16, 153:13
**sidebar** [4] - 36:23, 38:8, 114:5, 190:6
**Sidebar** [3] - 36:24, 114:7, 190:7
**sides** [2] - 153:6, 153:12
**sign** [5] - 34:8, 41:14, 112:22, 166:21, 188:10
**sign-in** [1] - 166:21
**signature** [2] - 128:15, 188:12
**signed** [15] - 18:17, 18:20, 30:1, 113:2, 113:4, 128:20, 129:7, 132:24, 134:9, 144:12, 147:18, 178:14, 183:3, 188:9, 189:5
**signs** [1] - 148:7

**silent** [2] - 51:4, 51:6
**similar** [3] - 24:25, 104:10, 140:6
**similarly** [1] - 125:21
**simple** [3] - 117:25, 150:17, 193:15
**simply** [7] - 66:21, 104:9, 110:20, 110:25, 131:17, 133:11, 140:10
**single** [17] - 41:8, 43:25, 52:9, 96:16, 120:3, 147:24, 156:18, 159:7, 160:1, 160:19, 162:11, 164:3, 165:3, 168:3, 169:21, 173:25, 189:4
**sitting** [1] - 171:6
**situation** [9] - 30:24, 79:25, 166:16, 167:10, 167:20, 173:4, 200:25, 201:15, 204:7
**six** [4] - 8:1, 52:8, 52:11, 176:19
**Six** [1] - 89:10
**size** [1] - 32:15
**skinny** [1] - 14:10
**so..** [1] - 91:21
**sobriety** [2] - 159:1, 159:2
**Social** [1] - 11:18
**society** [2] - 155:3, 155:9
**sold** [37] - 6:9, 6:11, 6:14, 8:2, 9:14, 9:23, 10:2, 10:13, 44:3, 44:4, 58:15, 65:23, 66:8, 118:7, 118:12, 122:8, 122:15, 124:3, 124:13, 125:16, 125:22, 129:3, 130:5, 133:3, 133:13, 133:14, 147:12, 148:17, 149:19, 149:24, 158:23, 174:14, 176:20, 176:24, 179:4, 192:4, 192:6
**solely** [2] - 96:10, 98:25
**solemn** [1] - 175:17
**someone** [24] - 11:17, 16:19, 17:16, 30:18, 31:3, 45:2, 62:11, 108:9, 108:14, 123:19, 131:17, 134:10, 134:16,

135:2, 138:25, 139:4, 153:20, 155:2, 174:6, 175:4, 175:5, 180:12, 193:2
**sometime** [1] - 33:4
**sometimes** [8] - 28:25, 32:4, 32:13, 171:24, 179:19, 179:20, 193:25
**son** [2] - 62:5, 181:9
**soon** [4] - 4:17, 4:19, 120:24, 143:14
**sorry** [31] - 6:10, 7:7, 8:16, 10:3, 10:5, 12:20, 15:12, 16:4, 17:7, 17:24, 19:22, 19:24, 20:20, 29:16, 34:10, 40:3, 60:25, 61:25, 62:20, 68:12, 75:13, 75:17, 88:3, 89:2, 90:18, 94:14, 140:2, 151:15, 164:16, 164:19
**sort** [2] - 61:3, 69:6
**sounds** [4] - 42:10, 154:2, 167:2, 185:19
**Spanish** [1] - 10:6
**speaking** [1] - 81:3
**special** [3] - 33:22, 86:9, 165:13
**Special** [21] - 5:1, 15:11, 15:12, 15:17, 18:8, 35:17, 48:21, 48:25, 54:7, 58:4, 72:25, 77:24, 91:19, 91:20, 100:6, 102:12, 119:16, 135:14, 176:5, 192:8, 194:20
**specific** [15] - 41:19, 41:20, 41:22, 46:15, 47:24, 48:2, 49:3, 54:10, 54:22, 66:23, 74:8, 101:11, 101:12, 107:9, 155:13
**specifically** [6] - 25:7, 41:11, 42:16, 51:2, 54:14, 76:21
**specified** [2] - 92:11, 116:8
**spectrum** [1] - 126:7
**speculate** [4] - 57:5, 79:21, 79:22, 80:7
**speculation** [7] - 14:16, 28:1, 54:12, 54:20, 54:25, 62:1, 97:14
**speculative** [1] - 56:10
**spell** [1] - 5:10

**spelled** [1] - 22:16
**spent** [3] - 93:22,
172:17, 186:12
**spillover** [1] - 53:11
**spoken** [1] - 50:24
**Spring** [1] - 2:6
**Sr** [27] - 6:24, 9:23,
10:3, 14:20, 14:24,
15:2, 15:4, 15:13,
15:21, 22:25, 23:4,
23:5, 23:10, 23:15,
27:13, 27:21, 27:23,
61:22, 140:11,
140:20, 141:23,
141:24, 144:11,
144:17, 145:1,
147:5, 148:20
**stage** [1] - 43:3
**stainless** [1] - 122:12
**stand** [9] - 59:25,
65:20, 68:2, 119:17,
135:14, 157:13,
160:5, 172:11,
177:10
**standard** [9] - 40:17,
41:19, 69:16, 71:23,
81:24, 82:5, 197:19,
197:20, 197:23
**stands** [2] - 56:18,
113:11
**start** [14] - 5:5, 20:21,
28:17, 31:18, 39:5,
40:8, 58:5, 95:23,
112:5, 136:16,
187:1, 198:11,
198:19, 202:18
**started** [1] - 167:7
**starting** [1] - 147:14
**State** [4] - 16:9, 17:9,
130:1, 174:4
**state** [25] - 5:10,
16:25, 26:16, 26:21,
27:6, 32:19, 35:8,
37:3, 42:19, 47:16,
55:9, 75:9, 76:10,
84:13, 98:16,
123:22, 123:25,
124:1, 124:2, 155:5,
155:9, 156:21,
165:20, 167:13,
178:15
**Statement** [1] - 118:21
**statement** [75] - 20:19,
20:22, 20:23, 21:22,
53:16, 53:23, 54:18,
54:19, 56:5, 56:20,
56:24, 58:8, 58:10,
58:11, 58:20, 59:2,
59:12, 59:15, 59:22,
61:23, 64:23, 72:6,

86:17, 87:19,
101:14, 101:15,
101:17, 106:10,
108:4, 108:11,
108:15, 109:3,
109:11, 109:17,
109:18, 109:22,
109:24, 119:6,
134:10, 134:17,
135:3, 135:6, 135:9,
135:10, 135:24,
135:25, 136:1,
136:7, 136:12,
136:14, 137:2,
137:4, 137:14,
144:9, 144:18,
148:22, 149:1,
150:16, 152:15,
152:17, 167:7,
167:8, 168:10,
170:13, 182:23,
182:25, 183:2,
183:14, 201:2, 201:3
**statements** [22] - 8:25,
20:10, 20:11, 20:13,
25:4, 25:7, 25:10,
28:14, 28:20, 42:24,
55:14, 55:17, 60:3,
98:7, 98:13, 100:9,
134:4, 153:1, 155:6,
183:5, 190:12,
200:13
**States** [15] - 4:6,
40:19, 76:20, 81:11,
86:19, 89:20,
103:13, 106:12,
107:4, 109:13,
116:2, 151:2,
163:19, 168:13,
185:21
**STATES** [2] - 1:1, 1:8
**states** [6] - 19:9,
47:17, 52:2, 101:11,
200:6, 206:12
**status** [5] - 62:18,
102:6, 123:17,
129:20, 130:2
**statute** [3] - 74:8,
74:9, 116:21
**statutes** [1] - 74:10
**stay** [1] - 198:7
**stealing** [1] - 175:5
**steel** [1] - 122:12
**stenographically** [1] -
206:8
**step** [1] - 192:1
**steps** [2] - 78:20,
172:8
**still** [6] - 5:9, 72:7,
109:7, 142:22,

143:12, 164:19
**stipulated** [4] - 29:20,
29:24, 30:1, 65:24
**stolen** [1] - 10:14
**stop** [4] - 5:5, 37:23,
54:5, 186:1
**store** [4] - 195:9,
195:10, 195:13,
195:14
**story** [2] - 176:11,
185:11
**straight** [2] - 192:13,
192:14
**straightforward** [4] -
44:21, 118:1,
150:19, 187:16
**straw** [31] - 62:19,
63:7, 66:18, 67:10,
67:11, 67:12, 79:8,
118:11, 130:15,
134:8, 135:3,
135:19, 136:5,
137:1, 137:7,
137:23, 137:25,
138:21, 139:3,
139:9, 139:12,
139:18, 140:5,
147:6, 149:3,
150:16, 150:23,
150:24, 189:23,
203:10
**Street** [2] - 1:24, 2:6
**strength** [1] - 155:22
**stretch** [1] - 175:22
**stricken** [2] - 75:8,
98:18
**strict** [1] - 167:10
**strike** [7] - 6:10, 31:5,
35:22, 36:7, 81:13,
170:19
**strong** [2] - 156:23
**strongly** [1] - 155:24
**struck** [5] - 81:9,
88:13, 89:9, 89:18,
89:21
**study** [1] - 171:2
**stuff** [2] - 165:8, 184:2
**stupid** [1] - 181:18
**subject** [4] - 36:18,
37:2, 38:15, 50:12
**submission** [3] -
57:20, 60:7, 68:24
**submit** [15] - 40:25,
50:5, 50:17, 68:9,
74:21, 125:24,
127:5, 129:2,
130:22, 133:21,
145:8, 148:15,
150:13, 189:15,
196:7

**submitted** [5] - 30:19,
40:15, 70:20, 76:12,
113:12
**subpoena** [2] - 12:10,
12:20
**subpoenaed** [2] -
12:4, 12:12
**Subsection** [2] - 52:2,
52:6
**subsection** [4] -
46:16, 48:2, 48:19,
52:3
**subsequently** [1] -
165:25
**substantive** [6] -
39:23, 73:10, 88:21,
114:9, 114:13,
152:20
**success** [1] - 106:4
**suffices** [1] - 91:20
**suggest** [13] - 40:16,
40:23, 42:10, 47:13,
50:2, 57:4, 148:11,
154:5, 155:24,
170:21, 179:18,
180:20, 194:13
**suggested** [4] - 35:1,
35:8, 136:19, 138:20
**suggesting** [1] - 34:19
**suggestion** [2] - 22:4,
96:18
**suggests** [1] - 43:20
**Suite** [4] - 2:6, 2:13,
2:17, 2:23
**summaries** [4] - 73:8,
88:18, 103:5, 103:6
**summarily** [2] - 98:12,
105:1
**summarized** [1] -
125:18
**summary** [4] - 24:14,
28:24, 125:23,
133:15
**Super** [2] - 174:22,
174:25
**Supers** [4] - 120:25,
122:2, 126:25, 127:2
**supervisor** [1] - 18:20
**support** [4] - 43:3,
159:8, 164:2, 178:2
**supporting** [1] - 103:7
**supposed** [7] -
156:12, 167:12,
167:15, 176:8,
176:13, 185:11,
203:25
**supposedly** [2] -
174:20, 183:11
**Supreme** [1] - 57:2
**surprise** [1] - 37:13

**surprised** [1] - 64:20
**suspicion** [1] - 78:20
**suspicions** [2] -
154:5, 154:8
**sustain** [2] - 80:14,
153:10
**sustained** [8] - 191:3,
191:11, 195:21,
195:23, 200:23,
201:5, 201:24, 204:5
**sustaining** [1] -
201:10
**swore** [4] - 117:23,
128:5, 150:20,
175:13
**SWORN** [2] - 3:3, 5:17
**sworn** [5] - 16:9, 17:8,
17:17, 70:7, 98:1
**sympathy** [1] - 96:13
**System** [2] - 16:14,
26:20
**system** [4] - 16:15,
17:10, 185:23,
192:10

**T**

**T-shirt** [2] - 121:21,
174:24
**T-shirts** [1] - 121:20
**Tab** [2] - 29:12, 34:6
**tab** [2] - 29:14, 29:17
**tactic** [1] - 157:21
**Tactical** [23] - 120:14,
120:18, 120:19,
122:3, 127:25,
128:1, 128:9,
128:14, 128:18,
132:2, 132:8,
132:18, 132:24,
133:5, 156:11,
156:14, 157:4,
157:7, 158:19,
159:15, 174:11,
188:2, 202:12
**Tactical's** [2] - 162:20,
162:21
**talks** [1] - 156:9
**tape** [1] - 164:15
**tax** [1] - 165:2
**teach** [1] - 167:3
**teachers** [1] - 153:5
**team** [2] - 7:16, 10:23
**technical** [1] - 16:13
**technology** [1] - 168:6
**teenager** [3] - 195:11,
195:12, 195:15
**telemarketer** [1] -
175:7

**telephone** [1] - 1:25
**ten** [17] - 30:17, 30:19,
36:1, 39:7, 118:12,
124:15, 140:18,
143:2, 149:18,
149:25, 150:9,
150:12, 151:7,
151:12, 151:13,
154:10, 160:24
**ten-day** [1] - 30:17
**ten-minute** [1] - 39:7
**ten-year** [1] - 36:1
**term** [5] - 92:17,
107:13, 116:11,
116:16
**terminal** [1] - 16:15
**Terminal** [1] - 16:14
**terms** [6] - 5:4, 43:13,
55:4, 55:10, 66:6,
66:10
**terrified** [2] - 181:4
**testified** [10] - 7:11,
8:21, 11:15, 77:24,
99:19, 102:13,
176:5, 176:16,
179:25, 183:1
**testify** [19] - 8:9, 9:12,
32:2, 32:5, 51:1,
63:10, 67:22, 70:2,
70:3, 77:11, 85:20,
97:1, 97:5, 97:7,
100:3, 153:24,
176:11, 179:22,
180:9
**testifying** [3] - 7:1,
53:8, 99:20
**testimony** [50] - 21:14,
36:16, 55:1, 55:3,
55:7, 58:4, 62:6,
62:8, 63:2, 70:7,
70:9, 70:14, 72:4,
72:5, 72:25, 82:18,
83:5, 86:1, 86:6,
86:7, 86:13, 87:2,
87:19, 88:7, 88:12,
98:1, 98:5, 99:3,
99:14, 99:17, 99:23,
99:24, 100:4, 100:5,
100:20, 101:13,
101:19, 102:7,
102:8, 102:10,
102:12, 102:14,
102:16, 102:17,
125:7, 136:20,
180:21, 194:6, 200:9
**text** [22] - 7:8, 7:9,
22:12, 53:21, 79:13,
111:11, 122:13,
141:23, 142:25,
144:13, 146:3,

147:16, 149:15,
150:3, 150:5,
178:18, 179:12,
183:19, 184:11,
195:2, 196:10,
196:18
**THE** [224] - 2:3, 2:10,
2:20, 3:6, 4:5, 4:20,
4:24, 5:12, 5:13,
14:1, 14:2, 14:17,
14:18, 19:18, 20:3,
20:8, 20:9, 23:21,
28:2, 29:9, 29:18,
29:21, 30:2, 30:4,
30:7, 34:3, 35:12,
35:14, 36:15, 36:20,
36:23, 36:25, 37:5,
37:10, 37:13, 37:16,
37:21, 38:5, 38:13,
38:17, 38:22, 39:1,
39:4, 39:10, 40:3,
40:7, 41:1, 41:24,
43:6, 43:18, 44:13,
44:17, 45:17, 46:1,
46:8, 46:18, 46:21,
47:9, 47:21, 48:5,
48:8, 48:11, 48:17,
48:24, 49:16, 49:23,
50:7, 50:18, 51:8,
51:16, 51:19, 53:5,
54:5, 54:9, 54:17,
54:20, 54:24, 55:6,
55:11, 55:18, 55:22,
55:24, 57:12, 57:16,
57:20, 57:23, 58:2,
59:17, 60:4, 60:16,
60:21, 62:22, 63:11,
63:16, 63:18, 63:21,
64:1, 64:8, 64:13,
64:19, 65:5, 65:11,
65:15, 67:1, 67:6,
68:10, 68:18, 68:22,
69:12, 69:25, 70:25,
71:4, 71:23, 72:3,
72:10, 72:24, 73:7,
74:3, 74:15, 74:25,
75:12, 75:14, 75:19,
76:1, 76:14, 76:17,
76:25, 78:8, 78:11,
79:18, 80:13, 80:25,
81:5, 81:8, 81:18,
82:21, 83:3, 83:8,
83:14, 83:16, 83:19,
84:4, 84:10, 84:25,
85:2, 85:5, 85:9,
87:7, 87:24, 88:2,
88:4, 88:11, 89:8,
90:17, 90:21, 91:8,
91:11, 93:3, 93:6,
93:10, 93:17, 93:22,
94:6, 94:9, 94:13,

94:17, 94:20, 94:24,
95:1, 95:9, 113:19,
113:22, 113:25,
114:2, 114:6,
114:11, 114:14,
115:1, 115:3, 115:5,
115:9, 115:12,
115:20, 117:3,
117:5, 117:13,
117:15, 117:19,
117:21, 151:5,
151:12, 151:16,
151:19, 151:22,
151:25, 171:13,
171:17, 186:20,
186:24, 189:11,
189:16, 190:6,
191:3, 191:6,
191:11, 195:23,
198:5, 198:19,
199:13, 199:15,
199:21, 199:25,
201:21, 202:21,
203:15, 203:18,
204:10, 204:17,
205:10, 205:14,
205:16, 205:18,
205:20, 205:25
**the38superman** [10] -
120:21, 121:15,
121:17, 132:2,
132:6, 138:10,
138:13, 144:2,
144:4, 164:16
**theirs** [1] - 177:23
**themselves** [4] -
53:13, 64:10, 66:9,
103:1
**theories** [1] - 201:11
**theory** [2] - 202:15,
202:17
**thereby** [1] - 104:25
**therefore** [4] - 11:22,
41:5, 47:1, 103:8
**they've** [3] - 16:24,
178:1, 183:20
**thick** [1] - 167:6
**thinking** [1] - 93:23
**third** [15] - 92:16,
103:23, 106:1,
106:23, 108:18,
109:21, 119:12,
120:7, 121:24,
123:10, 131:14,
134:22, 135:8,
137:22, 167:17
**thoroughly** [1] - 50:14
**thousands** [2] - 121:9,
173:12
**Three** [9] - 40:2,

58:18, 59:16, 63:19,
114:13, 115:24,
118:20, 119:1, 131:1
**three** [21] - 18:14,
18:17, 19:23, 39:23,
60:12, 119:9, 124:6,
131:7, 134:3,
135:22, 139:17,
142:10, 143:18,
146:7, 152:16,
152:24, 163:1,
172:23, 178:1,
185:8, 193:15
**three-page** [2] - 18:14,
18:17
**throughout** [7] -
40:11, 43:9, 136:4,
149:20, 176:1
**throw** [1] - 183:25
**thrown** [2] - 150:18,
179:2
**Thursday** [9] - 7:11,
7:19, 11:12, 11:15,
150:1, 176:5,
178:16, 181:1, 181:2
**Thursday's** [1] -
179:14
**ticket** [1] - 139:5
**ticks** [1] - 139:7
**tie** [1] - 180:22
**timeline** [2] - 140:24,
145:5
**Title** [10] - 76:20,
86:19, 100:10,
100:11, 100:18,
103:13, 106:12,
107:4, 109:13, 116:1
**Tobacco** [3] - 165:11,
168:14, 173:9
**today** [11] - 5:5, 5:14,
33:1, 33:6, 37:12,
66:13, 151:21,
153:2, 172:7,
188:25, 198:24
**together** [24] - 7:17,
118:25, 121:13,
125:8, 132:2, 132:7,
132:12, 133:1,
133:23, 140:24,
145:6, 172:2, 172:6,
172:8, 172:16,
176:8, 176:14,
184:25, 191:24,
195:5, 196:23,
196:25, 197:2, 197:6
**Tolliver** [1] - 5:12
**TOLLIVER** [2] - 3:3,
5:17
**tomorrow** [5] -
142:22, 198:11,

198:15, 199:20
**took** [16] - 10:23, 21:8,
33:9, 33:12, 44:14,
49:9, 52:21, 57:7,
65:22, 96:13, 112:9,
118:1, 135:19,
143:10, 196:24,
197:5
**top** [4] - 32:19, 34:25,
81:6, 132:22
**Torrance** [1] - 2:14
**total** [5] - 24:5, 24:7,
94:8, 151:16, 176:19
**towards** [3] - 12:24,
145:6, 195:21
**trace** [1] - 6:5
**track** [2] - 6:14, 6:19
**tracks** [1] - 193:1
**trade** [1] - 116:14
**trail** [9] - 191:15,
191:18, 191:19,
191:22, 192:4,
192:5, 192:12,
192:15, 192:24
**transacted** [1] - 133:5
**transaction** [23] -
27:6, 27:15, 27:17,
52:12, 63:14, 64:5,
65:22, 66:3, 66:5,
137:18, 137:20,
138:2, 138:5, 138:6,
138:7, 140:19,
142:21, 143:4,
145:6, 146:2,
147:14, 156:18,
175:25
**transactions** [12] -
43:25, 51:21, 52:8,
52:12, 57:7, 63:15,
64:11, 77:15,
105:11, 159:8,
166:2, 174:10
**transcript** [2] - 206:8,
206:10
**Transcript** [1] - 1:16
**transfer** [26] - 17:21,
26:20, 42:5, 44:2,
44:21, 45:6, 46:5,
47:4, 49:6, 51:24,
52:4, 52:10, 52:15,
107:14, 122:18,
129:16, 139:7,
145:18, 156:13,
162:3, 163:12,
166:3, 167:25,
169:13, 191:22,
202:11
**transferee** [4] - 45:7,
107:15, 132:23,
162:4

**transferee's** [1] - 26:15
**transferee/buyer** [1] - 130:11
**transferor** [2] - 45:7, 162:3
**transferred** [2] - 137:20, 165:25
**transferring** [1] - 157:24
**transfers** [18] - 26:1, 44:16, 45:10, 45:14, 45:19, 45:24, 46:9, 47:6, 48:18, 48:23, 52:23, 159:21, 161:1, 161:14, 162:2, 162:12, 163:3
**transmitted** [1] - 26:16
**Treasury** [1] - 11:22
**treated** [1] - 123:6
**treatment** [1] - 101:21
**trial** [29] - 21:10, 43:9, 61:2, 70:23, 71:14, 73:3, 78:1, 83:22, 84:18, 84:24, 86:13, 98:25, 101:1, 101:5, 102:3, 102:22, 111:14, 112:1, 112:5, 112:8, 149:20, 150:1, 171:22, 171:24, 185:14, 188:7, 201:9, 201:16, 204:14
**TRIAL** [2] - 1:17, 4:3
**tried** [5] - 9:10, 60:5, 177:18, 178:16, 178:17
**tries** [1] - 31:8
**true** [16] - 9:14, 12:17, 14:5, 15:20, 16:8, 35:23, 119:15, 120:3, 131:8, 136:9, 149:3, 168:20, 176:2, 177:21, 186:17, 206:7
**trust** [1] - 183:23
**truth** [4] - 77:19, 78:7, 157:16, 185:6
**try** [15] - 29:3, 111:24, 142:6, 155:23, 160:24, 167:16, 170:5, 174:17, 179:15, 179:19, 179:20, 181:25, 182:9, 186:13
**trying** [12] - 42:10, 48:6, 68:7, 162:12, 178:22, 178:23, 178:24, 184:4,

186:12, 194:21, 197:8
**TUESDAY** [2] - 1:18, 4:1
**Tuesday** [2] - 142:7, 179:23
**turn** [7] - 29:12, 34:6, 34:7, 120:11, 121:25, 125:14, 133:24
**turned** [3] - 21:2, 31:9, 178:14
**Turner's** [6] - 135:19, 137:3, 137:19, 139:24, 158:15, 174:10
**turning** [6] - 27:14, 34:12, 121:24, 145:12, 174:2, 174:7
**turns** [1] - 139:7
**twice** [3] - 90:16, 199:10
**Two** [10] - 40:3, 40:5, 63:19, 66:23, 114:13, 115:22, 118:20, 118:25, 130:25, 132:21
**two** [56] - 9:19, 11:4, 21:10, 29:6, 31:22, 34:2, 34:3, 39:23, 41:25, 44:23, 62:3, 62:10, 64:15, 66:4, 66:16, 87:3, 90:20, 93:14, 100:15, 100:21, 103:18, 104:2, 106:18, 117:7, 118:7, 119:9, 124:15, 125:1, 125:17, 125:22, 127:13, 131:8, 133:8, 134:6, 134:11, 135:21, 139:7, 145:13, 147:18, 149:7, 157:5, 161:14, 166:2, 167:6, 179:25, 188:9, 191:23, 193:4, 193:10, 195:3, 195:6, 197:12, 200:10, 205:1
**two-year** [1] - 161:14
**type** [7] - 26:22, 42:11, 59:11, 59:14, 60:3, 74:10, 195:17
**types** [2] - 74:10, 196:11

**U**

**U.S** [3] - 19:2, 85:9, 100:18
**umm** [1] - 16:14
**unanimous** [4] - 110:13, 110:21, 112:20, 113:13
**uncharged** [3] - 195:21, 200:21, 203:24
**unconstitutionally** [1] - 73:23
**under** [35] - 5:9, 11:25, 19:23, 44:21, 45:18, 45:20, 45:23, 48:1, 48:15, 48:22, 49:18, 50:1, 51:4, 51:6, 52:15, 53:16, 56:20, 57:20, 59:6, 60:7, 68:23, 101:18, 156:13, 156:21, 162:6, 163:9, 177:11, 181:24, 188:3, 193:9, 193:16, 197:23, 200:16, 200:22, 204:2
**undercover** [11] - 66:12, 157:19, 157:20, 158:2, 158:4, 158:5, 164:11, 164:13, 194:1, 194:7, 194:21
**underlined** [1] - 21:25
**underlying** [7] - 103:4, 103:7, 103:9, 125:9, 125:12, 125:19, 133:16
**understandably** [1] - 158:1
**understood** [12] - 128:12, 128:14, 128:21, 129:6, 129:22, 138:21, 139:12, 144:5, 145:1, 146:9, 146:15, 170:8
**undeterred** [2] - 200:24
**unexpected** [1] - 171:25
**unfair** [2] - 153:7, 204:6
**uniform** [3] - 158:20, 175:15, 175:18
**uniforms** [1] - 66:11
**unimaginable** [4] - 59:18, 59:19, 169:9,

203:17
**unintentionally** [1] - 108:23
**union** [7] - 11:3, 11:5, 12:11, 12:15, 178:11, 178:12
**unique** [1] - 153:16
**United** [15] - 4:6, 40:19, 76:20, 81:11, 86:19, 89:20, 103:13, 106:12, 107:4, 109:13, 116:1, 151:2, 163:19, 168:13, 185:21
**united** [1] - 206:12
**UNITED** [2] - 1:1, 1:8
**unknowingly** [1] - 108:23
**unlawful** [23] - 41:20, 45:15, 86:23, 92:21, 100:17, 104:4, 104:17, 105:6, 105:15, 116:22, 127:11, 127:14, 127:16, 129:6, 130:19, 155:16, 159:22, 163:15, 187:11, 187:14, 187:17, 192:22, 193:13
**unless** [3] - 51:24, 96:23, 101:11
**unlicensed** [3] - 44:16, 45:14, 52:22
**unlike** [3] - 153:16, 166:15, 169:12
**unreliable** [1] - 201:12
**up** [61] - 4:15, 12:18, 13:4, 13:5, 17:3, 17:7, 24:4, 24:13, 24:17, 25:12, 26:9, 28:21, 28:22, 30:25, 45:22, 50:22, 54:24, 60:25, 62:13, 65:21, 65:24, 85:3, 96:19, 113:17, 123:19, 124:1, 124:2, 124:20, 126:16, 136:15, 136:24, 136:25, 137:14, 138:8, 139:21, 140:25, 141:25, 142:5, 143:7, 143:14, 156:19, 157:12, 158:14, 160:5, 162:17, 164:4, 166:22, 171:16, 174:9, 174:11, 174:20,

178:4, 180:15, 181:1, 181:5, 181:13, 185:23, 195:9, 199:25, 205:4
**uphold** [3] - 117:23, 128:5, 150:21
**US** [1] - 2:5
**USC** [1] - 41:12
**uses** [1] - 176:3
**utilized** [1] - 28:19

**V**

**vagueness** [1] - 45:12
**various** [1] - 95:14
**vary** [1] - 123:1
**venture** [2] - 106:4, 109:6
**verbatim** [1] - 28:8
**verdict** [27] - 43:3, 70:8, 82:12, 85:25, 90:8, 96:19, 101:8, 110:13, 110:21, 110:25, 111:1, 112:16, 112:17, 112:21, 113:14, 171:9, 186:17, 198:3, 204:17, 204:20, 204:22, 204:24, 205:1, 205:3, 205:8, 205:14, 205:20
**verdicts** [4] - 98:4, 101:7, 112:21, 204:24
**vernacular** [1] - 156:16
**Veronica** [1] - 2:4
**veronica.dragalin@ usdoj.gov** [1] - 2:8
**versa** [1] - 22:18
**versus** [4] - 4:6, 81:12, 85:10, 89:20
**vice** [1] - 22:18
**Victoria** [1] - 2:16
**video** [1] - 146:1
**videos** [1] - 150:4
**videotape** [2] - 158:2, 158:4, 158:5
**views** [1] - 110:17
**violate** [5] - 93:13, 157:21, 158:11, 167:16, 169:23
**violated** [5] - 173:3, 175:24, 190:3, 190:18, 190:20
**violates** [1] - 112:3
**violating** [23] - 40:21, 42:20, 42:23, 43:15,

46:6, 51:25, 154:22,
155:21, 156:25,
157:11, 161:5,
161:12, 164:1,
164:6, 166:13,
170:3, 173:19,
174:7, 174:20,
203:1, 203:3, 203:6
**violation** [21] - 17:16,
43:12, 86:19, 86:24,
92:6, 100:10,
100:11, 100:18,
103:12, 106:11,
107:4, 109:12,
116:1, 128:24,
129:11, 165:17,
166:5, 188:15,
190:15, 200:20,
204:8
**violations** [2] - 166:7,
166:8
**voluntarily** [1] -
101:24
**VS** [1] - 1:11

## W

**wait** [6] - 63:11, 78:10,
141:7, 146:5, 183:2
**waiting** [4] - 30:17,
95:13, 113:10,
195:11
**waive** [1] - 182:20
**walk** [5] - 118:14,
195:13, 195:14,
195:15
**walked** [2] - 4:18, 4:19
**walking** [1] - 195:9
**wall** [1] - 166:22
**wants** [2] - 160:21,
182:2
**war** [2] - 185:22, 186:2
**warned** [8] - 41:8,
128:25, 129:1,
189:4, 190:2,
192:23, 203:8, 203:9
**warning** [2] - 43:13,
188:23
**warns** [1] - 43:14
**warrant** [2] - 24:23,
196:11
**warrants** [1] - 197:4
**wasting** [1] - 164:19
**watch** [2] - 62:16,
111:19
**ways** [4] - 80:7,
104:10, 127:15,
187:19
**wear** [1] - 23:8

**wearing** [2] - 23:16,
66:11
**wears** [1] - 23:5
**website** [1] - 111:12
**Wednesday** [1] -
179:23
**week** [6] - 118:16,
141:8, 141:13,
142:6, 143:20,
179:23
**weekend** [2] - 122:6,
138:11
**weeks** [5] - 21:10,
75:7, 144:19, 195:3,
197:12
**weigh** [1] - 96:6
**weight** [9] - 14:6,
99:10, 99:12, 100:1,
100:4, 101:15,
102:18, 103:8,
110:25
**WEST** [1] - 1:24
**WhatsApp** [5] - 22:13,
142:4, 142:14,
142:25, 196:18
**whatsoever** [9] - 9:22,
57:8, 62:5, 158:22,
159:16, 166:17,
169:16, 174:1,
180:23
**whole** [1] - 33:24
**wide** [1] - 122:1
**wife** [10] - 10:20,
10:25, 11:8, 11:10,
12:5, 12:8, 12:18,
139:2, 139:7, 181:14
**wife's** [1] - 178:11
**wilfully** [19] - 40:14,
43:1, 73:24, 74:8,
74:11, 74:13, 92:9,
92:18, 104:17,
104:21, 116:6,
130:23, 156:25,
160:17, 173:3,
174:6, 175:2,
175:24, 187:8
**wilfulness** [9] - 40:17,
41:19, 42:12, 42:17,
43:13, 50:4, 160:6,
169:8, 173:1
**willful** [2] - 79:14,
127:17
**willfully** [24] - 73:21,
92:17, 92:20,
116:21, 119:12,
127:8, 127:10,
130:18, 152:21,
157:23, 158:6,
158:12, 159:9,
161:5, 161:12,

166:10, 166:11,
170:3, 173:19,
174:20, 187:5,
202:25, 203:14
**willfulness** [6] - 40:16,
42:3, 42:9, 159:19,
161:17, 168:21
**willing** [2] - 130:2,
181:21
**Wilshire** [1] - 2:23
**win** [1] - 170:23
**wish** [6] - 46:18,
50:10, 51:11, 74:3,
92:24, 95:24
**withdraw** [1] - 109:8
**withdrawals** [2] -
12:15, 12:17
**WITNESS** [8] - 3:2,
3:3, 5:12, 5:17, 14:2,
14:18, 20:9, 81:8
**witness** [48] - 20:19,
20:22, 21:14, 21:19,
36:17, 62:7, 62:25,
63:12, 64:8, 64:15,
65:1, 65:7, 65:17,
65:20, 65:25, 66:14,
66:21, 67:1, 67:9,
68:1, 70:7, 70:14,
72:5, 82:18, 98:1,
98:11, 99:3, 99:15,
99:17, 102:15,
102:19, 121:21,
124:19, 124:20,
134:12, 135:18,
136:8, 157:13,
163:16, 172:11,
176:9, 176:16,
179:21, 181:24,
200:25, 201:1
**witness'** [1] - 99:18
**witness's** [9] - 99:20,
99:21, 99:22, 99:23,
99:24, 102:3, 102:5,
102:19
**witnesses** [22] -
37:12, 38:10, 72:12,
77:10, 86:14, 88:7,
98:9, 100:2, 100:3,
100:5, 101:19,
101:20, 101:22,
102:1, 102:6,
102:10, 102:11,
176:10, 197:3,
197:15
**witnesses'** [3] - 87:2,
100:20, 200:8
**won** [1] - 185:22
**word** [1] - 74:10
**words** [5] - 75:8,
107:25, 165:19,

187:12, 202:25
**works** [1] - 191:18
**world** [1] - 181:11
**worse** [1] - 180:16
**write** [9] - 20:17, 28:8,
28:11, 32:5, 32:24,
33:3, 33:5, 35:20,
36:9
**writing** [7] - 21:24,
33:8, 57:22, 57:23,
111:10, 113:4, 113:5
**written** [4] - 33:15,
36:3, 95:23, 185:21
**wrote** [12] - 18:14,
18:23, 20:1, 22:3,
22:7, 32:18, 33:8,
33:15, 35:24, 183:3,
183:4, 183:7

## Y

**YASUSHIRO** [1] - 1:12
**year** [10] - 14:8, 36:1,
52:8, 52:12, 61:6,
107:13, 161:14,
182:24, 183:6
**years** [13] - 13:20,
32:4, 44:23, 67:25,
118:7, 125:17,
125:22, 154:10,
166:2, 175:13,
195:6, 195:12
**yesterday** [16] - 5:22,
7:2, 8:9, 8:21, 8:24,
9:12, 27:18, 38:19,
51:2, 53:8, 140:14,
149:25, 150:1,
150:2, 201:1
**yourself** [10] - 18:8,
33:21, 34:13,
110:15, 125:2,
125:12, 149:24,
179:13, 198:15,
203:18
**yourselves** [2] -
179:17, 198:13

## Z

**zero** [2] - 126:20
**zoom** [2] - 24:18,
26:12