NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
KATHERINE A. RYKKEN (Cal. Bar No. 267196)
Assistant United States Attorney
Major Frauds Section
VERONICA DRAGALIN (Cal. Bar No. 281370)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0647
     Facsimile: (213) 894-0141
     E-mail:    katherine.rykken@usdoj.gov
                veronica.dragalin@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-121(A)-SJO-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT CARLOS FERNANDEZ; EXHIBIT |
| v. | |
| CARLOS FERNANDEZ, | Hearing Date: March 2, 2020<br>Hearing Time: 9:00 a.m. |
| Defendant. | Location:    Courtroom of the<br>             Hon. S. James Otero |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Katherine A. Rykken and Veronica Dragalin hereby files its Sentencing Position with respect to defendant Carlos Fernandez.

//

//

//

//

This Position is based upon the attached memorandum of points and authorities and exhibit, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 18, 2020            Respectfully submitted,

                                            NICOLA T. HANNA
                                            Acting United States Attorney

                                            BRANDON D. FOX
                                            Assistant United States Attorney
                                            Chief, Criminal Division

                                            */s/ Veronica Dragalin*
                                            KATHERINE A. RYKKEN
                                            VERONICA DRAGALIN
                                            Assistant United States Attorneys

                                            Attorneys for Plaintiff
                                            UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On November 20, 2019, defendant Carlos Fernandez ("defendant" or "Fernandez") was found guilty by jury trial on six counts, specifically conspiracy to engage in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 371 (count one), engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1) (count two), conspiracy to sell firearms to a prohibited person, in violation of 18 U.S.C. § 371 (count four), selling a firearm to a prohibited person, in violation of 18 U.S.C. § 922(d)(1) (count seven), and aiding and abetting false statements in a firearm licensee's records, in violation of 18 U.S.C. § 924(a)(1)(A) (counts ten and eleven).

On January 27, 2020, the United States Probation Office ("USPO") disclosed its Presentence Investigation Report ("PSR") but did not disclose a Sentencing Recommendation Letter in this matter.  (Dkt. 317.)  The PSR calculated a total offense level of 26 and a Criminal History Category I, resulting in a Guideline Sentence range of 63 to 78 months.  The government concurs with the PSR calculations.

The government recommends that the Court impose the following low-end sentence: (a) 63 months of imprisonment; (b) three years of supervised release; and (c) a special assessment of $600.  The government submits that such a sentence would be sufficient, but not greater than necessary, to meet the sentencing goals set forth in 18 U.S.C. § 3553(a).

**II.   FACTUAL BACKGROUND**

At the time of the offenses, defendant was a detective with the Gardena Police Department.  He was a peace officer, and a sworn

member of a law enforcement agency who was paid on a full-time basis. (PSR ¶ 23.)  From 2015 through 2017, defendant and co-defendant Edward Arao ("Arao") worked in concert to purchase and sell 87 firearms, using their status as police officers to facilitate the purchase and sale of rare and valuable firearms.  (PSR ¶ 32.)

From May 2016 to December 2017, defendant negotiated and arranged the sale of ten firearms with co-defendant Oscar Camacho, Jr. ("Camacho Jr."), who was a convicted felon at the time. Defendant communicated directly with Camacho Jr. to negotiate and set up these sales, but transferred the firearms to co-defendant Oscar Camacho, Sr. ("Camacho Sr.") and Rafael Camacho Maravilla ("Camacho Maravilla"), Camacho Jr.'s father and brother, respectively.  (PSR ¶ 39.)  Text messages between defendant and Camacho Jr. included conversations regarding the types of handguns Camacho Jr. was interested in purchasing and the pricing for those handguns.  In one discussion, Camacho Jr. indicated that he was waiting for his father to be available to participate in a transaction.  In another, defendant told Camacho Jr. that he wanted to keep three handguns for himself, and Camacho Jr. responded: "nah you said they were for me." Defendant replied: "[i]ma need the guys who's name it's in to be available."  (PSR ¶ 40.)  These text messages indicate that defendant was fully aware Camacho Jr. was the actual buyer of the firearms, and that he was repeatedly facilitated having family members complete the ATF forms required for purchasing guns.  As a law enforcement officer, defendant knew or had reason to know that Camacho Jr. was prohibited from purchasing firearms, but nevertheless repeatedly sold him guns to make money.  Not only did defendant know that Camacho Jr. was purchasing these guns for himself, defendant knew that Camacho

2

1  Jr. was using these guns.  See, e.g., Trial Exhibit 175A (Camacho Jr.
2  writing "when I fire it"); Trial Exhibit 182A (defendant writing: "U
3  can bring pops to do the paperwork and I can take the paper he signs
4  out there when I deliver the guns *and then you can go and have a*
5  *great time!*).

6  On July 24, 2016, defendant sold two firearms to co-defendant
7  Bianca Ibarria ("Ibarria"), one of which defendant knew was for co-
8  defendant Adalberto de Jesus Vazquez Pelayo, Jr. ("Pelayo").
9  Defendant communicated solely with Pelayo to set up the transaction,
10 received payment from Pelayo, and encouraged Pelayo to have Ibarria
11 complete the transfer of the firearms because Pelayo was prohibited
12 from purchasing the firearm.  (PSR ¶ 41.)

13 Defendant repeatedly demonstrated a complete disregard for the
14 law throughout his criminal conduct in dealing in firearms without a
15 license and facilitating straw purchases, including to prohibited
16 persons.  For example, when asked by a gun customer, "*How do crooks*
17 *do it*?", defendant responded: "*A parent old lady wife girlfriend* lol
18 *or anyone else*."  Trial Exhibit 46A; see also Trial Exhibit 50A (in
19 communicating with a customer who wanted a firearm in Mexico,
20 defendant wrote: "U would have to buy it here what u do with it I
21 can't control that lol").  Defendant also repeatedly demonstrated a
22 lack of respect for law enforcement.  For example, when Camacho Jr.
23 asked defendant if they would have to wait to do the next gun
24 transaction, defendant responded: "Bro I'm going on vac. In 15 days
25 and I need *Money* .. lol so we can do it *fuck the* feds.."  Trial
26 Exhibit 171A; see also Trial Exhibit 173A (defendant warning Camacho
27 Jr.: "*Friend be careful with the fucking pigs* 🐷 *they give* tickets
28 *for using a cellphone while driving* ").

3

## III. THE PRESENTENCE INVESTIGATION REPORT AND GUIDELINES CALCULATIONS

On January 27, 2020, the USPO disclosed its PSR. (Dkt. 317.) The PSR calculated a total offense level of 26, starting with a base offense level 14 pursuant to U.S.S.G. § 2K2.1(a)(6), a 6-level enhancement for the number of firearms under U.S.S.G. § 2K2.1(b)(1)(C), a 4-level enhancement for trafficking in firearms under U.S.S.G. § 2K2.1(b)(5), and a 2-level enhancement for abuse of trust under U.S.S.G. § 3B1.3. (Id.)

The government concurs with this calculation. With respect to the gun trafficking enhancement, U.S.S.G. § 5K2.1(b)(5) provides a four-level enhancement "[i]f the defendant engaged in the trafficking of firearms." Application Note 13 further explains the applicability of this enhancement, which has two components: (i) defendant transferred or otherwise disposed of two or more firearms to another individual; and (ii) defendant knew or had reason to believe that such conduct would result in the disposal of a firearm to an individual whose possession of the firearm would be unlawful. An "individual whose possession of the firearm would be unlawful" is further defined as an individual who has a prior conviction for a controlled substance offense, among other things. Here, defendant was charged with conspiring to dispose of 10 firearms to Camacho Jr., a felon convicted of a controlled substance offense. The jury found defendant guilty of this conspiracy and of a substantive count of disposing of a firearm to a felon. This enhancement therefore applies.

With respect to the abuse of trust enhancement, U.S.S.G. § 3B1.3 provides a two-level enhancement "[i]f the defendant abused a position of public or private trust ... in a manner that

4

significantly facilitated the commission or concealment of the offense." The Ninth Circuit has recognized that "police officers are accorded public trust to enforce the law. The public, including fellow law enforcement agents, expect that police officers will not violate the laws they are charged with enforcing." United States v. Foreman, 926 F.2d 792, 796 (9th Cir. 1990) (holding that "district court correctly concluded that Foreman's use of her position as a police officer constituted an abuse of a position of public trust" under 3B1.3); see also United States v. Hale, 685 F.3d 522, 546, (5th Cir. 2012) ("Police officers hold positions of public trust."); United States v. Rehal, 940 F.2d 1, 5 (1st Cir. 1991) ("Needless to say, a police officer occupies a position of public trust, and the commission of a crime by a police officer constitutes an abuse of that trust.").

The Ninth Circuit has repeatedly upheld the abuse of trust enhancement as applied to law enforcement officers committing crimes. United States v. Duran, 15 F.3d 131, 132 (9th Cir. 1994) (upholding 3B1.3 enhancement where defendant was a sheriff's deputy with the LASD accused of stealing money seized in connection with the arrest of suspected drug dealers and money launderers); see also United States v. Pascucci, 943 F.2d 1032, 1037 (9th Cir. 1991) (upholding abuse of trust enhancement for U.S. Marshal convicted of attempted extortion). Courts have also recognized "that 3B1.3 is applicable when an officer uses special knowledge, access, or both, that has been obtained by virtue of his or her status as an officer to facilitate substantially the offenses in question." United States v. Williamson, 53 F.3d 1500, 1525, (10th Cir. 1995) (citations omitted).

Here, as supported by evidence introduced at trial, defendant's

5

status as a law enforcement officer was essential to his illegal gun business scheme. The reason defendant was able to make money by repeatedly purchasing and then reselling guns at a profit is because of California's restrictions on "off-Roster" firearms. In California, licensed dealers can only sell off-Roster firearms to law enforcement officers to be used in the discharge of their duties. For that reason, these firearms are difficult to get and therefore expensive in California. Defendant repeatedly bragged to people that he could use his law enforcement status as a police officer with the Gardena Police Department to buy these types of guns, including from out of state, for a cheaper price and sell them at a higher price to non-law enforcement individuals. For that reason, the abuse of trust enhancement is appropriate in this case.

With respect to criminal history, the USPO concluded that defendant has zero criminal history point, resulting in a Criminal History Category of I. (PSR ¶ 74.) The government concurs with this calculation.

With a total offense level of 26 and a Criminal History Category I, the Guidelines Sentence range is 63 to 78 months. (PSR ¶ 105.)

**IV. SENTENCING RECOMMENDATION**

The government respectfully requests that the Court adopt the factual findings and criminal history calculation of the PSR in this matter, and the additional information in this sentencing position. In accordance with the factors listed in 18 U.S.C. § 3553(a), the government recommends that the Court impose the following low-end sentence: (a) 63 months of imprisonment; (b) three years of supervised release; and (c) a special assessment of $600.

### A. Nature and Circumstances of the Offense

The Gun Control Act requires a person to be a licensed dealer before engaging in the business of dealing in firearms. 18 U.S.C. § 922(a). A licensed dealer is required to maintain accurate records of all firearms received and sold, 18 U.S.C. § 923(g), and may not sell firearms to prohibited classes of persons such as minors and convicted felons. 18 U.S.C. §§ 922(b) & (d). "It is through such controls that Congress has sought to curtail criminal activities in which firearms are used and to be able to more readily trace firearms which have been used unlawfully." United States v. Jackson, 352 F. Supp. 672, 677 (S.D. Ohio 1972), aff'd, 480 F.2d 927 (6th Cir. 1973). At the same time, "Congress did not intend to place unnecessary restrictions on law-abiding citizens." Id.

Defendant's conduct is behavior that facilitates the use of firearms in criminal activities. Defendant knowingly sold firearms to a convicted felon, Camacho Jr. At the time federal agents executed a search warrant at Camacho Jr.'s home in December 2017, Camacho Jr. was in the residence with ready access to ten firearms, nine of which were purchased through defendant. Along with ten firearms and ammunition, agents recovered cocaine, methamphetamine, and heroin, as well as indicators of drug trafficking, such as scales and over $12,000 cash. Camacho Jr. was prohibited from possessing guns because, as a convicted felon, he was more dangerous and likely to reoffend. Instead of respecting that limitation, defendant put deadly weapons into this felon's hands without regard for the consequences. Defendant's actions contributed to the dangerous combination of a convicted felon being in possession of large quantities of drugs and cash, with ready access to guns that are

often used by drug traffickers to protect their stash.  Although fortunately no violence resulted in this case, these circumstances should be taken into account in fashioning an appropriate sentence.

Furthermore, defendant and his co-conspirator put 86 firearms, the great majority of which were off-Roster firearms, in the hands of people who could not lawfully purchase those guns from licensed dealers in California.  Defendant ignored the dangerous nature of his conduct, in flagrant disregard of his duties and oath as a law enforcement officer, and did so because he was motivated to make money.  The offense conduct warrants the recommended prison sentence.

**B.   History and Characteristics of Defendant**

Defendant served as a police officer with the Gardena Police Department for nearly twenty years.  Defendant no doubt performed good deeds during the course of his career, and the government recognizes and commends defendant for his public service in a demanding and difficult job.  The PSR summarizes six reference letters[1] submitted to the USPO, some of which come from defendant's fellow police officers and highlight defendant's career accomplishments as a police officer. (PSR ¶ 85.)  However, defendant's attitude towards his fellow law enforcement officers as demonstrated through his own words during the course of this investigation paint a different picture.  As discussed above, defendant repeatedly demonstrated a complete disregard for the law and a lack of respect for law enforcement officers.  In addition to the messages introduced at trial, defendant's private conversations with additional gun customers further evidence this disrespectful

---

[1] The government has not received copies of these letters.

attitude toward the law and his fellow officers.  For example, in one Instagram message exchange with another individual, defendant wrote: "Well I shot two and they all been clean so don't look forward to turning in the shoes or getting tired my brotha[.] And one was off duty lol 😊 nada paso but drunk as fuck ! "  (Exhibit A.) Defendant's use of "lol [laugh out loud]" and smiley faces to describe an off-duty shooting while he was drunk demonstrates a complete disrespect for the grave circumstances that surround any police officer shooting.  Later in the conversation, defendant and this same individual discussed a photograph of another individual wearing a gold, holstered gun.  Defendant commented: "Selling coca got him this gun lol[.] 6k gun and $20 hostler."  The other individual responded: "That's why you need to sell holsters.  Make money that way."  (Exhibit A.)  Defendant's casual attitude toward drug dealers selling cocaine to buy expensive guns (like the ones defendant marketed and sold) further demonstrate a disrespect for the law.

As a police officer, defendant took an oath to serve and protect his community.  Instead, he abused his position as a law enforcement officer to get access to off-Roster firearms at good prices and from out of state, to then turn around and sell them for a profit. Defendant's history and characteristics warrant the recommended sentence.

    **C.  Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Afford Adequate Deterrence to Criminal Conduct**

The sentence must satisfy defendant's need for punishment or rehabilitation, as well as society's need to reflect the seriousness of the offense, promote respect for the law, provide just punishment

9

for the offense, and afford adequate deterrence.  The seriousness of this offense and defendant's conduct evidencing a lack of respect for the law are aggravating factors.

There is a strong need for the sentence to deter defendant and others from committing future crimes.  18 U.S.C. §3553(a)(2)(B) (the sentence imposed is required "to afford adequate deterrence to criminal conduct," which encompasses both specific and general deterrence).  A sentence that provides for specific and general deterrence is necessary.  A 63-month term of imprisonment will provide specific deterrence by reminding defendant that obeying the law is more important than lining his pockets.  In addition, a substantial custodial sentence is warranted in light of the need to deter individuals like defendant who unlawfully deal in firearms, and will effectively deter future corrupt conduct by law enforcement officers.  The recommended sentence would provide both specific and general deterrence and just punishment for the offense in this case.

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court impose the following sentence: (a) 63 months of imprisonment; (b) three years of supervised release; and (c) a special assessment of $600.