AMBROSIO E. RODRIGUEZ, (CA Bar No. 200880)
Michael J. Hanagan, (CA Bar No. 220440)
The Rodriguez Law Group
626 Wilshire Blvd. Ste. 900
Los Angeles, CA 90017
Telephone: (213) 995-6767
Facsimile: (213) 995-6368

Attorneys for the Defendant,
Carlos Fernandez

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 18-CR-00121-SJO-1 |
|---|---|
| Plaintiff, | MOTION FOR JUDGMENT OF ACQUITTAL OR ALTERNATIVELY NEW TRIAL |
| v. | |
| CARLOS FERNANDEZ, et al., | Courtroom of the Honorable S. James Otero |
| Defendant. | |

PLEASE TAKE NOTICE that Defendant Carlos Fernandez, by and through counsel of record, Ambrosio E. Rodriguez, will move this Court, before the Honorable Otero, United States District Court Judge for the Central District of California, at the United States Courthouse, 350 W. 1st Street, Los Angeles, CA 90012 – Courtroom 10C, as soon as the matter may be heard, for an Order granting a judgment of acquittal or, alternatively, a new trial based on the government's prosecutorial misconduct during the trial. In support, Defendant Carlos Fernandez submits this Motion for Judgment of Acquittal or Alternatively New Trial dated February 18, 2020, which is incorporated below.

1

## I. THE GOVERNMENT ENGAGED IN PROSECUTORIAL MISCONDUCT WARRANTING ACQUITTAL OR A NEW TRIAL

"The prosecution plays a special role in the search for truth in criminal trials." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) As such, "[p]rosecutors are subject to constraints and responsibilities that don't apply to other lawyers...The prosecutor's job isn't just to win, but to win fairly, staying well within the rules. *United States v. Kojayan*, 8 F.3d 1315, 1323 (1993) (citing *Berger v. United States*, 295 U.S. 78, 88 (1935), *United States v. Hill*, 953 F.2d 452, 458 (9th Cir. 1991)).

"When reviewing for prosecutorial misconduct, we consider the context of the entire trial 'whether it is more probable than not that the prosecutor's conduct materially affected the fairness of the trial.'" *U.S. v. Reyes*, 660 F.3d 454 (9th Cir. 2011); *see also United States v. Simtob*, 901 F.2d 799, 806 (9th Cir. 1990). If prosecutorial misconduct deprives the defendant of a fair trial, the conviction must be reversed. *United States v. Yarbough*, 852 F.2d 1522, 1539 (9th Cir.1988). Here, the government engaged in prosecutorial misconduct on four occasions: (a) by calling Raul Cervantes Corona to testify to information that was irrelevant, misleading, and prejudicial; (b) by using a misleading and prejudicial graph prepared by Agent Hart; (c) knowing that Agent Hart's graph was misleading, irrelevant, and prejudicial, the government vouched for the graph by including it in the government's closing argument; and (d) by interference through witness intimidation. Such conduct is improper and deprived Mr. Fernandez of a fair trial.

### A. THE GOVERNMENT ENGAGED IN PROSECUTORIAL MISCONDUCT BY CALLING RAUL CERVANTES CORONA TO TESTIFY TO INFORMATION THAT WAS IRRELEVANT, MISLEADING, AND HIGHLY PREJUDICIAL

The government committed prosecutorial misconduct by calling Raul Cervantes Corona to testify about an illegal purchase he made that lacked relevance to the

case at hand. Cervantes Corona purchased two fire arms from Mr. Fernandez but never disclosed, and in actuality concealed the fact from Mr. Fernandez, that one of the firearms was going to be given to a prohibited person.  By allowing Cervantes Corona to testify, the government made the impermissible insinuation that Mr. Fernandez somehow knew of Cervantes Corona's intent to commit a crime. "[I]t is improper for the government to present to the jury statements or inferences it knows to be false, or has very strong reason to doubt." *United States v. Reyes*, 577 F.3d 1069 (9th Cir. 2009); *United States v. Blueford*, 312 F.3d 962, 968 (9th Cir. 2002).

   The government's first witness was Raul Cervantes Corona, an individual who had purchased two firearms from Mr. Fernandez. Although Cervantes Corona testified that he intended to purchase two firearms, one for himself and one for his friend who was prohibited from purchasing a firearm, Corona Cervantes never disclosed his intention to give one of these firearms to the prohibited person. Nothing in fact and nothing in the record suggests that Mr. Fernandez had any reason to believe that Corona Cervantes purchased the two firearms with the intention of giving one of the two to someone else, much less to a person prohibited from owning a firearm. Cervantes Corona also testified that he falsely stated on the ATF 4473 forms that both firearms were for him.

   On Mr. Fernandez's end, there was nothing improper about the firearms sale to Cervantes Corona. It was Cervantes Corona's deception and conduct that made the purchase illegal. There was no indication that Cervantes Corona was buying the firearm for anyone other than himself and the Court noted that the alleged straw purchase was not relevant to the allegations in the indictment as to either defendant.

   The fact that the government explained that the purpose of Cervantes Corona's testimony was to make clear that Cervantes Corona was a cooperator does not

lessen the prejudicial impact Cervantes Corona's testimony had on Mr. Fernandez's case. The testimony provided by Cervantes Corona is directly related to the subject matter of the type of charges that Mr. Fernandez was facing but had no logical connection to the charges against Mr. Fernandez. There was no way for Mr. Fernandez to know that this was a straw-purchase and no way for Mr. Fernandez to know that Cervantes Corona lied on the ATF 4473 form. However, Cervantes Corona's testimony was so connected to the charges Mr. Fernandez's faced so as to confuse the jury and lead them to make the inference that somehow Mr. Fernandez was responsible for the illegal transfer from Cervantes Corona to his friend who was prohibited from owning firearms.

### B. THE GOVERNMENT'S USE OF AGENT HART'S GRAPH WAS MISLEADING AND PREJUDICIAL

In its case-in-chief, the government called Special Agent Tolliver Hart to testify regarding the firearms sold by Defendant Carlos Fernandez. During Agent Hart's testimony, the government displayed a graph created by Agent Hart referencing firearms Carlos Fernandez had purchased. Included in the graph was each firearm's purchase price, resale value, and the difference between the two to display a hypothetical profit had the guns been sold at resale value. All of the firearms listed were firearms that Mr. Fernandez had legally purchased and possessed. None of the firearms displayed on the graph had been sold by Mr. Fernandez.

Despite the fact that Mr. Fernandez did not sell any of the firearms listed in the government's chart, the government presented this information to the jury in a manner that suggested the firearms were sale items with a purchase price, resale price, and a listed profit if the firearms were sold based on the difference between the two.

///


### C. THE GOVERNMENT'S USE OF THE GRAPH IN ITS CLOSING ARGUMENT WAS PROSECUTORIAL MISCONDUCT AND AMOUNTED TO IMPERMISSIBLE VOUCHING

After Mr. Fernandez's defense counsel objected to Agent Hart's graph, the prosecution re-introduced the graph during its closing argument knowing that the graph was impermissibly misleading. The prosecution nonetheless incorporated the graph into its closing where it would not be subject to re-examination. This is akin to *U.S. v. Reyes* where the Court held that there was prosecutorial misconduct when the "prosecution knew that several employees of Brocade's Finance Department had given pre-trial statements to the Federal Bureau of Investigation acknowledging that the Finance Department knew about Reyes's and the Company stock option backdating practices, but that during closing argument, the prosecution knowingly and falsely claimed that the Finance Department did not know about the stock option backdating." 577 F.3d 1069 (9th Cir. 2009). Knowing how misleading Agent's graph was, the government included the misleading and prejudicial graph in its closing where it would not be subject to cross-examination.

The government's use of the graph in its closing amounts to impermissible vouching because it gives the impression that the graph was somehow relevant and probative after this was shown to not be the case. "Improper vouching occurs when the prosecutor places the prestige of the government behind the witness by providing personal assurances of the witness's veracity. [It] also occurs where the prosecutor suggests that the testimony of government witnesses is supported by information outside that presented to the jury." *United States v. Wright*, 625 F.3d 987, 996 n.4 (9th Cir. 2010)

In the present case, the vouching occurred by way of the government reintroducing Agent Hart's graph after it had already been shown to be irrelevant and at a point where it was not subject to re-examination. The graph legitimately

served no purpose to any of the charges against Mr. Fernandez. The firearms listed in the graph were firearms Mr. Fernandez legally obtained and legally possessed. By presenting the firearms in the way displayed on the graph, the government gave the impression to the jury that these firearms were sold for the listed amount and that a profit was made. Presenting the evidence in this way was arbitrary and highly prejudicial to Mr. Fernandez.

It is well settled that a prosecutor in a criminal case "has a special obligation to avoid improper suggestions, insinuations, and especially assertions of personal knowledge." *U.S. v. Roberts*, 618 F.2d 530, 533 (9th Cir. 1980). It having been established that the graph was not relevant or probative, the government placed its prestige on the evidence by re-introducing the graph in its closing as if the graph was valid evidence of the charges against Mr. Fernandez, despite knowing that the graph was misleading. By re-introducing the graph in closing, the government placed its seal of approval verifying the graph's validity.

### D. THE GOVERNMENT'S CONDUCT AMOUNTS TO PROSECUTORIAL INTERFERENCE BY WITNESS INTIMIDATION

Prosecutorial misconduct such as "[u]ndue prosecutorial interference in a defense witness's decision to testify arises when the prosecution intimidates or harasses the witness to discourage the witness from testifying." *Williams v. Woodford*, 384 F.3d 567, 601 (9th Cir. 2004). In the present case, the government committed prejudicial prosecutorial misconduct when government counsel sought to interfere with Adalberto Pelayo's testimony in order to prevent him from responding to Mr. Rodriguez's questioning. This type of concealment and withholding of relevant evidence by the government is violative of Mr. Fernandez's Sixth Amendment right to confront witnesses and produce favorable evidence and against his Fifth Amendment right to due process.

In *U.S. v. Vavages*, the Ninth Circuit recognized that government interference with a witness's testimony can amount to prosecutorial misconduct. 151 F.3d 1185 (9th Cir. 1998). In that case, the defendant, Vavages, filed a notice of intention to offer the defense of alibi and disclosed his alibi witness, Manuel. *Id*. at 1187. On the first day of trial, the presiding court learned through Manuel's attorney that Manuel would be invoking her Fifth Amendment right against self-incrimination. *Id*. The presiding court held a hearing to consider whether the government attorney had engaged in intimidating conduct by threatening to file perjury charges and to withdraw Manuel's plea agreement in an unrelated prosecution if Manuel were to testify in support of Vavages' alibi defense. *Id*. The Ninth Circuit found that the government counsel's conduct amounted to prosecutorial misconduct. *Id*. at 1193.

In *Vavages*, the Court's greatest concern was that the government had the threat of withdrawing Manuel's plea agreement hanging over her head if she decided to testify, regardless of whether she chose to testify truthfully or not. *Id*. at 1191. The instant case is no different as Mr. Pelayo had not yet been sentenced and he was testifying pursuant to a plea agreement with the government. In the present case, the Government had called Mr. Pelayo to the stand to testify against Mr. Fernandez. On cross-examination, Mr. Rodriguez asked Mr. Pelayo about statements to his attorney made to Mr. Pelayo. Any answer Mr. Pelayo would have given would not have been either inculpating or exculpating. Mr. Chambers had no meaningful or legitimate reason to object.

It is notable that Mr. Chambers did not object when the question was made, he did not object when government counsel raised an attorney-client privilege objection, nor did he object when the Court ruled on the government's objection stating that it was not the government's objection to make. It was only when Mr. Rodriguez began asking the question for the second time and government counsel

turned around to look directly at Mr. Chambers that Mr. Chambers finally made the objection claiming attorney-client privilege.

Mr. Chambers could have raised the objection the initial time Mr. Rodriguez asked about communications between him and Mr. Pelayo and, but he did not. He could have raised it when the Court overruled the government's objection, and yet he did not. It was only when government counsel raised her objection and then turned around to direct her attention at Mr. Chambers, the implication being that it was in his client's best interest to have Mr. Chambers claim the attorney-client privilege. "It does not require much of an interpretative gloss on the prosecutor's warning to conclude that unless [Mr. Pelayo] changed [his] testimony or refused to testify at all," the government could still withdraw from the plea agreement. *See Vavages*, 151 F.3d at 1190. In truth, the only advantage in asserting an attorney-client privilege was not to Pelayo but to the Government.

The prosecutor's conduct during Mr. Rodriguez's cross-examination of Mr. Pelayo was undoubtedly a determining factor in Mr. Chamber's decision to invoke the attorney-client privilege and interfere with Mr. Pelayo's testimony. The government's conduct in this case is nothing short of the government clearly instructing defendant, through counsel, not to testify to the benefit of the defendant even if that testimony was truthful. Such conduct is prosecutorial misconduct.

### E. THE PROSECUTOR'S CONDUCT MATERIALLY AFFECTED THE FAIRNESS OF THE TRIAL

When reviewing for prosecutorial misconduct, the Court considers whether it is more probable than not that the prosecutor's conduct materially affected the fairness of the trial in the context of the entire trial. *United Staes v. McKoy*, 771 F.2d 1207, 1212 (9th Cir. 1985). The government's misconduct noted in this brief occurred in various stages of the trial, from when the government called its first witness, Raul Cervantes Corona, through its closing argument when it re-introduced Agent Hart's graph. The introduction and re-introduction of irrelevant

and misleading information validated to the jury evidence that should not have been admitted against Mr. Fernandez.

As stated in *Reyes*, "It is certainly within the bounds of fair advocacy for a prosecutor, like any lawyer, to ask the jury to draw inferences from the evidence that the prosecutor believes in good faith might be true. But it is decidedly improper for the government to propound inferences that it knows to be false, or has very strong reason to doubt, particularly when it refuses to acknowledge the error afterwards to either the trial court or this court and instead offers farfetched explanations of its actions." 660 F.3d 454 (9th Cir. 2011)(citing *Blueford*, 312 F.3d at 968). The government re-introduced evidence it knew to be misleading and arbitrary at a point where it could not be re-examined by defense counsel.

## II. THE CUMULATIVE ERRORS AND INSTANCES OF PROSECUTORIAL MISCONDUCT WARRANT AN AQUITTAL OR NEW TRIAL

Harmless error applies when a defendant timely objects to prosecutorial misconduct. *United States v. Blueford*, 312 F.3d 962, 973-74 (9th Cir. 2002). If no objection is made, then the applicable standard is plain error. *United States v. Sullivan*, 522 F.3d 967, 982 (9th Cir. 2008). Under a theory of plain error, the "conviction can be reversed only if, viewed in the context of the entire trial, the [claimed] impropriety seriously affected the fairness, integrity, or public reputation of judicial proceedings, or where failing to reverse a conviction would result in a miscarriage of justice." *United States v. Geston*, 299 F.3d 1130, 1134 (9th Cir. 2002).

Even if each error looked at separately did not rise to the level of reversible error, their cumulative effect may nevertheless be so prejudicial to the defendant that reversal is warranted. *U.S. v. Wallace*, 848 F.2d 1464, 1475 (9th Cir. 1988). Time after time, Mr. Fernandez was presented with prejudicial prosecutorial

misconduct that permeated through to the jurors in such a manner as to likely have affected the jury's discharge of its duty to judge the evidence fairly.

### III.   CONCLUSION

For the foregoing reasons, Defendant Carlos Fernandez requests that this Court grant Defendant's motion acquittal or alternatively for a new trial.

Respectfully submitted this 18th day of February 2020.

    /s/Ambrosio E. Rodriguez
Ambrosio E. Rodriguez
Attorney for Defendant Carlos Fernandez