Ambrosio E. Rodriguez, (CA Bar No. 200880)
Michael J. Hanagan, (CA Bar No. 220440)
The Rodriguez Law Group
626 Wilshire Blvd. Ste. 900
Los Angeles, CA 90017
Telephone: (213) 995-6767
Facsimile: (213) 995-6368

Attorneys for the Defendant,
Carlos Fernandez

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br>　　v.<br><br>CARLOS FERNANDEZ, et al.,<br><br>　　　　　　　　　Defendant. | Case No. 18-CR-00121-SJO-1<br><br>DEFENDANT CARLOS FERNANDEZ'S SENTENCING POSITION<br><br>Honorable S. James Otero<br>Hearing Date: March 2, 2020<br>Hearing Time: 9:00 a.m. |

　　　Defendant Carlos Fernandez, by and through his attorneys of record, Ambrosio E. Rodriguez and Michael J. Hanagan, hereby files his Sentencing Position.

　　　This Sentencing Position is based upon the attached memorandum of points and authorities, the Presentence Report, the files andrecords in this case, and such further evidence and arguments as the Court may permit.

Dated: February 20, 2020

Respectfully submitted,

　　　　　　　　　　　　　　　　　　 /s/ Ambrosio E. Rodriguez
　　　　　　　　　　　　　　　　　　　　Ambrosio E. Rodriguez
　　　　　　　　　　　　　　　　　　Attorneys for Carlos Fernandez

1

## MEMORANDUM OF POINTS AND AUTHORITIES

I. INTRODUCTION

On November 20, 2019, a jury found defendant Mr. Carlos Fernandez guilty on six separate counts, to wit: one count of conspiracy to engage in the business of dealing in firearms without a license in violation of 18 U.S.C. § 371; one count of engaging in the business of dealing in firearms without a license in violation 18 U.S.C. § 922(a)(1); one count of conspiracy to sell firearms to a prohibited person in violation of 18 U.S.C. § 922(a)(1); one count of conspiracy to sell firearms to a prohibited person in violation of 18 U.S.C. § 371; one count of selling a firearm to a prohibited person, in violation of 18 U.S.C. § 922(d)(1); and two counts aiding and abetting false statements in a firearm licensee's records, in violation of 18 U.S.C. § 924(a)(1)(A).

The United States Probation Office ("USPO") filed its Presentence Investigation Report ("PSR") on January 27, 2020 but did not provide a Sentencing Recommendation Letter in this matter. (Dkt. 317). In the PSR, the USPO calculated a total offense level of 26 and a Criminal History Category I, resulting in a Guideline Sentence Range of 63 to 78 months.

The Defense recommends that the Court deviate from the Guideline Sentencing Range based on Mr. Fernandez's lack of prior criminal history, his many years of service as a law enforcement officer in both the City of Los Angeles and the City of Gardena, the multiple commendations that he received in the course of his law enforcement career, and the fact that he did not take the stand in his own defense. Mr. Fernandez believes that the Court should use its discretion and find appropriate a base offense level of 20, with an Criminal History Category of I resulting in a sentence of 33 to 41 months.  Such a sentence would be sufficient but not greater than necessary to meet the sentencing goals set forth in 18 U.S.C. § 3553(a).

////

////

II. STATEMENT OF FACTS

Defendant adopts and incorporates as his statement of facts the factual basis set forth in the statement of facts presented in the Government's Sentencing Position. (Dkt. 339).

III. THE PRESENTENCE REPORT

On January 14, 2020, Mr. Fernandez was interviewed by the United States Probation Office ("USPO"). On January 27, 2020, the USPO filed its Presentence Report based on the interview and investigation into Mr. Fernandez's background.

The USPO calculated a total offense level of 26 based on the following calculations:

| | |
|---|---:|
| Base Offense Level: Guideline: | 14 |
| Specific Offense Characteristics: | +10 |
| Role in the offense: | +2 |

The USPO calculated criminal history score of 0 and a criminal history category of I. (PSR ¶ 74). Based on the total offense level of 26 and a criminal history category of I, the USPO calculated a guidelines imprisonment range of 63 to 78 months within Zone D of the sentencing table. (PSR ¶ 105).

As argued below, the defense does not concur that Mr. Fernandez's base offense level should be calculated at 26. The defense also believes that there are factors in mitigation that demonstrate that the Court should exercise its discretion and grant a downward departure of at least two offense levels.

IV. THE DEFENSE'S SENTENCING POSITION & RECOMMENDATION

Prior to this conviction, Mr. Fernandez had no criminal history. Mr. Fernandez served as a police officer for 19 years and received awards for life-saving actions and other work.

On August 6, 2003, Mr. Fernandez received commendation and a "Distinguished Service Award" for his role in preventing a suicidal man from

3

rushing through a barricade of officers to jump out a window in an attempt to commit suicide. Mr. Fernandez also received commendation for his role in responding to suspicious activity on May of 2002 which resulted in the saving of three children. Two of which were unconscious when they were found in a home flooded and filled with gas.

On March 07, 2006, Mr. Fernandez received a commendation for the arrest of three "South Los" gang-member who engaged in shootings earlier that year on February 13 and February 17. The arrest occurred on February 20, 2006 following a car chase in which the gang-members through a .45 caliber pistol out of the car window. For Mr. Fernandez's role in recovering the firearm, the Gardena Police Chief commended him stating, "It is very likely that Officer Fernandez' s alert observation prevented another shooting and possibly saved someone's life." All three suspects were charged with attempted murder in violation of California Penal Code 664/187.

On April 10, 2007, Mr. Fernandez received a commendation from the City of Gardena for saving a man who had set himself on fire.

On February 19, 2009, Mr. Fernandez received commendation for his role in putting an end to a string of armed robberies out of Compton, California. Mr. Fernandez provided forty-four hours of surveillance.

The Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a). In determining the particular sentence to be imposed, the Court shall consider:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;
2. The need for the sentence to be imposed –
    a. To reflect the seriousness of the offense; to promote respect for the law, and to provide just punishment for the offense;
    b. To afford adequate deterrence to criminal conduct;

   c. To protect the public from further crimes of the defendant; and

   d. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

3. The kinds of sentence available;
4. The guideline sentencing range;
5. Any pertinent policy statements issued by the Sentencing Commission;
6. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7. The need to provide restitution to any victim of the offense.

  In paragraph 53 of the PSR, the USPO states that between 2015 and 2017 Mr. Fernandez and Mr. Arao "worked together to purchase and sell 87 firearms." Using that number, the PSR then indicates that the base offense level should be increased by 6 because the offense involved between 25 and 99 firearms. The USPO's position presupposes the illegal purchase and/or sale of 87 firearms. But the first superseding indictment alleged, and the evidence adduced at trial demonstrated, that at most Mr. Fernandez engaged in twelve firearms transactions that were illegal. (*See* First Superseding Indictment (Dkt. 90), Counts 4 – 10.) Ten of those transactions involved Rafael Camacho, Jr. and two involved Adelberto de Jesus Vasquez Pelayo. (*Id*.). Though the indictment contains detailed lists of firearms that Fernandez was alleged to have transferred through private party transfers, it contained no allegations as to whom those firearms were allegedly transferred. (*Id*., Overt Acts 12-57 and Count 2).

  The PSR thus grossly overstates Mr. Fernandez's relevant the number of firearms alleged to be involved in the illegal conduct. Considering that the illegal conduct involving firearms for which there may be evidence of Mr. Fernandez knowing or intentional participation is twelve, the actual specific offense characteristic under USSG 2K2.1(b)(1) is 4.

In addition, the Guidelines contemplate that this Court can in its discretion depart from the standard sentencing range pursuant to 18 U.S.C. § 3553(b)(1) if there Court finds that a mitigating circumstance exists of a kind, or to a degree, not adequately taken into consideration by the USSC I formulating the Guidelines. USSG 5K.2.0 (a)(1)(A).

In this case, the evidence adduced at trial demonstrated that Mr. Fernandez took those steps necessary to comply with the California regulations governing the sale of firearms as he understood them. Moreover, the firearms transfers were all completed at a location and under the supervision of a federally licensed firearms dealer. In that regard, all relevant reporting forms were completed and submitted to the applicable government agencies. It is thus clear that though Mr. Fernandez's actions ran afoul of federal firearms laws and regulations, his actions were not clearly knowing or intentional.

In addition, Mr. Fernandez position as a law enforcement officer, though listed by the USPO as a factor that would increase the base offender score by two points, should actually be considered a factor in mitigation. There was scant evidence that anyone purchased a firearm from Mr. Fernandez *because* he was a police officer. Rather, the great weight of the testimony from purchasers was that they sought out Mr. Fernandez because of the specific type of somewhat rare but popular firearms he was selling. As set forth above, Mr. Fernandez had an exemplary career in law enforcement and received multiple commendations, some for his role is solving or stopping violent criminal conduct. Mr. Fernandez should receive a downward departure of 2 levels based on his multi-year career as a law enforcement officer.

Based on the foregoing, the defense agrees that the base offense level should be calculated at 14. However, specific offense characteristics, rather than reflecting a firearms total of 25 to 99, should reflect a total of 8 to 24, for an increase of 4 levels and not 6. Moreover, Mr. Fernandez's position as a police

officer should not be counted against him and increase the offense level by 2, rather, his commendable career should form the basis for a two-level downward departure for a total offense level of 20. When coupled with his criminal history category of I, the appropriate sentencing range is 33 to 41 months

V.    CONCLUSION

    For the foregoing reasons, the defense believes that a sentence of 33 to 41 months is sufficient to achieve the purposes set forth in 18 U.S.C. § 3553(a).

Respectfully submitted this 20th day of February 2020.

      /s/ Ambrosio E. Rodriguez
Ambrosio E. Rodriguez
Rodriguez Law Group
Attorney for Defendant