NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
KATHERINE A. RYKKEN (Cal. Bar No. 267196)
Assistant United States Attorney
Major Frauds Section
VERONICA DRAGALIN (Cal. Bar No. 281370)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0647
     Facsimile: (213) 894-0141
     E-mail:    katherine.rykken@usdoj.gov
                veronica.dragalin@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 18-121(A)-SJO-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT CARLOS MIGUEL FERNANDEZ'S MOTION FOR JUDGMENT OF ACQUITTAL OR ALTERNATIVELY NEW TRIAL; EXHIBIT |
| v. | |
| CARLOS MIGUEL FERNANDEZ, | |
| Defendant. | Hearing Date: None Set |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys KATHERINE A. RYKKEN and VERONICA DRAGALIN, hereby files its Opposition to Defendant Carlos Miguel Fernandez's Motion for Judgment of Acquittal or Alternatively New Trial (CR 342).

This Opposition is based upon the attached memorandum of points and authorities, attached exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: February 25, 2020         Respectfully submitted,

                                        NICOLA T. HANNA
                                      Acting United States Attorney

                                      BRANDON D. FOX
                                      Assistant United States Attorney
                                      Chief, Criminal Division


                                      */s/ Katherine A. Rykken*
                                      KATHERINE A. RYKKEN
                                      VERONICA DRAGALIN
                                      Assistant United States Attorneys

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Between 2015 and 2017, defendant CARLOS MIGUEL FERNANDEZ ("Fernandez" or "defendant"), together with co-defendant EDWARD ARAO ("Arao"), repeatedly purchased and then resold over 80 firearms for a profit without a license. In a two-year period, Fernandez personally resold 44 firearms. On November 20, 2019, a jury found Fernandez guilty of conspiring to engage in and engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. §§ 371 and 922(a)(1)(A) (the "illegal dealing charges"), conspiring to sell and selling firearms to a prohibited person, in violation of 18 U.S.C. §§ 371 and 922(d)(1) (the "prohibited person charges"), and aiding and abetting false statements in a firearm licensee's records, in violation of 18 U.S.C. § 924(a)(1)(A) (the "straw purchase charges"). Defendant has now filed a Motion for Judgment of Acquittal or Alternatively New Trial ("Motion") on three grounds (CR 342). First, defendant contends that calling co-defendant Raul Cervantes Corona ("Corona") as a witness constitutes prosecutorial misconduct because Fernandez did not know that Corona straw-purchased a firearm for co-defendant Mario Ramirez. Second, defendant argues that the government committed misconduct by asking ATF Special Agent Tolliver Hart about a pricing summary chart and then reused that summary chart in closing. Third, defendant again argues (as he did during his trial) that the government's objection to Fernandez's counsel's question about attorney-client communications between testifying co-defendant Adalberto DeJesus Vasquez Pelayo, Jr.'s ("Pelayo") impermissibly interfered with Pelayo's testimony.

Defendant's Motion was not timely filed, coming nearly two-and-a-half months after the Federal Rules of Criminal Procedure require his Motion to have been filed. In any event, defendant cannot establish that this is the sort of exceptional case in which the interest of justice compels a new trial, as is required under Rule 33. Defendant's motion is meritless, and the jury's guilty verdicts should stand.

**II.   ARGUMENT[1]**

The Motion does not cite or address the operative standard for a new trial set forth in Federal Rule of Criminal Procedure 33.[2] Instead, the Motion makes various accusations of prosecutorial misconduct, culminating in a generalized request for acquittal or a new trial and erroneously citing the appellate standard of review for objections based on prosecutorial misconduct. (See Motion at 9-10.) The government will address the Motion as a request for a new trial under Rule 33.

    **A.   Defendant's Motion for New Trial Should Be Denied**

        1.   <u>Defendant's Motion Was Not Timely Filed</u>

As a preliminary matter, Rule 33 requires that a defendant file a Motion for New Trial within 14 days of the guilty verdict. See Fed. R. Crim. P. 33(b)(2) (the motion "must" be filed within 14 days). Defendant failed to timely file his request for a new trial. The jury verdict occurred on November 20, 2019, after which any motion for new trial would have been due on December 4, 2019.

---

[1] Because Fernandez's Motion is based largely on three specific sets of facts, the relevant evidence is described below in each section rather than a separate statement of facts.

[2] As best the government can tell, defendant is not making a Rule 29 motion for acquittal based on the sufficiency of the evidence.

2

Defendant filed the Motion on February 18, 2020, two-and-a-half months after the deadline under Rule 33. On this basis alone, the Court may deny defendant's Rule 33 Motion.

### 2. Legal Standard for Rule 33 Motion

The standard to grant a Rule 33 motion for a new trial is stringent. Rule 33 provides that "upon the defendant's motion, a court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Any such motion must be filed within 14 days "after the verdict or finding of guilty." Id. at 33(b)(2). Defendant carries the burden. United States v. Mack, 362 F.3d 597, 600 (9th Cir. 2004). Because a verdict is presumptively valid, a new trial "should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict." United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981) (internal quotations marks and citations omitted). "It is only when it appears that an injustice has been done that there is a need for a new trial 'in the interest of justice.'" United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992). "[I]mproprieties in counsel's arguments to the jury do not constitute reversible error unless they are so gross as probably to prejudice the defendant, and the prejudice has not been neutralized by the trial judge." United States v. Berry, 683 F.3d 1015, 1024 (9th Cir. 2012).

### 3. Calling Corona as a Witness Is Not Prosecutorial Misconduct

Defendant asserts that there was "nothing improper" about defendant's firearms sale to Corona and that Fernandez did not know about Corona's admitted straw purchase. (Motion at 3.) Defendant's argument is that "the government made the impermissible insinuation

3

that Mr. Fernandez somehow knew of [Corona's] intent to commit a crime," i.e., a straw purchase. (Id.)  Defendant was not charged with aiding and abetting a straw purchase to co-defendant Mario Ramirez ("Ramirez").  Defendant's argument willfully ignores the relevance of Corona's testimony to the illegal dealing charges.

In the First Superseding Indictment, Fernandez was charged in Counts One and Two with illegal dealing. (See CR 90 at 7-19 (Count One); see id. at 20-22 (Count Two)).  Arao was charged with dealing in Count Three. (See id. at 23-25.)  The two firearms about which Corona testified were charged against Fernandez and Arao in Count One and against defendant Arao in Count Three. (See CR 90 at 19 (Count One, Overt Acts 93 and 94); see id. at 24:21-23 (Count Three).)

At trial, Corona testified that he heard about someone who advertised guns for sale as the 38 Superman, i.e., the defendant. (See 11/12/19 Tr. at 166:22-167:7.)  He also testified that he purchased two guns from defendant, one for himself and one for Ramirez. (Id. at 167-170.)  Corona then testified at length about how he found the two guns he wanted to purchase, how much he paid defendant Fernandez for the two firearms, how he communicated with defendant, and that he purchased the guns at Ronin Tactical Group, all of which testimony was relevant to the illegal dealing charges. (See id. at 166 – 185:20.)  In particular, Corona testified about coordinating the purchase with Fernandez, but actually buying the firearms from Arao.  Corona also provided valuable testimony about how Fernandez and Arao operated their illegal gun dealing business, with Fernandez primarily responsible for finding customers, and with Arao responsible for securing the merchandise.  Records introduced at trial showed that Arao purchased one of the guns sold to Corona just

4

weeks before the transaction, and for only half the price.  Without Corona's testimony, the government would not have been able to prove the purchase price charged by Fernandez and Arao, and the 100% profit that they were able to make on the sale.  In addition, Corona provided testimony about the way defendants conducted themselves at the sale, wearing their police uniforms and parking their police vehicles outside the location to encourage prospective buyers to trust defendants and feel comfortable buying guns from them.

Government counsel also asked Corona, over Fernandez's counsel's objection, whether Corona told Fernandez that he was purchasing one of the guns for Ramirez, to which Corona responded "No."  (Id. at 171:9-18.)  During cross-examination, defense counsel made the same point, eliciting testimony that Corona did not tell Fernandez or Arao that he was purchasing one of the guns for Ramirez. (Id. at 192:5-20.)  Defense counsel again stated in closing that there's "absolutely no evidence that Carlos Fernandez knew anything about" Corona's straw purchase for Ramirez.  (11/19/19 Tr. at 4-5.)

Given the testimony and argument at trial, defendant cannot now credibly argue that Corona's testimony was somehow misleading, confusing, or meets the Rule 33 standard for a new trial based on prosecutorial misconduct.  Before trial, the government produced numerous proffer reports that summarized Corona's anticipated testimony in great detail.  Corona agreed to testify pursuant to a cooperation plea agreement, after pleading guilty to making false statements.  The government was entitled to front these facts, without belaboring the point, that colored this witness's motive for testifying and potentially called into question his credibility.  If defendant had concerns about keeping out the fact that Corona

5

obtained a gun for a friend who was prohibited, Fernandez could have raised that issue with the government pre-trial, or in a motion *in limine* to exclude that fact.  It was not government misconduct to elicit testimony relevant to the illegal dealing counts.

        4. <u>Using a Summary Chart to Show Intended Profit Was Not Prosecutorial Misconduct</u>

During Agent Tolliver Hart's testimony, he provided information about the purchase price and advertised price of some of the firearms that he investigated, using a summary chart to explain the information to the jury.  (<u>See</u> 11/14/19 Tr. at 87:9-96:20; Ex. A (Trial Exhibit 34).)  The government used the same summary chart in closing.  Defendant now argues that this was prosecutorial misconduct because the government "presented this information to the jury in a manner that suggested the firearms were sale items with a purchase price, resale price, and a listed profit" and that using that same chart in closing was "impermissibly misleading" and improper "vouching," thereby warranting a new trial.  (Motion at 4-6.)

First, the Court provided the jury with a limiting instruction about the summary chart, stating that "[c]harts are only as good as their underlying supporting material.  You should give them only such weight as you think the underlying material deserves."  (<u>Id.</u> 89:11-14.)

Second, Agent Hart explained that the chart contained <u>purchase price</u> information based on records he received from other gun dealers and <u>advertised</u> prices based on Instagram records he reviewed, going into exhaustive detail about how he obtained the information on the chart for the first two of nine firearms on the summary chart so that the jury understood how the summary chart was prepared.  (<u>Id.</u> 88:20-

6

25; 89:23-96:14.) The summary chart contains a column called "advertised price" not "profit." (See Ex. A (Trial Exhibit 34).) The summary chart details nine firearms, two of which were purchased by Arao and seven of which were purchased by Fernandez, and most of which were not re-sold. Nowhere in the chart or during Agent's Hart's testimony did the government say or suggest that this summary chart included information reflecting the amount of profit defendant made from the nine firearms listed. In fact, during Agent Hart's testimony, defense counsel was attune to this very issue, objecting on the basis that government counsel said the guns were "sold for" as opposed to "advertised for" a certain amount. (Id. at 93:9-10.) The objection misstated the record (no such mistake was made) but government counsel nevertheless clarified that the summary chart referred to the "advertised price" of the firearms listed. (Id. 93:14-15.) During cross-examination, defense counsel for Fernandez questioned Agent Hart about the "advertised prices," suggesting that during trial he was not confused about the nature of the summary chart. (11/19/19 Tr. at 6:21-24.) Defendant's argument that the government used this summary chart in an "impermissibly misleading" fashion is contradicted by the trial testimony, which shows that Agent Hart accurately summarized and testified about the information contained in the summary chart.

  Likewise, the government's closing argument does not show prosecutorial misconduct. Rather, the government argued that the summary chart showed that defendant intended to make a profit because he marked up the prices of the guns that he sold. Whether Fernandez and Arao actually made a profit is immaterial under the law. See United States v. Van Buren, 593 F.2d 125, 126 (9th Cir. 1979) ("The

25; 89:23-96:14.) The summary chart contains a column called "advertised price" not "profit." (See Ex. A (Trial Exhibit 34).) The summary chart details nine firearms, two of which were purchased by Arao and seven of which were purchased by Fernandez, and most of which were not re-sold. Nowhere in the chart or during Agent's Hart's testimony did the government say or suggest that this summary chart included information reflecting the amount of profit defendant made from the nine firearms listed. In fact, during Agent Hart's testimony, defense counsel was attune to this very issue, objecting on the basis that government counsel said the guns were "sold for" as opposed to "advertised for" a certain amount. (Id. at 93:9-10.) The objection misstated the record (no such mistake was made) but government counsel nevertheless clarified that the summary chart referred to the "advertised price" of the firearms listed. (Id. 93:14-15.) During cross-examination, defense counsel for Fernandez questioned Agent Hart about the "advertised prices," suggesting that during trial he was not confused about the nature of the summary chart. (11/19/19 Tr. at 6:21-24.) Defendant's argument that the government used this summary chart in an "impermissibly misleading" fashion is contradicted by the trial testimony, which shows that Agent Hart accurately summarized and testified about the information contained in the summary chart.

Likewise, the government's closing argument does not show prosecutorial misconduct. Rather, the government argued that the summary chart showed that defendant intended to make a profit because he marked up the prices of the guns that he sold. Whether Fernandez and Arao actually made a profit is immaterial under the law. See United States v. Van Buren, 593 F.2d 125, 126 (9th Cir. 1979) ("The

distinction between collecting as a hobby and dealing as a business is not unknown to the law and it is recognized that where transactions of sale, purchase or exchange of firearms are regularly entered into in <u>expectation of profit</u>, the conduct amounts to engaging in business.") (emphasis added). The government's closing argument in this respect was brief and did not state that the summary chart contained information about the actual profit Fernandez did or did not make on the listed firearms. In pertinent part, the government said that the summary chart showed the initial sale price to either Arao or Fernandez, and an "advertised price[] on Instagram." (11/19/19 Tr. at 125:7-13.) Consequently, the difference between the purchase price and advertised price shows that defendants intended to make a profit and was therefore relevant to the illegal dealing charges. Defendant's argument that the summary chart was not relevant (Motion at 6) is flatly wrong.

Likewise, defendant is wrong that the government provided "personal assurances" vouching for Agent Hart's veracity. (Motion at 5.) Defendant does not cite a single instance in which the government made <u>any</u> personal assurances. In fact, in closing the government properly pointed the jury to the documents underlying the summary chart so that they could assess for themselves whether the summary chart accurately described the evidence. (11/19/19 Tr. at 125:7-13 ("you can check those underlying [invoice] records" at "exhibits 35 through 39" and "you can check the underlying ads yourself [at] exhibits 53-59").)

The Court should deny defendant's Motion that Agent Hart's testimony and the government's use of a summary chart in closing is prosecutorial misconduct.

8

          5.   <u>The Government's Objection to Cross-Examination that Intentionally Elicited Attorney-Client Communications Does Not Constitute Misconduct</u>

Fernandez next contends that the government interfered with Pelayo's testimony, by making one objection on the basis of attorney-client privilege, thereby intimidating Pelayo from testifying and resulting in prosecutorial misconduct. (Motion at 6-7.) This issue has been raised and briefed repeatedly.

During cross-examination of Pelayo, defense counsel for Fernandez asked a question that on its face was designed to elicit attorney-client privileged communications. The government objected. The Court noted that the government did not have standing to make such an objection. Government counsel then looked into the audience, where Pelayo's attorney was sitting. Thereafter, Pelayo's attorney objected on privilege grounds. Defendant then filed a mid-trial Motion for Mistrial based on prosecutorial misconduct. (CR 248.) The Court denied the Motion and the trial continued. Later cross-examination of Pelayo eventually elicited attorney-client privileged communications. The government did not raise any further objections.

Defendant's argument that this set of facts constitutes interference that discouraged Pelayo from testifying is meritless. Pelayo testified at length on cross-examination, including by providing information that would otherwise be privileged. Defendant's contention that Pelayo's lawyer would not have objected but for government counsel's look into the audience is wrong but beside the point. Pelayo answered every question defense counsel asked, whether it called for privileged information or not. The Court has already heard and rejected the argument that this constitutes prosecutorial misconduct – styling the legal ground as

9

witness intimidation does not change the result. The Court should again reject defendant's assertion that the government committed misconduct by objecting to a question that intentionally elicited attorney-client communications.

        6.    <u>Fernandez Cannot Show Prejudice Warranting a New Trial</u>

Fernandez cannot show prejudice resulting from Corona's testimony (which was appropriately limited and relevant to the illegal dealing counts), a summary chart (which was accurately described in direct and closing), and Pelayo's testimony (which ultimately included privileged communications). Fernandez has failed to demonstrate that the trial evidence and closing argument warrant overturning a presumptively valid verdict.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny Fernandez's motion for judgment of acquittal or alternatively new trial.